## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MARCIA G. FLEMING, CASEY FREEMAN, DAVID GUYON, ANTHONY LOSCALZO, PATRICK ROSEBERRY, and JULIO SAMANIEGO individually, on behalf of the Rollins, Inc. 401(k) Savings Plan and on behalf of all similarly situated participants and beneficiaries of the Plan, | Civil Action File No.  1:21-cv-05343-ELR |
| Plaintiffs, | |
| v. | **BRIEF IN SUPPORT OF THE ROLLINS DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT** |
| ROLLINS, INC.; THE ADMINISTRATIVE COMMITTEE OF THE ROLLINS, INC. 401(k) SAVINGS PLAN; ALLIANT INSURANCE SERVICES, INC.; ALLIANT RETIREMENT SERVICES, LLC; LPL FINANCIAL LLC; PAUL E. NORTHEN, JOHN WILSON, JERRY GAHLHOFF, JAMES BENTION and A. KEITH PAYNE in their capacities as members of the Administrative Committee; and John and Jane Does 1-10, | |
| Defendants. | |

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ........................................................ iii

**STATEMENT OF FACTS** ..........................................................3

**A.**   **Description of the Plan** ...................................................3

**B.**   **Plaintiffs and Procedural History** .................................4

**ARGUMENT** ..............................................................................6

**A.**   **THE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING**
..............................................................................................6

**B.**   **THE COMPLAINT FAILS TO STATE A CLAIM AS TO THE MATTERS THAT WERE CONSIDERED IN THE ADMINISTRATIVE PROCEEDING ("EXHAUSTED CLAIMS")** .......9

   **1.**   **The Legal Standards Governing Claims Reviewed in the Administrative Appeals Process** .......................................10

   **2.**   **The Complaint Fails to State a Claim Regarding the Performance and Expenses of the Plan's Investment Options** ...........................12

      a.  The Committee properly denied Plaintiffs' claims based on investment performance. ...............................................12

      b.  The Committee properly denied Plaintiffs' claims based on investment expenses. ...................................................17

   **3.**   **The Complaint Fails to State a Claim Regarding Monitoring of the Plan's Service Providers and Fiduciaries** .................................24

   **4.**   **Plaintiffs Fail to State a Duty of Loyalty Claim** ...........................26

   **5.**   **Plaintiffs Fail to State a Prohibited Transaction Claim** ...............28

**C.**   **PLAINTIFFS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES AS TO THEIR NEW CLAIMS** ...........................................29

**D.**   **ERISA'S STATUTE OF REPOSE BARS CLAIMS BASED ON CONDUCT PRIOR TO SIX YEARS BEFORE THE ADMINISTRATIVE PROCEEDING COMMENCED** ........................32

**E.      THE COMPLAINT FAILS TO STATE A CLAIM FOR CO-FIDUCIARY LIABILITY** .........................................................34

**F.      THE RECORD OF THIS CASE SHOWS THAT DISMISSAL SHOULD BE WITH PREJUDICE AND THAT THE ROLLINS DEFENDANTS SHOULD BE AWARDED THEIR FEES**....................35

**CONCLUSION**.................................................................................36

**LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE** .....................37

**CERTIFICATE OF SERVICE** ........................................................38

**INDEX OF EXHIBITS**.........................................................................38

# TABLE OF AUTHORITIES

**Cases**

*Alas v. AT&T, Inc.*, LACV 17-08106-VAP (RAOx), 2018 WL 6133645 (C.D. Cal. July 18, 2018)......................................................................................................8

*AlertPoint, LLC v. Olds*, No. 1-18-cv-03879-ELR, 2021 WL 1778033 (N.D. Ga. Mar. 30, 2021)...................................................................................................7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ passim

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)............................................. passim

*Bickley v. Caremark Rx, Inc.*, 361 F. Supp. 2d 1317 (N.D. Ala. 2004) ................10

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350 (11th Cir. 2011).............. 10, 11

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997)12

*Byars v. Coca-Cola Co.*, No. 1:01-cv-03124-TWT, 2004 WL 1595399 (N.D. Ga. Mar. 18, 2004)...................................................................................................10

*Cho v. Prudential Ins. Co. of Am.*, No. 19-19886 (JVM) (SCM) 2021 WL 4438186 (D.N.J. Sept. 27, 2021) ........................................................................................17

*Corsello v. Lincare, Inc.*, 428 F.3d 1008 (11th Cir. 2005) .....................................35

*Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014) ...................................11

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989) .................................18

*Fleming v. Rollins, Inc. et al*, No. 1:19-cv-05732-ELR ("2019 Action") .................1

*Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009) ............................................18

*Hecker v. Deere & Co.*, 569 F.3d 708 (7th Cir. 2009) ............................................26

*Henderson v. Emory Univ.*, 252 F. Supp. 3d 1344 (N.D. Ga. 2017)......................29

*Hoak v. Ledford,* No. 1:15-cv-03983-AT, 2016 WL 8948417 (N.D. Ga. Sept. 27, 2016) .......................................................................................................................12

*Hughes v. Northwestern Univ.*, 142 S. Ct. 737 (2022) ...........................................22

*In re BP p.l.c. Sec. Litig.*, No. 10-MD-2185, 2015 WL 6674576 (S.D. Tex. Oct. 30, 2015) .......................................................................................................................35

*In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338 (N.D. Ga. 2010)  12, 27, 34

*In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 812 (N.D. Cal. 2005)27

*In re Unisys Sav. Plan Litig.*, 74 F.3d 420 (3d Cir. 1996)......................................13

*Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768 (2020)............................32

*Kendall v. Pharm. Prod. Dev., LLC*, No. 7:20-cv-71-D, 2021 WL 1231415 (E.D.N.C. Mar. 31, 2021) ...................................................................19

*Kurtz v. Vail Corp.*, 511 F. Supp. 3d 1185 (D. Colo. 2021) ....................................22

*Leimkuehler v. American United Life Ins. Co.*, 713 F.3d 905 (7th Cir. 2013) 20, 22, 23

*Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011) ..................................... 23, 24

*Marks v. Trader Joe's Co.*, No. CV-19-10942 PA (JEMx), 2020 WL 2504333 (C.D. Cal. Apr. 24, 2020) ............................................................................22

*New Orleans Emps. Int'l Longshoremen's Ass'n, AFL-CIO Pension Fund v. Mercer Inv. Consultants*, 635 F. Supp. 2d 1351 (N.D. Ga. 2009)........................14

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705 (2d Cir. 2013) .................... 13, 14

*Pledger v. Reliance Trust Co.*, No. 1:15-cv-4444-MHC, 2019 WL 10886802 (N.D. Ga. Mar. 28, 2019)..................................................................................27

*Premier Concrete LLC v. Argos N. Am. Corp.*, No. 1:20-cv-00307-SDG, 2021 WL 1209354 (N.D. Ga. Mar. 31, 2021)...................................................................17

*Ramos v. Banner Health*, 1 F.4th 769 (10th Cir. 2021)..........................................28

*Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011)..............................................24

*Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 3:15-cv-1839 (VAB), 2016 WL 7494320 (D. Conn. Dec. 30, 2016)........................................................................18

*Santiago v. Univ. of Miami*, No. 1:20-cv-21784, 2021 WL 1173164 (S.D. Fla. Mar. 1, 2021) .......................................................................................................... 26, 27

*Secretary, U.S. Dep't of Labor v. Preston*, 873 F.3d 877 (11th Cir. 2017)............32

*Sellers v. Anthem Life Ins. Co.*, 316 F. Supp. 3d 25 (D.D.C. 2018) .......................28

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .............................................................8

*Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346 (4th Cir. 2014) ..........................14

*Tibble v. Edison Int'l*, 729 F.3d 1110 (9th Cir. 2013) .............................................24

*Tibble v. Edison Int'l*, 575 U.S. 523 (2015) .............................................................13

*Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014) ..................................................21

*Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291 (11th Cir. 2018)................................7

*Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313 (11th Cir. 2015) ............7

*White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) .................................................................................................................17

*Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019).......14

*Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31 (2d Cir. 2009).............26

**Statutes**

17 C.F.R. § 230.482(d)(3) ........................................................16
29 U.S.C. § 1104(a)(1)(A) ......................................................26
29 U.S.C. § 1104(a)(1)(B) ......................................................13
29 U.S.C. § 1106(a) ...............................................................28
29 U.S.C. § 1108(2)(A) ..........................................................29
29 U.S.C. § 1113(1) ...............................................................32
29 U.S.C. § 1132(g)(1) ...........................................................35

**Other Authorities**

*Active v. Passive Investing: What's the Difference?* (Apr. 15, 2019) ....................18
DOL Advisory Opinion 1997-19A (Aug. 28, 1997) ...............................................21
DOL Field Assistance Bulletin No. 2003-03 (May 19, 2003) ................................32

**Rules**

Fed. R. Civ. P. 8(a)(2) ...............................................................7

This is the second time the Court has seen the allegations of this ERISA class action complaint.  The Court dismissed the first time—and like a bad movie, this lawsuit is no better on second-viewing.  The original lawsuit raised a host of grievances regarding the investments selections and expenses for the Rollins 401(k) Savings Plan ("Plan") as the basis for breach of fiduciary duty and other claims under ERISA.  *See Fleming v. Rollins, Inc. et al,* No. 1:19-cv-05732-ELR ("2019 Action").  The Court dismissed that complaint because the plaintiff had failed to use the administrative claims process provided by the Plan.  *See* 2019 Action at ECF No. 41 ("Dismissal Order").  Following dismissal, the single plaintiff from the original complaint, along with five others, submitted an administrative claim to the Plan's Administrative Committee responsible for reviewing claims (the "Committee").  Plaintiffs' claims, however, offered nothing more than a list of ERISA violations in connection with the Plan's investment options and expenses and provided no detail or supporting documentation.  It was by all appearances a perfunctory attempt to use the administrative procedure with the full expectation of filing another lawsuit.  The Committee, in contrast, took the claim quite seriously.  The Committee relied on the allegations of the prior complaint to supply additional detail and to guide its review of the Plaintiffs' barebones claims.  It reviewed the detailed history of decision-making regarding

investment options and expenses as recorded in the Committee's meeting minutes and supporting documents.  It sought expert advice regarding the standards governing fiduciary decisions, investment selections and expenses.  It provided Plaintiffs with the documentary record on which its decision to deny Plaintiffs' claims was based.  And it invited Plaintiffs—twice—to provide any additional information or support for their claims—an invitation that went unheeded.

While Plaintiffs made no serious attempt to engage in the administrative claims process, that process has substantial—indeed, outcome-determinative—consequences for the present motion to dismiss.  First, the administrative record thoroughly recites the Rollins Defendants'[1] robust fiduciary processes, and it is that administrative record that is properly considered on the present motion under controlling Eleventh Circuit precedent.  Second, this record shows that the Plan's investment options were carefully selected and monitored with the help of investment professionals and that the Plan's expenses also were carefully monitored, lowered over time and easily in line with rates accepted in other cases.

---

[1]   The "Rollins Defendants" are Rollins, Inc. as Administrator of the Plan, the Plan's Administrative Committee (without conceding whether it is an entity capable of being sued), and the five Committee members serving at the time Plaintiffs' administrative claims were decided: Paul E. Northen, John Wilson, Jerry Gahlhoff, James Benton and A. Keith Payne.

The denial of Plaintiffs' administrative claims rests on this record and the application of fundamental ERISA law governing fiduciary conduct, namely that plan fiduciaries have considerable discretion to manage plans and their decisions are not judged in hindsight.  Third, the record exposes as new claims that were never presented in the administrative process and have not been exhausted.

In addition to these grounds for dismissal, the Complaint remains a confusing mess and should be dismissed as a "shotgun pleading" in the same way that the 2019 Action was subject to dismissal on that ground.  It is also apparent on the face of the Complaint that substantial portions of Plaintiffs' claims are time barred by ERISA's six-year statute of repose.  In short, there are multiple grounds for dismissal of all allegations against the Rollins Defendants as a matter of law, and such dismissal of this renewed lawsuit should be with prejudice.

## STATEMENT OF FACTS

### A.   Description of the Plan

Rollins, Inc. ("Rollins") is an Atlanta-based pest control company that offers the Plan to its employees as a tax-advantaged way to save for retirement.  *See* Ex. 10.  The Plan is a "defined contribution" plan in which participants control the investment of their retirement savings in separate, individual accounts.  *See id*. Rollins itself makes substantial payments into participants' individual accounts in

the form of matching contributions totaling more than $75,920,000 between 2014 and 2019.  *See* Exs. 12-17 at Schedule H, Part II, Line 2a(1)(A).  Over that period, participants could select from approximately 15-20 investment products including index funds and actively managed mutual funds.  *See* Exs. 18-26 (annual disclosures showing the available funds for each year).  Prior to 2018, participants paid the requisite recordkeeping and investment expenses for the Plan solely through their investments, which regularly deduct such expenses from their total returns from fund assets.  *See* Exs. 18-23.  Since January 1, 2018, those expenses have been paid primarily through a $43 annual recordkeeping fee charged to all participants.  *See* Exs. 24-26.  Under the terms of the Plan, decisions regarding plan administration are assigned to the Committee.  *See* Ex. 10 ¶ 12.3.

## B.    Plaintiffs and Procedural History

Plaintiffs allege that they are six former Rollins employees who elected to participate in the Plan at various times since 2007.  Compl. ¶¶ 4-9.  They are represented by common counsel, who also represented Plaintiff Fleming in the 2019 Action.  Plaintiffs made no attempt to invoke the Plan's administrative process until after the Court dismissed the 2019 Action on November 23, 2020.  *See* Dismissal Order.  On December 10, 2020, Plaintiffs' counsel submitted a two-page claim to the Committee, comprising five allegations that corresponded to the

4

five counts of the complaint in the 2019 Action.  *See* Ex. 1.  The claim provided little detail and no support, consisting in its entirety of a bullet point list.  *See id*. The Committee twice invited Plaintiffs to provide additional support that the Committee would consider.  *See* Exs. 2-3.  Plaintiffs provided nothing further.

Despite the lack of detail provided by Plaintiffs in the administrative process, the Committee construed the claim broadly to include the allegations in the 2019 Action.  The Committee then considered the documents detailing the historical processes and decision-making regarding investment performance and investment and recordkeeping fees.  *See* Exs. 3, 6-37.

Based on its consideration of this record, the Committee denied Plaintiffs' administrative claims (*see* Compl. ¶ 26), explained the grounds for denying each claim, and identified the documents and information the Committee considered in reviewing the claims.  *See* Ex. 3.  The Plan provides for an appeal process, and Plaintiffs appealed the denial of their claims.  *See* Ex. 4. Their appeal letter stated no grounds for disagreeing with the Committee's decision and provided no new information or documents for consideration.  *See id*.  Their appeal did request that the Committee provide the specific information upon which the claims were denied, and the Committee provided Plaintiffs' counsel with the entire administrative record for its decision.  *See* Exs. 4-5, 6-37.

After receiving these materials, Plaintiffs provided no further information, evidence or argument supporting their claims. The Committee considered Plaintiffs' appeal and on May 6, 2021, notified Plaintiffs of its decision to deny the appeal (*see* Compl. ¶ 28), again explaining the reasons for its decision. *See* Ex. 38.

The current Complaint regurgitates allegations and claims from the 2019 Action and the administrative claim. Compare, *e.g.*, Compl. ¶ 239 with 2019 Action at ECF No. 25 (Amended Complaint) ¶ 156 and Ex. 1 item 1.a. It also, however, adds new claims that were not encompassed by the 2019 Action or the administrative claim. For example, the Complaint adds claims against third parties Alliant Insurance Services, Inc., Alliant Retirement Services, LLC and LPL Financial LLC. Compl. ¶¶ 294-302. It alleges for the first time that the Rollins Defendants failed to conduct due diligence as to the selection of Alliant and its representative Sean Waggoner, who has advised the Committee on benefits matters throughout the putative Class Period. *See id.* ¶¶ 64-89, 94-113. And it alleges, also for the first time, that the Plan's method of allocating recordkeeping expenses to participants violated ERISA in some respect. *See id.* ¶¶ 173-201. As to these claims, no Plaintiff has initiated any administrative claim.

## ARGUMENT

### A.   THE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING

Controlling Eleventh Circuit authority shows no tolerance for "shotgun pleadings," which are pleadings "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case…can be masked[.]" *AlertPoint, LLC v. Olds*, No. 1-18-cv-03879-ELR, 2021 WL 1778033, at *6 (N.D. Ga. Mar. 30, 2021) (Ross, J.) (quoting *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)). Shotgun pleadings fail Rule 8's requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018) (quoting Fed. R. Civ. P. 8(a)(2)).

The present Complaint is a textbook example of a shotgun pleading.  Its six counts each incorporate the entire factual background section, leaving it unclear what facts relate to each claim. *See Weiland*, 792 F.3d at 1324.  It is also replete with "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *See, e.g.*, Compl. ¶ 55 (alleging a violation of the Plan's IRS determination letter); ¶ 85 (alleging a violation of Georgia investment advisor registration rules); ¶¶ 126-131 (alleging a violation of SEC Rule 156, which is directed to investment companies); ¶ 186 (alleging a violation of ERISA's "uniform benefits, rights and features requirements").  None of the counts refer to these supposed violations or offer any guidance as to how they support any claim.

The Complaint further fails to tie any particular Defendant to any particular conduct, referring instead to the individual Defendants collectively as the "Administrative Committee" even when discussing events that occurred long before any individual Defendant served on the Committee.  *See, e.g.*, *id.* ¶ 114-15, 132-33; Ex. 7 (showing that Wilson joined the Committee in 2013, Benton in 2014, Northen in 2015, Gahlhoff in 2017 and Payne in 2019).  Other allegations simply refer to the "Defendants" collectively in a manner that obscures their distinct roles and duties.  *See, e.g.*, *id.* ¶¶ 242, 252, 262.

Indeed, the tangled allegations make it impossible to determine the threshold issue of whether any Plaintiff has standing since there are no allegations regarding each Plaintiff's own investment selections, when they held those investments, or when they participated in the Plan.  A plaintiff's complete failure to allege anything about her own investments warrants dismissal.  *See, e.g., Alas v. AT&T, Inc.*, LACV 17-08106-VAP (RAOx), 2018 WL 6133645, at *5 (C.D. Cal. July 18, 2018) (dismissing complaint that "lack[ed] any details as to what funds [the plaintiff] purchased or how this led to his 'financial detriment'").[2]  Similarly,

---

2  *See also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (holding that each plaintiff must plead and show they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.").

Plaintiffs' impenetrable group allegations render application of ERISA's six-year statute of repose impossible since Plaintiffs invested in different funds at different times.  The Complaint also fails to link the present claims to the claims presented in the administrative process, leaving Defendants and the Court to sift out those that are subject to dismissal for lack of administrative exhaustion.

The 2019 Action suffered the same defects as the present Complaint, and defendants raised the issue in their motions to dismiss.  *See* 2019 Action at ECF 16-1, 34-1.  Plaintiffs' counsel, thus, has long been on notice of the problems with his approach to pleading and yet has been unwilling or unable to draft a complaint that meets Rule 8 and the Eleventh Circuit's basic requirements.  Such defective pleading is particularly egregious in a case like this one, where Plaintiffs were supplied the entire administrative record prior to filing suit.

**B.   THE COMPLAINT FAILS TO STATE A CLAIM AS TO THE MATTERS THAT WERE CONSIDERED IN THE ADMINISTRATIVE PROCEEDING ("EXHAUSTED CLAIMS")**

The shotgun nature of the Complaint is just the beginning of its problems. The Complaint attempts to plead both claims that were presented (albeit summarily) in the administrative process and ones that are entirely new.  There are separate grounds for dismissal of each type of claim as discussed below.

The Complaint repeats the five claims presented by Plaintiffs in the bullet

point list submitted to the Committee.  These claims were thoroughly reviewed by the Committee and rejected in a reasoned decision supported by an extensive record.  The role of the Court is to review that record to determine whether there is a reasonable basis for the decision to deny the claim—not to substitute its own judgment for that of Committee.  *See Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354-56 (11th Cir. 2011) (explaining scope of review of administrators' decision); *Byars v. Coca-Cola Co.*, No. 1:01-cv-03124-TWT, 2004 WL 1595399, at *3 (N.D. Ga. Mar. 18, 2004) (noting that reviews of administrators' determinations are typically reviewed under an "arbitrary and capricious" or "abuse of discretion" standard); *Bickley v. Caremark Rx, Inc.*, 361 F. Supp. 2d 1317, 1338 n. 37 (N.D. Ala. 2004) (courts "will not use a *de novo* standard" when reviewing a plan's response to an administrative claim), *aff'd*, 461 F.3d 1325 (11th Cir. 2006).  The extensive record created by the administrative process now amply demonstrates the Plan was carefully and thoughtfully administered in the best interests of the Plan participants.

**1. The Legal Standards Governing Claims Reviewed in the Administrative Appeals Process**

A complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citation omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").  The Supreme Court has emphasized that motions to dismiss serve as an "important mechanism for weeding out meritless claims" in ERISA fiduciary breach cases because such cases present a danger of "meritless, economically burdensome lawsuits" that discourage employers from offering employee benefit plans in the first place.  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 424-25 (2014).  ERISA sought to strike a balance between the competing goals of "ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans."  *Id.* at 424 (quotations and citations omitted).  To preserve this balance, courts should engage in a "careful, context-sensitive scrutiny of a complaint's allegations" in an effort to "divide the plausible sheep from the meritless goats."  *Id*. at 425.

The present action involves a denied administrative claim, which is subject to its own standards.  Unlike typical cases in which no discovery has taken place and the plaintiff lacks access to facts, cases involving claims denials arrive at court with a developed factual record in the hands of all parties.  Accordingly, the court's review of the administrator's decision is generally limited to "consideration of the material available to the administrator at the time it made its decision."  *Blankenship,* 644 F.3d at 1354.  In addition, the materials presented in this motion

are properly considered here because (1) Plaintiffs referred to and attached parts of the administrative record to their Complaint (*see* ECF 1-2 and 1-3) and (2) the documents are central to the allegations of the Complaint or publicly-available. *See* ECF 1-1, 1-2, 1-3; *Hoak v. Ledford,* No. 1:15-cv-03983-AT, 2016 WL 8948417, at *1 fn. 2 (N.D. Ga. Sept. 27, 2016); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1344 (N.D. Ga. 2010) (public filings with government agencies may be considered).

### 2. The Complaint Fails to State a Claim Regarding the Performance and Expenses of the Plan's Investment Options

The Complaint asserts that the Plan's investment offerings (a) underperformed and (b) were too expensive to the point of being a breach of duty to have ever selected them in the first place. *See* Compl. ¶ 242. These allegations appear to repeat the barebones assertions of Claims I and IV in Plaintiffs' administrative claim and are therefore properly considered as "exhausted" and ripe for consideration by this Court. *See* Ex. 1.

#### a. The Committee properly denied Plaintiffs' claims based on investment performance.

During the administrative process, the Committee found that the Plan's investment options had been monitored on a regular basis and in accordance with

the established guidelines and the advice of an independent employee benefits advisor.  Ex. 3 p. 2.  Nothing in the Complaint suggests that this finding was wrong, let alone arbitrary and capricious.  To the contrary, the Committee meeting minutes, which Plaintiffs attached to the Complaint, extensively document the Committee's robust monitoring and decision-making processed.

ERISA's standard of care is defined as "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).  Specifically with regard to investment selection, fiduciaries have "a continuing duty to monitor investments and remove imprudent ones."  *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015).  The prudence test "focus[es] on a fiduciary's conduct in arriving at an investment decision, not on its results, and ask[s] whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment."  *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 716 (2d Cir. 2013) ("*PBGC*") (quoting *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996)).  Fiduciary decisions regarding mutual fund selection are not judged in hindsight; Monday-morning quarterbacking is not permitted.  *See New Orleans*

*Emps. Int'l Longshoremen's Ass'n, AFL-CIO Pension Fund v. Mercer Inv. Consultants*, 635 F. Supp. 2d 1351, 1372 (N.D. Ga. 2009) ("The results of the fiduciary's investment decision are not the focus of the inquiry.").  Rather, a fiduciary is judged by whether it monitored the investment's performance and made an informed decision to remove it.  *See PBGC*, 712 F.3d at 730.

"Courts have found that a variety of actions can support a finding that a fiduciary acted with procedural prudence, including, for example, … seeking outside legal and financial expertise, holding meetings to ensure fiduciary oversight of the investment decision, and continuing to monitor and receive regular updates on the investment's performance." *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 358 (4th Cir. 2014).  "[Fiduciaries] who appropriately investigate the merits of an investment decision prior to acting easily clear this bar." *Id.* (internal punctuation omitted); *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 707-08 (W.D. Mo. 2019) (recognizing the use of a written investment policy and watch list to monitor funds as prudent conduct).

The present record is a model of a prudent decision-making process under these standards. The Plan's investment options were reviewed during quarterly meetings attended by the Plan's Retirement Plan Manager (a non-voting administrator) and representatives from the Plan's recordkeeper (Prudential) and its

14

professional advisor (Sean Waggoner). *See* Ex. 7. The meetings followed an agenda and a consistent format which included a review of prior action items, discussion of general economic conditions, and a review of the Plan's investment options. *See* Exs. 7-8. Prior to meetings, Committee members received a "book" of meeting materials for each meeting that included a presentation on economic trends, summary performance information for each of the Plan's funds, and a copy of the Plan's written Investment Policy Statement ("IPS"). *See* Exs. 8-9. The IPS contains guidelines for the selection and retention of the Plan's investments, including a list of six circumstances in which a fund "will be reevaluated," a process informally referred to as the "Watch List." *See* Ex. 9 Part IV.C. Among the criteria that will place a fund on the Watch List are "significant under-performance versus funds of a similar discipline over three- AND five- year time periods" and "a real or perceived change in investment style or discipline." *Id.*

Plaintiffs were fully aware of all these facts, yet the Complaint alleges no plausible defect in this process. Nor does it plausibly allege that any of the investment selection and monitoring criteria in the IPS were imprudent or that the Plan's investments performed poorly or were bad investments on the whole.[3] The

---

[3]   The Complaint challenges the inclusion of a fund's past performance in the IPS, but typical of its shotgun nature, it relies on SEC Rule 156, which applies to investment companies (not plan fiduciaries) and addresses the required disclosures

Complaint contains specific allegations regarding the performance of only one of the Plan's investment options, the Oakmark Equity and Income Investor Fund ("Oakmark Fund").  Compl. ¶¶ 132-149.  Specifically with respect to the Oakmark Fund, the record shows that the Oakmark Fund was selected prior to the purported class period (Compl. ¶ 276), discussed regularly, placed on and removed from the Watch List at various points between 2012 and 2020 and ultimately replaced with another fund in August 2020.  See, *e.g.*, Ex. 7 at ROLLINS_0000097-98, 0000102, 0000212, 0000217.  This record shows reasoned decision-making based on adequate information and supported by professional advice.  Indeed, the Complaint acknowledges—as it must—that the Committee consistently monitored the performance and management of all of the Plan's investment options.  Compl. ¶ 130.  It then however mistakes the Committee's discussion of the Oakmark Fund's performance for a breach of duty.  Those discussions specifically focus on the performance of the Oakmark Fund and describe judgments about whether to place it on the Watch List or take other action.  These are precisely the sort of

---

in sales literature regarding mutual funds.  The Rule does not address the issue raised by the Complaint, namely whether a fiduciary acts prudently by considering past performance against objective benchmarks such as a market index. Considering such information is not only customary in the industry but *consistent* with SEC guidance, which requires fund companies to disclose 1, 5 and 10-year returns.  *See* 17 C.F.R. § 230.482(d)(3).

judgment calls that are left to the considerable discretion of ERISA fiduciaries—

judgments that cannot be second-guessed with hindsight accusations that a fund

should have been replaced earlier based on its subsequent performance.[4]  ERISA

does not require snap judgments, and foolish is the long-term investor that buys

and sells on daily market swings.  By acknowledging the monitoring the Rollins

Defendants performed, the Complaint thus is effectively self-defeating and should

be dismissed.  *See Premier Concrete LLC v. Argos N. Am. Corp.*, No. 1:20-cv-

00307-SDG, 2021 WL 1209354, at *5 (N.D. Ga. Mar. 31, 2021) (dismissing

complaint that "has a built-in defense and is essentially self-defeating").

  b.  The Committee properly denied Plaintiffs' claims based on
      investment expenses.

The Complaint alleges that some of the Plan's mutual funds were imprudent

because a cheaper alternative was available.  *See, e.g.,* Compl. ¶ 242.  Specifically,

it alleges that (1) the Plan should have offered more passively-managed index

---

4  *See White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2016 WL 4502808, at *17
(N.D. Cal. Aug. 29, 2016) ("[A] fiduciary may—and often does—retain
investments through a period of underperformance as part of a long-range
investment strategy."); *Cho v. Prudential Ins. Co. of Am.*, No. 19-19886 (JVM)
(SCM) 2021 WL 4438186, at *9 (D.N.J. Sept. 27, 2021) (claims based primarily
on five-year trailing performance data were insufficient because that period was
too short to imply imprudence).

funds rather than actively-managed mutual funds,[5] and (2) the Plan offered "retail" share classes which paid revenue sharing to offset the Plan's administrative expenses rather than lower-cost share classes of the same fund.  *Id.*

(1) *Index Funds.*  The Complaint's insistence on the elimination of actively managed funds in favor of passive index funds should be rejected as a matter of law.  "[N]othing in [ERISA]…requires plan fiduciaries to include any particular mix of investment vehicles in their plans."  *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009).  As a result, courts have repeatedly dismissed allegations that actively-managed funds—and their naturally higher costs—are imprudent.  *See id.*; *Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 3:15-cv-1839 (VAB), 2016 WL 7494320, at *14 (D. Conn. Dec. 30, 2016).  ERISA eschews one-size-fits-all decision-making and affords fiduciaries considerable discretion in operating plans.  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989) (a fiduciary's exercise of discretion "'is not subject to control by the court except to prevent an

---

[5]   Passively-managed index funds attempt to mimic the performance of a recognized market index, such as the Standard & Poor's 500 Index.  Actively-managed funds, in contrast, try to identify investment opportunities that allow investors to outperform broader market indices.  Because this requires professional judgment, actively-managed funds tend to have higher expenses.  *See generally* Pam Krueger, *Active v. Passive Investing: What's the Difference?* (Apr. 15, 2019), https://www.investopedia.com/news/active-vs-passive-investing (last accessed Mar. 28, 2022).

abuse by the trustee of his discretion'") (citation omitted); U.S. Dept. of Labor ("DOL"), Advisory Op. 2006-08A (Oct. 3, 2006) ("Within the framework of ERISA's prudence, exclusive purpose and diversification requirements, the Department believes that plan fiduciaries have broad discretion in defining investment strategies appropriate to their plans."). What ERISA does require is that fiduciaries make reasoned decisions regarding investment choices. *See Kendall v. Pharm. Prod. Dev., LLC*, No. 7:20-cv-71-D, 2021 WL 1231415, at *3 (E.D.N.C. Mar. 31, 2021).

Here, the record confirms that the Rollins Defendants consistently reviewed the overall mix of investments and that they added index funds to the Plan effective January 1, 2015. *See, e.g.*, Ex. 7 at ROLLINS_0000130. And the Complaint once again acknowledges this record of deliberations (Compl. ¶ 229), thus defeating its conclusory assertion that the Rollins Defendants failed to monitor investment offerings. Plaintiffs attempt to straitjacket the Rollins Defendants' decision-making and to require only funds of their particular liking, but this approach is contrary to established law regarding investment option discretion and cannot support a claim.

(2) *Revenue Sharing.* Plaintiffs' allegations regarding the selection of mutual fund share classes fare no better. Plaintiffs allege that the Rollins

Defendants imprudently selected "retail" mutual funds when a cheaper "institutional" share class of the same fund was available.  *See, e.g.*, Compl. ¶¶ 120-125 (alleging that the Rollins Defendants should have selected an institutional share class of the Victory Sycamore Established Value Fund instead of a retail share class of the same fund).  These allegations, however, support no inference of imprudence because they ignore whether these expenses, known as revenue sharing, served the legitimate purpose of defraying recordkeeping expense.  It is the very sort of allegation that courts have rejected as a matter of law.

Various services are required to operate a 401(k) plan.  These include participant account recordkeeping, processing of contributions, rollovers and loans, generating account statements and communicating with participants.  These services are not offered for free.  To pay for them, two common models have developed.  One of them, which the Plan used until January 1, 2018, was to allow for Prudential's services to be paid by the mutual fund investment managers as a portion of the expense ratio charged by the mutual fund, a practice known as revenue sharing.  *Id*. ¶ 175.  Mutual fund managers are willing to pay a portion of their revenue to plan recordkeepers to cover the cost of participant level services that the mutual fund would otherwise need to provide.  As *Leimkuehler v. American United Life Ins. Co.*, 713 F.3d 905, 909 (7th Cir. 2013) explains:

> [The recordkeeper] must perform many of the services that the mutual funds would otherwise handle themselves. Among other things, [the recordkeeper] keeps track of individual accounts, takes responsibility for calculating the daily value of assets in the separate account, distributes information to the Plan sponsor and participants, and provides a customer-service hotline.
>
> In principle, [the recordkeeper] could cover the costs of providing these services in one of two ways. One way would be to bill the Plan sponsor or Plan participants directly. The other way would be to engage in a practice known as "revenue sharing," whereby the mutual fund companies pay a portion of the fees they charge investors—fees that are referred to as a fund's "expense ratio" and that are expressed as a percentage of a fund's assets—to [the recordkeeper].

The Plan has done both, having elected in 2018 to charge a flat recordkeeping fee and to reduce the number of revenue sharing funds in its menu.  *See* Ex. 7.

The Complaint refers to academic debate over the utility of revenue sharing, *see, e.g.,* Compl. ¶ 178, but ERISA takes no side in that debate.  Revenue sharing has been repeatedly accepted as a prudent method to pay for plan services.  *Tussey v. ABB, Inc.*, 746 F.3d 327, 331 (8th Cir. 2014).[6]  Indeed, revenue sharing is one of the principal reasons why fund companies offer retail and institutional share

---

[6]   *See also* DOL Advisory Opinion 1997-19A (Aug. 28, 1997); DOL, *Understanding Retirement Plan Fees and Expenses*, available at https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/understanding-retirement-plan-fees-and-expenses.pdf (last accessed Mar. 28, 2022) ("In some instances, the costs of administrative services will be covered by investment fees that are deducted directly from investment returns.").

classes of the same fund.  The expense ratios for some fund classes include revenue sharing, while the expense ratios for cheaper share classes do not.  "As a general matter, expense ratios and revenue-sharing payments move in tandem: the higher a given share class's expense ratio, the more the fund pays [the recordkeeper] in revenue sharing.  It is also generally the case that the more [the recordkeeper] receives in revenue sharing, the less it charges plan sponsors or participants directly for its services." *Leimkuehler*, 713 F.3d at 909.

Accordingly, a plan's inclusion of retail funds does not evidence imprudence. *See Kurtz v. Vail Corp.*, 511 F. Supp. 3d 1185, 1199 (D. Colo. 2021) (dismissing prudence claims based on failure to offer institutional share classes); *Marks v. Trader Joe's Co.*, No. CV-19-10942 PA (JEMx), 2020 WL 2504333, at *8 (C.D. Cal. Apr. 24, 2020) (same).  Instead, revenue sharing is within the range of reasonable ways that a plan can choose to pay for necessary fees. *See Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2022) ("At times, the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise.").[7]

---

[7]   One reason why the revenue sharing decision presents a tradeoff is that it is based on the amount invested, and therefore participants with smaller account balances will generally pay less. *See Loomis v. Exelon Corp.*, 658 F.3d 667, 672

Moreover, any notion that the Rollins Defendants were inattentive to the tradeoffs involved in revenue sharing is completely dispelled by the record, which shows that the Committee monitored expenses on an on-going basis, focused on whether to use the revenue sharing model in 2017 and elected to shift to a flat fee. *See* Ex. 7 at ROLLINS_0000165, 0000169; *see also* Ex. 8 at ROLLINS_0000410 (revenue sharing report included in Committee meeting materials).  Again, the Complaint itself acknowledges that the Rollins Defendants reviewed revenue sharing, a flat rebuttal to its own allegations of inattention.  *See* Compl. ¶ 125.[8]

None of this was a secret to the Plan's participants.  The expense ratio for each fund was disclosed to participants in federally mandated annual disclosures, as was the $43 fee beginning in 2018.  *See* Exs. 18-26.  These disclosures also show that the expense ratios dropped over time.  *See id.*  Some funds lowered their fees over time.  *See, e.g.*, Ex. 6 at ROLLINS_0000016 (showing that the Franklin

---

(7th Cir. 2011).  Because Plaintiffs do not allege anything about their own investments, it is impossible to tell whether they suffered any harm as a result of the use of revenue sharing in lieu of a direct fee (or, conversely, whether they benefited from the earlier approach).

[8]   The Complaint refers to revenue sharing with the pejorative label "kickback."  Courts have repeatedly acknowledged, however, that revenue sharing is not a kickback and that such payments serve the legitimate purpose of paying for necessary expenses.  *See Leimkuehler, supra.*  Pejorative labels do not state a plausible claim under the *Twombly/Iqbal* standard.

Growth Fund's ratio fell from 0.69% in 2012 to 0.59% in 2019).  In other cases, fees dropped as a result of a fund change.  *See* Exs. 20-21 (showing that PIMCO Total Return Institutional Fund (0.46%) was replaced with Metropolitan West Total Return Bond Fund (0.39%)).  Finally, expense ratios were further lowered in 2018 when the Plan shifted to different share classes.  *See* Exs. 23-24.  Overall, the Plan's fees fell within a range that has been approved as reasonable in other cases. *See, e.g., Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013) (affirming as reasonable fees ranging from 0.03% to 2%), *vacated on other grounds*, 575 U.S. 523 (2015); *Loomis*, 658 F.3d at 669-72 (affirming dismissal where expense ratios ranged from 0.03% to 0.96%); *Renfro v. Unisys Corp.*, 671 F.3d 314, 326-28 (3d Cir. 2011) (same with fees ranging from 0.1% to 1.21%).

It is therefore clear that under any standard of review, Plaintiffs' claim regarding fees must fail.  The plausibility standard requires a complaint to allege more than a theory of liability that could be equally consistent with proper conduct. *See Twombly*, 550 U.S. at 557.  Because revenue sharing offers advantages that may be considered by fiduciaries, the Complaint has failed to nudge its claims across the line from conceivable to plausible.  *See id.* at 570.

### 3. The Complaint Fails to State a Claim Regarding Monitoring of the Plan's Service Providers and Fiduciaries

In Counts II and III, the Complaint alleges that the Rollins Defendants failed

to monitor the Plan's service providers and fiduciaries.  The Committee found that "service providers were selected prudently with the help of an independent employee benefits advisor and that efforts were made to maintain reasonable costs while maintaining quality services for the Plan and its participants, again with the help of an independent employee benefits advisor."  Ex. 3 p. 2.

Plaintiffs make the conclusory assertion that the Administrative Committee failed to solicit bids.  Compl. ¶ 258.  But the record shows that in 2016 and 2017, the Committee undertook a comprehensive review of the Plan's recordkeeping fees and simultaneously conducted a request for proposals (RFP) for recordkeeping services.  Ex. 7 at ROLLINS_0000165, 0000168-169, 0000173.  As a result of that process, the Committee caused the Plan to adopt an annual $43 per participant recordkeeping fee, while simultaneously replacing six of the Plan's retail funds with their institutional class counterpart.  *Id*. at ROLLINS_0000169.  The changes were implemented effective January 1, 2018.  The Complaint again defeats itself by recognizing that the Rollins Defendants did in fact conduct an RFP and review its recordkeeping fees, which is the very thing that Plaintiffs allege they were supposed to do.  *See* Compl. ¶ 202.

Plaintiffs cannot plead a claim simply by pointing to the Plan's annual expenses and comparing them to other plans (see Compl. ¶ 160) or characterizing

the fees as unnecessary.  To state a plausible claim, a plaintiff must allege that fees were excessive related to the services rendered.  *See Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009).  Where the "complaint is silent about the services . . . participants received," there is no plausible claim for breach. *See Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th Cir. 2009).

### 4.  Plaintiffs Fail to State a Duty of Loyalty Claim

In addition to the duty of care claims just discussed, the Complaint in Counts I through IV tries to plead breaches of the duty of loyalty and a claim for failure to remedy such breaches.  ERISA requires fiduciaries to act "solely in the interest" of plan participants and beneficiaries, and "for the exclusive purpose of providing benefits to participants" and "defraying reasonable expenses of administering the plan."  29 U.S.C. § 1104(a)(1)(A).  "The duty of loyalty prohibits [fiduciaries] from engaging in transactions that involve self-dealing or that otherwise involve or give rise to conflict between the fiduciary duties and personal interests." *Santiago v. Univ. of Miami*, No. 1:20-cv-21784, 2021 WL 1173164, at *3 (S.D. Fla. Mar. 1, 2021), *report and recommendation adopted*, 2021 WL 1165441 (S.D. Fla. Mar. 26, 2021).  To state a disloyalty claim under ERISA, Plaintiffs cannot simply repackage allegations of imprudence as those of disloyalty; rather, "Plaintiffs must allege a specific conflict and harm resulting from the conflict." *In re ING Groep*

*NV ERISA Litig.*, 749 F.Supp.2d at 1351 (citing *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 812, 835 (N.D. Cal. 2005) ("No case of which the court is aware has held that ERISA fiduciaries breach their duty of loyalty simply for 'placing themselves in a position' where they might act disloyally")); *see Santiago*, 2021 WL 1173164, at *3 (recognizing that loyalty and prudence claims "are separate claims with distinct elements").

Here, the Complaint identifies no conflicted loyalty on the part of the Rollins Defendants, and instead improperly lumps its prudence and loyalty claims together, relying on identical factual allegations for both claims.  This provides no basis for inferring that decisions regarding Plan service providers or fund selections were driven by self-interest or that the fiduciaries profited at the expense of the participants.  *See Pledger v. Reliance Trust Co.*, No. 1:15-cv-4444-MHC, 2019 WL 10886802, at *18 (N.D. Ga. Mar. 28, 2019) (ERISA duty of loyalty requires the fiduciary not to place its own interests ahead of the plan beneficiaries'); *Santiago*, 2021 WL 1173164, at *3 (dismissing duty of loyalty claims where Plaintiffs failed to allege sufficient facts to show that the defendant "acted for the purpose of benefiting third parties or themselves").  By way of contrast, there is no allegation that Rollins, a pest control company, offered its own mutual funds, as courts have found problematic in other cases where a financial

services company offers its own proprietary funds in its 401(k).  Because Plaintiffs have failed to allege any facts showing that the Rollins Defendants acted for the purpose of providing benefits to themselves or a third party, the duty of loyalty claims should be dismissed.

### 5.  Plaintiffs Fail to State a Prohibited Transaction Claim

Finally, Count V alleges that the Administrative Committee members violated ERISA's prohibited transaction rule, which bars certain transactions between a plan and a "party in interest."  29 U.S.C. § 1106(a).  The statute does not prohibit ordinary arm's-length commercial relationships between plans and necessary service providers.  *See Sellers v. Anthem Life Ins. Co.*, 316 F. Supp. 3d 25, 34 (D.D.C. 2018) (rejecting the circular argument that § 1106(a) prohibits all provision of services to a plan for compensation absent an exemption); *see also Ramos v. Banner Health*, 1 F.4th 769, 787 (10th Cir. 2021) (holding that some prior relationship must exist between the fiduciary and service provider to render the service provider a "party in interest" for purposes of § 1106(a)).  There is no allegation that the Rollins Defendants had some other relationship with Prudential, Alliant or LPL that would invoke § 1106(a).  In addition, the rule expressly exempts payments for "legal, accounting or other services necessary for the establishment or operation of the plan," so long as "no more than reasonable

compensation is paid therefor." 29 U.S.C. § 1108(2)(A). Reasonable fees for recordkeeping and advisory services, therefore, do not violate the rule even if arguably covered by § 1106(a). *See Henderson v. Emory Univ.*, 252 F. Supp. 3d 1344, 1355-56 (N.D. Ga. 2017).

In denying the administrative claim, the Committee found that the prohibited transaction allegation was based on the same conflict of interest allegations as Claims I and II, which lacked any support. As already discussed, the Complaint fails to allege facts indicating that this finding was wrong, let alone arbitrary and capricious or an abuse of discretion. The Complaint's conclusory allegations of a conflict of interest are not supported by any facts alleged in the Complaint, are contradicted by the administrative record, and are speculative. The Complaint also fails to allege any plausible facts suggesting that the service providers' fees were unreasonable in light of the level of services provided. Under any applicable standard of review, Count V fails to state a claim.

## C. PLAINTIFFS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES AS TO THEIR NEW CLAIMS

The Complaint also includes numerous allegations that deviate so thoroughly from the allegations in the 2019 Action—which formed the basis for the administrative proceeding—that they constitute new claims. First, it alleges for the first time that the Rollins Defendants failed to properly vet and monitor the

Plan's current benefits advisor Sean Waggoner and his firm Alliant.  *See id.* ¶¶ 64-89, 94-113.  Second, the Complaint alleges for the first time that the manner in which the Plan allocated recordkeeping expenses among the participants violated ERISA.  *See id.* ¶¶ 173-201.  Plaintiffs never presented these claims to the Administrative Committee for review prior to filing this lawsuit.

As this Court has already held in dismissing the 2019 Action, the governing Plan documents require the filing of an administrative claim prior to filing suit.  Ex. 10 at ¶ 11.7; *see also* Dismissal Order at 11.  The claim procedure is "a condition precedent to the commencement of any legal or equitable action."  *Id.*

To defeat a motion to dismiss, Plaintiffs must allege that they have exhausted their administrative remedies or that doing so would be futile.  The Complaint does not allege futility.  As to exhaustion, it simply alleges that Plaintiffs filed "administrative claims" and that these claims were denied, which "provided [Plaintiffs] the right to bring this suit under the terms of the Plan."  Compl. ¶¶ 25-28.  But the denial letter Plaintiffs rely on actually stated that "[t]his Decision ends the Plan's administrative claims process *as to the claims set forth in the Claim*, and Claimants have the right to pursue *those* claims in an action in federal court under [ERISA]."  Ex. 38 (emphasis added).  The letter further advised Plaintiffs that "[A]ny claims other than those set forth in the Claim and denied by

30

this Decision must be submitted to the Committee in a new administrative claims process in accordance with the procedures set forth in Plan Section 11.7(b)." *Id.*

Neither Plaintiffs' bare bones submission to the Committee nor the pleadings in the 2019 Action offered any hint that Plaintiffs would pursue claims against third party service providers, or regarding allegations that Mr. Waggoner violated securities rules (in connection with business activities that did not involve the Plan in any way), or regarding allocation of revenue sharing payments. Plaintiffs had numerous opportunities to present these claims, and chose not to do so. Allowing them to go forward with these claims would flout the administrative process.

Even if these claims were properly brought, dismissal would be warranted on traditional *Twombly/Iqbal* grounds and/or for lack of standing. The allegations regarding Mr. Waggoner do not in any way relate to the Plan or any Plan investment, and draw no plausible connection between those activities and any injury to any Plaintiff. At most, they show that Mr. Waggoner allegedly violated security industry rules unrelated to the services he allegedly provided to the Plan, and then settled those claims without admitting liability. There are no allegations that the Plan was adversely affected by these alleged violations.

As for the allegations that Plan expenses were improperly allocated among

participants (Compl. ¶¶ 174-198), ERISA affords fiduciaries considerable discretion to determine how to allocate expenses among participants. A fiduciary only needs to have a reasonable basis for selecting a particular method of allocation. *See* DOL Field Assistance Bulletin No. 2003-03 (May 19, 2003). In addition, because Plaintiffs do not allege anything about their own investments, it is impossible to tell whether any Plaintiff was harmed by the Plan's chosen method of allocation (or, conversely, whether they benefited from it).

**D.     ERISA'S STATUTE OF REPOSE BARS CLAIMS BASED ON CONDUCT PRIOR TO SIX YEARS BEFORE THE ADMINISTRATIVE PROCEEDING COMMENCED**

No ERISA breach claim may be brought later than "six years after (A) the date of the last action which constituted a part of the breach or violation or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation." 29 U.S.C. § 1113(1). The six year rule is a statute of repose, "which 'effect[s] a legislative judgment that a defendant should be free from liability after the legislatively determined period of time.'" *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 774 (2020) (citation omitted) (alteration in original); *accord Secretary, U.S. Dep't of Labor v. Preston*, 873 F.3d 877, 883 (11th Cir. 2017) (holding that Section 1113(1) is a statute of repose).

This effectively bars all of Plaintiffs' exhausted claims against the Rollins

Defendants based on conduct prior to December 10, 2014, which is six years before Plaintiffs submitted their claims for administrative review, and all new claims based on conduct prior to December 31, 2015, six years before the Complaint was filed.  See Ex. 1.  Large swaths of the Complaint allege conduct occurring long before those dates.  *See, e.g.,* Compl. ¶¶ 114-116 (allegations stemming from amendments to Prudential contract in 2010); *id*. ¶¶ 132-135 (replacement of Dodge & Cox Balanced Fund with the Oakmark Fund in 2009); *id*. ¶ 209 (citing decisions from 2009 relating to the Goldman Sachs Mid Cap Value A Fund); *id*. ¶ 174 (allegations relating to revenue sharing payments received by Prudential ("[b]etween 2006 and present,"); *id*. ¶ 166 (allegations relating to fees allegedly paid to LPL, James Bashaw or James E. Bashaw & Co.); *id*. ¶ 59 (allegations stemming from the Plan's retention of service providers "[i]n or before 2009").  Likewise, the Complaint is replete with time-barred allegations that the Committee failed to monitor investments and/or service providers prior to the repose period.  *See, e.g., id*. ¶¶ 136-145 (allegations relating to the monitoring of the Oakmark Fund between 2009 and 2015); *id*. ¶¶ 207-223 (similar allegations with respect to the Goldman Sachs Mid Cap Value A Fund, which was removed in 2016); *id*. ¶ 225-227 (similar allegations with respect to the selection of retail funds); *id*. ¶ 202 (allegations describing recordkeeping fees dating back to 2009);

33

*id.* ¶¶ 154-55 (same with respect to fees paid to Alliant and LPL).  Such allegations fail to support an actionable breach during the repose period.

### E.   THE COMPLAINT FAILS TO STATE A CLAIM FOR CO-FIDUCIARY LIABILITY

At the end of each separate Count against some or all of the Rollins Defendants, Plaintiffs attempt to set forth a claim for co-fiduciary liability under 29 U.S.C. § 1105(a).  *See* Compl. ¶¶ 252, 262, 272, 284, 293).  Rather than setting forth any specific factual allegations to support the co-fiduciary duty claims, Plaintiffs simply state at the end of each Count that Rollins, the Administrative Committee, and/or each Committee Member "knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled the other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach."  *See id.*

These vague, conclusory allegations fail to meet the *Iqbal/Twombly* standard of well-pleaded factual allegations.  For co-fiduciary liability to exist, there must be an underlying primary breach.  *See In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d at 1351-52.  Here, for reasons stated above, Plaintiffs have failed to allege any underlying breach.  In addition, Plaintiffs do not allege any facts showing that the Rollins Defendants "knowingly" participated in or had actual

knowledge of breaches by other Defendants.  *See id.* at 1352 (holding that a claim for co-fiduciary liability requires the plaintiff to plead actual knowledge); *In re BP p.l.c. Sec. Litig.*, No. 10-MD-2185, 2015 WL 6674576, at *11 (S.D. Tex. Oct. 30, 2015) (dismissing conclusory allegations of co-fiduciary liability as "paradigmatic examples of that which *Iqbal* expressly proscribes").  These failures are fatal to the co-fiduciary liability claims, and they should be dismissed.

### F.     THE RECORD OF THIS CASE SHOWS THAT DISMISSAL SHOULD BE WITH PREJUDICE AND THAT THE ROLLINS DEFENDANTS SHOULD BE AWARDED THEIR FEES

The Court denied an attorneys' fee request in the 2019 Action, holding that dismissal with prejudice was premature at that stage.  *See* Dismissal Order at 11. The developments since that time now justify dismissal with prejudice.  *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (repeated failure to cure deficiencies and futility of further amendment support dismissal with prejudice).  In addition, ERISA contains a statutory provision for the award of attorneys' fees.  29 U.S.C. § 1132(g)(1).  An award of fees is warranted by the haphazard pleading of the Complaint, the perfunctory participation in the administrative process, and the assertion of new claims that were not exhausted in the administrative process.

## **CONCLUSION**

For these reasons, all claims against the Rollins Defendants should be dismissed with prejudice.

Respectfully submitted this 28th day of March, 2022.

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ W. Bard Brockman*
W. Bard Brockman, Georgia Bar No. 084230
bard.brockman@bclplaw.com
Michael P. Carey, Georgia Bar No. 109364
michael.carey@bclplaw.com
Ann Ferebee, Georgia Bar No. 431941
Ann.ferebee@bryancave.com
One Atlantic Center, 14th Floor
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309
Telephone: (404) 572-6600
Facsimile: (404) 572-6999


Jeffrey S. Russell (*pro hac vice*)
jsrussell@bclplaw.com
211 North Broadway, Suite 3600
St. Louis, Missouri  63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020

*Attorneys for the Rollins Defendants*

## **LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE**

I hereby certify that the foregoing pleading has been prepared with Times New Roman 14 point font, one of the font and point selections approved by the Court in L.R. 5.1B, N.D. Ga.

This 28th day of March, 2022.

/s/ W. Bard Brockman
W. Bard Brockman

37

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** with the

Clerk of Court using the CM/ECF system which will send email notification of

such filing to all counsel of record.

This 28th day of March, 2022.

*/s/ W. Bard Brockman*
W. Bard Brockman
Georgia Bar No. 084230

*Attorney for the Rollins Defendants*

## INDEX OF EXHIBITS

- Exhibit 1 - December 10, 2020 letter from Paul Sharman to W. Bard Brockman
- Exhibit 2 - December 21, 2020 letter from Eddie Northen to Paul Sharman
- Exhibit 3 - March 1, 2021 letter from Eddie Northen to Paul Sharman
- Exhibit 4 - March 9, 2021 letter from Paul Sharman to Eddie Northen
- Exhibit 5 - March 19, 2021 email from W. Bard Brockman to Paul Sharman and Jon Pels
- Exhibit 6 - February 15, 2021 memo from BCLP to Administrative Committee
- Exhibit 7 - Compilation of Administrative Committee minutes
- Exhibit 8 - Exemplar "book" of Administrative Committee meeting materials (August 14, 2014)
- Exhibit 9 - Investment Policy Statement as of February 23, 2018
- Exhibit 10 - Amended and Restated Plan Document effective February 1, 2015
- Exhibit 11 - Rollins 401(k) Savings Plan Prospectus dated January 2020
- Exhibit 12 - Form 5500 for 2014
- Exhibit 13 - Form 5500 for 2015
- Exhibit 14 - Form 5500 for 2016
- Exhibit 15 - Form 5500 for 2017
- Exhibit 16 - Form 5500 for 2018
- Exhibit 17 - Form 5500 for 2019
- Exhibit 18 - ERISA 404(a) Disclosure – 2012
- Exhibit 19 - ERISA 404(a) Disclosure – 2013
- Exhibit 20 - ERISA 404(a) Disclosure – 2014
- Exhibit 21 - ERISA 404(a) Disclosure – 2015
- Exhibit 22 - ERISA 404(a) Disclosure – 2016
- Exhibit 23 - ERISA 404(a) Disclosure – 2017
- Exhibit 24 - ERISA 404(a) Disclosure – 2018
- Exhibit 25 - ERISA 404(a) Disclosure – 2019
- Exhibit 26 - ERISA 404(a) Disclosure – 2020
- Exhibit 27 - ERISA 408(b)(2) Disclosure – 2012
- Exhibit 28 - ERISA 408(b)(2) Disclosure – 2013
- Exhibit 29 - ERISA 408(b)(2) Disclosure – 2014
- Exhibit 30 - ERISA 408(b)(2) Disclosure – 2015
- Exhibit 31 - ERISA 408(b)(2) Disclosure – 2016

- Exhibit 32 - ERISA 408(b)(2) Disclosure – 2017
- Exhibit 33 - ERISA 408(b)(2) Disclosure – 2018
- Exhibit 34 - ERISA 408(b)(2) Disclosure – 2019
- Exhibit 35 - ERISA 408(b)(2) Disclosure – 2020
- Exhibit 36 - Administrative Services Agreement with Prudential
- Exhibit 37 - February 19, 2021 BCLP slide presentation to Administrative Committee
- Exhibit 38 – May 6, 2021 Letter from Eddie Northen to Paul Sharman