# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| MARCIA G. FLEMING, CASEY FREEMAN, DAVID GUYON, ANTHONY LOSCALZO, PATRICK ROSEBERRY, and JULIO SAMANIEGO individually, on behalf of the Rollins, Inc. 401(k) Savings Plan and on behalf of all similarly situated participants and beneficiaries of the Plan, | Civil Action File No. 1:21-cv-05343-ELR |
| Plaintiffs, | |
| v. | |
| ROLLINS, INC.; THE ADMINISTRATIVE COMMITTEE OF THE ROLLINS, INC. 401(k) SAVINGS PLAN; ALLIANT INSURANCE SERVICES, INC.; ALLIANT RETIREMENT SERVICES, LLC; LPL FINANCIAL LLC; PAUL E. NORTHEN, JOHN WILSON, JERRY GAHLHOFF, JAMES BENTON and A. KEITH PAYNE in their capacities as members of the Administrative Committee; and John and Jane Does 1-10, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS ALLIANT INSURANCE SERVICES, INC. AND ALLIANT RETIREMENT SERVICES, LLC'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................... 1

RELEVANT ALLEGATIONS ............................... 3

LEGAL STANDARD .......................................... 5

ARGUMENT ...................................................... 6

I.     Plaintiffs' Claims Against Alliant Are Time-Barred.................................... 8

II.    Plaintiffs Fail To State A Plausible Claim In Any Event........................... 10

       A.     The Rollins Administrative Committee, Not Alliant, Hired
              Alliant And LPL To Provide Services To The Plan ........................ 11

       B.     Neither Alliant Nor LPL Was A "Party In Interest." ...................... 15

III.   Plaintiffs' Alternative Co-Fiduciary Liability Theory Fails........................ 18

IV.    Plaintiffs Failed To Exhaust Their Claim Against Alliant .......................... 20

CONCLUSION................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ambrosia Coal and Const. Co. v. Page Morales*,
368 F.3d 1320 (11th Cir. 2004) .......................................................... 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................. *passim*

*Bickley v. Caremark RX, Inc.*,
461 F.3d 1325 (11th Cir. 2006) ........................................................ 21

*Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*,
137 S. Ct. 2042 (2017) ....................................................................... 8

*Carolinas Elec. Workers Ret. Plan v. Zenith*,
658 Fed. App'x 966 (11th Cir. 2016) ................................................. 9

*Cassell v. Vanderbilt Univ.*,
285 F. Supp. 3d 1056 (M.D. Tenn. 2018) .......................................... 9

*Conkright v. Frommert*,
559 U.S. 506 (2010) ........................................................................... 6

*Cotton v. Mass. Mut. Life Ins. Co.*,
402 F.3d 1267 (11th Cir. 2005) ........................................................ 13

*Cunningham v. Cornell Univ.*,
2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017) ................................. 13

*Danza v. Fidelity Management Trust Co.*,
533 F. App'x 120 (3rd Cir. 2013) ....................................... 16, 17, 19

*David v. Alphin*,
704 F.3d 327 (4th Cir. 2013) ................................................. 9, 10, 15

*Fifth Third Bancorp v. Dudenhoeffer*,
 134 S. Ct. 2459 (2014) ................................................................ 5, 6

*Fleming v. Rollins, Inc.*,
 2020 WL 7693147 (N.D. Ga. Nov. 23, 2020) ............................... 1, 20

*Hecker v. Deere & Co.*,
 556 F.3d 575 (7th Cir. 2009) ............................................................ 11

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
 140 S. Ct. 768 (2020) .......................................................................... 8

*Lockheed Corp. v. Spink*,
 517 U.S. 882 (1996) .................................................................. *passim*

*In re Luna*,
 406 F.3d 1192 (10th Cir. 2005) ........................................................ 13

*Marquez v. Flextronics Am., LLC*,
 2013 WL 5448072 (S.D. Fla. Sept. 30, 2013) .................................. 15

*Patrico v. Voyal Fin'l, Inc.*,
 2018 WL 1319028 (S.D.N.Y. Mar. 13, 2018) .................................. 18

*Pension Fund-Mid Jersey Trucking Ind.-Loc. 701 v. Omni Funding Grp.*,
 731 F. Supp. 161 (D.N.J. 1990) ........................................................ 19

*Perrino v. S. Bell Tel. & Tel. Co.*,
 209 F.3d 1309 (11th Cir. 2000) ........................................................ 20

*Richman v. Aetna Life Ins. Co., Inc.*,
 974 F.2d 1331 (4th Cir. 1992) .......................................................... 19

*Santomenno v. Transamerica Life Ins. Co.*,
 883 F.3d 833 (9th Cir. 2018) ............................................................ 14

*Sec'y, U.S. Dep't of Lab. v. Preston*,
 873 F.3d 877 (11th Cir. 2017) ............................................................ 8

*Sellers v. Anthem Life Ins. Co.*,
    316 F. Supp. 3d 25 (D.D.C. 2018) ............................................................... 16, 17

*Smith v. Williams*,
    819 F. Supp. 2d 1264 (M.D. Fla. 2011) ............................................................ 15

*PBGC ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan*
    *Stanley Inv. Mgmt.*,
    712 F.3d 705 (2d Cir. 2013) .................................................................................. 6

*Sweda v. Univ. of Penn*,
    923 F.3d 320 (3d Cir. 2019) ......................................................................... 11, 17

*White v. Chevron Corp.*,
    2017 WL 2352137 (N.D. Cal. May 31, 2017) *aff'd*, 752 F. App'x
    453 (9th Cir. 2018) ............................................................................................. 10

*Wright v. Oregon Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004) ............................................................................. 9

## Statutes

29 U.S.C. § 1002(14)(b) .......................................................................................... 16

29 U.S.C. § 1002(21)(A) ................................................................................... 13, 14

29 U.S.C. § 1106(a) ..................................................................................... *passim*

29 U.S.C. § 1108(b)(2)(A) ...................................................................................... 16

29 U.S.C. § 1113(1) ............................................................................................. 2, 8

## Regulations

29 C.F.R. § 2509.75-8, FR-17 ............................................................................... 15

**INTRODUCTION**

Plaintiffs are current and former participants in the 401(k) plan Rollins, Inc. ("Rollins") maintains for the benefit of its employees ("Plan"). This purported class action follows one the Court previously dismissed on administrative-exhaustion grounds. *See Fleming v. Rollins, Inc.*, 2020 WL 7693147 (N.D. Ga. Nov. 23, 2020) (Ross, J.). The gravamen of both lawsuits is the same: Plaintiffs allege that various Rollins defendants mismanaged the Plan because the Plan allegedly offered overpriced or underperforming investment options and paid too much for third-party service providers the Rollins Administrative Committee hired to assist the Plan.

Just as before, Plaintiffs sue various Rollins defendants for breach of fiduciary duty and "prohibited transactions" under ERISA, 29 U.S.C. § 1001, et. seq. But this time, Plaintiffs also assert, in Count VI, prohibited-transaction claims against two new, non-Rollins defendants: Alliant[1] and LPL Financial LLC. Dkt. 1 ("Compl.") ¶¶ 294-302. The claims in Count VI are "new" only in the sense of the defendants named; the supporting allegations are otherwise *identical* to those asserted in support of the prohibited-transaction claims against Rollins in the first action and which Plaintiffs now *reassert* against Rollins in Count V of the Complaint.

---

[1] Alliant Insurance Services, Inc. and Alliant Retirement Services, LLC are named defendants. For simplicity, we refer only to "Alliant."

This copy-and-paste job reflects a strange theory as to Alliant: that Alliant somehow caused the Plan to hire itself and LPL (and that LPL somehow did the same thing), in violation of the prohibited-transaction provisions in ERISA § 406(a), 29 U.S.C. § 1106(a). Compl. ¶¶ 295-300. This theory fails on multiple grounds.

First, the claim is barred by ERISA's six-year statute of repose. 29 U.S.C. § 1113(1). Here, the statute of repose bars any prohibited-transaction claim arising before December 30, 2015, which is six years before the Complaint named Alliant as a defendant. And because the Complaint alleges that both of the allegedly prohibited transactions—the hiring of Alliant and LPL—occurred "[i]n or before 2009," Compl. ¶ 59, they are plainly time-barred and must be dismissed.

Second, Count VI also fails on the merits. To state a claim, Plaintiffs must allege facts plausibly establishing that Alliant, (1) acting as a "fiduciary," (2) "cause[d]" the Plan to engage in a specified transaction, (3) with a "party in interest." 29 U.S.C. § 1106(a). However, as the Complaint acknowledges repeatedly, the Rollins Administrative Committee—*not Alliant*—was the fiduciary who caused the Plan to hire Alliant and LPL. And regardless, neither Alliant nor LPL was a "party in interest" with respect to any challenged transaction. Plaintiffs have therefore failed to plead the "material elements" of their claim, and it should be dismissed on that additional basis. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007).

Third, Plaintiffs' alternative theory that Alliant should be held liable for prohibited transactions based on the co-fiduciary liability provisions in § 1105(a) fails for the reasons discussed above and in the motions to dismiss filed by the Rollins Defendants and LPL.  It also fails because Plaintiffs have offered only a "formulaic recitation" of the elements of a § 1105(a) claim, devoid of any "factual enhancement" needed to support it.  *Twombly*, 550 U.S. at 555, 557.

Finally, the Court may also dismiss on the grounds that Plaintiffs did not assert any claims against Alliant in the administrative claims procedure, and thus have failed to exhaust those procedures for the second time in this case.

For these reasons and as discussed below, the Court should dismiss the claims asserted against Alliant in Count VI under Rule 12(b)(6).

## RELEVANT ALLEGATIONS

Rollins offers its employees the opportunity to save for retirement through the Plan, a 401(k) plan, or "defined contribution plan" under ERISA.  Compl. ¶¶ 30-32.

The Plan designates the Rollins Administrative Committee as the Plan Administrator.  *Id.* ¶ 36 (citing Dkt. 1-1 (the "Plan Document")).  Under the Plan, the Administrative Committee has "complete control of the administration of the Plan."  Plan Document § 12.3(a); Compl. ¶ 11 (same). This includes the sole responsibility "for the selection, monitoring, and retention of Rollins Plan

investment options."  Compl. ¶ 12; *see also id.* ¶ 3 ("decisions on what investments are held in the [Plan] trust are voted on and made solely by the Administrative Committee members").

The Administrative Committee, alone, is authorized "to hire . . . professional assistants and consultants as it, in its sole discretion, deems necessary or advisable." Plan Document § 12.6(a); *id.* § 12.3(a)(11), Compl. ¶ 35 (same).  In particular, the Administrative Committee has sole fiduciary authority to hire "one or more persons to render advice with respect to any responsibility or authority being carried out" regarding the Plan's investments.  Plan Document § 12.7(b)(4).[2]

Pursuant to this authority, "[i]n or before 2009," the Administrative Committee "retained" Alliant and LPL allegedly to provide investment advisory services to the Plan.  Compl. ¶ 59;[3] Dkt. 1-5, Plan Investment Policy Statement ("IPS"), § II.B (providing that investment advisors are selected "based on criteria established by the Administrative Committee").  Under the IPS, the Plan's investment advisor was expected to provide "additional expertise in formulating the Investment Policy, recommending investment funds, and evaluating those funds'

---

[2] While the Plan states the "Investment Committee" will have this power, *id.*, it elsewhere clarifies that "the Administrative Committee will serve as the Investment Committee," *id.* § 1.44.

[3] Elsewhere, Plaintiffs say LPL provided "no services" to the Plan.  Compl. ¶ 167.

overall performance." IPS § II.B. The Administrative Committee, however, retained sole fiduciary authority for all decisions concerning the Plan's investments. *Id.* §§ II.A, IV.C; Plan Document § 12.3(a); Compl. ¶ 12.

## LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quotations omitted). Under this standard, the Court disregards any allegations that are "no more than conclusions" because they are "not entitled to the assumption of truth." *Id.* at 679. From any remaining allegations, a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully," but, rather, that such a claim is plausible. *Id*. at 678. A claim is plausible only if the well-pleaded facts establish a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires "direct or inferential allegations respecting all the material elements necessary to sustain" the claims asserted against each defendant. *Twombly*, 550 U.S. at 562.

Rule 12(b)(6) is an "important mechanism" for "weeding out meritless claims" under ERISA. *Fifth Third Bancorp v. Dudenhoeffer,* 134 S. Ct. 2459, 2471 (2014). In passing ERISA, Congress intended to create a system that is not "so complex" that "litigation expenses" discourage employers from offering benefit

plans or persons from serving as plan fiduciaries in the first place. *Conkright v. Frommert,* 559 U.S. 506, 517 (2010). Accordingly, and given the "ominous" prospect of discovery in ERISA class actions and their potential to exert *in terrorem* settlement pressure, *PBGC ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt.,* 712 F.3d 705, 719 (2d Cir. 2013), courts must engage in "careful, context-sensitive scrutiny of a complaint's allegations" to determine whether it states a plausible claim for relief, *Dudenhoeffer,* 134 S. Ct. at 2470.

## ARGUMENT

Plaintiffs allege in Count VI that Alliant (and LPL) caused the Plan to engage in "prohibited transactions" in violation of ERISA § 406(a), codified at 29 U.S.C. § 1106(a). Compl. ¶¶ 294-302.[4] The particular allegations on which Plaintiffs base Count VI are difficult to pin down because the Complaint is a classic "shotgun pleading." *Ambrosia Coal and Const. Co. v. Page Morales*, 368 F.3d 1320, 1330, n.22 (11th Cir. 2004). For example, Count VI, like every other Count, incorporates the first 232 paragraphs of the Complaint. Similarly, Counts V and VI are identical, except the former claims the Rollins Administrative Committee violated § 1106(a) by hiring Alliant and LPL, while the latter inexplicably blames Alliant and LPL for

---

[4] Counts I through V are expressly brought against only Rollins and the Administrative Committee (and its members). Compl. ¶¶ 233-293.

supposedly doing the same thing.  Compounding the confusion, both Counts contain stray references having no connection to the § 1106(a) claims.[5]

At any rate, the claim against Alliant alleges the following:  "By causing the Plan to use these investment advisors"—namely, Alliant and LPL (and their "affiliates and representatives")—"from year to year, whose services were not necessary and whose fees taken directly from the trusts were not reasonable, Defendants [Alliant and LPL] caused the Plan to engage in [prohibited] transactions" under § 1106(a)(1)(C), (D).[6]  Compl. ¶ 299; *see also id.* ¶ 295.  In other words, Plaintiffs claim that Alliant violated ERISA by causing the Plan to hire Alliant and LPL, alleged "parties in interest" to the Plan, *id.* § 1106 (a)(1)(C), (D)—the same claim Plaintiffs make against Rollins and the Administrative Committee in Count V.  Plaintiffs' copycat claim against Alliant should be dismissed.

---

[5] For example, both counts offer the legal conclusion that "Prudential is a party in interest" under ERISA.  Compl. ¶¶ 288, 297.  Even if this were correct, it is irrelevant because the prohibited-transaction claims are based on hiring Plan "investment advisors."  *Id.* ¶¶ 290-91, 299-300.  And as the Complaint acknowledges, Prudential is the Plan's recordkeeper, not an investment advisor.  *Id.* ¶ 258.

[6] In relevant part, the provision states:  "Except as provided in section 1108 of this title: (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . (C) furnishing of goods, services, or facilities between the plan and a party in interest; [or] (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan[.]"  29 U.S.C. § 1106.

## I.    Plaintiffs' Claims Against Alliant Are Time-Barred.

Under ERISA, a plaintiff must bring a prohibited-transaction claim no later

than "six years after" the challenged transaction.  29 U.S.C. § 1113(1).  The six-year

period is a statute of "repose," *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct.

768, 774 (2020), placing "an absolute bar on a defendant's temporal liability," *Cal.

Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2050 (2017).  *See also

Sec'y, U.S. Dep't of Lab. v. Preston*, 873 F.3d 877, 883-84 (11th Cir. 2017) ("Section

1113(1)'s limitation-of-actions provision is indeed a statute of repose . . . [which]

bars any suit that is brought after a specified time *since the defendant acted*, without

regard to any later accrual.") (emphasis in original/quotations omitted).

Here, Plaintiffs filed their claim against Alliant on December 30, 2021.  Dkt.

1.  Thus, Plaintiffs are precluded from asserting any claim based on Alliant's conduct

before December 30, 2015.  Despite this deadline, Plaintiffs admittedly challenge

transactions—namely, the hiring of Alliant and LPL—that occurred "[i]n or before

2009," more than **12 years** before they filed the Complaint.  Compl. ¶ 59.  These

claims are time-barred and must be dismissed.

Plaintiffs cannot avoid this conclusion through their allegation that Alliant and

LPL continued to provide Plan services after 2009.  Compl. ¶¶ 299-300.  For starters,

LPL provided no services to the Plan and received no compensation from the Plan

after 2012, so these vague allegations cannot possibly make any claim based on LPL's hiring timely.  *See* LPL Motion to Dismiss at 9-11.  And while Alliant has continued to provide investment-advisory services, it makes no difference, because the "only action that can support an alleged prohibited transaction is the ***initial selection***" of an alleged party in interest.  *See David v. Alphin*, 704 F.3d 327, 340-41 (4th Cir. 2013) (emphasis added); *Carolinas Elec. Workers Ret. Plan v. Zenith*, 658 Fed. App'x 966, 971-73 (11th Cir. 2016) (affirming dismissal of prohibited-transaction claim filed "nearly ten years after" the transaction, despite alleged "continuing duty" to rectify it); *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) ("The decision by the [defendants] to *continue* to hold 15% of Plan assets in employer stock was not a 'transaction'" under § 1106(a)) (emphasis in original).  Based on this rule, district courts have repeatedly rejected attempts to plead around ERISA's statute of repose by attacking the continued retention, rather than the initial hiring, of a service provider.[7]

---

[7] *See Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1067-69 (M.D. Tenn. 2018) (dismissing prohibited-transaction claim similarly alleging defendants "caus[ed] the Plan to use four record-keepers from year to year" because the "initial commitment" occurred more than six years before the action, regardless of whether the "resulting fees" were paid more recently); *White v. Chevron Corp.*, 2017 WL 2352137, at *22 (N.D. Cal. May 31, 2017) (dismissing prohibited-transaction claim based on "agreement under which defendants hired Vanguard to serve as the Plan's recordkeeper, which [plaintiffs] assert resulted in Vanguard receiving excessive compensation for its services" because the hiring occurred more than six years

These holdings make sense because they prevent a plaintiff from skirting the statute of repose by criticizing the subsequent "effects" of a transaction, rather than the transaction itself.   But they also make sense because allowing Plaintiffs to proceed in this fashion would violate the plain meaning of § 1106(a), which concerns discrete "transactions," not the effects of those transactions or any alleged failure to rectify past transactions.  *See White*, 2017 WL 2352137, at *22 ("the plain meaning of transaction is that it is a point-in-time event"); *see also David*, 704 F.3d at 341 ("Accordingly, we find untenable [plaintiffs'] contention that their claims are timely because [defendants'] failure [to discontinue the transaction] constituted a new 'prohibited transaction'").   Accordingly, the Court should follow the cases above and dismiss Plaintiffs' claims against Alliant on timeliness grounds.

## II.    Plaintiffs Fail To State A Plausible Claim In Any Event.

As to the merits, Plaintiffs' allegations do not plausibly establish "the material elements necessary to sustain" a claim in Count VI.  *Twombly*, 550 U.S. at 562 (citation omitted).   To state a viable claim, Plaintiffs must plausibly allege that Alliant, (1) acting as a "fiduciary," (2) "cause[d] the [P]lan" to engage in one of the transactions listed in § 1106(a)(1)(C) or (D), with a (3) a "party in interest."   29

---

before the action, and "there is no such thing as a 'continuing' prohibited transaction") *aff'd*, 752 F. App'x 453 (9th Cir. 2018).

U.S.C. § 1106(a)(1); *see Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996).

Plaintiffs have not plausibly established any of these elements, as shown below.

### A.     The Rollins Administrative Committee, Not Alliant, Hired Alliant And LPL To Provide Services To The Plan.

Plaintiffs' own allegations that the Rollins Administrative Committee had sole

fiduciary authority to hire service providers and exercised that authority by hiring

both Alliant and LPL foreclose their claims against Alliant.  Compl. ¶¶ 11, 35, 57,

59.[8]  By its plain terms, ERISA prohibits only ***fiduciaries*** from engaging in certain

transactions.  *See* 29 U.S.C. § 1106(a)(1) ("A fiduciary with respect to a plan shall

not cause the plan to engage in a transaction . . .").  Thus, "to sustain an alleged

transgression of [§ 1106(a)], a plaintiff must show that a fiduciary caused the plan

to engage in the allegedly unlawful transaction.  Unless a plaintiff can make

that showing, there can be no violation."  *Spink*, 517 U.S. at 888–89.

---

[8] We do not understand Plaintiffs to claim Alliant engaged in a prohibited transaction with respect to Prudential's allegedly unreasonable compensation, because Count VI asserts claims only concerning the Plan's retention of "investment advisors," and Prudential was ***not*** an investment advisor. *See supra* at 7 n.5.  Any claim based upon Prudential's compensation would, nevertheless, fail for the same reasons discussed in §§ II.A-B of this brief.  Moreover, the Complaint's allegation that Prudential was compensated through revenue sharing from the Plan's investment managers, Compl. ¶¶ 115-16, 174-79, 202, destroys any prohibited transaction claim for another reason:  revenue sharing is ***not*** a "plan asset" and, thus, cannot form the basis of claim under § 1106(a)(1)(D) (concerning the "transfer . . . of any assets of the plan"). *See, e.g.*, *Sweda v. Univ. of Penn*, 923 F.3d 320, 339 (3d Cir. 2019); *Hecker v. Deere & Co.*, 556 F.3d 575, 584 (7th Cir. 2009).

Here, there are no allegations remotely suggesting that Alliant exercised fiduciary authority by causing the Plan to hire itself or LPL.  To the contrary, as discussed *supra* at 4, the Complaint contends and the Plan documents confirm that the Administrative Committee alone had "sole discretion" to hire service providers. The Complaint further alleges, repeatedly, that the Administrative Committee exercised this exclusive fiduciary authority by hiring both Alliant and LPL (not to mention, Prudential, the Plan's recordkeeper) and approving their fees.  *E.g.*, Compl. ¶¶ 58-59 ("Administrative Committee retained Prudential" and "Administrative Committee retained [Alliant and LPL] and their affiliates and representatives"); ¶ 156 (Alliant service agreement was "signed by Rollins and the Administrative Committee"); ¶ 163 ("Administrative Committees [sic] directed Prudential to pay" Alliant); ¶¶ 93-94, 99, 151-54, 165, 167 (alleging Administrative Committee hired and approved payments to service providers).  Indeed, Plaintiffs even claim that the Administrative Committee violated § 1106(a) by hiring Alliant and LPL, *id.* ¶ 290, before simultaneously blaming both Alliant and LPL for the exact same thing, *id.* ¶ 299.  Simply put, Plaintiffs' repeated admission that the Administrative Committee caused the Plan to retain Alliant and LPL defeats their identical, contradictory claims against Alliant in Count VI.

That Alliant provided investment-advisory services to the Plan does not alter the analysis. *See supra* at 4. Under ERISA, this means only that Alliant was a fiduciary "to the extent" it rendered "investment advice for a fee." 29 U.S.C. § 1002(21)(A)(ii). Alliant's status as a Plan fiduciary goes no further, because "fiduciary status under ERISA is not an all-or-nothing concept." *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005) (quotations and citations omitted). So even assuming Alliant acted as a fiduciary in some narrow respect, this cannot support any reasonable inference that Alliant wrested fiduciary authority from the Administrative Committee to hire service providers. Nor are there ***any*** factual allegations—despite an extensive Administrative Record—that Alliant provided ***any*** input on the Administrative Committee's decision to hire any service provider, let alone explaining how such input could possibly constitute "investment advice" triggering fiduciary responsibility under ERISA.[9]

---

[9] Under ERISA, "investment advice" involves "render[ing] advice regarding the value of securities or property, recommend[ing] the purchase or certain securities, or exercise[ing] discretion with respect to purchasing or selling securities or property on behalf of the employee benefit plan." *In re Luna*, 406 F.3d 1192, 1201 n.7 (10th Cir. 2005); *Cunningham v. Cornell Univ.*, 2017 WL 4358769, at *10 (S.D.N.Y. Sept. 29, 2017) (rejecting argument that investment advisor could be liable for "unreasonable administrative fees to [plan's] recordkeeper[ ]" because such conduct "relates to plan administration rather than particular investment options").

To the extent Plaintiffs seriously contend that Alliant caused the Plan to hire *itself*, their claim fails for yet another reason. As a matter of law, plan service providers do not act in a fiduciary capacity when negotiating their own retention or fees. *See, e.g.*, *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 837-38 (9th Cir. 2018) (collecting cases). Such negotiations simply do not constitute an exercise of "discretionary authority or control" over the plan, which is required to trigger any relevant fiduciary status. *See id.*; 29 U.S.C. § 1002(21)(A)(i), (iii). In other words, regardless of how persuasive Alliant's pitch may have been to the Administrative Committee—and, again, there are no relevant factual allegations—it would provide no basis for imposing liability on Alliant for the Administrative Committee's decision to engage Alliant's services on behalf of the Plan.

Finally, Plaintiffs' puzzling allegation that by "causing the Plan to use" Alliant or LPL, Alliant thereby "failed to monitor appointees" goes nowhere. Compl. ¶ 300. For one thing, as discussed, Plaintiffs have not plausibly alleged that Alliant had authority to appoint fiduciaries. Instead, the Complaint acknowledges that "Rollins and the Administrative Committee" were the "appointing fiduciary" for the Plan. Compl. ¶ 101. With no authority to appoint fiduciaries, Alliant had no corresponding duty to monitor those appointees. *See, e.g.*, *Marquez v. Flextronics Am., LLC*, 2013 WL 5448072, at *6, n.4 (S.D. Fla. Sept. 30, 2013) ("there must be

an appointee in order for an *appointing* fiduciary to be liable for breaching the duty to monitor") (emphasis added); *Smith v. Williams*, 819 F. Supp. 2d 1264, 1282 (M.D. Fla. 2011) (dismissing failure-to-monitor claim because "plaintiffs have alleged no facts to support which [defendants], if any, were responsible for appointing or removing" other fiduciaries) (citing 29 C.F.R. § 2509.75-8, FR-17).   For another thing, "a defendant's failure to act[ ] cannot constitute a 'transaction' for purposes of [§ 1106(a)]." *David*, 704 F.3d at 340.

In summary, the Complaint has not plausibly alleged that Alliant, acting in a fiduciary capacity, caused the Plan to hire either itself or LPL.  Plaintiffs therefore have not plausibly established either of the first two elements needed to sustain their claims in Count VI.  As shown below, Plaintiffs likewise cannot establish the third element of their claim:  that either LPL or Alliant was a "party in interest" with respect to the allegedly prohibited transactions.

**B.      Neither Alliant Nor LPL Was A "Party In Interest."**

Through § 1106(a), ERISA "prohibits fiduciaries from involving the plan and its assets in certain kinds of business deals," specifically enumerated in the statute. *Spink*, 517 U.S. at 888; 29 U.S.C. § 1106(a)(1).  Here, Plaintiffs claim that Alliant caused the Plan to engage in transactions, involving the "furnishing of . . . services" and the "transfer . . . of any assets of the plan," with a "party in interest."

15

§ 1106(a)(1)(C), (D); Compl. ¶¶ 295, 299.  However, neither Alliant nor LPL was a "party in interest" to the Plan in any relevant respect.[10]

Under ERISA, an entity is a party in interest only when it is already "***providing***" services to the relevant plan.  29 U.S.C. § 1002(14)(b) (emphasis added).  For example, an entity hoping to provide recordkeeping services to a plan is not a party in interest when it is hired to provide those services.  Nor is it a party in interest as to any renewal of the agreement to provide those same services.  However, if that entity is later hired to provide qualitatively ***different*** plan services, it is a party in interest for that transaction based on its ongoing plan relationship.  *See, e.g.*, *Sellers v. Anthem Life Ins. Co.*, 316 F. Supp. 3d 25, 33-40 (D.D.C. 2018) (providing an in-depth discussion of § 1106(a)'s purpose and application); *Danza v. Fidelity Management Trust Co.*, 533 F. App'x 120, 125-26 (3rd Cir. 2013) (affirming dismissal because service provider was not a party in interest where it was not already providing services to the plan in some other capacity).  These distinctions exist because § 1106(a) is not concerned with ordinary transactions to

---

[10] Importantly, even when a transaction is ostensibly "prohibited" under § 1106(a), it is "exempted" from that prohibition, for example, where the transaction involves paying a service provider "reasonable" compensation.  29 U.S.C. § 1108(b)(2)(A). (identifying one of several exemptions); § 1106(a) ("Except as provided in section 1108 of this title . . .").  Because Plaintiffs have not plausibly stated a claim under § 1106(a), the applicable § 1108 exemption does not come into play.

provide needed plan services, but rather only those "commercial bargains that present a ***special risk*** of plan underfunding because they are struck with ***plan insiders***, presumably not at arm's length." *Spink*, 517 U.S. at 893 (emphasis added); *Sellers*, 316 F. Supp. 3d at 36 (same); *Danza*, 533 F. App'x at 125-26 (same).

With this backdrop in mind, neither Alliant nor LPL was a party in interest with respect to any transactions concerning their alleged services. There are no allegations in the Complaint suggesting that either was already "providing" services to the Plan when they were retained to provide investment advisory services "in or before 2009." Compl. ¶ 59. This negates any inference that Alliant and LPL were the type of "plan insiders" Congress had in mind when it enacted § 1106(a). Nor does it make any difference that the Plan may have renewed the services Alliant or LPL agreed to provide at some point after their original retention in or before 2009. *Sellers*, 316 F. Supp. 3d at 38 ("Prohibiting the renewal of agreements with service providers who have no other relationship to the plan would do nothing to prevent 'sweetheart deals' of the type Congress sought to avoid."); *see also Sweda*, 923 F.3d at 337, n.12 ("§ 1106(a) was not designed to prevent negotiation between unaffiliated parties," so both an initial agreement to engage a service provider and "subsequent transactions are not prohibited absent self-dealing or disloyal conduct"); *Patrico v. Voyal Fin'l, Inc.*, 2018 WL 1319028, at *7 (S.D.N.Y. Mar. 13,

2018) ("'[I]t is circular to suggest that an entity which becomes a party in interest by providing services to the Plan[ ] has engaged in a prohibited transaction simply because the Plan[ ] ha[s] paid for those services.'") (modifications in original/citation omitted).

## III.   Plaintiffs' Alternative Co-Fiduciary Liability Theory Fails.

At the very end of Count VI, Plaintiffs assert in conclusory fashion that even if Alliant is not responsible for causing any alleged prohibited transactions, it can still be liable, indirectly, as a "co-fiduciary" who knowingly participated in, enabled, or failed to stop the transactions.  Compl. ¶ 302 (citing § 1105(a)).  This unadorned allegation is meritless for multiple reasons.

First, Plaintiffs do not offer well-pleaded facts plausibly demonstrating that the elements of a § 1105(a) claim are met.  They simply parrot the co-fiduciary liability provisions in § 1105(a) and conclude that they are satisfied, without offering any "further factual enhancement." *Twombly*, 550 U.S. at 557.  This is precisely the type of "formulaic recitation of the elements of a cause of action" that cannot state a plausible claim for relief under *Twombly*. *Id.* at 555.

Second, just as Plaintiffs have failed to plausibly establish that Alliant was a fiduciary with respect to the challenged transactions, they have failed to plausibly allege co-fiduciary status with respect to those transactions.  Section 1105(a) is not

a catch-all for claims outside the scope of a party's fiduciary responsibility, such that it can be used to rope in any party who might have *some* fiduciary role with respect to a plan.   Rather, a plaintiff must establish co-fiduciary status with respect to the particular transaction or alleged fiduciary breach at issue.  "To hold otherwise would, in effect, make every fiduciary of a plan covered by ERISA an insurer of that plan, no matter how limited that fiduciary's duties."  *Pension Fund-Mid Jersey Trucking Ind.-Loc. 701 v. Omni Funding Grp.*, 731 F. Supp. 161, 176 (D.N.J. 1990) (citations/emphasis omitted); *see also Richman v. Aetna Life Ins. Co., Inc.*, 974 F.2d 1331, at *4 (4th Cir. 1992) (unpublished) ("Responsibility as a co-fiduciary 'must be limited to the scope of the fiduciary's duty.'") (quoting *Omni Funding Grp.*, 731 F. Supp. at 176); *Danza*, 533 F. App'x at 124-25 (rejecting co-fiduciary liability claim against defendants because they were fiduciaries only with respect to certain activities, and not with respect to the employer's conduct constituting the underlying fiduciary breach).  Because Plaintiffs have not plausibly connected any fiduciary role Alliant played to the Complaint's alleged prohibited transactions, their co-fiduciary allegation fails for this additional reason.

Finally, Plaintiffs' co-fiduciary claim also fails because it is entirely derivative of their prohibited-transaction claims against LPL and the Administrative

Committee.  The claim therefore fails for same reasons LPL and the Administrative Committee have explained in their respective motions to dismiss.

## IV.    Plaintiffs Failed To Exhaust Their Claim Against Alliant.

Although Plaintiffs' claims against Alliant are meritless for the reasons discussed above, the Court may also dismiss them on administrative-exhaustion grounds.  Plaintiffs did not assert their prohibited-transaction claim against Alliant through the Plan's administrative process before raising it in this action.  Plaintiffs failed to do so despite being reminded in the original action of the "well-settled" requirement in this Circuit to "exhaust available administrative remedies before suing in federal court." *Fleming*, 2020 WL 7693147, at *2 (quoting *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000)).

The Complaint alleges Plaintiffs exhausted certain "Administrative Claims" under the Plan—but notably leaves ambiguous what those Claims were.  Compl. ¶¶ 25-28.  In fact, Plaintiffs made ***no mention*** of any prohibited-transaction claim ***against Alliant*** during the administrative-claims process, Ex. 1 to Rollins Motion to Dismiss (Dec. 10, 2020 "Administrative Claims" Letter) at 1-2 (requesting adjudication of five "specific claims," none of which mention Alliant (or LPL)), even though the exhaustion requirement applies to plan service providers, like Alliant.  *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1326-29 (11th Cir. 2006).

## CONCLUSION

For the above reasons, Alliant respectfully requests the Court dismiss, with prejudice, the claims against Alliant in Count VI of the Complaint.

Respectfully submitted, this 28th day of March, 2022.

CAPLAN COBB LLC

*/s/ Michael A. Caplan*
Michael A. Caplan
Georgia Bar No. 601039
mcaplan@caplancobb.com
Julia Blackburn Stone
Georgia Bar No. 200070
jstone@caplancobb.com
75 Fourteenth St. NE, Suite 2700
Atlanta, Georgia 30309
Telephone: (404) 596-5610
Facsimile: (404) 596-5604

Christopher J. Boran
(*pro hac vice*)
Christopher.boran@morganlewis.com
Kevin F. Gaffney
(*pro hac vice*)
Kevin.gaffney@morganlewis.com
Alexandra G. Belzley
(*pro hac vice*)
Alexandra.belzley@morganlewis.com
110 N. Wacker Drive
Chicago, Illinois 60606-1511
Telephone: (312) 324-1000
Facsimile: (312) 324-1001

*Attorneys for Defendants Alliant Insurance Services, Inc. and Alliant Retirement Services, LLC*

**LOCAL RULE 7.1(D) CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing memorandum has been prepared with Times New Roman, 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(B).

This 28th day of March, 2022.

*/s/ Michael A. Caplan*
Michael A. Caplan
Georgia Bar No. 601039

*Attorneys for Defendants Alliant Insurance Services, Inc. and Alliant Retirement Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing Memorandum of Law in Support of Defendants Alliant Insurance Services, Inc. and Alliant Retirement Services, LLC's Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 28th day of March, 2022.

/s/ Michael A. Caplan
Michael A. Caplan
Georgia Bar No. 601039

*Attorneys for Defendants Alliant Insurance Services, Inc. and Alliant Retirement Services, LLC*