# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| MARCIA G. FLEMING, CASEY FREEMAN, DAVID GUYON, ANTHONY LOSCALZO, PATRICK ROSEBERRY, and JULIO SAMANIEGO individually, on behalf of the Rollins, Inc. 401(k) Savings Plan and on behalf of all similarly situated participants and beneficiaries of the Plan, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 1:21-cv-05343-ELR |
| ROLLINS, INC.; THE ADMINISTRATIVE COMMITTEE OF THE ROLLINS, INC. 401(k) SAVINGS PLAN; ALLIANT INSURANCE SERVICES, INC.; ALLIANT RETIREMENT SERVICES, LLC; LPL FINANCIAL LLC; PAUL E. NORTHEN, JOHN WILSON, JERRY GAHLHOFF, JAMES BENTION and A. KEITH PAYNE in their capacities as members of the Administrative Committee; and John and Jane Does 1-10, | |
| *Defendants*. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LPL FINANCIAL LLC'S MOTION TO DISMISS

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................1

BACKGROUND AND ALLEGATIONS ................................2

LEGAL STANDARD.............................................................7

ARGUMENT ..........................................................................9

    I.    PLAINTIFFS' CLAIM AGAINST LPL IS UNTIMELY UNDER ERISA'S SIX-YEAR STATUTE OF REPOSE.................9

    II.    THE COMPLAINT DOES NOT PLEAD FACTS SHOWING THAT LPL "CAUSED" THE PLAN TO ENTER ANY TRANSACTION, AS REQUIRED TO STATE A CLAIM UNDER ERISA § 406 .................................................... 12

    III.    PLAINTIFFS' PROHIBITED TRANSACTION THEORIES EACH ALSO FAIL ON OTHER GROUNDS ............................ 15

        A.    LPL Cannot Be Charged With Prohibited Transaction Liability Based On Its Own Receipt Of Fees.............................................................................. 15

        B.    The Complaint Does Not Plausibly Allege A Prohibited Transaction Claim Against LPL Based On The Plan's Retention Of Or Payment Of Fees To Prudential Or Alliant ......................................... 17

        C.    Plaintiffs Cannot State A Prohibited Transaction Claim Based On A Purported Failure To Monitor Appointees ......................................................... 21

    IV.    PLAINTIFFS DO NOT STATE A CLAIM FOR CO-FIDUCIARY LIABILITY................................................ 23

    V.    PLAINTIFFS HAVE FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES ............................... 25

CONCLUSION................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel.*
  *Lyon v. Buth,*
    475 F. Supp. 3d 910 (E.D. Wis. 2020) .................................................... 12, 23

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................... 7, 8, 23

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................ 7

*Biller v. Prudential Ins. Co. of Am.,*
    2014 WL 4230119 (N.D. Ga. Aug. 26, 2014) .............................................. 8

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.,*
    116 F.3d 1364 (11th Cir. 1997) .................................................................... 8

*Cotton v. Mass. Mut. Life Ins. Co.,*
    402 F.3d 1267 (11th Cir. 2005) .................................................................. 16

*David v. Alphin,*
    704 F.3d 327 (4th Cir. 2013) ................................................................. 18, 22

*Day v. Taylor,*
    400 F.3d 1272 (11th Cir. 2005) .................................................................... 8

*Fleming v. Rollins, Inc.,*
    2020 WL 7693147 (N.D. Ga. Nov. 23, 2020) ............................................ 25

*Harris Tr. & Savs. Bank v. Salomon Smith Barney Inc.,*
    530 U.S. 238 (2000) ....................................................................................... 6

*Hecker v. Deere & Co.,*
    556 F.3d 575 (7th Cir. 2009) ................................................................. 16, 19

*In re BP p.l.c. Sec. Litig.,*
    2015 WL 6674576 (S.D. Tex. Oct. 30, 2015) ............................................ 23

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re ING Groep, N.V. ERISA Litig.,*
  749 F. Supp. 2d 1338 (N.D. Ga. 2010).........................................................24

*Klaas v. Allstate Ins. Co.,*
  21 F.4th 759 (11th Cir. 2021) ........................................................................9

*Lockheed Corp. v. Spink,*
  517 U.S. 882 (1996) ...............................................................................12, 16

*McCaffree Fin. Corp. v. Principal Life Ins. Co.,*
  811 F.3d 998 (8th Cir. 2016) ................................................................16, 17

*Meiners v. Wells Fargo & Co.,*
  898 F.3d 820 (8th Cir. 2018) ..........................................................................8

*Miller v. Astellas US LLC,*
  2021 WL 1387948 (N.D. Ill. Apr. 13, 2021).....................................12, 17, 24

*Patrico v. Voya Fin., Inc.,*
  2018 WL 1319028 (S.D.N.Y. Mar. 13, 2018)................................................21

*Perrino v. S. Bell Tel. & Tel. Co.,*
  209 F.3d 1309 (11th Cir. 2000) ....................................................................25

*Ramos v. Banner Health,*
  1 F.4th 769 (10th Cir. 2021) ........................................................................20

*Renfro v. Unisys Corp.,*
  671 F.3d 314 (3d Cir. 2011) ...................................................................16, 24

*Sacerdote v. N.Y. Univ.,*
  2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017) ....................................19, 20, 21

*Santomenno v. Transamerica Life Ins. Co.,*
  883 F.3d 833 (9th Cir. 2018) ........................................................................16

*Sec'y, U.S. Dep't of Lab. v. Preston,*
  873 F.3d 877 (11th Cir. 2017) ........................................................................9

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Sellers v. Anthem Life Ins. Co.,*
316 F. Supp. 3d 25 (D.D.C. 2018) ..................................................... 17, 20, 21

*Sweda v. Univ. of Pa.,*
923 F.3d 320 (3d Cir. 2019) .............................................................. 19, 20, 21

*Tibble v. Edison Int'l,*
639 F. Supp. 2d 1122 (C.D. Cal. 2009) ........................................................ 22

*Tracey v. Mass. Inst. of Tech.,*
2017 WL 4478239 (D. Mass. Oct. 4, 2017) ................................................... 21

*Turner v. Schneider Elec. Holdings, Inc.,*
530 F. Supp. 3d 127 (D. Mass. 2021)...................................................... 16, 17

*White v. Chevron Corp.,*
2017 WL 2352137 (N.D. Cal. May 31, 2017)................................................ 18

*Williams v. Centerra Grp., LLC,*
2021 WL 4227384 (D.S.C. Sept. 16, 2021) ............................................. 12, 17

*Wright v. Ore. Metallurgical Corp.,*
360 F.3d 1090 (9th Cir. 2004) ..................................................................... 22

## Statutes

29 U.S.C. § 1002(14) ..................................................................................... 5

29 U.S.C. § 1002(21)(A) .............................................................................. 16

29 U.S.C. § 1101(b)(1) ................................................................................. 19

29 U.S.C. § 1105(a) ................................................................................. 7, 23

29 U.S.C. § 1106 ............................................................................................ 5

29 U.S.C. § 1106(a) ....................................................................................... 5

29 U.S.C. § 1106(a)(1) ............................................................................ 12, 16

29 U.S.C. § 1106(a)(1)(C) .............................................................................. 6

iv

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

29 U.S.C. § 1106(a)(1)(D) ........................................................................ 6

29 U.S.C. § 1113(1)(A) ............................................................................ 9

29 U.S.C. § 1108 ...................................................................................... 6

## INTRODUCTION

LPL Financial LLC ("LPL")'s limited association with the Rollins, Inc. 401(k) Savings Plan (the "Plan") concluded a decade ago. Plaintiffs' claim that LPL is responsible for the Plan's service provider and investment decisions is therefore untimely under ERISA's six-year statute of repose. The Court can and should dismiss LPL from this lawsuit on that ground alone.

Plaintiffs' claim against LPL is also meritless as a matter of law. LPL is, at best, a minor player in plaintiffs' sprawling 74-page Complaint, and what little is said about LPL does not amount to a violation of any part of ERISA. Plaintiffs allege only that LPL maintained the registration for the Plan's investment adviser, Sean Waggoner. Nothing about that affiliation supports plaintiffs' effort to hold LPL responsible for the Plan fiduciaries' decisions under ERISA's prohibited transaction rules.

To begin, the Complaint itself forecloses the inference that LPL had authority to "cause" the Plan to enter *any* transaction—the necessary predicate for a prohibited transaction claim. The Complaint underscores at every turn that the Plan's administrative committee alone had authority to make decisions about Plan investment options and service arrangements, and that the committee made those decisions in the relevant period. In fact, plaintiffs allege that LPL did not provide *any* services to the Plan. Plaintiffs'

prohibited transaction claim against LPL cannot succeed on any theory absent facts establishing causation, which plaintiffs have not alleged.

Plaintiffs' various prohibited transaction theories also clash with established law in several other respects, including that (1) LPL cannot be held liable for prohibited transactions based on its own receipt of fees from the Plan, (2) the Complaint does not plausibly allege that LPL even indirectly caused the Plan to retain other service providers, (3) those other service providers were in any event retained outside the statute of repose, (4) payments to the Plan's recordkeeper via "revenue-sharing" from mutual funds in the Plan investment menu are not a prohibited transaction, and (5) ERISA does not prohibit plans from paying otherwise unrelated parties for services provided to the plan, absent allegations plausibly suggesting an intent to benefit the party in interest—facts plaintiffs have not alleged here.

Since plaintiffs have not stated any ERISA claim against LPL, LPL should be dismissed from this lawsuit with prejudice. Moreover, even if all of these other problems with plaintiffs' claim against LPL could somehow be set aside, plaintiffs have not established that they exhausted that claim through the Plan's administrative process. This, too, is a basis for dismissal.

## BACKGROUND AND ALLEGATIONS

Plaintiffs are six former employees of Rollins, Inc. ("Rollins") and

participants in the Plan, which is a defined contribution 401(k) retirement plan sponsored by Rollins.  Complaint ("Compl.") (ECF No. 1) ¶¶ 4-9, 35. Plaintiffs allege that Rollins delegated to the Administrative Committee of the Rollins Plan (the "Committee") the authority to perform certain Plan-related functions, "including selecting and monitoring investment options, and hiring and monitoring service providers."  Compl. ¶ 35.

Plaintiffs allege that Rollins and the Committee breached their ERISA fiduciary duties by allowing the Plan to pay excessive recordkeeping fees and selecting and retaining purportedly imprudent investment options for the Plan.  Compl. ¶ 48.  Since at least 2006, the Plan's recordkeeper has been Prudential.  Compl. ¶¶ 58, 173; Compl. Ex. 3 (ECF No. 1-3) at 35, 38, 78-81 (amendments to Administrative Services Agreement between Rollins and Prudential referencing original effective date of November 1, 2006); *see also* VerGow Decl. Exs. 1-12 (2009-2020 Form 5500s), Sched. C.  Plaintiffs take particular issue with Prudential's receipt of compensation for its services through "revenue-sharing" from mutual funds offered in the Plan investment menu.  *See* Compl. ¶¶ 115-119, 173-203.

Plaintiffs also allege that Rollins and the Committee did not prudently select and oversee service providers retained to provide investment advice concerning the Plan, including Waggoner and various entities with which he

3

was affiliated over time—among them, LPL and defendants Alliant Insurance Services, Inc., and Alliant Retirement Services, LLC (together, "Alliant"). *See* Compl. ¶¶ 58-61. Plaintiffs allege that the Committee first retained Waggoner to provide advisory services in 2006, Compl. ¶¶ 87, 104, and that Rollins and the Committee looked to Waggoner for advice when making certain decisions about the Plan, *see* Compl. ¶¶ 115, 120, 127, 132, 203, 212-213.

The Complaint and the SEC website on which it relies indicate that Waggoner maintained his license with a series of different entities over the period at issue in the Complaint. *See* Compl. ¶¶ 71-74. Specifically:

- Before December 17, 2009, Waggoner was registered as an investment adviser representative ("IAR") with NFP Securities, Inc. *See* SEC, Investment Adviser Public Disclosure, Sean Paul Waggoner, https://adviserinfo.sec.gov/individual/summary/2748574.

- Following two days of overlap with the NFP registration, Waggoner was registered as an IAR with only LPL from December 18, 2009 until June 3, 2010. *Id.*

- From June 4, 2010 until July 10, 2013, Waggoner was registered as an IAR with both LPL and James E. Bashaw & Co. ("Bashaw"). *Id.*

- From July 11, 2013 until October 6, 2015, Waggoner was registered as

4

an IAR with LPL and Alliant.  *Id.*

- Since October 7, 2015, Waggoner has been registered as an IAR with only Alliant.  *Id.*

In 2010, 2011, and 2012, the Plan paid its fees to Waggoner through LPL.  *See* Compl. ¶ 162; VerGow Decl. Exs. 2-4 (2010-2012 Form 5500s), Sched. C.[1]  Plaintiffs allege that that was the extent of LPL's involvement with the Plan; LPL did not provide investment advice or any other service to the Plan.  *See* Compl. ¶¶ 166-168 (alleging that "no services were provided" to the Plan by LPL); *see also* Compl. ¶¶ 61, 113.  From 2013 forward, the Plan paid fees for investment advisory services to other entities, but not LPL—in 2013, the Plan paid fees to both Bashaw and Alliant, and from 2014 through 2020, the Plan paid Alliant alone.  *See* Compl. ¶¶ 155-163; VerGow Decl. Exs. 5-12 (2013-2020 Form 5500s), Sched. C.

Plaintiffs name LPL in just one Count of their Complaint—Count VI— alleging violations of ERISA § 406, 29 U.S.C. § 1106.  *See* Compl. ¶¶ 294-302. Section 406(a) of ERISA prohibits certain transactions between plans and "parties in interest," a term defined to include plan fiduciaries and persons "providing services to such plan."  29 U.S.C. §§ 1002(14), 1106(a); *see* Compl.

---

[1] The fees in those years totaled $214,281.  VerGow Decl. Exs. 2-4, Sched. C.

¶¶ 295, 297.  This prohibited transaction provision "supplements the fiduciary's general duty of loyalty ... by categorically barring certain transactions deemed likely to injure the ... plan." *Harris Tr. & Savs. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241-42 (2000) (quotation marks omitted).  Certain otherwise prohibited transactions are then expressly permitted under various statutory and regulatory exemptions. *See, e.g.*, 29 U.S.C. § 1108.  Among the transactions prohibited under section 406(a) are the "furnishing of goods, services, or facilities between the plan and a party in interest" and the "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."  29 U.S.C. § 1106(a)(1)(C), (D).

Plaintiffs invoke these two particular prohibitions as the basis for their claim against LPL. *See* Compl. ¶¶ 295, 299.  Plaintiffs allege that Prudential, Alliant, and LPL were "parties in interest" to the Plan by virtue of their status as Plan service providers.  Compl. ¶¶ 295-297.  Plaintiffs assert that LPL and Alliant "were involved in causing the Plan to use conflicted service providers which recommended investments that were detrimental to the Plan," and that because those advisers were paid fees from the Plan, Alliant and LPL thereby "caused the Plan to engage in transactions" that violated section 406(a)(1)(D)'s prohibition on the transfer of plan assets to a party in interest.  Compl. ¶¶ 298-299.  Plaintiffs also allege that LPL and Alliant

6

"failed to monitor appointees" and in doing so "caused the Plan to offer inappropriate share classes and investments while also failing to diversify the Plan's investments so as to minimize the risk of large losses." Compl. ¶ 300. Based on these contentions, plaintiffs allege that LPL and Alliant are liable for restoration of purported losses to the Plan and for disgorgement or restitution "of all revenues received by Prudential and their subsidiaries from the fees and revenue sharing payments paid by the Plan." Compl. ¶ 301.

Finally, plaintiffs allege in Count VI that "each Defendant" is liable for the alleged prohibited transactions described therein under ERISA's co-fiduciary liability provision, 29 U.S.C. § 1105(a). Compl. ¶ 302.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Stating a plausible claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor do "naked assertions devoid of further factual enhancement" suffice. *Iqbal*, 556 U.S. at 678 (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.*

In resolving a motion to dismiss under Rule 12(b)(6), the Court may consider not only the Complaint's well-pleaded factual allegations, but also any "materials that are necessarily embraced by the pleadings." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018); *see Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal."). Here, the Complaint repeatedly and expressly relies on the Plan's Form 5500 annual regulatory filings with the Department of Labor and information about Waggoner's licensing history reported on the SEC's website as the basis for its factual allegations. *See* Compl. ¶¶ 60, 76, 105, 135, 154, 160, 162, 169 (citing Form 5500s); Compl. ¶¶ 68-74, 83 (citing SEC website). Those materials are therefore appropriately considered in assessing whether plaintiffs have stated a claim. *See, e.g.*, *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[A] document need not be physically attached to a pleading to be incorporated by reference into it."); *see also Biller v. Prudential Ins. Co. of Am.*, 2014 WL 4230119, at *3 (N.D. Ga. Aug. 26, 2014) (considering Form 5500s at the motion to dismiss stage).

# ARGUMENT

## I.   PLAINTIFFS' CLAIM AGAINST LPL IS UNTIMELY UNDER ERISA'S SIX-YEAR STATUTE OF REPOSE

Plaintiffs' claim against LPL fails at the outset because it is long since time-barred.  Under ERISA, a plaintiff *must* file suit within "six years after ... the date of the last action which constituted a part of the breach or violation." 29 U.S.C. § 1113(1)(A).  "Section 1113 'is a statute of repose, and not a mere statute of limitations'; it 'bars any suit that is brought after a specified time since the defendant acted, without regard to any later accrual.'"  *Klaas v. Allstate Ins. Co.*, 21 F.4th 759, 772 (11th Cir. 2021) (quoting *Sec'y, U.S. Dep't of Lab. v. Preston*, 873 F.3d 877, 883 (11th Cir. 2017)).

The Complaint and incorporated documents establish that LPL did not receive any compensation from the Plan after 2012.  The Complaint alleges that the Plan paid compensation to LPL in 2012, but not thereafter.  *See* Compl. ¶¶ 162 (alleging LPL received fees from the Plan in 2012), 163 (alleging that in 2013, the Plan paid fees to Bashaw and Alliant), 155 (alleging that "between 2014 and present, [Alliant] was paid $80,752 per each plan year").  The Plan's Form 5500 filings confirm that the Plan has not paid LPL any direct or indirect compensation since 2012—far more than six years before plaintiffs filed their Complaint in December 2021.  *See* VerGow Decl.

Exs. 1-12 (2009-2020 Form 5500s), Sched. C.[2]

The fact that LPL received no compensation from the Plan after 2012 establishes on its own that LPL was not a Plan service provider within the repose period.  But the Complaint also shows that LPL did not even hold Waggoner's investment adviser license after 2015.  *See* Compl. ¶ 74 (alleging that "[f]rom 2009 *to 2015*, Waggoner's investment adviser license changed to LPL" (emphasis added)).  The SEC website plaintiffs cite as the source of their allegations confirms that Waggoner was not registered as an IAR with LPL at any time after October 6, 2015.  *See* SEC, Investment Adviser Public Disclosure, Sean Paul Waggoner, https://adviserinfo.sec.gov/individual/summary/2748574.  Waggoner therefore *could not have* provided investment advisory services to the Plan in affiliation with LPL within six years before the Complaint was filed.

Plaintiffs' allegation that "Waggoner's employer between 2009 and his termination on June 30, 2017, was LPL" (Compl. ¶ 108) does not save their claim against LPL.  Waggoner was affiliated with multiple entities from 2012 through mid-2017, not just LPL.  And Waggoner was affiliated with those

---

[2] The Complaint's allegations about the Plan's payment of fees to LPL are drawn from the Plan's Form 5500 filings for the 2009-2020 Plan years.  *See* Compl. ¶¶ 60, 105, 154, 162, 169.

different entities in different capacities.  In particular, Waggoner was not registered with LPL *as an IAR*—the services he provided to the Plan—at any time after 2015.  *See* SEC, Investment Adviser Public Disclosure, Sean Paul Waggoner, https://adviserinfo.sec.gov/individual/summary/2748574.  Rather, after 2015, Waggoner was registered with LPL as *only* a broker, *see id.*, a service he did not provide to the Plan.  By contrast, Waggoner *was* registered as an IAR with Bashaw and Alliant from 2013 forward, when the Plan paid fees to those entities for advisory services.  *See* VerGow Decl. Exs. 5-12 (2013-2020 Form 5500s), Sched. C.[3]  There is no basis to infer that Waggoner provided services to the Plan as an "employee" of LPL during periods when (1) only the *other* entities with which Waggoner was affiliated received fees from the Plan and (2) Waggoner did not offer investment advice to *anyone* through LPL.

In short, the Complaint and incorporated materials establish no potentially actionable relationship between LPL and the Plan after 2012, placing plaintiffs' claim far beyond the six-year statute of repose.  Plaintiffs' claim against LPL is untimely and must be dismissed in its entirety.

---

[3] Waggoner was registered as an IAR with Bashaw through July 10, 2013, and has been registered as an IAR with Alliant since July 11, 2013.  *See* SEC, Investment Adviser Public Disclosure, Sean Paul Waggoner, https://adviserinfo.sec.gov/individual/summary/2748574.

## II.   THE COMPLAINT DOES NOT PLEAD FACTS SHOWING THAT LPL "CAUSED" THE PLAN TO ENTER ANY TRANSACTION, AS REQUIRED TO STATE A CLAIM UNDER ERISA § 406

Plaintiffs' claim against LPL also fails in its entirety because the Complaint does not allege facts showing that LPL "caused" the Plan to enter any of the allegedly prohibited transactions—or to do anything at all.

To proceed under section 406(a)(1), a plaintiff must "show that a fiduciary *caused* the plan to engage in the allegedly unlawful transaction." *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996) (emphasis added); *see* 29 U.S.C. § 1106(a)(1) ("A fiduciary with respect to a plan shall not *cause* the plan to engage in a transaction … ." (emphasis added)).  Courts have rejected "attenuated theor[ies] of causation" in the prohibited transaction context, and have held that the causal chain is too "attenuated" where the allegations indicate that a *different* fiduciary directly caused the challenged transaction. *Miller v. Astellas US LLC*, 2021 WL 1387948, at *10 (N.D. Ill. Apr. 13, 2021); *see Williams v. Centerra Grp., LLC*, 2021 WL 4227384, at *11 (D.S.C. Sept. 16, 2021); *see also Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*, 475 F. Supp. 3d 910, 944 (E.D. Wis. 2020) (dismissing prohibited transaction claim where allegations did not show that defendants had "discretionary authority to demand that the transaction take place").  Here, any supposed causal relationship is even further removed, as in the

Complaint's own words:  "There is no evidence … that LPL" even "provided any services to the Rollins Plan."  Compl. ¶ 166.

The facts alleged in the Complaint do not suggest that LPL had authority to make (or even influence) *any* decision for the Plan and thus cannot support an inference that LPL "caused" the alleged prohibited transactions.  Indeed, the Complaint repeatedly alleges that *Rollins and the Committee* had exclusive authority to make decisions about the Plan's service arrangements and investment options, and to authorize the payment of fees to service providers.  The Complaint alleges that:

- Rollins and the Committee were responsible for "administration of the Rollins Plan."  Compl. ¶¶ 11-13.

- Rollins and the Committee "retained Prudential to serve as the Plan's administrator."  Compl. ¶ 58.

- Rollins and the Committee "retained" LPL, Alliant, and Waggoner.  Compl. ¶ 59.

- Rollins and the Committee "directed that Waggoner, LPL, [and Alliant] be direct recipients of [Plan] assets."  Compl. ¶ 60.

- Plan service providers were "selected and retained by" Rollins and the Committee.  Compl. ¶ 94.

- Rollins and the Committee made the "choice" to offer particular

13

investment options in the Plan.  Compl. ¶ 124.

- Rollins and the Committee signed the Prudential Services Agreement setting Waggoner's compensation through Alliant.  Compl. ¶ 156.

- Rollins and the Committee "approv[ed] compensation paid to multiple" service providers.  Compl. ¶ 165.

- Rollins and the Committee approved "compensation paid to LPL and James Bashaw or James E. Bashaw & Co."  Compl. ¶¶ 167-168.

- The Plan's agreement with Prudential was "executed by" Rollins and the Committee.  Compl. ¶ 175.

- Rollins and the Committee "knowingly and deliberately selected" the challenged revenue-sharing arrangement.  Compl. ¶¶ 178-179.

- The mutual funds that paid revenue-sharing were "chosen and kept by" Rollins and the Committee.  Compl. ¶ 185.

These allegations, combined with plaintiffs' allegation that LPL itself never "provided any services to the Rollins Plan," Compl. ¶ 166, demonstrate that LPL was not in a position to "cause" the Plan's service provider and investment transactions.  In fact, the Complaint alleges that LPL was merely a "'pass-through' entit[y]" for payment of fees for Waggoner's services. Compl. ¶ 63.  Even Waggoner had no authority to make decisions for the Plan on his own; plaintiffs' allegations show that Waggoner acted as an adviser to

14

Rollins and the Committee, who in turn made and executed the ultimate decisions. *See, e.g.*, Compl. ¶¶ 102-103 (referencing alleged "advice" from Waggoner), 120 (alleging that Rollins and the Committee relied on Waggoner for "advice"), 126-129 (alleging that Waggoner acted "with the approval of" Rollins and the Committee when modifying the Plan investment policy statement), 132 (alleging that Rollins and the Committee "adopted Waggoner's recommendation" to remove a fund from the Plan), 213 (referencing alleged "reliance on Waggoner's advice").

Because the Complaint does not plausibly allege that LPL "caused" the Plan to do anything, plaintiffs' prohibited transaction claim against LPL necessarily fails as to *any* potential "transaction" and must be dismissed.

## III.   PLAINTIFFS' PROHIBITED TRANSACTION THEORIES EACH ALSO FAIL ON OTHER GROUNDS

In addition to the problems already discussed, each of which is alone fatal to plaintiffs' claim against LPL, the particular theories of prohibited transaction liability identified in Count VI suffer from further defects that require dismissal.

### A.   LPL Cannot Be Charged With Prohibited Transaction Liability Based On Its Own Receipt Of Fees

Plaintiffs cannot state a claim against LPL based on LPL's own receipt of fees from the Plan, because LPL had no fiduciary role in retaining itself or

setting the terms of its own compensation.

Section 406(a)(1) bars only *fiduciaries* from causing a Plan to engage in the specified transactions.  *See* 29 U.S.C. § 1106(a)(1) ("*A fiduciary with respect to a plan* shall not cause the plan to engage in a transaction … ." (emphasis added)); *see also Spink,* 517 U.S. at 888.  Even assuming that the Complaint plausibly alleges that LPL was a Plan fiduciary at all, "a service provider's fiduciary status under ERISA is not an all-or-nothing concept." *McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1004 (8th Cir. 2016) (quotation marks omitted).  Rather, a "party is a fiduciary only 'to the extent' that it performs a fiduciary function."  *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005); *see* 29 U.S.C. § 1002(21)(A).

"It is well-established that a service provider to an ERISA plan does not act as a fiduciary when negotiating its own fees with that plan."  *Turner v. Schneider Elec. Holdings, Inc.*, 530 F. Supp. 3d 127, 139 (D. Mass. 2021); *see, e.g., Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 837-38 (9th Cir. 2018); *Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009).  Responsibility for decisions about service provider retention and compensation rests with the hiring fiduciaries, who are free to "contract with an alternative service provider offering more attractive pricing or superior investment products" or services.

16

*McCaffree*, 811 F.3d at 1003.  Thus, "if a plan fiduciary negotiates the terms of its compensation with the plan at arm's length, and then adheres to those terms, its receipt of that compensation is unrelated to its fiduciary role." *Sellers v. Anthem Life Ins. Co.*, 316 F. Supp. 3d 25, 36 (D.D.C. 2018).

For this reason, courts have consistently held that a service provider "cannot be held liable under § 1106" based merely on its own receipt of fees paid from plan assets for services provided to the plan.  *Turner*, 530 F. Supp. 3d at 139; *see Williams*, 2021 WL 4227384, at *10; *Miller*, 2021 WL 1387948, at *9.  That established principle requires dismissal of plaintiffs' claim against LPL insofar as it is based on fees received *by LPL* from the Plan.

## B. The Complaint Does Not Plausibly Allege A Prohibited Transaction Claim Against LPL Based On The Plan's Retention Of Or Payment Of Fees To Prudential Or Alliant

Any theory that LPL caused a prohibited transaction with respect to *other* Plan service providers—Prudential and Alliant, *see* Compl. ¶ 297—is also flawed in multiple respects.

***First***, the Complaint does not allege facts plausibly suggesting that LPL was involved in any way in the Plan's retention of Prudential or Alliant as service providers.  The Complaint and incorporated documents show that Prudential was *already* the Plan's recordkeeper *before* LPL began receiving fees from the Plan (and years before Waggoner was affiliated with LPL).  *See*

17

Compl. ¶ 173; Compl. Ex. 3 at 35, 38, 78-81; VerGow Decl. Ex. 1, Sched. C (2009 Form 5500 listing Prudential, but not LPL, as service provider); *supra* at 4-5 (discussing Waggoner licensing history and Plan payments to LPL).[4] The Complaint similarly fails to allege any facts connecting LPL to the Plan's retention or payment of fees to Alliant, focusing instead entirely on Rollins and the Committee's actions to those ends.  *See, e.g.*, Compl. ¶ 59 (alleging that Rollins and the Committee "retained" Alliant "[i]n or before 2009"), 60 (alleging that Rollins and the Committee "directed" that Alliant be a "direct recipient[]" of Plan assets "over multiple Plan years"), 154 (alleging that Rollins and the Committee "directed" the payment of fees to Alliant).  The Complaint accordingly does not plausibly allege that LPL played any role in causing the Plan to retain or pay fees to Prudential or Alliant, let alone that LPL "caused" those transactions as required by section 406(a)(1).

 *Second*, the Complaint and incorporated documents show that

---

[4] The Plan's ongoing relationship with Prudential was not a "transaction" under section 406(a).  "The common understanding of the word 'transaction' implies that an affirmative action is required."  *David v. Alphin*, 704 F.3d 327, 340 (4th Cir. 2013).  As a result, merely maintaining an existing investment or service provider cannot form the basis for liability.  *See id.* at 340-41; *see also, e.g.*, *White v. Chevron Corp.*, 2017 WL 2352137, at *22 (N.D. Cal. May 31, 2017) (relevant "transaction" occurred when fiduciaries selected recordkeeper, and "there is no such thing as a 'continuing' prohibited transaction"), *aff'd*, 752 F. App'x 453 (9th Cir. 2018).

Prudential and Alliant were both retained as Plan service providers more than six years before plaintiffs filed their Complaint (*i.e.*, before December 30, 2015).  *See, e.g.*, Compl. ¶¶ 59 (alleging that Rollins and the Committee "retained" Alliant "[i]n or before 2009"), 155 (alleging payment of fees to Alliant in 2014); VerGow Decl. Exs. 1-12 (2009-2020 Form 5500s), Sched. C (showing Prudential as Plan service provider).  Any claim pertaining to the retention of those entities as service providers is therefore barred by ERISA's six-year statute of repose.  *See supra* at 9-11 (discussing statute of repose).

*Third*, plaintiffs cannot ground their claim in Prudential's ongoing receipt of revenue-sharing payments from mutual funds in the Plan's investment menu, because those payments are drawn from the *mutual funds'* assets, which are not "plan assets."  *See Sweda v. Univ. of Pa.*, 923 F.3d 320, 339 (3d Cir. 2019); *Hecker*, 556 F.3d at 584; 29 U.S.C. § 1101(b)(1).  Courts have thus held that payment of revenue-sharing is not a "transfer of … assets of the plan" covered by section 406(a)(1)(D).  *See, e.g.*, *Sweda*, 923 F.3d at 339; *Sacerdote v. N.Y. Univ.*, 2017 WL 3701482, at *12 (S.D.N.Y. Aug. 25, 2017), *vacated and remanded on other grounds*, 9 F.4th 95 (2d Cir. 2021).

The Complaint, moreover, alleges that the agreement providing for Prudential's receipt of revenue-sharing was put in place in March 2010, *see* Compl. ¶ 114—well over six years before plaintiffs filed their Complaint.  Any

19

challenge to that arrangement as a prohibited transaction is therefore time-barred.  *See supra* at 9-11 (discussing six-year statute of repose).

**Fourth**, section 406(a)(1) "does not prohibit a plan from paying an unrelated party, dealt with at arm's length, for services rendered," simply because that entity will become a "party in interest" when it provides services to the plan.  *Sellers*, 316 F. Supp. 3d at 34; *see Ramos v. Banner Health*, 1 F.4th 769, 787 (10th Cir. 2021); *Sweda*, 923 F.3d at 337.  Rather, section 406(a)(1) applies only where plans contract for services "with persons who are 'parties in interest' by virtue of some *other* relationship—for example, with the employer who sponsors the plan." *Sellers*, 316 F. Supp. 3d at 34 (emphasis added).  This reading of section 406(a)(1) avoids the "absurd result" that an "agreement with a service provider would simultaneously transform that provider into a party in interest and make that same transaction prohibited." *Ramos*, 1 F.4th at 787.

Courts considering prohibited transaction claims in this context have therefore concluded that allegations that a plan "violated § 406(a) by paying [service providers] for recordkeeping services—even allegations that the [plan] paid too much for those services—do not, without more, state a claim" under sections 406(a)(1)(C) and (D).  *Sacerdote*, 2017 WL 3701482, at *14; *see also, e.g.*, *Patrico v. Voya Fin., Inc.*, 2018 WL 1319028, at *7 (S.D.N.Y. Mar.

20

13, 2018).  The same principle applies to other plan service providers in analogous circumstances.  *See, e.g.*, *Sellers*, 316 F. Supp. 3d at 33.

**Fifth**, the Complaint does not allege that Prudential or Alliant were parties in interest to the Plan by virtue of any relationship aside from their status as Plan service providers.  *See* Compl. ¶ 297.  Nor does the Complaint otherwise supply "factual allegations that support an element of intent to benefit a party in interest"—*i.e.*, allegations showing that LPL had a disloyal subjective intent to benefit Prudential or Alliant through the challenged transactions.  *Sweda*, 923 F.3d at 337-40 (holding that such allegations are required under sections 406(a)(1)(C) and (D)); *see also, e.g.*, *Sacerdote*, 2017 WL 3701482, at *14 (section 406(a)(1)(C) claim failed absent "allegations suggesting self-dealing or disloyal conduct"); *Tracey v. Mass. Inst. of Tech.*, 2017 WL 4478239, at *3 (D. Mass. Oct. 4, 2017) (under section 406(a)(1)(D), plaintiff must show that "the fiduciary subjectively intended to benefit a party in interest").  Without those essential allegations, plaintiffs cannot state a claim against LPL based on the Plan's retention of, or payment of fees to, Prudential or Alliant.

## C.  Plaintiffs Cannot State A Prohibited Transaction Claim Based On A Purported Failure To Monitor Appointees

Plaintiffs also allege as a purported basis for prohibited transaction

liability LPL's "fail[ure] to monitor appointees," which plaintiffs assert "caused the Plan to offer inappropriate share classes and investments while also failing to diversify the Plan's investments so as to minimize the risk of large losses."  Compl. ¶ 300; *see* Compl. ¶ 63 (alleging that LPL "failed to supervise the actions of Sean Waggoner").  The Complaint does not state a claim on this theory either, for at least two reasons beyond the statute of repose and causation problems discussed above.

*First*, it is settled that "a defendant's failure to act[] cannot constitute a 'transaction' for purposes of section 406(a)."  *David*, 704 F.3d at 340; *see Wright v. Ore. Metallurgical Corp.*, 360 F.3d 1090, 1100-01 (9th Cir. 2004); *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1122, 1125-26 (C.D. Cal. 2009), *aff'd* 711 F.3d 1061 (9th Cir. 2013).  A "failure to monitor" is not a transaction, and LPL's supposed failure to monitor Plan fiduciaries thus cannot serve as the basis for a prohibited transaction claim.

*Second*, plaintiffs cannot assert a failure to monitor claim of any kind against LPL, because LPL did not have the power to appoint and remove the Plan's fiduciaries.  As discussed above, plaintiffs' allegations consistently indicate that only Rollins and the Committee possessed the authority to appoint Plan service providers, including Waggoner.  *See, e.g.*, Compl. ¶¶ 35, 75, 87, 93-94, 99, 264; *see also supra* at 13-14.  In fact, the Complaint

specifically identifies Rollins and the Committee as the "appointing fiduciar[ies]" with respect to providers "including Waggoner."  Compl. ¶ 101. The Complaint makes no analogous allegation about LPL, nor could it.

## IV.   PLAINTIFFS DO NOT STATE A CLAIM FOR CO-FIDUCIARY LIABILITY

Plaintiffs conclude Count VI with an assertion that "each Defendant" is liable as a co-fiduciary for the alleged prohibited transactions.  Compl. ¶ 302. With no viable prohibited transaction claim, plaintiffs cannot begin to allege that LPL is liable as a co-fiduciary.  Plaintiffs, however, also allege no specific facts to support their co-fiduciary liability theory, merely parroting the language of the relevant statutory provision.  *See* Compl. ¶ 302; 29 U.S.C. § 1105(a).  A plaintiff cannot state a claim based on such "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678; *see, e.g.*, *Appvion*, 475 F. Supp. 3d at 944 (dismissing co-fiduciary liability claim based on similarly conclusory allegations); *In re BP p.l.c. Sec. Litig.*, 2015 WL 6674576, at *11 (S.D. Tex. Oct. 30, 2015) (same).

Plaintiffs' claim could not succeed in any event, because there is no potential basis for holding LPL liable as a co-fiduciary to the other defendant on this Count, Alliant.  A defendant can be held liable under section 405(a) for another fiduciary's breach only if both parties were *fiduciaries as to the*

*same challenged conduct.  See Renfro*, 671 F.3d at 324.  The Complaint does not allege facts demonstrating that LPL and Alliant shared fiduciary responsibility for the alleged prohibited transactions.  As discussed above, the Complaint does not plausibly allege that LPL was responsible for decisions about Plan service providers or investments at all.  *See supra* at 12-15.

Further, a claim for co-fiduciary liability under sections 405(a)(1) or (3) requires allegations "that [the] defendant possessed actual knowledge of the breach by another fiduciary."  *In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1352 (N.D. Ga. 2010); *see also, e.g.*, *Renfro*, 671 F.3d at 324. Plaintiffs allege no facts indicating that LPL had the requisite knowledge, and bare assertions that the defendants "knew of the breaches by the other fiduciaries" are not enough.  *In re ING Groep*, 749 F. Supp. 2d at 1352 (quotation marks omitted); *see also, e.g.*, *Miller*, 2021 WL 1387948, at *7.

The third potential path to co-fiduciary liability, section 405(a)(2), requires a showing that a fiduciary breached *its own duties* under section 404(a)(1) and thereby enabled a co-fiduciary's breach.  *See, e.g.*, *Renfro*, 671 F.3d at 325 n.5.  The Complaint does not allege such a breach by LPL, let alone allege facts that plausibly describe how any breach by LPL purportedly enabled Alliant to cause the Plan to enter prohibited transactions.

## V.    PLAINTIFFS HAVE FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES

Plaintiffs' claim against LPL also suffers from another defect:  plaintiffs failed to exhaust available administrative remedies before filing suit.  *See Fleming v. Rollins, Inc.*, 2020 WL 7693147, at *2 (N.D. Ga. Nov. 23, 2020) ("[I]t is 'well-settled that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court.'" (quoting *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000))).  The Plan broadly requires that a participant exhaust through administrative channels "any grievance, complaint or claim concerning any aspect of the operation or administration of the Plan."  Compl. Ex. 1 (ECF No. 1-1) ¶ 11.7(a).  The Complaint alleges no facts to support a conclusion that plaintiffs' claim against LPL has been properly exhausted.  For the sake of economy, LPL adopts the exhaustion arguments set forth in the Rollins defendants' motion to dismiss.  As explained there, under the Plan, exhaustion is "a condition precedent to the commencement of any legal or equitable action."  Compl. Ex. 1 ¶ 11.7(d).  Plaintiffs' claim against LPL accordingly must be dismissed.

## CONCLUSION

For all of these reasons, plaintiffs' claim against LPL should be dismissed with prejudice.

Dated:  March 28, 2022

Respectfully submitted,

*/s/ Meaghan VerGow*
Meaghan VerGow*
Deanna M. Rice*
Scott Harman-Heath*
**O'MELVENY & MYERS LLP**
1625 Eye Street NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383 5414
mvergow@omm.com
derice@omm.com
sharman@omm.com

Pamela Miller*
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
pmiller@omm.com


*/s/ Amy Cheng*
Amy Cheng, GA Bar No. 261897
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
201 17th Street NW
Atlanta, GA 30363
Telephone: (404) 322-6000
Facsimile: (404) 322-6050
amy.cheng@nelsonmullins.com

*Counsel for Defendant LPL
Financial LLC*

* Admitted *pro hac vice*

26

## **Local Rule 7.1(D) Certification of Compliance**

I hereby certify that the foregoing document has been prepared with Century Schoolbook font, 13 point, one of the font and point selections approved by the Court in N.D. Ga. Local Rule 5.d1B.

_/s/Amy Cheng_

## <u>Certificate of Service</u>

I hereby certify that, on March 28, 2022, I caused the foregoing

**Memorandum in Support of Defendant LPL Financial LLC's Motion**

**to Dismiss** to be electronically filed with the Clerk of Court using the

CM/ECF system, which will automatically notify all counsel of record.

<u>*/s/Amy Cheng*</u>