# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

MARCIA G. FLEMING, CASEY
FREEMAN, DAVID GUYON, ANTHONY
LOSCALZO, PATRICK ROSEBERRY, and
JULIO SAMANIEGO individually, on behalf
of the Rollins, Inc. 401(k) Savings Plan and
on behalf of all similarly situated participants
and beneficiaries of the Plan,

      Plaintiffs,

v.

ROLLINS, INC.; THE ADMINISTRATIVE
COMMITTEE OF THE ROLLINS, INC.
401(k) SAVINGS PLAN, BOTH
INDIVIDUALLY AND AS THE *DE FACTO*
INVESTMENT COMMITTEE OF THE
ROLLINS, INC. 401(K) SAVINGS PLAN;
EMPOWER RETIREMENT, LLC F/K/A
PRUDENTIAL INSURANCE AND
ANNUITY COMPANY; PRUDENTIAL
BANK & TRUST, FBS, AS DIRECTED
TRUSTEE OF THE ROLLINS, INC. 401(K)
PLAN TRUST; ALLIANT INSURANCE
SERVICES, INC.; ALLIANT
RETIREMENT SERVICES, LLC; LPL
FINANCIAL LLC; PAUL E. NORTHEN,
JOHN WILSON, JERRY GAHLHOFF,
JAMES BENTON and A. KEITH PAYNE in
their capacities as members of the
Administrative Committee; and John and
Jane Does 1-10,

      Defendants.

Civil Action File
No.  1:21-cv-05343-ELR


**BRIEF IN SUPPORT OF
THE ROLLINS
DEFENDANTS' MOTION
TO DISMISS THE FIRST
AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>TABLE OF AUTHORITIES</u> ................................................................. iii

<u>STATEMENT OF FACTS</u> ................................................................4

A.    **Description of the Plan** .............................................................4

B.    **Role of the Rollins Defendants** ...............................................5

C.    **Plaintiffs and Procedural History** ..........................................5

<u>ARGUMENT</u> ...................................................................................8

A.    **THE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING** ..................................................................................8

B.    **THE COMPLAINT FAILS TO STATE A CLAIM AS TO THE MATTERS THAT WERE CONSIDERED IN THE ADMINISTRATIVE PROCEEDING ("EXHAUSTED CLAIMS")** .....10

      1.    **The Legal Standards Governing Claims Reviewed in the Administrative Appeals Process** .....................................10

      2.    **The FAC Fails to State a Claim Regarding the Performance and Expenses of the Plan's Investment Options** ...................12

          a.    <u>The Committee properly denied Plaintiffs' claims based on investment performance.</u> ...............................................12

          b.    <u>The Committee properly denied Plaintiffs' claims based on investment expenses.</u> ......................................................17

      3.    **The FAC Fails to State a Claim Regarding Monitoring of the Plan's Service Providers and Fiduciaries** .......................22

      4.    **Plaintiffs Fail to State a Duty of Loyalty Claim** ...........................24

      5.    **Plaintiffs Fail to State a Prohibited Transaction Claim** ...............26

      6.    **Plaintiffs Fail to State a Claim for "Breach of Fiduciary Duty By Omission"** ...................................................................28

C.    **PLAINTIFFS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES AS TO THEIR NEW CLAIMS** ...........................................28

D.    **ERISA'S STATUTE OF REPOSE BARS CLAIMS BASED ON CONDUCT PRIOR TO SIX YEARS BEFORE THE ADMINISTRATIVE PROCEEDING COMMENCED** ..........................32

**E.    THE FAC FAILS TO STATE A CLAIM FOR CO -FIDUCIARY LIABILITY** ................................................................34

**F.    THE RECORD OF THIS CASE SHOWS THAT DISMISSAL SHOULD BE WITH PREJUDICE AND THAT THE ROLLINS DEFENDANTS SHOULD BE AWARDED THEIR FEES**....................35

**CONCLUSION**.........................................................................35

**LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE** ......................37

**CERTIFICATE OF SERVICE** .........................................................37

**INDEX OF EXHIBITS**.................................................................37

# TABLE OF AUTHORITIES

## Cases

*AlertPoint, LLC v. Olds*, No. 1-18-cv-03879-ELR, 2021 WL 1778033 (N.D. Ga. Mar. 30, 2021)..................................................................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................................ passim

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)............................................ passim

*Bickley v. Caremark Rx, Inc.*, 361 F. Supp. 2d 1317 (N.D. Ala. 2004) .......... 11, 12

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350 (11th Cir. 2011) ............. 11, 12

*Bouvy v. Analog Devices, Inc.*, 2020 WL 3448385 (S.D. Cal. June 24, 2020) .......32

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997) 11

*Byars v. Coca-Cola Co.*, No. 1:01-cv-03124-TWT, 2004 WL 1595399 (N.D. Ga. Mar. 18, 2004)..................................................................................................11

*Corsello v. Lincare, Inc.*, 428 F.3d 1008 (11th Cir. 2005) ......................................35

*Davis v. Washington Univ. in St. Louis*, 960 F.3d 478 (8th Cir. 2020) ..................19

*Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014) ...................................15

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989) .................................19

*Fisher v. Citimortgage, Inc.*, 2013 WL 12106932 (N.D. Ga. Jan. 29, 2013)... 19, 20

*Green v. Morningstar Inv. Mgmt. LLC*, 2019 WL 216538 (N.D. Ill. Jan. 16, 2019) ...............................................................................................................................21

*Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009) .................................... 18, 21

*In re BP p.l.c. Sec. Litig.*, No. 10-MD-2185, 2015 WL 6674576 (S.D. Tex. Oct. 30, 2015) ..........................................................................................................34

*In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338 (N.D. Ga. 2010)  11, 25, 34

*In re Unisys Sav. Plan Litig.*, 74 F.3d 420 (3d Cir. 1996)......................................13

*Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768 (2020)............................33

*Kaylor v. Fields*, 661 F.2d 1177 (8th Cir. 1981) ....................................................27

*Kendall v. Pharmaceutical Prod. Dev.*, 2021 WL 1231415 (E.D.N.C. May 31, 2021) ........................................................................................................16

*Lanfear v. Home Depot, Inc.,* 536 F.3d 1217 (11th Cir. 2008) ...............................30

*Larson v. Allina Health Sys.*, 350 F. Supp. 3d 780 (D. Minn. 2018) .....................32

*Leimkuehler v. American United Life Ins. Co.*, 713 F.3d 905 (7th Cir. 2013) . 20, 22

*Loomis v. Exelon Corp.,* 658 F.3d 667 (7th Cir. 2011) ...........................................17

*Luense v. Konica Minolta*, 2021 WL 2103231 (D.N.J. May 24, 2021) .................31

*Meiners v. Wells Fargo & Co.*, 898 F.3d 820 (8th Cir. 2018)................................16

*Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96 (2d Cir. 2005) ..........................32

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705 (2d Cir. 2013) ..........................13
*Premier Concrete LLC v. Argos N. Am. Corp.*, 2021 WL 1209354 (N.D. Ga. Mar. 31, 2021) .............................................................................................................20
*Ramos v. Banner Health*, 1 F.4th 769 (10th Cir. 2021)................................... 26, 27
*Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011)............................................17
*Riley v. Olin Corp.*, 2022 WL 2208953 (E.D. Mo. June 21, 2022).......................16
*Rosen v. Prudential Ret. Ins. & Annuity Co.*, 2016 WL 7494320 (D. Conn. Dec. 30, 2016) ...................................................................................................................19
*Santiago v. Univ. of Miami,* 2021 WL 1165441 (S.D. Fla. Mar. 26, 2021) ...........24
*Santiago v. Univ. of Miami*, No. 1:20-cv-21784, 2021 WL 1173164 (S.D. Fla. Mar. 1, 2021) ......................................................................................................... 24, 25
*Secretary, U.S. Dep't of Labor v. Preston*, 873 F.3d 877 (11th Cir. 2017).............33
*Sellers v. Anthem Life Ins. Co.*, 316 F. Supp. 3d 25 (D.D.C. 2018) ......................26
*Smith v. CommonSpirit Health*, 37 F.4th 1160, 2022 WL 2207557 (6th Cir. June 21, 2022) ....................................................................................................... passim
*Springer v. Wal-Mart Assoc. Group Health Plan*, 908 F.2d 897 (11th Cir. 1990) .30
*Stark v. KeyCorp*, 2021 WL 1758269 (N. D. Ohio May 4, 2021)..........................31
*Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346 (4th Cir. 2014) .........................13
*Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057 (N.D. Cal. 2017) ..........................32
*Tibble v. Edison Int'l*, 729 F.3d 1110 (9th Cir. 2013) ............................................17
*Tibble v. Edison Int'l*, 575 U.S. 523 (2015) ..........................................................12
*Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014) ................................................21
*Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291 (11th Cir. 2018)...............................9
*Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313 (11th Cir. 2015) ...........9
*Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019).......14
*Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31 (2d Cir. 2009) .............24

**Statutes**

29 C.F.R. § 2550.404a-5 ........................................................................................22
29 C.F.R. § 2550.404a-5(b) ....................................................................................32
29 C.F.R. § 2550.404a-5(c) ....................................................................................31
29 C.F.R. § 2550.404a-5(d) ....................................................................................31
29 U.S.C. § 1002(38) ...............................................................................................7
29 U.S.C. § 1104(a)(1).............................................................................................8
29 U.S.C. § 1104(a)(1)(A).......................................................................................24
29 U.S.C. § 1104(a)(1)(B) .......................................................................................13
29 U.S.C. § 1105(a) ................................................................................................34

29 U.S.C. § 1106 ...........................................................................................8, 27

29 U.S.C. § 1106(a) ..............................................................................................26

29 U.S.C. § 1106(a)-(b) ........................................................................................26

29 U.S.C. § 1106(b) ..............................................................................................28

29 U.S.C. § 1108(2)(A) .........................................................................................27

29 U.S.C. § 1113(1) ...............................................................................................33

29 U.S.C. § 1132(g)(1) ..........................................................................................35

**Other Authorities**

U.S. Dept. of Labor, Field Assistance Bulletin No. 2003-03 (May 19, 2003) ........31

SEC Rule 156 ...........................................................................................................9

U.S. Dept. of Labor, Advisory Op. 2006-08A (Oct. 3, 2006) ................................19

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................3, 9

This is the fourth attempt to allege that the Rollins Defendants[1] violated ERISA in administering the Rollins, Inc. 401(k) Savings Plan (the "Plan"), specifically with regard to their selection and monitoring of the Plan's investments and payment of fees to third parties for necessary services.  It should be the last.

In November, 2020, the Court dismissed a predecessor lawsuit, *Fleming v. Rollins, Inc. et al.*, No. 1:19-cv-05732-ELR (the "*2019 Action*") because the plaintiff (who is one of the six Plaintiffs here) failed to exhaust the Plan's administrative remedies prior to filing suit.  *See 2019 Action* at ECF No. 41 ("Dismissal Order").  As the Court recognized in the Dismissal Order, administrative review processes like the Plan's promote efficiency by reducing frivolous lawsuits and allowing for the development of a factual record prior to litigation.  *See id*. at 5, 10.  Plaintiffs (through their common counsel) initiated the required administrative process after the Dismissal Order, but then treated it as a formality that would lead them back to court.

Plaintiffs submitted a two-page, bullet point list of administrative claims corresponding to the claims asserted in the *2019 Action*, providing no factual

---

[1]   The "Rollins Defendants" are Rollins, Inc. ("Rollins") as Administrator of the Plan, the Plan's Administrative Committee (without conceding whether it is an entity capable of being sued), Paul E. Northen, John Wilson, Jerry Gahlhoff, James Benton and A. Keith Payne (together, the "Individual Defendants").

1

support for those claims throughout the process.  The Plan's Administrative

Committee ("Committee") reviewed the allegations in the *2019 Action*, found them

to be without merit, notified Plaintiffs of the reasons for its decision in its letter,

and shared the entire administrative record with Plaintiffs.  The Committee denied

Plaintiffs' perfunctory appeal in May, 2021, notifying them at that time that any

new claims would need to be pursued administratively.

Seven months after their administrative appeal was denied, Plaintiffs

initiated this action by filing a 73-page, 302-paragraph complaint asserting a

mixture of claims from the *2019 Action* and new claims not previously asserted.

ECF No. 1.  Plaintiffs did not pursue administrative review of the new claims.  The

Rollins Defendants moved to dismiss that complaint on grounds similar to the

grounds for this Motion.  ECF No. 48.  In lieu of responding to the motion to

dismiss, Plaintiffs mooted it by filing a 135-page, 503-paragraph First Amended

Complaint ("FAC"), adding two new defendants and even more new allegations

that were never submitted in the administrative process.  ECF No. 53.

Plaintiffs' flouting of the administrative process must stop here.  The

extensive administrative record in the case, which the Rollins Defendants attached

to their initial motion to dismiss and again attach to this Motion, fully supports the

Committee's finding that the original claims lacked merit.  Under applicable

Eleventh Circuit precedent, the Committee's findings are entitled to deference and should not be disturbed if they are reasonable.  Even under the Rule 8 pleading standards that would apply in normal circumstances, the FAC fails to state a plausible claim under *Twombly* and *Iqbal*.  Despite its significant length, the FAC lacks the allegations that actually matter in an ERISA class action challenging investment decisions and service provider compensation.  Long stretches of the FAC do nothing more than recite general legal principles, platitudes about fiduciary duties and best practices, and academic debates about investment management that do not form the basis for a claim.

The FAC's "new" claims, meanwhile, are subject to dismissal for the same reasons that the Court dismissed the *2019 Action*.  Plaintiffs have had ample opportunity to bring those claims in the administrative process, and they should not benefit here from their conscious decision not to do so.

The FAC should be dismissed for two additional reasons.  First, like its predecessors, it violates the rule against "shotgun pleadings" by incorporating the same alleged facts into each of its seven counts and failing to distinguish between multiple defendants who served the Plan in different roles and at different times.  Second, many of Plaintiffs' allegations are time barred under ERISA's six-year statute of repose.

## STATEMENT OF FACTS

**A.     Description of the Plan**

Rollins is an Atlanta-based pest control company that offers the Plan to its employees as a tax-advantaged way to save for retirement.  *See* Ex. 10.  The Plan is a "defined contribution" plan in which participants control the investment of their retirement savings in separate, individual accounts.  *See id*.  The accounts are maintained by the Plan's recordkeeper, Prudential, and are funded by contributions by participating employees and Rollins itself.  *See* Exs. 12-17, 39 at Schedule H, Part II, Line 2a(1)(A) (showing that Rollins made matching contributions totaling more than $98 million between 2014 and 2020).  Participants are free to allocate the contributions to one or more of the Plan's investment options (mostly mutual funds and index funds).  FAC ¶ 87; Ex. 18-26.  They may also enroll in "GoalMaker," an optional asset allocation service offered by Prudential which automatically allocates the contributions into model portfolios based on time to retirement and other factors.  FAC ¶ 90; Ex. 11 at 6-7.  If the participant does not direct how contributions are to be invested, the contributions are automatically invested in the most appropriate GoalMaker portfolio.  FAC ¶ 92.  During the putative class period, the Plan offered between 15-20 investment options, while the GoalMaker portfolios included a subset of seven of these options.  Exs. 18-26.

**B.      Role of the Rollins Defendants**

Rollins is the Plan's sponsor.  FAC ¶ 24.  Under the terms of the Plan, decisions regarding plan administration are made by the Committee, which typically was comprised of five Rollins employees.  *Id.* ¶¶ 45-47.  The Committee's duties include selecting the Plan's investment lineup and the subset of funds that are used to construct GoalMaker's portfolios.  *Id.* ¶ 87.  The Committee is also responsible for hiring third party service providers as necessary to assist in Plan administration.  *Id.* ¶ 47.  Finally, the Plan vests the Committee with authority to hear claims, including the administrative claims brought by Plaintiffs prior to filing this action.  Ex. 10 at ¶ 11.7.  The five Individual Defendants served on the Committee during part of the putative class period (2009 to the present).[2]

**C.      Plaintiffs and Procedural History**

Plaintiffs are six current or former Plan participants.  FAC ¶¶ 32-37.  They are represented by common counsel, who also represented Plaintiff Fleming in the *2019 Action*.  None of the Plaintiffs attempted to invoke the Plan's administrative process until after the Court dismissed the *2019 Action* on November 23, 2020.

---

[2]     *See* Ex. 7 at ROLLINS_0000106, 0000127, 0000132, 0000163, 0000201 (showing that Wilson joined the Committee in 2013, Benton in 2014, Northen in 2015, Gahlhoff in 2017, and Payne in 2019).

*See* Dismissal Order.  On December 10, 2020, Plaintiffs' counsel submitted a two-page claim to the Committee, comprising five allegations that corresponded to the five counts of the dismissed complaint in the *2019 Action*.  *See* Ex. 1 ("Claim Letter").  The Claim Letter provided little detail and no support, consisting in its entirety of a bullet point list challenging the prudence of fourteen Plan funds (including five GoalMaker constituent funds), the fees charged by the Plan's service providers, and the Rollins Defendants' performance of their monitoring duties with respect to fund selection and recordkeeping fees.  *See id*.

The Committee twice invited Plaintiffs to provide additional support that the Committee would consider.  *See* Exs. 2-3.  Plaintiffs provided nothing further. Despite the lack of detail provided by Plaintiffs in the administrative process, the Committee construed the Claim Letter broadly to incorporate the allegations in the *2019 Action*.  The Committee then considered the administrative record attached hereto as Exhibits 6-37, which includes documents detailing the Committee's historical processes and decision-making regarding investment performance and investment and recordkeeping fees.  Based on its consideration of this record, the Committee denied Plaintiffs' administrative claims.  *See* Ex. 3.

Plaintiffs appealed the denial of their claims.  *See* Ex. 4.  During the appeal, the Committee provided Plaintiffs' counsel with the entire administrative record,

6

and Plaintiffs provided no new information or documents to support their position.
*See* Exs. 4-5.  On May 6, 2021, the Committee denied the appeal.  *See* Ex. 38.  The
Committee notified Plaintiffs of the reasons for the denial and their statutory right
to pursue litigation regarding the asserted claims, along with the following:

> Any claims other than those set forth in the Claim [Letter] and denied
> by this Decision must be submitted to the Committee in a new
> administrative claims process in accordance with the procedures set
> forth in Plan Section 11.7(b).

*See id.* at 4.  On December 30, 2021, Plaintiffs filed their initial complaint in this
action.  ECF No. 1.  The initial complaint was 74 pages and 302 paragraphs long,
and included a mixture of allegations from the *2019 Action* and new allegations
regarding matters outside of the scope of the Claim Letter.  *See id.*; ECF No. 48
(motion to dismiss brief identifying new claims).  The complaint also added LPL
and Alliant (the "Advisor Defendants"), who received fees from the Plan for
investment advisory services at different times during the putative class period.[3]

 After the Rollins Defendants and Advisor Defendants moved to dismiss the
complaint (ECF Nos. 48, 49, 51), Plaintiffs filed the FAC on April 18, 2022.  Now

---

[3] The FAC incorrectly alleges that the Advisor Defendants were "investment
managers" as defined in ERISA.  *See* 29 U.S.C. § 1002(38).  An investment
manager must, among other things, have "the power to manage, acquire, or dispose
of any asset of a plan."  Only the Committee, which made all final decisions
regarding the Plan's investments, ever held that power for the Plan.  *See* Ex. 7.

135 pages and 503 paragraphs long, the FAC again blends claims from the *2019 Action* and administrative proceeding with new claims.  *See infra* pp. 28-29.  It adds the Plan's recordkeeper and directed trustee (the "Prudential Defendants") as defendants for the first time.  The Rollins Defendants are named in each of the FAC's seven counts.  Counts I and II allege that all of the Defendants breached fiduciary duties of prudence and loyalty under ERISA, *see* 29 U.S.C. § 1104(a)(1).  Count III alleges that the Rollins Defendants failed to monitor other Plan fiduciaries.  Count IV alleges that the Rollins Defendants and Advisor Defendants failed to follow the terms of the Plan.  Counts V and VI allege that all Defendants caused the Plan to enter into prohibited transactions (*see* 29 U.S.C. § 1106) and/or engaged in prohibited transactions involving Plan assets.  Count VII alleges that the Rollins Defendants breached fiduciary duties by not pursuing litigation to remedy the aforementioned prohibited transactions.

## **ARGUMENT**

## A.    **THE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING**

The Eleventh Circuit prohibits pleadings which are "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case…can be masked[.]"  *AlertPoint, LLC v. Olds*, No. 1-18-cv-03879-ELR, 2021 WL 1778033, at *6 (N.D. Ga. Mar. 30, 2021)

(Ross, J.) (quoting *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)).  Shotgun pleadings fail Rule 8's requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018).

Every complaint filed by Plaintiffs to date has violated this rule, and Plaintiffs are well aware of this flaw.  *See* ECF No. 48-1; *2019 Action* ECF Nos. 16-1, 34-1.  Yet the FAC is the worst violator to date.  Each of its seven counts incorporates the entire 389-paragraph factual background section, leaving it unclear which facts relate to each claim.  *See Weiland*, 792 F.3d at 1324.  It is also replete with "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action."  *See, e.g.*, FAC ¶ 323 (alleging a violation of "trust law's 'impartiality rule'"); ¶ 372 (alleging violation of the Georgia Securities Act's registration requirements); ¶ 377 (alleging violation of SEC Rule 156).

The FAC also fails to tie any particular Defendant to any particular conduct, referring instead to the Rollins Defendants collectively as the "Named Plan Fiduciaries" even when discussing events that occurred long before any Individual Defendant served on the Committee.  Other allegations simply refer to all of the "Defendants" collectively in a manner that obscures their distinct roles and duties.  *See, e.g., id.* ¶¶ 91, 176, 251, 304.  Finally, the FAC fails to link its allegations to

the claims presented in the administrative process, leaving Defendants and the

Court to sift out those that are subject to dismissal for failure to exhaust.

**B.    THE COMPLAINT FAILS TO STATE A CLAIM AS TO THE MATTERS THAT WERE CONSIDERED IN THE ADMINISTRATIVE PROCEEDING ("EXHAUSTED CLAIMS")**

The shotgun nature of the FAC is just the beginning of its problems.  The

FAC attempts to plead both claims that were presented (albeit summarily) in the

administrative process and ones that are entirely new.  The original five claims

presented in the administrative proceeding, which mirrored the complaint in the

*2019 Action*, were 1) breach of fiduciary duty with respect to the Plan's investment

menu; 2) breach of fiduciary duty with respect to the Plan's service providers; 3)

failure to monitor the Plan's fiduciaries; 4) failure to remedy past breaches by

predecessor fiduciaries; and 5) violation of ERISA's "prohibited transaction" rule.

Ex. 1.  These claims were thoroughly reviewed by the Committee and rejected in a

reasoned decision supported by an extensive record.  Dismissal is warranted as to

all of Plaintiffs' claims that rely on these allegations for failure to state a claim.

**1.    The Legal Standards Governing Claims Reviewed in the Administrative Appeals Process**

A complaint "must contain sufficient factual matter, accepted as true, to state

a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quotations and citation omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint's allegations must be viewed in their proper context, which in this case is a denied administrative claim. Unlike typical cases in which no discovery has taken place and the plaintiff lacks access to facts, this case arrives with a developed factual record in the hands of all parties.

Accordingly, in cases arising out of administrative appeals, the role of the Court is to review the administrative record to determine whether there is a reasonable basis for the decision to deny the claim—not to substitute its own judgment for that of Committee.[4] *See Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354-56 (11th Cir. 2011) (explaining scope of review of administrators' decision); *Byars v. Coca-Cola Co.*, No. 1:01-cv-03124-TWT, 2004 WL 1595399, at *3 (N.D. Ga. Mar. 18, 2004) (noting that administrators' determinations are typically reviewed under an "arbitrary and capricious" or "abuse of discretion" standard); *Bickley v. Caremark Rx, Inc.*, 361 F. Supp. 2d 1317, 1338 n. 37 (N.D.

---

[4]   The exhibits to the motion are properly considered here for two additional reasons. First, Plaintiffs attached parts of the administrative record to the FAC and referred to its contents throughout. *See* ECF No. 53-2, 53-3; FAC ¶¶ 198, 307, 314 (quoting and paraphrasing Committee minutes). Second, the documents are central to the FAC's allegations or publicly-available. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (documents central to complaint); *In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1344 (N.D. Ga. 2010) (matters of public record).

Ala. 2004) (courts "will not use a *de novo* standard" when reviewing a plan's

response to an administrative claim), *aff'd*, 461 F.3d 1325 (11th Cir. 2006).  The

court's review of the administrator's decision is generally limited to "consideration

of the material available to the administrator at the time it made its decision."

*Blankenship,* 644 F.3d at 1354.

### 2.    The FAC Fails to State a Claim Regarding the Performance and Expenses of the Plan's Investment Options

The FAC asserts that the Plan's investment offerings underperformed and/or

were too expensive to the point of being a breach of duty to have ever selected

them in the first place.  *See* FAC ¶ 412.  Neither allegation states a claim.

#### a.    The Committee properly denied Plaintiffs' claims based on investment performance.

In denying the administrative claim, the Committee found that the Plan's

investment options were monitored on a regular basis and in accordance with

established guidelines and the advice of an independent employee benefits advisor.

Ex. 3 p. 2.  These findings are well-supported by the administrative record, which

extensively documents the Committee's selection and monitoring processes.  Ex. 7.

ERISA fiduciaries have "a continuing duty to monitor investments and

remove imprudent ones."  *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015).  In

exercising this duty, fiduciaries must exercise "the care, skill, prudence, and

diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). "[ERISA] does not give the federal courts a broad license to second-guess the investment decisions of retirement plans." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 2022 WL 2207557, *1 (6th Cir. June 21, 2022).  Rather, the prudence test "focus[es] on a fiduciary's conduct in arriving at an investment decision," specifically, "whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 716 (2d Cir. 2013) (quoting *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996)).

 "Courts have found that a variety of actions can support a finding that a fiduciary acted with procedural prudence, including, for example, … seeking outside legal and financial expertise, holding meetings to ensure fiduciary oversight of the investment decision, and continuing to monitor and receive regular updates on the investment's performance." *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 358 (4th Cir. 2014).  "[Fiduciaries] who appropriately investigate the merits of an investment decision prior to acting easily clear this bar." *Id.* (internal

punctuation omitted); *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 707-08 (W.D. Mo. 2019) (recognizing the use of a written investment policy and watch list to monitor funds as prudent conduct).

The present record is a model of a prudent decision-making process under these standards. The Plan's investment options were reviewed during quarterly Committee meetings attended by the Plan's Retirement Plan Manager (a non-voting administrator) and representatives from the Plan's recordkeeper (Prudential) and its professional advisor (Sean Waggoner). *See* Ex. 7.  The meetings followed an agenda and a consistent format. *See* Exs. 7-8.  Prior to meetings, Committee members received a "book" of meeting materials for each meeting that included a presentation on economic trends, summary performance information for each of the Plan's funds, and a copy of the Plan's written Investment Policy Statement ("IPS") containing guidelines for investment selection and retention. *See* Exs. 8-9.  Funds are placed on a watch list if they experience "significant under-performance versus funds of a similar discipline over three- AND five- year time periods" or "a real or perceived change in investment style or discipline," among other things. *Id.*

Plaintiffs were fully aware of these facts, yet the FAC alleges no plausible defect in this process.  Instead, it alleges that imprudence in the process can be inferred from the poor performance of the funds themselves.  But this approach

completely fails when held up against the record, which illustrates how the Committee followed its process in evaluating the funds specifically identified in the FAC as underperforming.  *See, e.g.*, Ex. 7 at ROLLINS_0000097-98, 0000102, 0000212, 0000217 (discussing specific investment options challenged in the FAC). This record shows reasoned decision-making based on adequate information and supported by professional advice.  Indeed, the FAC acknowledges—as it must— that the Committee consistently monitored the performance and management of all of the Plan's investment options.  FAC ¶ 378.  It then however mistakes these discussions for a breach of duty.

Even without this factual record, Plaintiffs' conclusory underperformance allegations would fail to state a prudence claim under *Twombly* and *Iqbal*.[5]  As the Sixth Circuit recently observed in affirming the dismissal of a similar case, "[D]isappointing performance by itself does not conclusively point towards deficient decision-making, especially when we account for 'competing

---

[5]   Motions to dismiss serve an important role in ERISA class actions because "meritless, economically burdensome lawsuits" can discourage employers from offering employee benefit plans in the first place.  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 424-25 (2014).  To preserve ERISA's balance between the competing goals of "ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans," courts should engage in a "careful, context-sensitive scrutiny of a complaint's allegations" in an effort to "divide the plausible sheep from the meritless goats."  *Id.*

explanations' and other 'common sense' aspects of long-term investments." *Smith*, 2022 WL 2207557, at *5.  Moreover, Plaintiffs fail to allege facts indicating that any of the Plan's investments materially underperformed in the first place.  While courts have allowed complaints to survive dismissal by comparing the performance of the plan's funds against a "meaningful benchmark," *see Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018), the FAC fails to do this.  At most, it alleges that the Plan's funds failed to beat a market index or the fund it replaced over time periods hand-picked by Plaintiffs.  *See, e.g.,* FAC ¶ 163 (comparing the Franklin Growth Fund to its benchmark, an index of growth stocks), ¶ 312 (comparing the Oakmark fund with the Dodge & Cox Balanced Fund, which it replaced in 2009), ¶ 325 (same with respect to the Hartford MidCap Fund and the Morgan Stanley-sponsored fund it replaced).  Other allegations draw vague comparisons between Plan funds and unspecified alternatives from different sponsors.  *See id.* ¶ 116 (comparing the performance of the GoalMaker constituent funds to unspecified "Vanguard comparable funds").  Nowhere does the FAC attempt to explain why these alternatives are meaningful benchmarks, as required under a *Twombly/Iqbal* analysis.  *See Meiners, supra; Riley v. Olin Corp.*, 2022 WL 2208953, *7 (E.D. Mo. June 21, 2022); *Kendall v. Pharmaceutical Prod. Dev.*, 2021 WL 1231415, *7 (E.D.N.C. May 31, 2021).

   b. <u>The Committee properly denied Plaintiffs' claims based on investment expenses.</u>

The FAC alleges that some of the Plan's mutual funds were imprudent because a cheaper alternative was available. *See, e.g.,* FAC ¶ 115. Investing in a mutual fund is never without cost. Fund sponsors compensate themselves and pay necessary fund-related expenses directly out of the fund's assets. *Id.* ¶ 113. A fund's reported net asset value is net of those fees, and is publicly reported together with its "expense ratio," the percentage of total assets taken out. *Id.* ¶ 112.

As an initial matter, there is nothing objectively unusual about the fees associated with the Plan's investments. Expense ratios generally ranged from .04% to 1.16%. See Ex. 18-26. Similar ranges have been approved as reasonable in other cases. *See, e.g., Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013) (affirming as reasonable a plan menu with expense ratios ranging from 0.03% to 2%), *vacated on other grounds*, 575 U.S. 523 (2015); *Loomis v. Exelon Corp.*, 658 F.3d 667, 669-72 (7th Cir. 2011) (same with ratios ranging from 0.03% to 0.96%); *Renfro v. Unisys Corp.*, 671 F.3d 314, 326-28 (3d Cir. 2011) (same with ratios ranging from 0.1% to 1.21%). Moreover, publicly available data show that the expense ratios tended to drop over time due to a variety of factors.[6]

---

[6] *See* Exs. 18-26. Some funds lowered their fees over time. *See, e.g.*, Ex. 6 at ROLLINS_0000016 (showing that the Franklin Growth Fund's ratio fell from

Plaintiffs nonetheless allege that the Rollins Defendants breached fiduciary duties by not selecting funds that had lower expense ratios.  These allegations fall into two categories: (1) an attack on "actively managed" funds,[7] and (2) a challenge to the Plan's historical practice of paying a portion of its own expenses through "revenue sharing."  The Committee rejected both types of claims, as have many courts at the dismissal stage.

(1) *Index Funds.*  Plaintiffs' broadside attacks on active management cannot support a claim.  *See Smith*, 2022 WL 2207557 at *3 ("We know of no case that says a plan fiduciary violates its fiduciary duty of prudence by offering actively managed funds to its employees as opposed to offering only passively managed funds"); *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) ("[N]othing in [ERISA]…requires plan fiduciaries to include any particular mix of investment

_____

0.69% in 2012 to 0.59% in 2019).  In other cases, fees dropped as a result of a fund change.  *See* Exs. 20-21 (showing that PIMCO Total Return Institutional Fund (0.46%) was replaced with Metropolitan West Total Return Bond Fund (0.39%)).  Finally, expense ratios were further lowered in 2018 when the Plan shifted to different share classes.  *See* Exs. 23-24.

[7]  Passively-managed index funds attempt to mimic the performance of a recognized market index, such as the Standard & Poor's 500 Index.  Actively-managed funds, in contrast, try to identify investment opportunities that allow investors to outperform broader market indices.  FAC ¶ 97; *Smith*, 2022 WL 2207557 at *1 ("[A]ctively managed funds, which require considerable judgment and expertise, charge more than passively managed funds….").

vehicles in their plans."); *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020) ("[I]t is not imprudent for a fiduciary to provide both [actively and passively managed funds]."); *Rosen v. Prudential Ret. Ins. & Annuity Co.*, 2016 WL 7494320, at *14 (D. Conn. Dec. 30, 2016) (dismissing prudence claims based on inclusion of actively managed funds in the plan's GoalMaker portfolios). ERISA affords fiduciaries considerable discretion in operating plans and eschews one-size-fits-all decision-making. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989) (a fiduciary's exercise of discretion "'is not subject to control by the court except to prevent an abuse by the trustee of his discretion'") (citation omitted); U.S. Dept. of Labor ("DOL"), Advisory Op. 2006-08A (Oct. 3, 2006) ("Within the framework of ERISA's prudence, exclusive purpose and diversification requirements, the Department believes that plan fiduciaries have broad discretion in defining investment strategies appropriate to their plans.").

Plaintiffs' conclusory allegations regarding active management and index funds are contradicted by the record, which confirms that the Rollins Defendants consistently reviewed the overall mix of investments, offered index funds at all times, and added more index funds over time. *See,* Ex. 7.  Allegations that are contradicted by documents referenced in the complaint or otherwise in the record are not treated as true for purposes of a motion to dismiss. *See Fisher v.*

*Citimortgage, Inc.*, 2013 WL 12106932, *4 (N.D. Ga. Jan. 29, 2013).  Moreover, by acknowledging that actively-managed funds are fully consistent with a well-managed portfolio, while recognizing that the Plan offered index funds, the FAC is self-defeating and should be dismissed.  *See Premier Concrete LLC v. Argos N. Am. Corp.*, 2021 WL 1209354, at *5 (N.D. Ga. Mar. 31, 2021) (dismissing complaint that "has a built-in defense and is essentially self-defeating").

(2) *Revenue Sharing*.  Plaintiffs' challenge to the Committee's selection of "revenue sharing" funds fares no better.  By way of background, some fund sponsors offer to pay a portion of the expense ratio, which is their own revenue, to recordkeepers to cover the cost of participant level services that the fund sponsor would otherwise have to perform itself.  *See Leimkuehler v. American United Life Ins. Co.*, 713 F.3d 905, 909 (7th Cir. 2013).  Recordkeepers can accept that revenue to mitigate or completely offset the amount they would charge the Plan for their services.  For many funds, this is an optional feature—the funds offer multiple share classes to plans: "retail" shares that include a revenue sharing component and "institutional" shares that do not.  *See id.*

The Plan's participants are ultimately responsible for the Plan's recordkeeping and other administrative expenses, and the Committee as administrator has wide discretion to decide how to charge those expenses to the

20

participants.  *See* Ex. 10 § 16.8.  Prior to 2018, the Plan exclusively used revenue sharing, and participants paid no direct fee for administrative expenses (besides transaction fees not at issue here).  *See* Exs. 18-23 (listing pre-2018 administrative fees).  In 2018, the Plan instituted a flat $43 fee, while simultaneously replacing several retail funds with their institutional counterparts to reduce revenue sharing. *See* Exs. 24-26 (listing new administrative fee); Ex. 7 at ROLLINS_0000174.  The record confirms that the Committee reviewed the relationship between revenue sharing and overall costs.  *See id.*

This belies Plaintiffs' conclusory allegations that the Rollins Defendants were inattentive to revenue sharing.  But even without the record, the FAC fails to state a claim.  Rather than plead facts showing that revenue sharing was imprudent in the particular context of the Plan, Plaintiffs attack the entire practice as a "kickback scheme."  *See* FAC ¶ 93.  But there is nothing illegal or *per se* imprudent about revenue sharing.  *See Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014); *Hecker*, 556 F.3d at 585; *see also Green v. Morningstar Inv. Mgmt. LLC*, 2019 WL 216538, *5 (N.D. Ill. Jan. 16, 2019) (dismissing RICO claims brought on behalf of a putative class of Rollins Plan participants which were premised on allegations that revenue sharing constituted racketeering activity). The FAC's allegations lack the something more needed to state a claim.

21

Plaintiffs' allegations that revenue sharing payments are "hidden fees" also miss the mark.  Plaintiffs cite academic literature from 2007 to support this allegation.  FAC ¶ 210.  The regulatory and industry landscape has changed substantially since then.  Since 2012, DOL rules have required recordkeepers to disclose their revenue sharing arrangements.  *See* 29 C.F.R. § 2550.404a-5; *Leimkuehler*, 713 F.3d at 909.  Prudential made these disclosures to the Plan.  Exs. 27-35.  The Plan, meanwhile, disclosed all of the information that the regulation requires, including the expense ratio for each fund, and notified participants that expenses may be paid by revenue sharing.  Exs. 18-26; *see also infra* pp. 31-32.

Under any standard of review, then, Plaintiffs' claim regarding fees must fail.  The plausibility standard requires a complaint to allege more than a theory of liability that could be equally consistent with proper conduct.  *See Twombly*, 550 U.S. at 557.  Because revenue sharing offers advantages that may be considered by fiduciaries, the FAC has failed to nudge its claims across the line from conceivable to plausible.  *See id.* at 570.

### 3.   The FAC Fails to State a Claim Regarding Monitoring of the Plan's Service Providers and Fiduciaries

The FAC's allegations that the Rollins Defendants failed to monitor recordkeeping and other fees were reviewed by the Committee, which found that "service providers were selected prudently with the help of an independent

22

employee benefits advisor and that efforts were made to maintain reasonable costs while maintaining quality services for the Plan and its participants, again with the help of an independent employee benefits advisor."  Ex. 3 p. 2.

The FAC repeatedly alleges that the Administrative Committee failed to solicit bids for recordkeeping services, by far the most significant expense for a 401(k) plan.  FAC ¶¶ 234, 300, 309.  But the record shows that in 2016 and 2017, the Committee undertook a comprehensive review of the Plan's recordkeeping fees and simultaneously conducted a request for proposals (RFP) for recordkeeping services.  Ex. 7 at ROLLINS_0000165, 0000168-169, 0000173.  Following the RFP, the Committee adopted an annual $43 per participant recordkeeping fee, while simultaneously replacing six of the Plan's retail funds with their institutional class counterpart.  *Id*. at ROLLINS_0000169.  The record fully shows that the Committee's determination had a reasonable basis.[8]

Even if this were not the case, Plaintiffs have failed to allege facts showing that the Rollins Defendants failed to control administrative costs.  As with claims challenging the prudence of investment options, Plaintiffs must identify a

---

[8]   The record also belies the FAC's allegation that the Rollins Defendants failed to monitor and control Alliant's compensation, which was capped at under $81,000 per year and was paid using revenue sharing funds.  See Ex. 36 at 73-75; Exs. 12-17 at Schedule C, Part I, Item 2.

meaningful benchmark demonstrating that the Plan's costs and fees were actually excessive in light of the services offered. *See Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009). Despite its length, the FAC offers only vague comparisons. *See, e.g.,* FAC at ¶ 237 (citing unspecified "publicly available information reported by similarly sized ERISA plans"); ¶ 239 (alleging "upon information and belief" that Prudential's compensation was "10 times" the amount of a reasonable fee). Plaintiffs never allege what the Plan's expenses actually were, nor do they attempt to show what other recordkeepers would have accepted as compensation for the same level of services. Without such a comparison, Plaintiffs cannot state a claim. *See Young, supra; Smith*, 2002 WL 2207557 at *6.

### 4.     Plaintiffs Fail to State a Duty of Loyalty Claim

Count II of the FAC alleges a breach of ERISA's duty of loyalty, 29 U.S.C. § 1104(a)(1)(A). "The duty of loyalty prohibits [fiduciaries] from engaging in transactions that involve self-dealing or that otherwise involve or give rise to conflict between the fiduciary duties and personal interests." *Santiago v. Univ. of Miami*, No. 1:20-cv-21784, 2021 WL 1173164, at *3 (S.D. Fla. Mar. 1, 2021), *report and recommendation adopted*, 2021 WL 1165441 (S.D. Fla. Mar. 26, 2021). To state a claim for breach of the duty of loyalty, Plaintiffs must plead facts suggesting that the fiduciary "acted for the purpose of benefiting third parties or

themselves." *Id.; see also Smith*, 2022 WL 2207557, at *7 (affirming dismissal of complaint that "failed to plead facts suggesting 'the fiduciary's operative motive was to further its own interests[.]'").

In addressing Plaintiffs' loyalty claim in the administrative process, the Committee found no evidence of conflicted decisions. Ex. 3 at 2. This finding is well-supported by the record, which shows that none of the challenged funds were proprietary to Prudential or the investment advisors (and obviously not to Rollins either), and that the Plan's advisors acted in an advisory role only.

The FAC fails to allege facts indicating that the Rollins Defendants acted out of an improper motive. It alleges that the Committee selected revenue sharing funds because they did not want to be billed directly for recordkeeping services. FAC ¶¶ 247-249. This simply describes how revenue sharing works. To state a disloyalty claim under ERISA, Plaintiffs cannot simply repackage allegations of imprudence as those of disloyalty; rather, "Plaintiffs must allege a specific conflict and harm resulting from the conflict." *In re ING Groep NV ERISA Litig.*, 749 F. Supp. 2d at 1351; *Santiago*, 2021 WL 1173164, at *3 (recognizing that loyalty and prudence claims "are separate claims with distinct elements").

Because Plaintiffs have failed to allege any facts showing that the Rollins Defendants acted for the purpose of providing benefits to themselves or a third party, the duty of loyalty claims should be dismissed.

### 5.     Plaintiffs Fail to State a Prohibited Transaction Claim

Counts V and VI allege that all of the Defendants violated ERISA's prohibited transaction rule, which prohibits fiduciaries from (a) causing the Plan to enter into certain types of transactions with a "party in interest" and (b) engaging in self-dealing involving plan assets.  29 U.S.C. § 1106(a)-(b).  In denying the analogous prohibited transaction claim in the administrative proceeding, the Committee found that it was derivative of Plaintiffs' prudence and loyalty claims. *See* Ex. 3 p. 2.  Based on the record, and Plaintiffs' failure to identify any basis for their prohibited transaction claims that was separate from their unsupported other claims, this finding was reasonable.

As with Plaintiffs' other claims, the facts alleged do not permit a plausible inference of prohibited transactions.  The rule does not prohibit ordinary arm's-length commercial relationships between plans and necessary service providers. *See Sellers v. Anthem Life Ins. Co.*, 316 F. Supp. 3d 25, 34 (D.D.C. 2018) (rejecting the circular argument that § 1106(a) prohibits all provision of services to a plan for compensation absent an exemption); *see also Ramos v. Banner Health*, 1

F.4th 769, 787 (10th Cir. 2021) ("[W]e conclude that some prior relationship must exist between the fiduciary and the service provider to make the provider a party in interest under § 1106."). A contrary rule would be an exercise in circular reasoning—it would mean that the very thing that makes a service provider a "party in interest" in the first place is prohibited. *See id.*

The FAC does not allege any relationship between the Rollins Defendants and any service provider that precedes, or in any way goes beyond, the normal relationship between a plan sponsor/administrator and the plan's service providers. Nor does the FAC plead any plausible facts showing that the Plan's service providers actually received excessive compensation in light of the services rendered.[9] At most, it speculates that discovery might reveal that service providers received a windfall through excess revenue sharing (which is not illegal and does not involve the receipt of plan assets). "Discovery should *follow* the filing of a well-pleaded complaint. It is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim." *Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir. 1981) (emphasis supplied).

---

[9]   As the FAC acknowledges explicitly, payments for "legal, accounting or other services necessary for the establishment or operation of the plan" are exempt from the rule so long as "no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(2)(A). FAC ¶ 470.

Finally, Plaintiffs fail to state a claim under § 1106(b) against the Rollins Defendants because there is no allegation that Rollins or any Committee member received Plan assets themselves for their personal accounts, or otherwise personally received a benefit from dealing with Plan assets.

### 6. Plaintiffs Fail to State a Claim for "Breach of Fiduciary Duty By Omission"

Finally, Count VII alleges that the Committee and its members breached fiduciary duties by not pursuing litigation to remedy prior prohibited transactions. Count VII is derivative of Plaintiffs' prohibited transaction allegations, which fail to state a claim as already noted. Since no other basis is alleged under Plaintiffs' "breach by omission" theory, Count VII fails as well.

### C. PLAINTIFFS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES AS TO THEIR NEW CLAIMS

The FAC also includes numerous allegations that deviate so thoroughly from the allegations in the *2019 Action*—which formed the basis for the administrative proceeding—that they constitute new claims. First, it alleges that the Rollins Defendants failed to properly vet and monitor the Plan's benefits advisor Sean Waggoner and his firm Alliant. *See* FAC ¶¶ 340-352. Second, it alleges that the manner in which the Plan allocated recordkeeping expenses among the participants violated ERISA. *See id.* ¶¶ 256-264. Third, it challenges the prudence of the

28

Prudential Guaranteed Fund, which was not previously included in Plaintiffs' list of challenged investments. *See* FAC ¶¶ 174-201; ECF No. 1; *2019 Action* ECF No. 1, 25. Fourth, the FAC alleges that the Defendants violated ERISA's disclosure requirements. *See* FAC ¶¶ 359-382.[10]

The governing Plan documents require the filing of an administrative claim prior to filing suit. Ex. 10 at ¶ 11.7; *see also* Dismissal Order at 11. The claim procedure is "a condition precedent to the commencement of any legal or equitable action." *Id.* Plaintiffs allege that they exhausted the administrative process and that further administrative review would be futile. *See* FAC ¶¶ 80-86. Neither allegation has merit. Plaintiffs were notified in the Appeal Decision Letter that they would need to submit new claims outside of the scope of their administrative claims to the Committee (*see* Ex. 38), but they did not do this. Allowing Plaintiffs to go forward with these claims would flout the administrative process.

As for futility, a plaintiff must allege facts establishing that the plaintiff was denied meaningful access to the plan's administrative appeals process. *See*

---

[10] The challenge to the Prudential Guaranteed Fund and the disclosure allegations were not included in the original complaint and thus are completely new. The Rollins Defendants addressed the other two "new" claims in their now-mooted motion to dismiss, placing Plaintiffs on further notice that these claims were required to be brought administratively. *See* ECF No. 48-1 at 29-32.

*Springer v. Wal-Mart Assoc. Group Health Plan*, 908 F.2d 897, 901 (11th Cir. 1990).  The FAC falls far short of this, alleging only that it is "clear" that the Committee does not intend to pursue claims against the Defendants.  *See Lanfear v. Home Depot, Inc.,* 536 F.3d 1217, 1224-25 (11th Cir. 2008) ("[T]he futility exception is about meaningful access to administrative proceedings, not a potential conflict of interest of the decision makers.").

Even if the new claims were properly brought, or the exhaustion requirement were waived, dismissal would be warranted.  The allegations regarding Mr. Waggoner do not in any way relate to the Plan or any Plan investment, or suggest that the Plan was adversely affected.  The claim appears to be based on an allegation that the Committee was investigating Waggoner's qualifications "in light of multiple class action lawsuits" alleging wrongdoing on his part.  *See* FAC ¶ 345.  The Committee minutes (Ex. 7) do not hint at the existence of any class action lawsuits involving Waggoner or the Committee's knowledge of the same.[11]

As for the allegations that Plan expenses were improperly allocated among participants, ERISA fiduciaries only need to have a reasonable basis for selecting a

---

[11]  Plaintiffs do not identify these alleged "class action lawsuits," and to this day, the Rollins Defendants are not aware of any such lawsuits.  This sort of allegation is precisely why administrative procedures exist as a tool to identify and resolve disputed questions of fact.

particular method of allocation.  *See* DOL Field Assistance Bulletin No. 2003-03 (May 19, 2003).  In addition, Plaintiffs do not allege sufficient facts to permit an inference that any of them were harmed by the Plan's chosen method of allocation (or, conversely, whether they benefited from it).

Plaintiffs' challenge to the Prudential Guaranteed Fund suffers from the same fatal flaws as their other claims regarding investment selection, in that they do not identify a meaningful benchmark.  Vague, conclusory allegations that the Guaranteed Fund was inferior to similar products in the market do not suffice.  *See Stark v. KeyCorp*, 2021 WL 1758269, *11 (N. D. Ohio May 4, 2021) (dismissing prudence claim involving stable value fund due to insufficient allegations of material underperformance); *Luense v. Konica Minolta*, 2021 WL 2103231, *11 (D.N.J. May 24, 2021) (dismissing prohibited transaction claims involving Prudential GIC due to conclusory nature of allegations).[12]

Finally, Plaintiffs do not state a disclosure claim.  The Plan fully disclosed all required fee-related information in compliance with applicable DOL regulations.  29 C.F.R. § 2550.404a-5(c) and (d) list the plan and investment-

---

[12]  The administrative record also shows that contrary to the FAC, the Committee did review the Guaranteed Fund and found it to be superior to similar stable value options offered by competitors.  *See* Ex. 7 at ROLLINS_0000169.

related information that must be disclosed to participants and when.  Complete and accurate disclosure in compliance with these subsections satisfies a fiduciary's disclosure obligations.  *See* 29 C.F.R. § 2550.404a-5(b); *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1073 (N.D. Cal. 2017); *Larson v. Allina Health Sys.*, 350 F. Supp. 3d 780, 807 (D. Minn. 2018) ("An ERISA fiduciary 'has no duty to disclose to plan participants information additional to that required by ERISA.'") (quoting *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 102 (2d Cir. 2005)).  The FAC does not allege that anything in the Plan's annual disclosures or quarterly participant statements was inaccurate.  And its attempts to frame the disclosures as "incomplete" (*see* FAC ¶ 366) are groundless.  *See Terraza*, 241 F. Supp. 3d at 1073 (fiduciaries have no duty to provide a breakdown of funds' expense ratios); *Bouvy v. Analog Devices, Inc.*, 2020 WL 3448385, *13 (S.D. Cal. June 24, 2020) (dismissing claim that defendants failed to disclose "the magnitude of revenue sharing").  The other alleged omissions fail because they are derived from allegations that are not actionable for reasons already discussed.

## D.   ERISA'S STATUTE OF REPOSE BARS CLAIMS BASED ON CONDUCT PRIOR TO SIX YEARS BEFORE THE ADMINISTRATIVE PROCEEDING COMMENCED

No ERISA breach claim may be brought later than "six years after (A) the date of the last action which constituted a part of the breach or violation or (B) in

the case of an omission, the latest date on which the fiduciary could have cured the breach or violation." 29 U.S.C. § 1113(1). The six-year rule is a statute of repose, "which 'effect[s] a legislative judgment that a defendant should be free from liability after the legislatively determined period of time.'" *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 774 (2020) (citation omitted) (alteration in original); *accord Secretary, U.S. Dep't of Labor v. Preston*, 873 F.3d 877, 883 (11th Cir. 2017) (holding that Section 1113(1) is a statute of repose).

This effectively bars all of Plaintiffs' exhausted claims against the Rollins Defendants based on conduct prior to December 10, 2014, which is six years before Plaintiffs submitted their claims for administrative review, and all new claims based on conduct prior to December 31, 2015, six years before the initial complaint was filed in this action. *See* Ex. 1. Large swaths of the FAC allege conduct occurring long before those dates. *See, e.g.,* FAC ¶ 262 (allegations regarding allocation of recordkeeping costs in 2009); *id.* ¶ 263 (inclusion of the Guaranteed Fund in 2010); *id.* ¶ 311 (replacement of Dodge & Cox Balanced Fund with the Oakmark Fund in 2009); *id.* ¶ 59 (allegations stemming from the Plan's retention of service providers "[i]n or before 2009"); *id.* ¶ 314 (decisions relating to the Oakmark Fund in 2013). Such allegations fail to support an actionable breach during the repose period.

**E.      THE FAC FAILS TO STATE A CLAIM FOR CO -FIDUCIARY LIABILITY**

Counts I-IV and VII allege co-fiduciary liability under 29 U.S.C. § 1105(a). *See* FAC ¶¶ 419, 437, 450, 465, 501.  Rather than alleging any specific facts to support the these claims, Plaintiffs simply state at the end of each Count that the Defendants "knowingly participated in each breach of the other Defendants, knowing that such acts were a breach, enabled the other Defendants to commit breaches by failing to lawfully discharge such Defendant's own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable and timely effort under the circumstances to remedy the breach."  *See id.*

These formulaic allegations fail to meet the *Iqbal/Twombly* standard of well-pleaded factual allegations.  Even if Plaintiffs could successfully plead an underlying breach, which they have not, the FAC falls short of alleging that the Rollins Defendants "knowingly" participated in or had actual knowledge of alleged breaches by other Defendants.  *See In re ING Groep,* 749 F. Supp. 2d at 1352 (holding that a claim for co-fiduciary liability requires the plaintiff to plead actual knowledge); *In re BP p.l.c. Sec. Litig.*, 2015 WL 6674576, at *11 (S.D. Tex. Oct. 30, 2015) (dismissing conclusory allegations of co-fiduciary liability as "paradigmatic examples of that which *Iqbal* expressly proscribes").  These failures are fatal to the co-fiduciary liability claims, and they should be dismissed.

34

**F.      THE RECORD OF THIS CASE SHOWS THAT DISMISSAL SHOULD BE WITH PREJUDICE AND THAT THE ROLLINS DEFENDANTS SHOULD BE AWARDED THEIR FEES**

The Court denied an attorneys' fee request in the *2019 Action*, holding that dismissal with prejudice was premature at that stage.  *See* Dismissal Order at 11. The developments since that time now justify dismissal with prejudice.  *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (repeated failure to cure deficiencies and futility of further amendment support dismissal with prejudice).  In addition, ERISA contains a statutory provision for the award of attorneys' fees.  29 U.S.C. § 1132(g)(1).  An award of fees is warranted by the haphazard pleading of the FAC, Plaintiffs' perfunctory participation in the administrative process, and the assertion of new claims that were not exhausted in the administrative process.

## CONCLUSION

For these reasons, the FAC should be dismissed with prejudice. Respectfully submitted this 15th day of July, 2022.

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ W. Bard Brockman*
W. Bard Brockman, Georgia Bar No. 084230
bard.brockman@bclplaw.com
Michael P. Carey, Georgia Bar No. 109364
michael.carey@bclplaw.com
Ann Ferebee, Georgia Bar No. 431941
Ann.ferebee@bryancave.com
One Atlantic Center, 14th Floor
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309
Telephone: (404) 572-6600
Facsimile: (404) 572-6999


Jeffrey S. Russell (*pro hac vice*)
jsrussell@bclplaw.com
211 North Broadway, Suite 3600
St. Louis, Missouri  63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020

*Attorneys for the Rollins Defendants*

## LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE

I hereby certify that the foregoing pleading has been prepared with Times New Roman 14 point font, one of the font and point selections approved by the Court in L.R. 5.1B, N.D. Ga.

This 15th day of July, 2022.

*/s/ W. Bard Brockman*
W. Bard Brockman


## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing **BRIEF IN SUPPORT OF THE ROLLINS DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 15th day of July, 2022.

*/s/ W. Bard Brockman*
W. Bard Brockman
Georgia Bar No. 084230

*Attorney for the Rollins Defendants*

# INDEX OF EXHIBITS

- Exhibit 1    December 10, 2020 letter from Paul Sharman to W. Bard Brockman
- Exhibit 2    December 21, 2020 letter from Eddie Northen to Paul Sharman
- Exhibit 3    March 1, 2021 letter from Eddie Northen to Paul Sharman
- Exhibit 4    March 9, 2021 letter from Paul Sharman to Eddie Northen
- Exhibit 5    March 19, 2021 email from W. Bard Brockman to Paul Sharman/Jon Pels
- Exhibit 6    February 15, 2021 memo from BCLP to Administrative Committee
- Exhibit 7    Compilation of Administrative Committee minutes
- Exhibit 8    Exemplar "book" of Administrative Committee meeting materials
- Exhibit 9    Investment Policy Statement as of February 23, 2018
- Exhibit 10   Amended and Restated Plan Document effective February 1, 2015
- Exhibit 11   Rollins 401(k) Savings Plan Prospectus dated January 2020
- Exhibit 12   Form 5500 for 2014
- Exhibit 13   Form 5500 for 2015
- Exhibit 14   Form 5500 for 2016
- Exhibit 15   Form 5500 for 2017
- Exhibit 16   Form 5500 for 2018
- Exhibit 17   Form 5500 for 2019
- Exhibit 18   ERISA 404(a) Disclosure – 2012
- Exhibit 19   ERISA 404(a) Disclosure – 2013
- Exhibit 20   ERISA 404(a) Disclosure – 2014
- Exhibit 21   ERISA 404(a) Disclosure – 2015
- Exhibit 22   ERISA 404(a) Disclosure – 2016
- Exhibit 23   ERISA 404(a) Disclosure – 2017
- Exhibit 24   ERISA 404(a) Disclosure – 2018
- Exhibit 25   ERISA 404(a) Disclosure – 2019
- Exhibit 26   ERISA 404(a) Disclosure – 2020
- Exhibit 27   ERISA 408(b)(2) Disclosure – 2012
- Exhibit 28   ERISA 408(b)(2) Disclosure – 2013
- Exhibit 29   ERISA 408(b)(2) Disclosure – 2014
- Exhibit 30   ERISA 408(b)(2) Disclosure – 2015
- Exhibit 31   ERISA 408(b)(2) Disclosure – 2016

- Exhibit 32    ERISA 408(b)(2) Disclosure – 2017
- Exhibit 33    ERISA 408(b)(2) Disclosure – 2018
- Exhibit 34    ERISA 408(b)(2) Disclosure – 2019
- Exhibit 35    ERISA 408(b)(2) Disclosure – 2020
- Exhibit 36    Service Agreement with Prudential
- Exhibit 37    February 19, 2021 BCLP slide presentation to Administrative Committee
- Exhibit 38    May 6, 2021 letter from Eddie Northen to Paul Sharman
- Exhibit 39    Form 5500 for 2020