# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| MARCIA G. FLEMING, CASEY FREEMAN, DAVID GUYON, ANTHONY LOSCALZO, PATRICK ROSEBERRY, and JULIO SAMANIEGO individually, on behalf of the Rollins, Inc. 401(k) Savings Plan and on behalf of all similarly situated participants and beneficiaries of the Plan, | |
| *Plaintiffs,* | |
| v. | |
| ROLLINS, INC.; THE ADMINISTRATIVE COMMITTEE OF THE ROLLINS, INC. 401(k) SAVINGS PLAN; BOTH INDIVIDUALLY AND AS THE *DE FACTO* INVESTMENT COMMITTEE OF THE ROLLINS, IC. 401(K) SAVINGS PLAN; EMPOWER RETIREMENT, LLC F/K/A PRUDENTIAL INSURANCE AND ANNUITY COMPANY; PRUDENTIAL BANK & TRUST, FBS, AS DIRECTED TRUSTEE OF THE ROLLINS, INC. 401(K) PLAN TRUST; ALLIANT INSURANCE SERVICES, INC.; ALLIANT RETIREMENT SERVICES, LLC; LPL FINANCIAL LLC; PAUL E. NORTHEN, JOHN WILSON, JERRY GAHLHOFF, JAMES BENTON and A. KEITH PAYNE in their capacities as members of the Administrative Committee; and John and Jane Does 1-10, | Civil Action No. 1:21-cv-05343-ELR |
| *Defendants.* | |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LPL FINANCIAL LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

BACKGROUND AND ALLEGATIONS ...........................................3

    I.    THE PLAN AND ITS SERVICE PROVIDERS.............................3

    II.   PLAINTIFFS' ALLEGATIONS IN THE FAC.............................5

LEGAL STANDARD..........................................................................6

ARGUMENT .......................................................................................8

    I.    PLAINTIFFS' CLAIMS AGAINST LPL ARE UNTIMELY
         UNDER ERISA'S SIX-YEAR STATUTE OF REPOSE ...............8

         A.    LPL's Limited Relationship with the Plan Ended in
                2012, Well Outside the Six-Year Repose Period .................8

         B.    Plaintiffs' Conclusory Allegations of Fraud or
                Concealment by Rollins and the Committee Do Not
                Make Their Claims Against LPL Timely ..........................11

    II.   THE FAC'S VAGUE COLLECTIVE ALLEGATIONS FAIL
         TO PROVIDE THE NOTICE REQUIRED UNDER RULE 8 .... 12

    III.  PLAINTIFFS' FIDUCIARY BREACH AND PROHIBITED
         TRANSACTION CLAIMS ALL FAIL BECAUSE THE FAC
         DOES NOT PLAUSIBLY ALLEGE THAT LPL WAS A
         FIDUCIARY ...............................................................................15

    IV.  EVEN ASSUMING LPL WAS A PLAN FIDUCIARY, THE
         FAC ALSO DOES NOT PLAUSIBLY ALLEGE A BREACH .... 17

    V.   THE FAC DOES NOT STATE A PLAUSIBLE CLAIM FOR
         CO-FIDUCIARY LIABILITY AGAINST LPL.............................23

    VI.  THE FAC DOES NOT PLAUSIBLY ALLEGE THAT LPL
         VIOLATED THE PROHIBITED TRANSACTION
          PROVISIONS IN ERISA § 406(a)(1)(C) AND (D)......................24

         A.    The FAC Does Not Plead Facts Showing that LPL
                "Caused" a Transaction with a Party in Interest, as
                Required to State a Claim Under ERISA § 406(a)...........25

         B.    Plaintiffs' ERISA § 406(a)(1)(C) and (D) Claims Also
                Fail on Other Grounds......................................................27

**TABLE OF CONTENTS**
**(continued)**

Page

VII.   THE FAC ALSO FAILS TO STATE A CLAIM AGAINST
LPL FOR FIDUCIARY SELF-DEALING IN VIOLATION
OF ERISA § 406(b) ....................................................................... 32

VIII.  PLAINTIFFS HAVE FAILED TO EXHAUST
ADMINISTRATIVE REMEDIES ............................................... 35

CONCLUSION.................................................................................................. 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel.*
  *Lyon v. Buth,*
  475 F. Supp. 3d 910 (E.D. Wis. 2020) ................................................. 23, 26

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................... 6, 23

*Baird v. BlackRock Instit. Tr. Co., N.A.,*
  403 F. Supp. 3d 765 (N.D. Cal. 2019) ........................................... 28

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..................................................................... 6

*Bickley v. Caremark RX, Inc.,*
  461 F.3d 1325 (11th Cir. 2006 ..................................................... 35

*Biller v. Prudential Ins. Co. of Am.,*
  2014 WL 4230119 (N.D. Ga. Aug. 26, 2014) ................................ 7

*Bleier v. Coca-Cola Co.,*
  2006 WL 2947057 (N.D. Ga. Oct. 16, 2006) ................................ 11

*Brown v. Delta Air Lines, Inc.,*
  2021 WL 2479091 (N.D. Ga. Mar. 9, 2021) .................................. 7

*Cho v. Prudential Ins. Co. of Am.,*
  2021 WL 4438186 (D.N.J. Sept. 27, 2021) ................................... 14

*Cotton v. Mass. Mut. Life Ins. Co.,*
  402 F.3d 1267 (11th Cir. 2005) ................................................... 27

*Daewoo Motor Am. v. Gen. Motors Corp.,*
  459 F.3d 1249 (11th Cir. 2006) ................................................... 7

*Danza v. Fid. Mgmt. Tr. Co.,*
  533 F. App'x 120 (3d Cir. 2013) ................................... 22, 24, 33, 34

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*David v. Alphin,*
704 F.3d 327 (4th Cir. 2013) .................................................................... 29

*Fifth Third Bancorp v. Dudenhoeffer,*
573 U.S. 409 (2014) .................................................................... 18

*Fleming v. Rollins, Inc.,*
2020 WL 7693147 (N.D. Ga. Nov. 23, 2020) ................................... 35

*Griffin v. Aetna Health Inc.,*
2017 WL 4423419 (N.D. Ga. June 21, 2017) .................................... 12

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.,*
530 U.S. 238 (2000) .................................................................... 32

*Harris v. Ivax Corp.,*
182 F.3d 799 (11th Cir. 1999) .................................................................... 6

*Hecker v. Deere & Co.,*
556 F.3d 575 (7th Cir. 2009) ............................................................. 28, 31

*Henderson v. Sun Pharms. Indus., Ltd.,*
809 F. Supp. 2d 1373 (N.D. Ga. 2011) ........................................... 10

*Horne v. Potter.,*
392 F. App'x. 800 (11th Cir. 2010) .................................................. 10

*In re BP p.l.c. Sec. Litig.,*
2015 WL 6674576 (S.D. Tex. Oct. 30, 2015) ................................... 23

*In re ING Groep, N.V. ERISA Litig.,*
749 F. Supp. 2d 1338 (N.D. Ga. 2010) ................................. 20, 23, 24

*Janese v. Scrufari,*
2013 WL 5503953 (W.D.N.Y. Oct. 2, 2013) .................................... 11

*Klaas v. Allstate Ins. Co.,*
21 F.4th 759 (11th Cir. 2021) .................................................................... 8

*Lane v. Cap. Acquisitions & Mgmt. Co.,*
2006 WL 4590705 (S.D. Fla. Apr. 14, 2006) ................................ 14

*Larson v. Northrop Corp.,*
21 F.3d 1164 (D.C. Cir. 1994) ...................................... 12

*Lockheed Corp. v. Spink,*
517 U.S. 882 (1996) ..................................... 26, 27

*Maxcess, Inc. v. Lucent Techs., Inc.,*
433 F.3d 1337 (11th Cir. 2005) ...................................... 7

*McCaffree Fin. Corp. v. Principal Life Ins. Co.,*
811 F.3d 998 (8th Cir. 2016) ................................... 27, 28

*Meiners v. Wells Fargo & Co.,*
898 F.3d 820 (8th Cir. 2018) ........................................... 6

*Miller v. Astellas US LLC,*
2021 WL 1387948 (N.D. Ill. Apr. 13, 2021)..................................... 24, 26, 28

*New Orleans Emps. Int'l Longshoremen's Ass'n, AFL-CIO Pension*
*Fund v. Mercer Inv. Consultants,*
635 F. Supp. 2d 1351 (N.D. Ga. 2009).......................................... 18

*Patrico v. Voya Fin., Inc.,*
2018 WL 1319028 (S.D.N.Y. Mar. 13, 2018)..................................... 28, 31, 32

*Pegram v. Herdrich,*
530 U.S. 211 (2000) ...................................... 15

*Ramos v. Banner Health,*
1 F.4th 769 (10th Cir. 2021) ....................................... 30

*Randall v. Scott,*
610 F.3d 701 (11th Cir. 2010)........................................ 6

*Renfro v. Unisys Corp.,*
671 F.3d 314 (3d Cir. 2011) ................................... 24, 28

*Santomenno v. Transamerica Life Ins. Co.,*
   883 F.3d 833 (9th Cir. 2018) ........................................................... 28

*Scott v. Aon Hewitt Fin., Advisors, LLC,*
   2018 WL 1384300 (N.D. Ill. Mar. 19, 2018) ...........................passim

*Sellers v. Anthem Life Ins. Co.,*
   316 F. Supp. 3d 25 (D.D.C. 2018) ........................................... 28, 30

*SFM Holdings, Ltd. v. Banc of Am. Sec., LLC,*
   600 F.3d 1334 (11th Cir. 2010) ......................................................... 7

*Sweda v. Univ. of Pa.,*
   923 F.3d 320 (3d Cir. 2019) ...................................................... 30, 31

*Thomas v. First Magnus Fin. Corp.,*
   2009 WL 10712143 (N.D. Ga. Mar. 3, 2009) ................................... 9

*Tibble v. Edison Int'l,*
   639 F. Supp. 2d 1122 (C.D. Cal. 2009) ..................................... 25, 33

*Turner v. Schneider Elec. Holdings, Inc.,*
   530 F. Supp. 3d 127 (D. Mass. 2021) ............................................. 28

*White v. Chevron Corp.,*
   2017 WL 2352137 (N.D. Cal. May 31, 2017) ................................. 30

*Williams v. Centerra Grp., LLC,*
   2021 WL 4227384 (D.S.C. Sept. 16, 2021) .............................. 26, 28

*Ziemba v. Cascade Int'l, Inc.,*
   256 F.3d 1194 (11th Cir. 2001) ...................................................... 12

**Statutes**

29 U.S.C. § 1002(14) ........................................................................ 25

29 U.S.C. § 1002(21)(A) ................................................................... 15

29 U.S.C. § 1002(38) ........................................................................ 17

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

29 U.S.C. § 1002(38)(A) ...................................................... 17

29 U.S.C. § 1101(b)(1) ........................................................ 31

29 U.S.C. § 1104(a) ............................................................. 5

29 U.S.C. § 1104(a)(1) ........................................................ 20

29 U.S.C. § 1104(a)(1)(B) .................................................... 18

29 U.S.C. § 1105 ................................................................ 5

29 U.S.C. § 1106 ................................................................ 5

29 U.S.C. § 1106(a) ........................................................... 15

29 U.S.C. § 1106(a)(1) .................................................. 26, 27

29 U.S.C. § 1106(a)(1)(C) ................................................... 25

29 U.S.C. § 1106(a)(1)(D) ................................................... 25

29 U.S.C. § 1106(b) ........................................................... 15

29 U.S.C. § 1106(b)(1) ....................................................... 33

29 U.S.C. § 1106(b)(2) ....................................................... 33

29 U.S.C. § 1106(b)(3) ....................................................... 34

29 U.S.C. § 1108 ................................................................ 5

29 U.S.C. § 1113 ............................................................... 11

29 U.S.C. § 1113(1)(A) ........................................................ 8

29 U.S.C. § 1132(a)(3) .................................................... 6, 31

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

**Other Authorities**

SEC, Investment Adviser Public Disclosure, Sean Paul
  Waggoner, https://adviserinfo.sec.gov/
  individual/summary/2748574 ........................................................ 10

**Regulations**

29 C.F.R. § 2510.3-21(c) ................................................................ 16

29 C.F.R. § 2550.408b-2(e) ........................................................... 32

# INTRODUCTION

LPL Financial LLC's limited association with the Rollins, Inc. 401(k) Savings Plan (the "Plan") concluded a decade ago. Plaintiffs' claims that LPL is responsible for the Plan's investment offerings and service provider arrangements are thus untimely under ERISA's six-year statute of repose. The Court can and should dismiss LPL from this case on that ground alone.

Plaintiffs' sprawling First Amended Complaint ("FAC") (ECF No. 53) also fails to state a claim against LPL for several other reasons. To start, the FAC violates basic Rule 8 requirements by repeatedly lumping LPL together with unrelated entities so as to obscure each defendant's distinct role and the factual basis for plaintiffs' claims against LPL in particular.

What can be discerned from the FAC does not amount to a plausible claim that LPL violated ERISA. Indeed, any fiduciary breach or prohibited transaction claim necessarily fails because the FAC does not plausibly establish that LPL provided investment advice to the Plan or otherwise acted as a Plan fiduciary—an essential element of each of those claims.

Even assuming LPL's fiduciary status, the FAC also fails to plausibly allege any breach of duty. Plaintiffs' claim that LPL breached ERISA's duty of prudence fails because plaintiffs do not identify *any* recommendations by LPL to the Plan fiduciary committee, and because the decisions ultimately

made by that committee were unobjectionable. Plaintiffs' claim that LPL breached a duty of loyalty, meanwhile, depends on vague allegations about "conflicted" financial incentives that are contradicted by documents properly before the Court on this motion. Plaintiffs' underdeveloped claim that LPL failed to comply with governing plan documents likewise does not clear the plausibility bar.

Plaintiffs fare no better with their claims that LPL caused the Plan to engage in prohibited transactions. LPL cannot be liable for merely receiving fees negotiated at arm's length with the Plan, and plaintiffs do not plead facts establishing that LPL "caused" the Plan to enter transactions with other service providers or even had any indirect involvement in those decisions. The "transactions" plaintiffs target in any event did not violate ERISA § 406(a)(1)(C) or (D). And plaintiffs' claim that LPL engaged in fiduciary self-dealing in violation of ERISA § 406(b) fails for the same essential reason as their disloyalty claim: documents central to plaintiffs' claims show that LPL did not have the ability to alter its own compensation by persuading the Plan fiduciary committee to offer particular investment options to participants.

After multiple attempts, plaintiffs still have failed to state a plausible claim against LPL. LPL should be dismissed from this lawsuit with prejudice.

**BACKGROUND AND ALLEGATIONS**

**I.    THE PLAN AND ITS SERVICE PROVIDERS**

Plaintiffs are six former employees of Rollins, Inc. ("Rollins") and participants in the Plan, which is a defined contribution 401(k) retirement plan sponsored by Rollins.  FAC ¶¶ 32-37.  The Plan Administrative Committee (the "Committee") served as the Plan administrator with responsibility for "select[ing] and monitor[ing]" Plan investment options and service providers.  FAC ¶ 45; *see id.* ¶¶ 47, 49.

Since at least 2009, the Plan's recordkeeper has been Prudential.  *See* FAC ¶ 56.  The terms of the Plan's service arrangement with Prudential are set forth in an administrative services agreement (the "Services Agreement").  *See* Exhibit 3 to Complaint (ECF No. 1-3); *see also* VerGow Decl. Exs. 13-14.

In or before 2009, Rollins and the Committee also retained the services of an investment advisor, Sean Waggoner.  *See* FAC ¶ 336.  In 2010, 2011, and 2012, the Plan paid fees for Waggoner's advisory services through LPL.  *See* FAC ¶¶ 336, 338; VerGow Decl. Exs. 2-4 (2010-2012 Form 5500s), Sched. C.[1]  Rollins and the Committee did not separately hire LPL to provide services to the Plan.  *See* FAC ¶ 343; *see also id.* ¶ 338 (alleging that entities

---

[1] The fees paid to LPL totaled $214,281.  VerGow Decl. Exs. 2-4 (2010-2012 Form 5500s), Sched. C.

including LPL "serv[ed] only as 'pass-through' entities").  From 2013 forward, the Plan paid fees for advisory services to other entities, but not LPL—in 2013, the Plan paid fees to both James E. Bashaw & Co. ("Bashaw") and Alliant, and from 2014 through 2020, the Plan paid Alliant alone.  *See* VerGow Decl. Exs. 5-12 (2013-2020 Form 5500s), Sched. C.

The mechanics of the payments for Waggoner's services are described in Exhibit L to the Services Agreement, which directed Prudential to make those payments on behalf of the Plan.  Effective April 1, 2010, the Services Agreement was amended to state that payments for Waggoner's services would be made to LPL.  VerGow Decl. Ex. 13.  The amendment specified that payments would be calculated based on the following formula:  "The annual Payment will equal 0.05% of the average investable plan assets invested in the Plan each year.  Investable Plan assets will exclude company stock and participant loans."  *Id.*  Exhibit L was amended effective April 1, 2012 to change the "payment recipient" from LPL to Bashaw.  VerGow Decl. Ex. 14.

The Plan's Form 5500 filings with the Department of Labor confirm that LPL received only direct compensation in connection with the Plan—*i.e.*, LPL did not receive additional compensation, such as revenue sharing from Plan investment options, beyond the fees described in the Services Agreement.  *See* VerGow Decl. Exs. 2-4 (2010-2012 Form 5500s), Sched. C.

## II.    PLAINTIFFS' ALLEGATIONS IN THE FAC

In general terms, the FAC alleges that Rollins and the Committee violated ERISA by selecting and retaining for the Plan imprudent investment options, failing to adequately monitor Plan service providers (including alleged advisors), and permitting the Plan to pay excessive fees to Prudential. *See* FAC ¶ 12.  Plaintiffs' primary theory as to LPL appears to be that LPL had a conflicted incentive to urge the Committee to use funds that paid higher revenue sharing and thereby increase LPL's own compensation. *See* FAC ¶ 215; *see also id.* ¶¶ 93, 104, 160, 219, 254, 261, 263, 266, 274, 346.

Plaintiffs name LPL in five Counts—Counts I, II, IV, V, VI—alleging breaches of fiduciary duty under ERISA § 404, 29 U.S.C. § 1104, and violations of ERISA's prohibited transaction provisions under ERISA § 406, 29 U.S.C. § 1106.  *See* FAC ¶¶ 390-486.  ERISA imposes on fiduciaries the duties of prudence, loyalty, and compliance with governing plan documents. 29 U.S.C. § 1104(a).  ERISA § 406 supplements these general fiduciary duties by prohibiting (subject to certain exceptions, *see* 29 U.S.C. § 1108) fiduciary self-dealing and specific types of transactions between a Plan and "parties in interest."  Plaintiffs pair their primary claims against LPL with allegations that LPL is liable as a co-fiduciary for purported breaches by other defendants, 29 U.S.C. § 1105, and that to the extent LPL was not a fiduciary,

it still may be held liable under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), for "knowing participation" in prohibited party-in-interest transactions.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Stating a plausible claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor do "naked assertions devoid of further factual enhancement" suffice. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In resolving a motion to dismiss, courts "begin by identifying" and setting aside "conclusory allegations that are not entitled to an assumption of truth." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). From there, the Court may consider not only the complaint's well-pled factual allegations, but also any "materials that are necessarily embraced by the pleadings." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018); *see Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999). When exhibits "attached

to the complaint or otherwise considered part of the pleadings contradict the allegations of the complaint, the exhibits control." *Brown v. Delta Air Lines, Inc.*, 2021 WL 2479091, at *12 n.8 (N.D. Ga. Mar. 9, 2021).

Here, the FAC directly references the Plan's annual Form 5500 filings with the Department of Labor as a basis for its allegations. *See* FAC ¶¶ 265, 292, 376. These materials are therefore appropriately considered in assessing whether plaintiffs have stated a claim. *See Daewoo Motor Am. v. Gen. Motors Corp.*, 459 F.3d 1249, 1266 n.11 (11th Cir. 2006) ("a document need not be physically attached to a pleading to be incorporated by reference into it" (quotation omitted)); *see also Biller v. Prudential Ins. Co. of Am.*, 2014 WL 4230119, at *3 (N.D. Ga. Aug. 26, 2014).

In addition, "a document outside the four corners of the complaint may still be considered" on a motion to dismiss "if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005). The Services Agreement defines the relationship among Rollins, Prudential, and the entities (including LPL) through which the Plan paid for Waggoner's services. Such contracts commonly are "central to a plaintiff's claim" and thus properly considered on a motion to dismiss. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *see Scott v. Aon Hewitt Fin.,*

*Advisors, LLC*, 2018 WL 1384300, at *4 (N.D. Ill. Mar. 19, 2018) (considering services agreements in granting motion to dismiss).

**ARGUMENT**

## I. PLAINTIFFS' CLAIMS AGAINST LPL ARE UNTIMELY UNDER ERISA'S SIX-YEAR STATUTE OF REPOSE

Plaintiffs' claims against LPL fail at the outset because they are universally time-barred. Under ERISA, a plaintiff *must* file suit within "six years after . . . the date of the last action which constituted a part of the breach or violation." 29 U.S.C. § 1113(1)(A). "Section 1113 'is a statute of repose, and not a mere statute of limitations'; it 'bars any suit that is brought after a specified time since the defendant acted, without regard to any later accrual.'" *Klaas v. Allstate Ins. Co.*, 21 F.4th 759, 772 (11th Cir. 2021).

### A. LPL's Limited Relationship with the Plan Ended in 2012, Well Outside the Six-Year Repose Period

Documents incorporated by reference into the FAC and integral to plaintiffs' claims establish that LPL did not receive any compensation from the Plan after 2012—far more than six years before plaintiffs filed their original complaint in December 2021. *See* VerGow Decl. Exs. 1-12 (2009-2020 Form 5500s), Sched. C. Indeed, plaintiffs' prior complaint explicitly alleged that the Plan paid compensation to LPL in 2012, and not thereafter. *See* Complaint (ECF No. 1) ¶¶ 155, 162-63. Although plaintiffs have deleted

these allegations in the FAC, the FAC does not allege any concrete facts indicating that LPL, in particular, received fees from the Plan after 2012.

The FAC is similarly devoid of well-pled allegations establishing that LPL provided services to the Plan (despite receiving no fees) after 2012. Plaintiffs attempt to disguise LPL's lack of involvement with the Plan after 2012 by lumping LPL together with Alliant, which *did* receive compensation within the repose period, under the "Defendant Investment Fiduciary" umbrella. *See, e.g.*, FAC at 5; *id.* ¶ 74 (alleging that "Defendant Investment Fiduciaries . . . provided advice or other services within six years of the filing of this action"). But the FAC pleads no facts showing that *LPL* had any relationship with the Plan in the repose period. The Court is not bound to accept conclusory and unsupported allegations—especially when those allegations are contradicted by documents incorporated into the complaint. *See, e.g.*, *Thomas v. First Magnus Fin. Corp.*, 2009 WL 10712143, at *3 n.7 (N.D. Ga. Mar. 3, 2009), *adopted*, 2009 WL 10712237 (N.D. Ga. Apr. 3, 2009).

Plaintiffs' allegation that the Plan's investment advisor, Waggoner, was an "affiliate[] and representative[]" of LPL (FAC ¶ 336) does not save their claims. As the FAC acknowledges, Waggoner was affiliated with different entities at different times between 2009 and the present. Plaintiffs allege that "[a]t relevant times," "Waggoner . . . was not affiliated with Alliant," and

that his "investment advisor license was with LPL or Bashaw" for what plaintiffs characterize as "much"—but not all—"of this time." FAC ¶ 342.

Publicly available SEC records on which plaintiffs expressly relied in their prior complaint—and which are properly subject to judicial notice—confirm that Waggoner was affiliated with multiple entities from 2009 forward, not just LPL.[2] In particular, Waggoner was not registered with LPL as an IAR—the services he provided to the Plan—at any time after October 2015. *See* SEC, Investment Adviser Public Disclosure, Sean Paul Waggoner, https://adviserinfo.sec.gov/individual/summary/2748574. And Waggoner was registered as an IAR with Bashaw from June 2010 until July 2013 and Alliant from July 2013 forward, *see id.*, when the Plan paid fees to those entities. *See* VerGow Decl. Exs. 5-12 (2013-2020 Form 5500s), Sched. C.

There is no basis to infer that Waggoner provided Plan services through his affiliation with LPL during periods when (1) only the other entities with which Waggoner was affiliated received fees from the Plan, (2) the Services Agreement listed a different payee for fees for Waggoner's

---

[2] *See, e.g.*, *Henderson v. Sun Pharms. Indus., Ltd.*, 809 F. Supp. 2d 1373, 1379 n.4 (N.D. Ga. 2011) ("The Court is permitted to take judicial notice of documents made publicly available by a government entity."); *see also, e.g.*, *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment.").

services, and (3) Waggoner was not registered as an IAR with LPL.  The

Court should reject plaintiffs' attempt to obscure what public disclosures

make plain:  all of plaintiffs' claims against LPL are long since time-barred.

### B.    Plaintiffs' Conclusory Allegations of Fraud or Concealment by Rollins and the Committee Do Not Make Their Claims Against LPL Timely

In a final effort to rescue their claims from ERISA's statute of repose,

plaintiffs point in the FAC to the statutory exception for "fraud or

concealment."  29 U.S.C. § 1113.  Specifically, plaintiffs assert that their

claims are timely "[b]ecause Named Plan Fiduciaries affirmatively concealed"

the alleged ERISA violations and plaintiffs "did not acquire actual

knowledge" of them "until late 2019."  FAC ¶ 79; *see also id.* ¶ 77.

These allegations have no bearing on the timeliness of plaintiffs' claims

*against LPL*, because plaintiffs allege fraud or concealment only by the

"Named Plan Fiduciaries"—*i.e.*, Rollins and the Committee.  *See* FAC ¶¶ 76-

79.  Even when adequately alleged, fraud or concealment tolls the statute of

repose only with respect to the defendant alleged to have taken steps to

conceal the alleged breaches of duty.  "The alleged fraudulent statements of

[one entity] cannot toll the statute as to [a different entity]."  *Bleier v. Coca-

Cola Co.*, 2006 WL 2947057, at *3 (N.D. Ga. Oct. 16, 2006); *see also, e.g.*,

*Janese v. Scrufari*, 2013 WL 5503953, at *4-5 (W.D.N.Y. Oct. 2, 2013).

Moreover, to invoke the exception to ERISA's statute of repose, plaintiffs must plead fraud or concealment with particularity under Rule 9(b). *See Griffin v. Aetna Health Inc.*, 2017 WL 4423419, at \*4 (N.D. Ga. June 21, 2017); *see also Larson v. Northrop Corp.*, 21 F.3d 1164, 1173 (D.C. Cir. 1994) (collecting cases). The FAC does not come close to satisfying that standard as to *any* defendant. *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (describing allegations required under Rule 9(b)).

In short, the FAC establishes no potentially actionable relationship between LPL and the Plan after 2012 and fails to plead fraud or concealment by LPL that would toll the statute of repose. Plaintiffs' claims against LPL are untimely and must be dismissed in their entirety.

## II. THE FAC'S VAGUE COLLECTIVE ALLEGATIONS FAIL TO PROVIDE THE NOTICE REQUIRED UNDER RULE 8

Although the Court need not go beyond the statute of repose to resolve LPL's motion to dismiss, the problems with plaintiffs' claims do not stop there. The FAC also fails to satisfy the basic pleading requirements of Rule 8—to provide adequate notice of the claims against each defendant. As noted above, the FAC repeatedly lumps LPL together with Alliant as the "Defendant Investment Fiduciaries." In over 130 pages of allegations, the FAC refers to the "Defendant Investment Fiduciaries" more than 100 times,

but specifically references LPL just six. While it is sometimes permissible to group related parties together for pleading purposes, there is no justification for treating LPL and Alliant—which are independent, unaffiliated parties—as if they were a single entity. This approach is all the more egregious given that the Form 5500s show that LPL had no involvement with the Plan after 2012, while Alliant received fees long thereafter. *See supra* at 3-4, 8.

Moreover, plaintiffs' generic references to the "Defendant Investment Fiduciaries" contradict the FAC's limited allegations about LPL individually. For instance, plaintiffs allege that LPL was never "specifically hired by Named Plan Fiduciaries to serve the plan and participants." FAC ¶ 343. Yet the FAC simultaneously asserts that Rollins and the Committee "hired and retained Defendant Investment Fiduciaries . . . to advise them on investment strategy and to recommend mutual funds for the plan's investment menu." FAC ¶ 330. These statements cannot both be true if each reference to the "Defendant Investment Fiduciaries" applies to *all* of those entities—*i.e.*, LPL and Alliant. And if plaintiffs intend allegations leveled at the "Defendant Investment Fiduciaries" to refer only to some unspecified subset thereof, that only confirms the insufficiency of the FAC under Rule 8.

The FAC also repeatedly refers to actions allegedly taken by "Defendants" with no further elaboration as to which defendant purportedly

did what.  The FAC, moreover, uses the general term "Defendants" in instances where construing it to apply to every defendant makes no sense. For example, plaintiffs allege that "Defendants" "failed to investigate the competence of and periodically monitor Prudential and the Defendant Investment Fiduciaries, which they had selected to provide services to the Plan and Plan participants."  FAC ¶ 400.  The FAC elsewhere appears to recognize that Prudential and the "Investment Fiduciaries" did not select *themselves* to provide services to the Plan, *see* FAC ¶¶ 45, 53-56, but provides no hint as to what, if anything, LPL allegedly did or was obligated to do with respect to other Plan service providers.

The FAC's repeated, vague references to the "Defendant Investment Fiduciaries" and "Defendants" make it impossible to ascertain what LPL is alleged to have done that purportedly violated ERISA.  The FAC therefore fails to afford the notice required by the Rule 8 and should be dismissed.  *See Cho v. Prudential Ins. Co. of Am.*, 2021 WL 4438186, at *6 (D.N.J. Sept. 27, 2021) (dismissing ERISA claims that "broadly attribute[d] misconduct to all 'Defendants' generally"); *see also, e.g., Lane v. Cap. Acquisitions & Mgmt. Co.*, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006), *aff'd sub nom. Lane v. XYZ Venture Partners, L.L.C.*, 322 F. App'x 675 (11th Cir. 2009).

## III. PLAINTIFFS' FIDUCIARY BREACH AND PROHIBITED TRANSACTION CLAIMS ALL FAIL BECAUSE THE FAC DOES NOT PLAUSIBLY ALLEGE THAT LPL WAS A FIDUCIARY

What can be deciphered from plaintiffs' opaque pleading does not state a claim against LPL for multiple reasons beyond the time-bar. Plaintiffs' breach of fiduciary duty, co-fiduciary liability, and prohibited transaction claims all fail at the threshold because the FAC does not allege facts establishing LPL's fiduciary status—an indispensable part of those claims.[3] *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); 29 U.S.C. § 1106(a), (b).

An entity is a fiduciary under ERISA only "to the extent" that it (1) exercises discretionary authority or control over a plan or plan assets, (2) renders investment advice for a fee, or (3) has discretionary authority over plan administration. 29 U.S.C. § 1002(21)(A). The FAC alleges that the "Defendant Investment Fiduciaries" were Plan fiduciaries under ERISA because they recommended investment options "for valuable consideration" and had "sufficient influence over Named Plan Fiduciaries with respect to their selection of investment options for the Plan." FAC ¶¶ 397, 426, 455; *see*

---

[3] The only basis for liability asserted against LPL that does *not* depend on plaintiffs establishing that LPL was a fiduciary is plaintiffs' alternative claim that LPL may be held liable as a non-fiduciary under ERISA § 502(a)(3) for knowing participation in prohibited transactions. As explained below, plaintiffs have not alleged facts supporting such a claim. *See infra* at 31-32.

*id.* ¶ 87 (alleging that Plan investment "options were selected and maintained by Rollins, the Administrative Committee, and its members, with input from and advice by Prudential and Defendant Investment Fiduciaries").   Department of Labor regulations specify that an individual "renders investment advice for a fee" under ERISA § 3(21)(A)(ii) only to the extent that it provides advice or recommendations "on a regular basis . . . pursuant to a mutual agreement, arrangement or understanding" with the plan "that such services will serve as a primary basis for investment decisions with respect to plan assets."  29 C.F.R. § 2510.3-21(c)(1).

The FAC does not allege facts demonstrating that LPL had such a "mutual agreement, arrangement or understanding" with the Plan—and thus fails to plausibly allege that LPL was a fiduciary under ERISA § 3(21)(A)(ii). The FAC's conclusory assertions that the "Investment Fiduciaries" provided advice about Plan investments are contradicted by allegations that those entities served "only as 'pass-through' entities" for fees for Waggoner's advisory services and did not themselves provide "services . . . necessary for operation of the plan."  FAC ¶ 338.  The FAC further alleges that LPL, in particular, was never "specifically hired by Named Plan Fiduciaries to serve the plan and participants."  *Id.* ¶ 343.  It is not plausible to infer that an entity that was not "specifically hired" to provide services to the Plan and

served as a mere "pass-through" nonetheless agreed with the Plan that it would provide advice on which the discretionary fiduciaries would rely. Plaintiffs' own allegations thus defeat their assertion of fiduciary status against LPL. *See, e.g.*, *Scott*, 2018 WL 1384300, at *6 (granting motion to dismiss where complaint did not plead facts establishing necessary "mutual agreement" to provide investment advice).

Plaintiffs elsewhere assert without support that LPL was a fiduciary "investment manager" under ERISA § 3(38), 29 U.S.C. § 1002(38). FAC ¶ 55. To qualify as an investment manager, a fiduciary must (among other things) have "the power to manage, acquire, or dispose of any assets of a plan." 29 U.S.C. § 1002(38)(A); *see* FAC ¶ 52. Investment managers, in other words, are *discretionary* fiduciaries. Yet the FAC does not plead facts indicating that LPL had discretionary authority over Plan assets. At most, plaintiffs allege that the "Investment Fiduciaries" provided advice to Rollins and the Committee, which made the ultimate decisions. *See, e.g.*, FAC ¶ 87.

## IV. EVEN ASSUMING LPL WAS A PLAN FIDUCIARY, THE FAC ALSO DOES NOT PLAUSIBLY ALLEGE A BREACH

Even if the FAC sufficiently alleged that LPL was a fiduciary under section 3(21)(A)(ii), plaintiffs' claims against LPL still would fail because the FAC does not plausibly allege a breach of the duties of prudence and loyalty,

or of the duty to follow plan documents.

**_Duty of prudence (Count I)._**  ERISA's duty of prudence requires a
fiduciary to act "with the care, skill, prudence, and diligence under the
circumstances then prevailing that a prudent man acting in a like capacity
and familiar with such matters would use in the conduct of an enterprise of a
like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).  The prudence
inquiry "focus[es] on whether the fiduciary employed appropriate methods to
reach an investment decision."  *New Orleans Emps. Int'l Longshoremen's
Ass'n, AFL-CIO Pension Fund v. Mercer Inv. Consultants*, 635 F. Supp. 2d
1351, 1372 (N.D. Ga. 2009).  Because the statutory standard is rooted in the
"circumstances then prevailing," the prudence inquiry is "context specific."
*Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

Plaintiffs' claim that the "Defendant Investment Fiduciaries" acted
imprudently is derivative of their claim that Rollins and the Committee
breached *their* duties in overseeing the Plan.  That is, plaintiffs allege that
the choices made by Rollins and the Committee were imprudent, and on that
basis ask the Court to infer that the "Investment Fiduciaries" must have
recommended an imprudent course of action or failed to provide information
Rollins and the Committee needed to make sound decisions.  *See* FAC ¶ 358.
Plaintiffs' allegations do not state a claim, for at least two reasons.

***First***, even assuming that LPL provided investment advice to the Plan, an advisor's role and responsibilities differ from those of the fiduciaries with discretionary authority over plan investment options and service arrangements. On plaintiffs' own account, Rollins and the Committee alone had ultimate authority to make such decisions on behalf of the Plan. *See, e.g.*, FAC ¶¶ 12, 45, 49, 87. To state a claim against alleged Plan advisors, plaintiffs must offer factual allegations from which the Court may reasonably infer not just that the Committee made poor choices, but that the "Investment Fiduciaries" employed an imprudent process in rendering their advice—which the Committee may or may not have followed.

The FAC does not include any well-pled factual allegations about the process the "Investment Fiduciaries" (let alone LPL in particular) supposedly undertook in advising the Committee. Plaintiffs offer only the conclusory generalizations that the "Investment Fiduciaries did not monitor the performance of the investment portfolios for the Plan in and outside GoalMaker to determine whether they performed as expected" and "failed to provide the Information that Named Plan Fiduciaries needed to have to perform timely review and monitoring of the investment portfolios." FAC ¶¶ 353-56. The FAC similarly says nearly nothing about the substance of any advice the "Investment Fiduciaries" (let alone LPL specifically) provided.

Plaintiffs supply only unadorned assertions that Prudential and the "Investment Fiduciaries" "pushed" or "recommended" certain investment options for the Plan. FAC ¶¶ 263, 269. That is not enough to support a plausible inference that any investment advice offered by LPL was flawed.

*Second*, as explained in the Rollins defendants' separate motion to dismiss (at 12-16), plaintiffs have not plausibly alleged that the investment options and service arrangements that Rollins and the Committee adopted were unreasonable choices for the Plan. Thus, even if it were plausible to infer that any decision the Committee made was directly traceable to advice or recommendations from the "Defendant Investment Fiduciaries" (and it is not), the FAC still would not state a claim against the alleged Plan advisors.

*Duty of loyalty (Count II).* The FAC also fails to plausibly allege a breach of ERISA's duty of loyalty by LPL. The duty of loyalty requires fiduciaries to act "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). "To state a claim for breach of the duty of loyalty based on conflicts of interest, plaintiffs must allege a specific conflict" and resulting harm. *In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1351 (N.D. Ga. 2010). The FAC does not satisfy this standard.

Plaintiffs' contention that the "Investment Fiduciaries" acted disloyally appears to rest on the unsubstantiated premise that those entities received

revenue sharing payments or "kickbacks" from certain investment options. According to plaintiffs, the "Investment Fiduciaries" therefore had an incentive to recommend investments that paid higher revenue sharing or "kickbacks" (rather than purportedly superior funds that did not) for their own financial benefit. *E.g.*, FAC ¶¶ 87, 160. The FAC, however, supplies no concrete factual allegations establishing a connection between specific funds offered in the Plan and any revenue sharing or "kickback" payment to LPL. *Cf. Scott*, 2018 WL 1384300, at *11 ("conclusory" allegations that payments to service provider were "illegal kickbacks" did not support plaintiff's claim).

Whatever incentives an advisor "theoretically" might have to skew its advice if it stood to benefit from the Plan offering particular funds with "higher revenue sharing payments," FAC ¶ 215, the Services Agreement and Plan Form 5500s demonstrate that LPL had no such incentive here. The Services Agreement shows that fees paid to "LPL Financial FBO Sean Waggoner" were calculated as a fixed percentage (0.05%) "of the average investable plan assets invested in the Plan each year." VerGow Decl. Ex. 13. That is, the compensation was based on a single flat rate applied across Plan assets without regard to which funds were included in the Plan menu. The Plan's Form 5500s similarly show that LPL received only *direct* compensation for services to the Plan—not indirect revenue sharing or other payments from

Plan investment options.  *See* VerGow Decl. Exs. 2-4.

The actual compensation scheme reflected in documents central to plaintiffs' claims does not support any theory of disloyalty, and Count II therefore fails as to LPL.  *See, e.g.*, *Danza v. Fid. Mgmt. Tr. Co.*, 533 F. App'x 120, 124 (3d Cir. 2013) (affirming dismissal of duty of loyalty claim where fee structure "was set in the agreement with [the plan sponsor] and [the service provider] did not have unilateral discretion to change it").

***Duty to follow plan documents (Count IV).***  In Count IV, plaintiffs assert a claim for failure to adhere to the terms of plan documents in violation of ERISA § 404(a)(1)(D).  Plaintiffs allege that the "Defendant Investment Fiduciaries" failed to comply with a plan provision requiring each Plan "investment manager" "to 'certify it is qualified to act as an "investment manager" within the meaning of ERISA Section 3(38).'"  FAC ¶ 457.  This claim cannot succeed because, as explained above, the FAC does not plead facts supporting its assertion that LPL was a discretionary "investment manager" to which the cited plan provision would apply.  *See supra* at 17.

The remainder of plaintiffs' plan-documents claim against "Defendants" (*see* FAC ¶ 459) is entirely conclusory.  Plaintiffs do not identify any particular provision of the multiple documents they reference that Defendants allegedly violated, let alone specify how those provisions were

violated and by whom.  *See id.*  Vague generalities do not state a claim.

## V.  THE FAC DOES NOT STATE A PLAUSIBLE CLAIM FOR CO-FIDUCIARY LIABILITY AGAINST LPL

Plaintiffs incorporate into Counts I, II, and IV an assertion that "each Defendant" is liable as a co-fiduciary for the breaches alleged therein.  FAC ¶¶ 419, 437, 465.  With no viable breach of fiduciary duty claim against *any* defendant, plaintiffs cannot begin to allege that LPL is liable as a co-fiduciary.  Plaintiffs, however, also allege no specific facts to support their co-fiduciary liability theory, merely parroting the language of the relevant statutory provision.  *See* FAC ¶¶ 419, 437, 465; 29 U.S.C. § 1105(a).  A plaintiff cannot state a claim based on such "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678; *see, e.g.*, *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*, 475 F. Supp. 3d 910, 944 (E.D. Wis. 2020) (dismissing co-fiduciary liability claim); *In re BP p.l.c. Sec. Litig.*, 2015 WL 6674576, at *11 (S.D. Tex. Oct. 30, 2015) (same).

The FAC is missing factual allegations essential to any theory of co-fiduciary liability.  A claim for co-fiduciary liability under sections 405(a)(1) or (3) requires allegations "that [the] defendant possessed actual knowledge of the breach by another fiduciary."  *In re ING Groep*, 749 F. Supp. 2d at 1352.  Plaintiffs allege no facts indicating that LPL had the requisite

knowledge, and bare assertions that each defendant "knew of the breaches by the other fiduciaries" are not enough. *Id.*; *see, e.g.*, *Miller v. Astellas US LLC*, 2021 WL 1387948, at *7 (N.D. Ill. Apr. 13, 2021). The third potential path to co-fiduciary liability, section 405(a)(2), requires a showing that a fiduciary breached *its own duties* and thereby enabled a co-fiduciary's breach. *See, e.g.*, *Renfro v. Unisys Corp.*, 671 F.3d 314, 325 n.5 (3d Cir. 2011). Because the FAC does not plausibly allege a breach by LPL, plaintiffs also necessarily have failed to state a claim against LPL under section 405(a)(2).

Finally, a defendant can be held liable as a co-fiduciary only if the defendant was a fiduciary at the time the alleged breach by another fiduciary occurred and shared fiduciary responsibility with respect to the challenged conduct. *See Danza*, 533 F. App'x at 124-25. Plaintiffs therefore cannot rely on ERISA's co-fiduciary liability provisions to charge LPL with responsibility for alleged breaches that occurred long after LPL's connection to the Plan had ended.

## VI. THE FAC DOES NOT PLAUSIBLY ALLEGE THAT LPL VIOLATED THE PROHIBITED TRANSACTION PROVISIONS IN ERISA § 406(a)(1)(C) AND (D)

In Count V, plaintiffs allege violations of ERISA § 406(a). Section 406(a) prohibits certain transactions between plans and "parties in interest," a term defined to include plan fiduciaries and persons "providing services to

such plan." 29 U.S.C. § 1002(14). Transactions prohibited under this provision include "furnishing of goods, services, or facilities between the plan and a party in interest" and the "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(C), (D).

Plaintiffs allege that "Defendants" "caused" the Plan to enter "a transaction" that violated these two provisions. FAC ¶¶ 472-73. The FAC does not specify which "Defendant" "caused" the offending "transactions," or even exactly which "transactions" plaintiffs contend violated section 406(a). These pleading failures alone are a sufficient basis for dismissal. *See, e.g.*, *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1122, 1127 (C.D. Cal. 2009).

Even if properly pled, plaintiffs could not articulate any viable theory of liability against LPL under section 406(a)(1)(C) or (D).

## A. The FAC Does Not Plead Facts Showing that LPL "Caused" a Transaction with a Party in Interest, as Required to State a Claim Under ERISA § 406(a)

Any claim that LPL violated ERISA § 406(a) fails in the first instance because the FAC does not allege facts showing that LPL "caused" the Plan to enter any allegedly prohibited transactions with the Plan's service providers—or to do anything at all. To proceed under section 406(a)(1), a plaintiff must "show that a fiduciary *caused* the plan to engage in the allegedly unlawful transaction." *Lockheed Corp. v. Spink*, 517 U.S. 882, 888

(1996) (emphasis added); *see* 29 U.S.C. § 1106(a)(1). Courts have rejected

"attenuated theor[ies] of causation" in the prohibited transaction context, and

have held that the causal chain is too "attenuated" where the allegations

indicate that a *different* fiduciary directly caused the challenged transaction.

*Miller*, 2021 WL 1387948, at *10; *see Williams v. Centerra Grp., LLC*, 2021

WL 4227384, at *11 (D.S.C. Sept. 16, 2021); *see also Appvion*, 475 F. Supp. 3d

at 944 (dismissing claim where allegations did not show that defendants had

"discretionary authority to demand that the transaction take place").

The FAC does not fairly suggest that LPL had authority to make *any*

decision for the Plan and thus provides no basis to infer that LPL "caused"

the alleged prohibited transactions. The FAC repeatedly alleges that *Rollins*

*and the Committee* had exclusive authority to make decisions about the

Plan's service arrangements and investment options, and to authorize the

payment of fees to service providers. The FAC alleges, for instance, that the

"Committee . . . made and effected investment decisions for the Plan during

the Class Period." FAC ¶ 49. It similarly alleges that the Committee

"appointed" Prudential as the Plan's recordkeeper, *id.* ¶ 56, and that Rollins

and the Committee "hired and retained Defendant Investment Fiduciaries,"

*id.* ¶ 330, and "caused" payment of fees to them, *id.* ¶ 338; *see also, e.g., id.*

¶¶ 87, 89, 104, 107, 127, 162, 169, 184, 198, 269, 291, 311, 321, 322, 336, 337.

These allegations demonstrate that even if the FAC sufficiently alleged that LPL provided investment advice to the Committee, LPL still was not in a position to "cause" the Plan to enter alleged prohibited transactions.

**B.    Plaintiffs' ERISA § 406(a)(1)(C) and (D) Claims Also Fail on Other Grounds**

Plaintiffs' prohibited transaction claims against LPL in Count V also suffer from multiple additional defects that require dismissal.

### 1.    *LPL Cannot Be Charged with Prohibited Transaction Liability Based on Its Own Receipt of Fees*

Plaintiffs cannot state a prohibited transaction claim against LPL based on LPL's own receipt of fees from the Plan, because LPL had no fiduciary role in retaining itself or setting the terms of its own compensation.

Section 406(a)(1) bars only *fiduciaries* from causing a Plan to engage in the specified transactions.  *See* 29 U.S.C. § 1106(a)(1); *Spink,* 517 U.S. at 888. Even if the FAC plausibly alleged that LPL was a Plan fiduciary for *some* purposes, "a service provider's fiduciary status under ERISA is not an all-or-nothing concept."  *McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1004 (8th Cir. 2016) (quotation omitted).  Rather, a "party is a fiduciary only 'to the extent' that it performs a fiduciary function."  *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005).

"It is well-established that a service provider to an ERISA plan does not

act as a fiduciary when negotiating its own fees with that plan." *Turner v. Schneider Elec. Holdings, Inc.*, 530 F. Supp. 3d 127, 139 (D. Mass. 2021); *see, e.g.*, *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 837-38 (9th Cir. 2018); *Renfro*, 671 F.3d at 324; *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009). Responsibility for decisions about service provider retention and compensation instead rests with the hiring fiduciaries. *See, e.g.*, *McCaffree*, 811 F.3d at 1003; *Patrico v. Voya Fin., Inc.*, 2018 WL 1319028, at *7 (S.D.N.Y. Mar. 13, 2018). Thus, "if a plan fiduciary negotiates the terms of its compensation with the plan at arm's length, and then adheres to those terms, its receipt of that compensation is unrelated to its fiduciary role." *Sellers v. Anthem Life Ins. Co.*, 316 F. Supp. 3d 25, 36 (D.D.C. 2018).

For this reason, courts have consistently held that a service provider "cannot be held liable under § 1106" based purely on receipt of fees for plan services. *Turner*, 530 F. Supp. 3d at 139; *see Williams*, 2021 WL 4227384, at *10; *Miller*, 2021 WL 1387948, at *9; *Baird v. BlackRock Instit. Tr. Co., N.A.*, 403 F. Supp. 3d 765, 789 (N.D. Cal. 2019). That principle requires dismissal of Count V insofar as it is based on fees received *by LPL* from the Plan.

> **2.    *The Complaint Does Not Plausibly Allege a Prohibited Transaction Claim Against LPL Based on the Plan's Relationships with Prudential or Alliant***

Any theory that LPL caused a violation of ERISA § 406(a)(1)(C) or (D)

with respect to Prudential or Alliant is also flawed in multiple respects.

**First**, in addition to the causation problem discussed above, the FAC does not allege facts plausibly suggesting LPL was involved in any way in retaining Prudential or Alliant. The FAC specifically states that the Committee appointed Prudential as the Plan's recordkeeper. *See* FAC ¶ 56. LPL logically *could not have* had any fiduciary role in causing the Plan to engage Prudential, because LPL's association with the Plan did not begin until after Prudential was engaged. *See* VerGow Decl. Ex. 1, Sched. C (2009 Plan Form 5500 listing Prudential, but not LPL, as service provider).[4] The FAC similarly fails to allege any facts connecting LPL to the retention of Alliant, focusing instead on Rollins and the Committee's actions to those ends. *See* FAC ¶¶ 53-54 (alleging that those entities "appointed" Alliant).

**Second**, the Plan Form 5500s show that Prudential and Alliant were both retained more than six years before plaintiffs filed their original complaint in this action (*i.e.*, before December 30, 2015). VerGow Decl. Exs. 1-12 (2009-2020 Form 5500s), Sched. C. Any prohibited transaction claim

---

[4] The Plan's ongoing relationship with Prudential was not a "transaction" under section 406. "The common understanding of the word 'transaction' implies that an affirmative action is required." *David v. Alphin*, 704 F.3d 327, 340 (4th Cir. 2013). Merely maintaining an existing investment or service provider cannot form the basis for liability. *See id.* at 340-41.

based on the retention of those entities is therefore barred by ERISA's six-year statute of repose.  *See, e.g.*, *White v. Chevron Corp.*, 2017 WL 2352137, at *22 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018).

*Third*, section 406(a)(1) "does not prohibit a plan from paying an unrelated party, dealt with at arm's length, for services rendered" simply because that entity will become a "party in interest" when it provides services to the plan.  *Sellers*, 316 F. Supp. 3d at 34; *see Ramos v. Banner Health*, 1 F.4th 769, 787 (10th Cir. 2021); *Sweda v. Univ. of Pa.*, 923 F.3d 320, 337 (3d Cir. 2019).  Rather, section 406(a)(1) applies only where plans contract for services "with persons who are 'parties in interest' by virtue of some *other* relationship—for example, with the employer who sponsors the plan." *Sellers*, 316 F. Supp. 3d at 34 (emphasis added).  This reading of section 406(a)(1) avoids the "absurd result" that an "agreement with a service provider would simultaneously transform that provider into a party in interest and make that same transaction prohibited."  *Ramos*, 1 F.4th at 787.

The FAC does not allege that Prudential or Alliant were *already* parties in interest to the Plan before they were retained to provide recordkeeping and investment advisory services.  Nor does the FAC otherwise supply any concrete "factual allegations that support an element of intent to benefit a party in interest"—*i.e.*, non-conclusory allegations

indicating that LPL had a subjective intent to benefit Prudential or Alliant

through the challenged transactions. *Sweda*, 923 F.3d at 337-40 (holding

that such allegations are required under sections 406(a)(1)(C) and (D)); *see*

*also, e.g.*, *Patrico*, 2018 WL 1319028, at *6-7 (speculative assertions "not

supported by facts" do not plausibly allege the necessary intent to benefit).

Without those essential allegations, plaintiffs cannot state a claim based on

the Plan's retention of, or agreement to pay fees to, Prudential or Alliant.

 **Fourth**, plaintiffs cannot ground their claim in service providers'

alleged ongoing receipt of revenue-sharing payments from mutual funds in

the Plan investment menu, because those payments are drawn from the

*mutual funds'* assets, which are not "plan assets." *See Sweda*, 923 F.3d at

339; *Hecker*, 556 F.3d at 584; 29 U.S.C. § 1101(b)(1). Courts have thus held

that payment of revenue sharing is not a "transfer of . . . assets of the plan"

covered by section 406(a)(1)(D). *See, e.g.*, *Sweda*, 923 F.3d at 339.

### 3. The FAC Does Not Plausibly Allege that LPL Knowingly Participated in a Prohibited Transaction as a Non-Fiduciary Party in Interest

 Plaintiffs allege in the alternative that even if LPL is not a fiduciary, it

still may be liable under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), for

knowingly participating in transactions prohibited by ERISA §§ 406(a)(1)(C)

and (D). *See* FAC ¶ 474. Having failed to plausibly allege a prohibited

transaction caused by *any* defendant, there is no possible basis for liability based on "knowing participation." *See Scott*, 2018 WL 1384300, at \*13-14.

Moreover, a plaintiff seeking equitable relief from a non-fiduciary under ERISA § 502(a)(3) must plausibly allege that the defendant "had actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 251 (2000). The FAC does not plead facts plausibly establishing LPL's knowledge that any other fiduciary caused the Plan to enter a transaction that violated ERISA § 406(a), and conclusory assertions do not suffice. *Cf. Patrico*, 2018 WL 1319028, at \*7 (complaint's conclusory allegations did not plausibly establish actual or constructive knowledge).

## VII. THE FAC ALSO FAILS TO STATE A CLAIM AGAINST LPL FOR FIDUCIARY SELF-DEALING IN VIOLATION OF ERISA § 406(b)

Count VI alleges violations of ERISA § 406(b), which prohibits transactions that involve fiduciary self-dealing. Section 406(b)'s prohibitions "are imposed upon fiduciaries to deter them from exercising the authority, control, or responsibility which makes [them] fiduciaries when they have interests which may conflict with the interests of the plans for which they act." 29 C.F.R. § 2550.408b-2(e).

Plaintiffs allege that "Defendants" violated ERISA § 406(b) because

they "each acquired valuable consideration as a result of the investment options recommended, selected, and retained in the Plan and as a result of revenue sharing arrangements among them." FAC ¶ 481. The FAC fails to state a claim against LPL under any of 406(b)'s three prongs.

***Section 406(b)(1)*** prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). As discussed above, the FAC's conclusory allegations that LPL, as one of the "Investment Fiduciaries," stood to receive additional revenue sharing proceeds based on specific funds offered in the Plan are refuted by documents central to plaintiffs' claims. *See supra* at 20-22. Even assuming LPL was a fiduciary advisor to the Plan, its mere receipt of pre-negotiated fees does not state a claim under section 406(b)(1). *See, e.g.*, *Danza*, 533 F. App'x at 126.

***Section 406(b)(2)*** prohibits a fiduciary from acting "in any transaction involving the plan on behalf of a party . . . whose interests are adverse to the interests of the plan or . . . its participants or beneficiaries." 29 U.S.C. § 1106(b)(2). When evaluating whether a fiduciary acted "on behalf of" an adverse party, courts have rejected "secret loyalty" theories—*i.e.*, arguments "that even though the fiduciaries were purportedly acting on behalf of the Plan," "in reality they were acting on behalf of a party with an adverse interest." *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1074, 1095 (C.D. Cal. 2009).

Plaintiffs here do not identify what "adverse party" LPL allegedly acted on

behalf of, and the FAC provides no basis to conclude that LPL ever acted on

behalf of *any* adverse party in a transaction with the Plan.

 ***Section 406(b)(3)*** prohibits a fiduciary from receiving "any

consideration for his own personal account from any party dealing with [the]

plan in connection with a transaction involving the assets of the plan." 29

U.S.C. § 1106(b)(3). Although not clearly articulated in the FAC, this claim

again appears to be based on the discredited theory that LPL received

payments from fund managers "dealing with [the] plan" in connection with a

"transaction" with the Plan, presumably the investment of Plan assets in the

fund. But as explained, LPL received only the fees to which it was entitled

under the Services Agreement, and those fees were not connected to any Plan

"transaction" with a third party. "[A] fiduciary cannot be liable under

§ 406(b)(3) for accepting compensation from a plan pursuant to a services

agreement negotiated at arms' length." *Scott*, 2018 WL 1384300, at *13.

 "Section 406(b)'s purpose is to prohibit transactions that might involve

self-dealing by a fiduciary, not to prevent fiduciaries from being paid for their

work." *Danza*, 533 F. App'x at 126. Plaintiffs have not plausibly alleged a

claim for violation of section 406(b) against LPL, and Count VI should be

dismissed along with all of plaintiffs' other claims.

## VIII. PLAINTIFFS HAVE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES

Finally, in addition to all of the problems with plaintiffs' allegations already discussed that support dismissal on the merits, plaintiffs' claims against LPL also suffer from a procedural defect:  plaintiffs have failed to exhaust administrative remedies.  *See, e.g.*, *Fleming v. Rollins, Inc.*, 2020 WL 7693147, at *2 (N.D. Ga. Nov. 23, 2020) (dismissing prior complaint for failure to exhaust).  The Plan broadly requires exhaustion of claims "concerning any aspect of the operation or administration of the Plan." Exhibit 1 to FAC (ECF No. 53-1) ¶ 11.7(a).  The FAC vaguely alleges that plaintiffs exhausted *some* "Administrative Claims," FAC ¶¶ 80-83, but the claims presented through the administrative process did not include claims against LPL, *see* Carey Decl. Exs. 1, 4 (ECF Nos. 48-4, 48-7).  To excuse this failure to exhaust, plaintiffs must make a "clear and positive showing of futility."  *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1326-29 (11th Cir. 2006) (quotation omitted).  Plaintiffs' bare assertion that exhaustion would be futile, FAC ¶ 85, does not suffice.  *See* Alliant Mot. to Dismiss FAC at 9-11.

## CONCLUSION

For all of these reasons, plaintiffs' claims against LPL should be dismissed in their entirety and with prejudice.

Dated:  July 15, 2022

Respectfully submitted,

*/s/ Meaghan VerGow*
Meaghan VerGow*
Deanna M. Rice*
Scott Harman-Heath*
**O'MELVENY & MYERS LLP**
1625 Eye Street NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383 5414
mvergow@omm.com
derice@omm.com
sharman@omm.com

Pamela Miller*
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
pmiller@omm.com


*/s/ Amy Cheng*
Amy Cheng, GA Bar No. 261897
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
201 17th Street NW
Atlanta, GA 30363
Telephone: (404) 322-6000
Facsimile: (404) 322-6050
amy.cheng@nelsonmullins.com

*Counsel for Defendant LPL
Financial LLC*

* Admitted *pro hac vice*

### **Local Rule 7.1(D) Certification of Compliance**

I hereby certify that the foregoing document has been prepared with Century Schoolbook font, 13 point, one of the font and point selections approved by the Court in N.D. Ga. Local Rule 5.d1B.

*/s/Amy Cheng*

## Certificate of Service

I hereby certify that, on July 15, 2022, I caused the foregoing

**Memorandum in Support of Defendant LPL Financial LLC's Motion to Dismiss Plaintiffs' First Amended Complaint** to be electronically filed with the Clerk of Court using the CM/ECF system, which will automatically notify all counsel of record.

*/s/Amy Cheng*