## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MARCIA G. FLEMING, CASEY FREEMAN, DAVID GUYON, ANTHONY LOSCALZO, PATRICK ROSEBERRY, and JULIO SAMANIEGO individually, on behalf of the Rollins, Inc. 401(k) Savings Plan and on behalf of all similarly situated participants and beneficiaries of the Plan, <br><br> Plaintiffs, <br><br> v. <br><br> ROLLINS, INC.; THE ADMINISTRATIVE COMMITTEE OF THE ROLLINS, INC. 401(k) SAVINGS PLAN, BOTH INDIVIDUALLY AND AS THE *DE FACTO* INVESTMENT COMMITTEE OF THE ROLLINS, INC. 401(K) SAVINGS PLAN; EMPOWER RETIREMENT, LLC F/K/A PRUDENTIAL INSURANCE AND ANNUITY COMPANY; PRUDENTIAL BANK & TRUST, FBS, AS DIRECTED TRUSTEE OF THE ROLLINS, INC. 401(K) PLAN TRUST; ALLIANT INSURANCE SERVICES, INC.; ALLIANT RETIREMENT SERVICES, LLC; LPL FINANCIAL LLC; PAUL E. NORTHEN, JOHN WILSON, JERRY GAHLHOFF, JAMES BENTON and A. KEITH PAYNE in their capacities as members of the Administrative Committee; and John and Jane Does 1-10, <br><br> Defendants. | Civil Action File <br> No. 1:21-cv-05343-ELR |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS ALLIANT INSURANCE SERVICES, INC. AND
ALLIANT RETIREMENT SERVICES, LLC'S MOTION TO
<u>DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT</u>**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................... 1

RELEVANT ALLEGATIONS ................................................................................ 3

I.  The Administrative Committee Has "Complete Control" Of The Plan ......... 3

II.  The Administrative Committee Hired Alliant As An Investment
Advisor To Help Inform The Committee's Plan Investment Decisions. ....... 4

III.  Alliant Received Only A Flat Contractual Fee For Its Services. .................. 6

LEGAL STANDARD ............................................................................................. 7

ARGUMENT .......................................................................................................... 8

I.  Plaintiffs' Claims Are Defective On Multiple Threshold Grounds. ............. 8

A.  Plaintiffs Did Not Exhaust Any Of Their Claims Against
Alliant. ................................................................................................. 8

B.  Plaintiffs' Claims Are Largely Time-Barred. .................................. 12

II.  Plaintiffs' "Duty Of Prudence" Claims Fail. ............................................. 15

A.  As An Investment Advisor, Alliant's Fiduciary Role Was
Limited. ............................................................................................. 16

B.  Plaintiffs Have Not Plausibly Alleged A "Duty Of Prudence"
Claim Based On Alliant's Investment Advice. ................................. 18

1.  Plaintiffs Have Not Plausibly Alleged That Alliant
Provided Any Imprudent Investment Advice. .......................... 18

2.  Plaintiffs' Allegations That The Administrative
Committee Made Bad Investment Decisions Cannot
Support A Plausible Inference That Alliant Breached Its
Duties. ...................................................................................... 20

a.  Plaintiffs' "Revenue Sharing" Allegations Fail. ........... 22

b.  Plaintiffs' "Underperformance" Allegations Fail. ........ 23

III.  Plaintiffs' "Duty Of Loyalty" Claim Fails. ............................................... 27

i

IV.  Plaintiffs Do Not Plausibly Allege That Alliant Failed To Adhere To The Governing Plan Documents. ..................................................28

V.  Plaintiffs' Prohibited Transaction Claims Fail.............................29

    A.  Plaintiffs' §1106(a) Claim Fails Because They Do Not Identify The Challenged Transaction. ............................................30

    B.  Plaintiffs' § 1106(b) Claim Fails For Multiple Reasons. ..................33

CONCLUSION ....................................................................................35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ 7, 31

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................. 7, 31, 32

*Bickley v. Caremark RX, Inc.*,
  461 F.3d 1325 (11th Cir. 2006) ................................................................ 8, 11

*Bryant v. Gen. Elec.*,
  2018 WL 894033 (M.D. Ga. Feb. 14, 2018) ................................................. 15

*Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*,
  137 S.Ct. 2042 (2017) ................................................................................ 12

*Carolinas Elec. Workers Ret. Plan v. Zenith Am. Sols., Inc.*,
  2015 WL 1395130 (N.D. Ga. Mar. 25, 2015) ............................................... 13

*Carolinas Elec. Workers Ret. Plan v. Zenith Am. Sols., Inc.*,
  658 F. App'x 966 (11th Cir. 2016) ................................................ 15, 16, 32, 34

*Carvel v. Godley*,
  404 F. App'x 359 (11th Cir. 2010) .............................................................. 32

*Cassell v. Vanderbilt Univ.*,
  285 F. Supp. 3d 1056 (M.D. Tenn. 2018) ..................................................... 34

*Cotton v. Massachusetts Mut. Life Ins. Co*,
  402 F.3d 1267 (11th Cir. 2005) .................................................................. 31

*Danza v. Fid. Mgmt. Tr. Co.*,
  533 F. App'x 120 (3d Cir. 2013) ................................................................. 28

*David v. Alphin*,
  704 F.3d 327 (4th Cir. 2013) ..................................................................... 33

*Davis v. Wash. Univ. in St. Louis*,
   960 F.3d 478 (8th Cir. 2020) ...................................................................18, 23, 24

*Dupree v. Prudential Ins. Co. of Am.*,
   2007 WL 2263892 (S.D. Fla. Aug. 7, 2007) .....................................................30

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014) ............................................................................................7

*Fleming v. Rollins, Inc.*,
   2020 WL 7693147 (N.D. Ga. Nov. 23, 2020) (Ross, J.) ....................8, 9, 10, 11

*Fuller v. SunTrust Banks, Inc.*,
   2019 WL 5448206 (N.D. Ga. Oct. 3, 2019) .......................................................18

*Griffin Indus., Inc. v. Irvin*,
   496 F.3d 1189 (11th Cir. 2007) .........................................................................19

*Griffin v. Aetna Health Inc.*,
   2017 WL 4423419 (N.D. Ga. June 21, 2017) ....................................................13

*Herman v. S.C. Nat. Bank*,
   140 F.3d 1413 (11th Cir. 1998) .........................................................................30

*Hughes v. Nw. Univ.*,
   142 S. Ct. 737 (2022) ......................................................................................7, 22

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
   140 S. Ct. 768 (2020) .........................................................................................12

*Kurtz v. Vail Corp.*,
   511 F. Supp. 3d 1185 (D. Colo. 2021) ..............................................................22

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996) ......................................................................................29, 30

*Meiners v. Wells Fargo & Co.*,
   898 F.3d 820 (8th Cir. 2018) .......................................................................21, 24

*New Orleans Emps. Int'l Longshoremen's Ass'n v. Mercer Inv. Consultants*,
635 F. Supp. 2d 1351 (N.D. Ga. 2009) ........................................... 25

*Pegram v. Herdrich*,
530 U.S. 211 (2000) .......................................................................... 16

*Pizarro v. Home Depot, Inc.*,
2019 WL 11288656 (N.D. Ga. Sept. 20, 2019) ......................... 21, 33

*Pledger v. Reliance Tr. Co.*,
240 F. Supp. 3d 1314 (N.D. Ga. 2017) ............................................ 15

*Renfro v. Unisys Corp.*,
671 F.3d 314 (3d Cir. 2011) ............................................................. 21

*Riley v. Olin Corp.*,
2022 WL 2208953 (E.D. Mo. June 21, 2022) .................................. 24

*Romano v. John Hancock Life Ins. Co. (USA)*,
2022 WL 1450770 (S.D. Fla. May 9, 2022) ..................................... 27

*Santomenno v. Transamerica Life Ins. Co.*,
883 F.3d 833 (9th Cir. 2018) ........................................................... 33

*Seborowski v. Pittsburgh Press Co.*,
188 F.3d 163 (3d Cir. 1999) ............................................................ 29

*Sellers v. Anthem Life Ins. Co.*,
316 F. Supp. 3d 25 (D.D.C. 2018) ................................................... 33

*Smith v. CommonSpirit Health*,
37 F.4th 1160 (6th Cir. 2022) ......................................... 21, 23, 24, 25

*Suozzo v. Bergreen*,
2002 WL 1402316 (S.D.N.Y. June 27, 2002) .................................. 31

*Tibble v. Edison Int'l*,
575 U.S. 523 (2015) ................................................................... 14, 15

*White v. Chevron Corp.*,
  2017 WL 2352137 (N.D. Cal. May 31, 2017) .................................................34

*Wright v. Oregon Metallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004)...........................................................................34

**Statutes**

29 U.S.C. § 1002(21)(A)(ii) .................................................................... 16, 17

29 U.S.C. § 1002(38) ............................................................................ 17, 28, 29

29 U.S.C. § 1104(a)(1)(A) ........................................................................... 8, 27

29 U.S.C. § 1104(a)(1)(B)............................................................................ 8, 18

29 U.S.C. § 1104(a)(1)(D) ........................................................................... 8, 29

29 U.S.C. § 1106(a).................................................................................*passim*

29 U.S.C. § 1106(b) ................................................................................*passim*

29 U.S.C. § 1109(a) ......................................................................................... 18

29 U.S.C. § 1113 ........................................................................................ 12-13

**INTRODUCTION**

Plaintiffs are current and former participants in the 401(k) plan that Rollins, Inc. ("Rollins") maintains for the benefit of its employees ("Plan"). Plaintiffs claim the Plan offered overpriced or underperforming investment options and paid the Plan's third-party service providers too much.

The operative First Amended Complaint ("FAC"), Dkt. 53, is Plaintiffs' fourth attempt to state a claim under ERISA, 29 U.S.C. § 1001, *et seq*. In their zeal to get a claim across the line, Plaintiffs have paid little mind to pleading standards, controlling ERISA principles, or their obligation to make allegations consistent with a reasonable investigation. Instead, Plaintiffs offer a firehose of conclusory assertions, incorrect legal arguments, repetitious labels, and counterfactual allegations negated by documents attached to their own pleadings. Plaintiffs' apparent hope is that a confusing thicket of allegations will disguise the lack of well-pleaded facts supporting their claims. But this strategy does not help them against Alliant,[1] a third-party investment advisor to the Plan, as explained below.

To start, all five of the fiduciary-breach and prohibited-transactions claims against Alliant must be dismissed due to Plaintiffs' admitted failure to exhaust those

---

[1] For simplicity, we refer to Alliant Insurance Services, Inc. and Alliant Retirement Services, LLC, collectively as "Alliant."

claims through the Plan's administrative process. Plaintiffs' request that the Court excuse this failure on futility grounds is insufficient under Eleventh Circuit law. Moreover, all five claims are time-barred in large part, as they are based on conduct outside of ERISA's six-year statute of repose (*i.e.*, before December 30, 2015).

On the merits, Plaintiffs' claim for breach of the fiduciary duty of prudence (Count I) fails because Plaintiffs do not offer a single well-pleaded factual allegation regarding Alliant's process for rendering investment advice, even though they have filed a decade's worth of documents reflecting that process. And while Plaintiffs speculate that Alliant might have provided imprudent investment *advice* by arguing that the Rollins Administrative Committee made imprudent investment *decisions*, their allegations do not plausibly support any such inference.

Plaintiffs' claim for breach of the fiduciary duty of loyalty (Count II) fails because it is based on a conclusory premise entirely unsupported by well-pleaded facts: that Alliant earned "indirect compensation" or "kickbacks" by recommending certain investment options to the Plan. Plaintiffs offer no supporting facts because none exists. Alliant received only a flat annual fee for its advisory services, the *amount* of which had *no relation* to the investment options offered in the Plan—information that is self-evident from contractual documents Plaintiffs filed and public filings that the Court may properly consider as well.

Plaintiffs also claim Alliant failed to adhere to the governing Plan documents (Count IV), but point only to a Plan provision applicable to investment *managers*. As Plaintiffs elsewhere (repeatedly) acknowledge, Alliant was only an investment *advisor* to the Plan. Thus, the Plan provision that Plaintiffs identify is wholly irrelevant to Alliant—a conclusion Plaintiffs could have easily reached if they had taken seriously their obligation to exhaust the Plan's administrative process before filing their baseless claims against Alliant and a growing list of Defendants.

Finally, Plaintiffs claim Alliant engaged in prohibited transactions under 29 U.S.C. §§ 1106(a)-(b) (Counts V and VI). Section 1106(a) prohibits "insider" transactions between plan fiduciaries and "parties in interest," but Plaintiffs fail even to identify the *transaction* they are ostensibly challenging. Section 1106(b) prohibits Plan fiduciaries from entering into "self-dealing" transactions. While Plaintiffs do at least identify the transactions they challenge in this claim, it does not help them because, as a matter of law, Alliant was *not* a fiduciary with respect to those transactions, and the claim is time-barred in any event.

## RELEVANT ALLEGATIONS

## I. The Administrative Committee Has "Complete Control" Of The Plan.

The Rollins Administrative Committee has "complete control of the administration of the Plan." Plan Document § 12.3(a); FAC ¶ 47 (same). This

includes sole responsibility to "ma[k]e and effect[ ] investment decisions for the Plan." FAC ¶ 49; *id.* ¶ 45 (Administrative Committee "selected and monitored . . . investment [f]unds under the Plan"); Plan § 12.7(b)(3) (Administrative Committee has sole authority for selecting and monitoring Plan investments).[2] In carrying out this duty, the Administrative Committee had authority to hire "one or more persons to render [investment] advice." Plan § 12.7(b)(4); FAC ¶ 49 (same).

## II. The Administrative Committee Hired Alliant As An Investment Advisor To Help Inform The Committee's Plan Investment Decisions.

Pursuant to its authority above, "the Administrative Committee hired and retained" Alliant "to advise them on investment strategy and to recommend mutual funds for the [P]lan's investment menu." FAC ¶ 330; Dkt. 1-5, Investment Policy Statement ("IPS"), § II.B (investment advisors are selected "based upon criteria established by the Administrative Committee"). Under the IPS, Alliant was expected to provide "additional expertise in formulating the Investment Policy, recommending investment funds, and evaluating those funds' overall performance." IPS § II.B; *see also* FAC ¶¶ 219, 336 (same).

Alliant attended every meeting of the Administrative Committee, which convened at least quarterly. *See* Dkt. 1-2 (original Complaint, Ex. 2, Administrative

---

[2] The Plan states the "Investment Committee" will have this power, *id.*, but clarifies "the Administrative Committee will serve as the Investment Committee," *id.* § 1.44.

Committee meeting minutes) ("Minutes"). Before each meeting, Alliant prepared a written "Investment Review" for the Committee. *See* Dkt. 48-11 (Rollins MTD, Ex. 8) at 2-47. The Investment Reviews included a detailed examination of U.S. and global markets (*id.* at 2-24); historical performance analysis for each Plan investment option (*id.* at 25-30); asset allocations across the Plan investment options and other aggregate Plan statistics (*id.* at 31-34); an "Investment Scorecard" grading each Plan investment option based on a multi-factor formula accounting for performance and cost (*id.* at 35-36); and individual "tear sheets" reflecting summary performance data for each Plan investment option (*id.* at 37-47).

At each quarterly meeting, "[a]ll matters in the[se] materials were discussed among the [Administrative] Committee and [Alliant] at length, including the fund managers, fund performance, and expense ratios." *See, e.g.*, Minutes at 130, 134, 138, 144. During these meetings and consistent with the IPS, Alliant would, from time to time, recommend that certain investments be placed on the Administrative Committee's "Watch List" due to performance or other concerns. *See, e.g.*, FAC ¶¶ 317, 378; Minutes at 134 (suggesting two funds for Watch List), 144 (suggesting one fund to add and one to remove from Watch List); IPS § IV.C ("Monitoring and Control"). Similarly, Alliant would also research and propose potential replacement fund options for the Committee to consider. *See, e.g.,* Minutes at 199-200.

In all events, the Administrative Committee would decide whether to retain or replace a fund on the Watch List, and when a fund was removed from the Plan, would decide which (if any) proposed replacement fund would be selected. IPS §§ II.A, IV.C; Plan § 12.3(a); FAC ¶ 87 ("At all relevant times," the Plan's investment options "were selected and maintained by" the Administrative Committee, "with input from and advice by" Alliant).

## III. Alliant Received Only A Flat Contractual Fee For Its Services.

Alliant was paid a flat annual fee of $80,750 for its services to the Plan. Dkts. 51-9, 51-10, 51-11, 51-12, 51-13, 51-14 (2015-2020 Forms 5500 for the Plan), at Sched. C, Part I(2)(d) (listing Alliant's annual compensation). Alliant's compensation was paid through "revenue sharing," which Prudential received from Plan investment options and passed along to Alliant pursuant to Prudential's recordkeeping agreement with the Plan sponsor. Dkt. 1-3 (original Complaint, Ex. 3, Prudential Serv. Agmt.) at ECF p. 73-75 ("$80,750 for each calendar year" will be paid to Alliant using "recordkeeping revenue" received by Prudential).[3] Thus, "revenue sharing" had no effect on the ***amount*** of Alliant's flat fee; it was simply a source of revenue used to pay Alliant's fixed contractual fee of $80,750 per year.

---

[3] The Agreement says this amount will be paid for "Plan 006974," which is the number Prudential uses for the Plan at issue here. *See id.* at ECF p. 35.

## LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Under this standard, the Court must disregard allegations that are "no more than conclusions," because they are "not entitled to the assumption of truth." *Id.* at 679. The remaining allegations must establish "more than a sheer possibility that a defendant has acted unlawfully," but, rather, that such a claim is plausible. *Id.* at 678. A claim is plausible only if the well-pleaded facts establish a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires "direct or inferential allegations respecting all the material elements necessary to sustain" the claims asserted against each defendant. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007).

Rule 12(b)(6) is an "important mechanism" for "weeding out meritless [ERISA] claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). The appropriate analysis entails "careful, context-sensitive scrutiny of a complaint's allegations" to determine whether it states a claim that is plausible, *id.*, giving "due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022).

# ARGUMENT

Plaintiffs bring five ERISA claims against Alliant: (i) breach of the fiduciary duty of prudence, 29 U.S.C. § 1104(a)(1)(B) (Count I); (ii) breach of the fiduciary duty of loyalty, § 1104(a)(1)(A) (Count II); (iii) breach of the fiduciary duty to act in accordance with the governing Plan documents, § 1104(a)(1)(D) (Count IV); (iv) causing or knowingly participating in a transaction prohibited by § 1106(a) (Count V); and (v) causing a transaction prohibited by § 1106(b) (Count VI). Each of these claims should be dismissed, as demonstrated below.

## I. Plaintiffs' Claims Are Defective On Multiple Threshold Grounds.

### A. Plaintiffs Did Not Exhaust Any Of Their Claims Against Alliant.

At the outset, all of Plaintiffs' claims against Alliant should be dismissed because Plaintiffs have not asserted them through the Plan's administrative process. "In the Eleventh Circuit, it is well-settled that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Fleming v. Rollins, Inc.*, 2020 WL 7693147, at *2 (N.D. Ga. Nov. 23, 2020) (Ross, J.) (quoting *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000)). This strict exhaustion requirement applies to Plaintiffs' claims against Alliant: alleged "violation[s] of ERISA itself" by a plan service provider. *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1326-29 (11th Cir. 2006).

As this Court has already recognized, the Plan has an administrative process for hearing "*any* grievance, complaint or claim concerning *any* aspect of the operation or administration of the Plan." Plan § 11.7(a) (emphasis added); *Fleming*, 2020 WL 7693147, at *4. Plaintiffs inadequately used this process to exhaust *some* of their claims against Rollins and the Administrative Committee, after this Court dismissed Plaintiff Fleming's original action on exhaustion grounds. FAC ¶ 80-83. But Plaintiffs *never* used the process to pursue their claims against Alliant or any other service-provider defendant,[4] despite the Court's previous emphasis on the Eleventh Circuit's "strict" enforcement of the exhaustion requirement and "the purposes underlying" that rule. *Fleming*, 2020 WL 7693147, at *3-4.

Recognizing this problem, Plaintiffs ask the Court to excuse them from the exhaustion requirement as to Alliant on futility grounds. FAC ¶ 85. This is the same argument Plaintiff Fleming made when trying (unsuccessfully) to bypass the exhaustion requirement the first time around. *Fleming*, 2020 WL 7693147, at *4. The Court rejected the argument, recognizing "the narrow scope" of the futility

---

[4] To be sure, Plaintiffs allege they exhausted unspecified "Administrative Claims." FAC ¶¶ 80-83 (identifying these claims as the ones submitted to the Administrative Committee on December 10, 2020). But none of the "Administrative Claims" included any of the claims Plaintiffs now raise against Alliant. *See* Dkt. 48-4 (Plaintiffs' Dec. 10, 2020 claim letter, requesting adjudication of five "specific claims," none of which even mentions Alliant). Plaintiffs do not contend otherwise.

exception. *Id.* at *3. As this Court explained at that time, Plaintiff Fleming could not satisfy the "high standard" for invoking the narrow futility exception because (i) her claims against Rollins were in their "infancy" and so "the development of a factual record through the administrative process would benefit the Court," and (ii) she had "completely bypassed the administrative process," making her claims of futility "speculative." *Id.* at *4-5.

The same analysis applies here. First, Plaintiffs' claims against Alliant are in their infancy: one was raised for the first time in the original Complaint in this action, and *four more* have been raised for the first time in the operative FAC. Thus, all of Plaintiffs' claims against Alliant were raised *after* their brief and half-hearted foray with the administrative process, leaving little opportunity to develop "a factual record . . . [that] would benefit the Court" as to those claims, beyond the record of Administrative Committee meeting minutes and materials Plaintiffs have filed (but largely ignore). *Id.* That failure helps explain why Plaintiffs have filled over 100 pages of the FAC with unsupported and incorrect factual predicates about what Alliant does for the Plan and how it is compensated. *See infra* at 16-17, 27-28; *see also Fleming*, 2020 WL 7693147 at *2-3 (explaining that the exhaustion requirement helps reduce "frivolous" ERISA claims and minimize "the cost of dispute resolution") (citation omitted).

Second, Plaintiffs' futility argument is, again, too speculative. They claim that during their supposed exhaustion of their non-Alliant claims, "the Administrative Committee was aware of the conduct of [Alliant] alleged in this Amended Complaint, but made it clear . . . that it does not plan to pursue any claims against" Alliant. FAC ¶ 84. But Plaintiffs offer no further details and "[b]are allegations of futility are no substitute for the *clear and positive* showing of futility that is required." *Bickley*, 461 F.3d at 1330 (emphasis added) (citation omitted). Moreover, the reason Plaintiffs offer no details is simple: they *never even mentioned* Alliant in the claims they filed with the Administrative Committee, let alone asserted any of the allegations or claims against Alliant that they have since conjured up in their original Complaint and, now, the FAC. Dkt. 48-4, 48-7.[5] Plaintiffs want to be excused from asserting and exhausting their claims against Alliant through the Plan's administrative process because they do not believe the Administrative Committee will rule in their favor. However, "[s]everal important policies underlie the exhaustion requirement," and not one of them is ensuring that a plaintiff prevails in the end. *Fleming*, 2020 WL 7693147 at *2-3.

---

[5] The Administrative Committee also never mentioned Alliant once in their correspondence with Plaintiffs, *see* Dkt. 48-5, 48-6, 48-41, indicating that there was no understanding that Plaintiffs were trying to raise implicit claims about Alliant.

In sum, Plaintiffs were required to exhaust the administrative process with respect to their claims against Alliant. But they failed to do so. Nor have they shown that exhaustion of those claims would be a futile effort. Plaintiffs' claims against Alliant should be dismissed on this threshold basis.

## B. Plaintiffs' Claims Are Largely Time-Barred.

Many of the allegations on which Plaintiffs based their claims are time-barred. Under ERISA, a plaintiff must bring a fiduciary-breach or prohibited-transaction claim no later than "six years after the date of the last action" giving rise to it. 29 U.S.C. § 1113(1). The six-year period is a statute of "repose," *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 774 (2020), placing "an absolute bar on a defendant's temporal liability," *Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2050 (2017). Here, Plaintiffs first asserted a claim against Alliant on December 30, 2021, Dkt. 1, which means that any claims against Alliant arising before ***December 30, 2015*** are time-barred.

Nevertheless, Plaintiffs openly challenge alleged Alliant actions from as early as 2009. *See, e.g.,* FAC ¶¶ 235, 262-63, 269. Plaintiffs also define the "Class Period" to begin on January 1, 2009, *id* ¶ 12, and broadly allege that Alliant breached its duties under ERISA "at all relevant times during the Class Period," *id.* ¶¶ 274, 353. Given the obvious time-bar to these claims, Plaintiffs attempt to rely on the

limited "fraud or concealment" exception to the statute of repose. 29 U.S.C. § 1113; *see also* FAC ¶¶ 76-77, 79. The Court should reject it.

The "fraud or concealment" exception requires a plaintiff to plead, with particularity under Rule 9(b), "that the defendant engaged in a course of conduct designed to conceal evidence of its alleged wrongdoing." *Griffin v. Aetna Health Inc.*, 2017 WL 4423419, at *4 (N.D. Ga. June 21, 2017) (collecting cases). Plaintiffs plead nothing of the sort. They offer only conclusory allegations of "intentional concealment," "affirmative misrepresentations," and "hidden" information. *See, e.g.*, FAC ¶¶ 12, 41, 42. Plaintiffs thus fail to plead the requisite particulars: the who, what, where, when. *See Carolinas Elec. Workers Ret. Plan v. Zenith Am. Sols., Inc.*, 2015 WL 1395130, at *6, n.4 (N.D. Ga. Mar. 25, 2015) (non-specific allegations do "not come close to satisfying Rule 9(b)'s requirements" with respect to § 1113 exception), *aff'd*, 658 F. App'x 966 (11th Cir. 2016). In any event, none of these allegations charges *Alliant* with committing acts of concealment.[6] Instead, they (inadequately) allege concealment by the "Named Plan Fiduciaries," *see, e.g.,*

---

[6] The closest Plaintiffs come is their allegation Alliant "heeded" an instruction "not to disclose [the] deficit [owed for recordkeeping expenses] in future participant account statements." FAC ¶ 262. The merit of this contention aside, the "fraud or concealment" exception does not apply to such "omissions," but rather requires "*affirmative steps* [by a fiduciary] to hide *its* breach of fiduciary duty." *Carolinas Elec.,* 2015 WL 1395130, at *6 (emphasis added). Plaintiffs allege neither.

FAC ¶¶ 76-79, a term Plaintiffs define as only "Rollins and the Administrative Committee," *id.* ¶ 11.

Separately, Plaintiffs contend that *Tibble v. Edison Int'l*, 575 U.S. 523 (2015) vitiates ERISA's statute of repose and authorizes them to sue based on actions taken "prior to six years from filing of this action." FAC ¶ 71-73. Plaintiffs are wrong, again. The holding of *Tibble* is straightforward: a fiduciary's duty to "monitor" a plan investment continues as long as the plan holds the investment—even if the initial selection of the investment occurred long ago. 575 U.S. at 529. Plaintiffs recognize this much, FAC ¶¶ 71-72, but then go astray by conflating the continuing duty to monitor with a never-ending obligation "to make whole" losses attributable to any past fiduciary breach no matter how long ago it occurred, *id.* ¶ 73. From this faulty premise, Plaintiffs argue that so long as a fiduciary did not "repair" an alleged breach during the six years before a plaintiff files a lawsuit, then any claim challenging that original breach is somehow timely. *See id*.

*Tibble* says nothing like this. In fact, the Supreme Court made clear that despite the ongoing nature of the duty to monitor, ERISA's statute of repose still controls: only "so long as the alleged breach of the continuing duty *occurred within six years of suit*, the claim is timely." *Id.* at 530 (emphasis added). That is why courts applying *Tibble* have rejected the same erroneous interpretation Plaintiffs

advance here. *See, e.g.*, *Carolinas Elec. Workers*, 658 F. App'x 966, 972 (11th Cir. 2016) (conversion errors occurring more than 10 years earlier were time-barred, because *Tibble* did not create a continuing duty to rectify those past errors); *Bryant v. Gen. Elec.*, 2018 WL 894033, at *3 (M.D. Ga. Feb. 14, 2018) ("the continuing violation rule announced in *Tibble*" does not make timely a claim based on fiduciary breach that "happened outside of the normal statutory applicable period" of six years); *Pledger v. Reliance Tr. Co.*, 240 F. Supp. 3d 1314, 1328 (N.D. Ga. 2017) (under *Tibble*, a claim based on failure to monitor plan recordkeeper during past six years was timely, but a claim based on the hiring of the recordkeeper more than six years ago was untimely). This Court should do the same.

## II.     Plaintiffs' "Duty Of Prudence" Claims Fail.

In Count I, Plaintiffs claim that Alliant breached its fiduciary duty of prudence under ERISA. FAC ¶¶ 391, 400 (citing 29 U.S.C. § 1104(a)(1)(B)). As a third-party investment advisor to the Plan, Alliant's fiduciary status extends only to its provision of investment advice. The allegations in the FAC come nowhere close to plausibly establishing that Alliant breached its duties by providing imprudent investment advice to the Plan, which resulted in Plan losses.

**A.    As An Investment Advisor, Alliant's Fiduciary Role Was Limited.**

The threshold question "[i]n every case charging breach of fiduciary duty" is whether the defendant "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to the complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). This threshold inquiry is necessary because fiduciary status under ERISA is "not an all-or-nothing concept"; it extends only as far as a person exercises "discretionary authority." *Carolinas Elec. Workers*, 658 F. App'x at 969. In other words, a defendant may be liable only for actions taken in a fiduciary capacity. *Pegram*, 530 U.S. at 226.

Here, Alliant served as the Plan's investment advisor, meaning it was a fiduciary only with respect to investment advice it provided to the Administrative Committee. 29 U.S.C. § 1002(21)(A)(ii); *see also supra* at 4-6. The FAC correctly alleges that Alliant was an investment advisor. FAC ¶¶ 87, 219, 330, 336. Moreover, documents attached to Plaintiffs' pleadings in this action or specifically referenced in the FAC, likewise, confirm that Alliant was the Plan's investment advisor. *See supra* at 4-6 (citing Administrative Committee Meeting Minutes, the IPS, and other documents attached to or referenced in Plaintiffs' pleadings).

Nevertheless, the FAC at various points attempts to cast some doubt on the scope of Alliant's fiduciary role. For example, Plaintiffs imply that Alliant hijacked

the Administrative Committee's sole fiduciary authority to make Plan investment decisions. *See, e.g.,* FAC ¶ 11 (Alliant "dictate[d]" the lineup), ¶ 397 (Alliant had "sufficient influence" over the Administrative Committee regarding Plan investments), ¶ 394 ("*de facto*" control over "disposition of the Plan's assets"). Elsewhere, Plaintiffs identify Alliant as a Plan "investment manager," without alleging any facts to support that legal characterization. *Id.* ¶¶ 53-54.[7]

Not only are these allegations unsupported by any well-pleaded facts, but they contradict other FAC allegations and a decade's worth of Administrative Committee minutes confirming that the Committee was responsible for selecting and monitoring Plan investments, and that Alliant merely provided information and advice to support the Committee's decision-making. *Supra* at 4-6. Accordingly, the Court should disregard Plaintiffs' unsupported and conclusory allegations that Alliant was responsible for selecting Plan investments.

---

[7] It is unclear whether Plaintiffs seriously contend that Alliant is both a Plan investment advisor ***and*** investment manager—or mistakenly believe those terms are synonymous. Under ERISA, an investment *advisor* provides advice to the person who has authority to make and effect plan investment decisions. 29 U.S.C. § 1002(21)(A)(ii). An investment *manager*, by contrast, is formally delegated, pursuant to the plan, to make discretionary investment decisions on behalf of the plan. *Id.* § 1002(38). The FAC does not allege any of the factual predicates needed to support its erroneous legal conclusion that Alliant served as an "investment manager," as opposed to merely an "investment advisor," to the Plan.

**B.    Plaintiffs Have Not Plausibly Alleged A "Duty Of Prudence" Claim Based On Alliant's Investment Advice.**

To state a viable claim against Alliant, Plaintiffs must plausibly allege both (i) that Alliant acted imprudently in providing investment advice, and (ii) that Alliant's imprudence resulted in losses to the Plan. *See* 29 U.S.C. § 1109(a). Plaintiffs' allegations do not suffice for either element.

**1.    Plaintiffs Have Not Plausibly Alleged That Alliant Provided Any Imprudent Investment Advice.**

To plausibly allege Alliant acted imprudently in providing investment advice, Plaintiffs cannot just point to advice that now looks to be suboptimal—although they have not even done that much. That sort of criticism is necessarily based on hindsight, which is incompatible with ERISA's direction to measure prudence based on "the circumstances then prevailing." 29 U.S.C. § 1104(a)(1)(B). This is why courts strictly focus on allegations of *process*, rather than allegations of *results*, when assessing imprudence claims under ERISA. *See, e.g.*, *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 482 (8th Cir. 2020) ("This statutory duty of prudence establishes an 'objective standard' that focuses on the 'process by which' decisions are made, 'rather than the results of those decisions.' A prudently made decision is not actionable, in other words, even if it leads to a bad outcome.") (citations omitted); *Fuller v. SunTrust Banks, Inc.*, 2019 WL 5448206, at *24 (N.D. Ga. Oct. 3, 2019)

(prudence inquiry must "focus[ ] on whether the fiduciary employed appropriate methods," not the results).

Plaintiffs offer no well-pleaded facts about the process Alliant used to monitor Plan investments or render its advice to the Administrative Committee, despite having plenty of meeting minutes and materials reflecting that process. *See supra* at 4-6. Instead, Plaintiffs allege in conclusory fashion that Alliant had no process at all and simply did not monitor Plan investments. *See* FAC ¶ 353 ("At all relevant times during the Class Period, [Alliant] did not monitor the performance of the investment portfolios for the Plan"), ¶ 355 (Alliant "failed to provide the information that [the Committee] needed to have to perform timely review and monitoring of the investment portfolios"). These allegations are belied by the large volume, spanning 11 years, of Administrative Committee minutes and materials Plaintiffs have already put before the Court, which extensively confirm that Alliant continuously monitored and updated the Committee with respect to each of the Plan's investments. The Court should disregard Plaintiffs' unsupported and conclusory allegations to the contrary. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("When the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern").

Beyond their general allegations above, Plaintiffs specifically assert that Alliant failed to monitor several investments the FAC claims were imprudent. *See* FAC ¶ 164-66 (Alliant "fail[ed] to monitor" the Franklin Growth Fund), ¶¶ 185-86, 192, 199 (Alliant failed to "research[ ] and monitor[ ]" the performance and costs of the Prudential GIC and to consider replacements for this fund), ¶¶ 119, 123 (Alliant failed to consider index funds, like Vanguard funds). But again, these allegations are unsupported by any well-pleaded facts and are directly contradicted by the Administrative Committee meeting minutes, materials, and other documents Plaintiffs have filed with the Court.[8]

### 2. Plaintiffs' Allegations That The Administrative Committee Made Bad Investment Decisions Cannot Support A Plausible Inference That Alliant Breached Its Duties.

Unable to seriously challenge any aspect of Alliant's investment advisory process, Plaintiffs focus on allegedly imprudent investment decisions made by the Administrative Committee. In this way, Plaintiffs are hoping the Court might *infer*

---

[8] *See, e.g.*, Minutes at 61, 81, 201, 208 (Alliant-led discussions of the Franklin Fund specifically); *id.* at 111 (Alliant-led "[d]iscussions around the [Prudential GIC] and the underlying investments were an evergreen topic" at Committee meetings), 116-20 (the Committee held a meeting for the sole purpose of reviewing Alliant's Prudential GIC analysis), 151-52 and 204-05 (Alliant twice surveying the marketplace for potential alternatives to the Prudential GIC); *id.* at 41, 72, 113 (Alliant analyzing and proposing multiple index fund options, including from Vanguard, for the Committee's consideration).

that the Administrative Committee may have acted based upon some imprudent advice from Alliant. Although ERISA plaintiffs often rely on circumstantial allegations like this to try to support a plausible inference of fiduciary imprudence, they do so because they "lack extensive information regarding the fiduciary's methods." *Pizarro v. Home Depot, Inc.*, 2019 WL 11288656, at *4 (N.D. Ga. Sept. 20, 2019) (citing *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)). But Plaintiffs do not have that problem. And their complete failure to account for the large record of Administrative Committee minutes and materials in making their "imprudent investment" allegations is reason enough to reject them.

Regardless, even under the inferential framework they improperly invoke without any real necessity, Plaintiffs must plausibly allege that no prudent fiduciary would have selected the particular investments the FAC challenges. *See, e.g.*, *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1168 (6th Cir. 2022) (requiring plausible allegations "that a prudent plan administrator should never have included" the challenged funds in the plan); *Renfro v. Unisys Corp.*, 671 F.3d 314, 322 (3d Cir. 2011) (requiring plausible allegations that no "hypothetical prudent fiduciary" would have made the same choice). Here, Plaintiffs try to satisfy this requirement through two common criticisms: (a) some of the Plan's investments provided "revenue sharing" to cover Prudential's and Alliant's fees; and (b) some of the Plan's

investment options were poor performers. Neither suffices, for the reasons explained in the Rollins Defendants' Motion to Dismiss the FAC, *see* Dkt. 75-1 ("Rollins MTD FAC"), and those discussed below.

a. **Plaintiffs' "Revenue Sharing" Allegations Fail.**

Plaintiffs complain that the Administrative Committee, at times, selected mutual fund share classes that provided "revenue sharing," rather than lower-cost share classes that provided no revenue sharing. FAC ¶¶ 169-172, 265, 324-25, 319-21. However, Plaintiffs acknowledge that the revenue sharing these funds provided was used to cover other Plan expenses, which would otherwise be charged to participants directly. FAC ¶¶ 113, 208, 218-19, 270, 272. Because this is a perfectly lawful reason for selecting revenue sharing funds, it cannot support a plausible inference of imprudence. *See Kurtz v. Vail Corp.*, 511 F. Supp. 3d 1185, 1199 (D. Colo. 2021); *see also Hughes*, 142 S. Ct. 737, 742 ("courts must give due regard to the range of reasonable judgments a fiduciary may make"); Rollins MTD FAC at 20-22. Moreover, as Plaintiffs' allegations tacitly acknowledge, FAC ¶¶ 172, 275, the Administrative Committee, with Alliant's input, closely monitored Plan revenue sharing and made the decision to move to non-revenue sharing funds when it determined revenue sharing was no longer needed to cover reduced Plan expenses, *see, e.g.*, Minutes at 152, 156. These facts made available through Plaintiffs' own

pleadings belie any plausible inference that the Administrative Committee—let alone Alliant—breached any duty by failing to prudently monitor investment fees and revenue sharing. *See also* Rollins MTD FAC at 12-14, 21.

### b. Plaintiffs' "Underperformance" Allegations Fail.

Plaintiffs also complain that some of the Plan's "actively managed" funds performed poorly, and that passively managed index funds should have been offered instead. FAC ¶¶ 96-107, 163-66, 265, 311-17 324-25.[9] These allegations cannot give rise to any plausible inference of imprudence, either.

First, Plaintiffs' contention that the Plan should not have offered actively managed funds in the Plan, because passively-managed index funds are a better alternative for retirement plan participants, has been rejected by every court to consider it. *See, e.g.*, *Smith*, 37 F.4th at 1165 ("We know of no case that a says a plan fiduciary violates its duty of prudence by offering actively managed funds to its employees as opposed to offering only passively managed funds") (collecting cases); *Davis*, 960 F.3d at 485 (holding "it is not imprudent for a fiduciary to provide

---

[9] Relatedly, Plaintiffs offer an unsupported and plainly false allegation: "At all relevant times during the Class Period, the Plan's mutual funds significantly underperformed their benchmarks." FAC ¶ 412. Plaintiffs do not even attempt to support this allegation because they cannot. The Plan's statutory-required fee and performance disclosures confirm that the Plan's investment options generally outperformed their index benchmarks over 1-, 5-, or 10-year periods throughout the relevant period. *See, e.g.,* Dkt. 48-26.

both [actively managed and passively managed] investment options" in a retirement plan). Simply put, allegations that the Plan failed to restrict participants to only passively managed investment options cannot support any plausible inference of fiduciary imprudence, particularly where, as here, the Plan offered participants both options. *See also* Rollins MTD FAC at 18-19.

Second, Plaintiffs do not plausibly support the contention that any of the investments challenged were imprudent in their own right. To do so, they would need to allege, at a minimum, that each of the several funds they challenge was imprudent relative to a "meaningful benchmark." *Smith*, 37 F.4th at 1167; *Davis*, 960 F.3d at 484-87; *Meiners*, 898 F.3d at 822-23. A "meaningful benchmark" is more than a comparator fund with "some similarities." *Meiners*, 898 F.3d at 823. Rather, a meaningful benchmark is a comparator like the challenged fund in all material respects, including "fund holdings, investment style, and strategy." *Riley v. Olin Corp.*, 2022 WL 2208953, at *5 (E.D. Mo. June 21, 2022) (citing *Davis*, 960 F.3d at 485-86). Even then, mere underperformance relative to the "meaningful benchmark" is insufficient to state a claim—more facts are required, suggesting that no reasonable fiduciary would have selected or continued offering the challenged fund at the time the decision was made. *Smith*, 2022 WL 202207557, at *5.

Plaintiffs allege nothing of the kind.  To the contrary, they merely identify a handful of Plan investments and declare that they "underperformed" some *unspecified* benchmark by some *unspecified* amount over some *unspecified* period. *See* FAC ¶ 163 (Franklin Growth Fund); ¶ 168 (Metropolitan West Total Return Bond Fund); ¶ 180 (Prudential GIC).[10]  Plaintiffs' allegations are, thus, insufficient to support any plausible inference that a prudent fiduciary would not have offered them in the Plan under the circumstances that prevailed during the relevant period. And while Plaintiffs allege that the Administrative Committee replaced two of the funds they challenge during the alleged class period, *see id.* ¶¶ 317, 322, these actions only confirm that Plan fiduciaries "fulfilled [their] continuing duty to monitor [Plan] investments and remove imprudent ones." *Smith*, 37 F.4th at 1164; *see also* Rollins MTD FAC at 15-16.

---

[10] In two instances, Plaintiffs argue that a fund the Committee replaced for underperformance is a meaningful benchmark for the fund the Committee picked as the replacement.  *See* FAC ¶ 312 (comparing replaced Dodge fund to the replacement Oakmark fund), ¶ 325 (comparing the replaced Morgan Stanley fund to the replacement Hartford fund).  This is self-defeating, as it highlights that the Committee monitored performance and replaced funds as necessary.  And by clinging to the funds' performance *after* replacement, Plaintiffs are also confirming that their criticisms are based improperly on hindsight. *See New Orleans Emps. Int'l Longshoremen's Ass'n v. Mercer Inv. Consultants*, 635 F. Supp. 2d 1351, 1372 (N.D. Ga. 2009) (a "fiduciary's conduct is to be evaluated 'under the circumstances then prevailing,' and therefore without the benefit of hindsight") (citing *Chao v. Merino*, 452 F.3d 174, 182 (2nd Cir. 2006)).

Likewise, other allegations in the FAC and the lengthy Administrative Committee record similarly foreclose any plausible inference of fiduciary imprudence. The FAC repeatedly alleges that Plan investment options were placed on a "Watch List" and, later, removed from the Plan. *See, e.g.,* FAC ¶¶ 275, 317, 322, 324. Meanwhile, the Administrative Committee record extensively illustrates the robust investment process the Committee engaged with Alliant's help during the relevant period.[11] *See also* Rollins MTD FAC at 19-20.

In sum, Plaintiffs' "duty of prudence" claim against Alliant fails because they allege no well-pleaded facts about Alliant's process for rendering advice. Nor do

---

[11] For example, consider Alliant's and the Administrative Committee's handling of the Hartford Mid Cap Growth Fund. It was added to the Plan in March 2016 to replace the Morgan Stanley Institutional Mid Cap Growth Fund I, which had been on the Committee's "Watch List" due to performance concerns since 2014. *See* Minutes at 130-31. The Committee chose the Hartford Mid Cap Growth Fund after considering three alternatives Alliant had proposed based on its research. *Id.* Two years later, in 2018, the Hartford Mid Cap Growth Fund was still outperforming its index benchmark over 1-, 5-, and 10-year periods. *See* Dkt. 48-27 (Rollins MTD, Ex. 24) (Plan Fee and Performance Disclosures as of March 31, 2018) at ECF p. 5. However, by June 30, 2020, Alliant reported that the Hartford fund was no longer doing so well: it was "underperforming its peer group median" over all periods considered. Minutes at 200-01. As a result, pursuant to the IPS, the Administrative Committee placed the Hartford fund on its "Watch List." Alliant continued to provide detailed reports on its performance each quarter thereafter, *see, e.g., id.* at 208, and the Administrative Committee ultimately decided to replace the Hartford fund in 2021. These indisputable facts confirm the implausible nature of Plaintiffs' unsupported assertions that Alliant and the Committee failed to prudently monitor Plan investments during the relevant six years preceding this action.

their criticisms of the Administrative Committee's investment decisions provide any basis for plausibly inferring that Alliant's process was deficient. For these reasons, the Court should dismiss Plaintiffs' claims in Count I as to Alliant.[12]

## III. Plaintiffs' "Duty Of Loyalty" Claim Fails.

In Count II, Plaintiffs allege Alliant breached its duty of loyalty by failing to act "for the exclusive purpose of (i) providing benefits to participants and beneficiaries, and (ii) defraying reasonable expenses of administering the [P]lan." 29 U.S.C. § 1104(a)(1)(A). To state a viable claim for breach of the duty of loyalty, Plaintiffs must plausibly allege that Alliant's fiduciary acts—providing investment advice—were "motivated by disloyal reasons." *Romano v. John Hancock Life Ins. Co. (USA)*, 2022 WL 1450770, at *28 (S.D. Fla. May 9, 2022) (citing *Allen v. Wells Fargo & Co.*, 967 F.3d 767, 776 (8th Cir. 2020)).

Plaintiffs try to satisfy this standard by alleging that Alliant's investment advice was "tainted with self-interest" because the Plan's revenue-sharing funds increased Alliant's compensation. FAC ¶¶ 429-31. However, Plaintiffs do not offer any facts supporting their theory, because there aren't any. As the relevant public

---

[12] For these same reasons, Plaintiff's conclusory "co-fiduciary" liability allegations in FAC ¶¶ 418-19 fail to state a plausible claim for relief. Plaintiffs later tack on similar boilerplate co-fiduciary liability allegations with respect to two other fiduciary breach claims they assert against Alliant. *See* FAC ¶¶ 436-37 (Count II), 464-65 (Count IV). Those co-fiduciary claims fail for the same reasons.

filings and contractual materials confirm, Alliant received only a flat contractual fee of $80,750 per year for its investment advisory services to the Plan. *See supra* at 6. As a result, revenue sharing had no impact on the *amount* Alliant was paid for its services, thereby eliminating any supposed "conflict of interest" tainting Alliant's investment advice.[13] These facts doom Plaintiffs' disloyalty claim. *See, e.g.*, *Danza v. Fid. Mgmt. Tr. Co.*, 533 F. App'x 120, 124 (3d Cir. 2013) (affirming dismissal of loyalty claim where fee structure "was set in the agreement with [the plan sponsor] and [the service provider] did not have unilateral discretion to change it").

## IV. Plaintiffs Do Not Plausibly Allege That Alliant Failed To Adhere To The Governing Plan Documents.

In Count IV, Plaintiffs contend Alliant failed to act "in accordance with the documents and instruments governing the [P]lan." FAC ¶ 452 (citing 29 U.S.C. § 1104(a)(1)(D)). However, the only Plan term Plaintiffs claim Alliant violated is one which authorizes the Administrative Committee to appoint investment

---

[13] Plaintiffs make identical, conclusory, and factually baseless "conflict of interest" allegations against a specific Alliant employee, Sean Waggoner. *See* FAC ¶¶ 339, 346-48, 351-52. Plaintiffs also attempt to disparage Mr. Waggoner in other irresponsible and meritless ways. For example, Plaintiffs allege that "multiple class action lawsuits" have "alleg[ed] Waggoner's wrongdoing," but do not name any such lawsuit *because there is none*, as any reasonable investigation would have revealed to Plaintiffs. *Id.* ¶ 345. Plaintiffs also reference alleged FINRA infractions, *id.* ¶ 370-71, but neglect to mention that those were settled without any admission of liability and had nothing to do with the Plan or its investments, in any event.

*managers* for the funds in the Plan's investment option menu. *Id.* ¶ 457 (citing Plan Document § 7.8(a)). This provision requires any investment manager hired "to manage, acquire, and dispose of any and all assets . . . placed under its control" to certify that it is "qualified" to do so within the meaning of ERISA Section 3(38), 29 U.S.C. § 1002(38). Plan Document § 7.8(a).

But as already explained, *supra* at 17, n.7, Alliant was not hired to serve as an investment *manager* for the Plan, so this provision has no relevance to Alliant. Moreover, as an investment *advisor*, Alliant had no control or decision-making power over any Plan assets. So there would be no reason for it to certify that it was qualified to manage assets under § 1002(38). Accordingly, Plaintiffs' allegations in Count IV fail to state a plausible claim under § 1104(a)(1)(D).[14]

## V.    Plaintiffs' Prohibited Transaction Claims Fail.

In Counts V and VI, Plaintiffs claim Alliant caused or knowingly participated in prohibited transactions under 29 U.S.C. § 1106(a) or (b). FAC ¶¶ 466-86. Both

---

[14] Puzzlingly, Plaintiffs also allege that Alliant "directly and/or indirectly" violated some unspecified Plan term by engaging in other alleged ERISA violations. FAC ¶ 459. This just repackages the other fiduciary-breach and prohibited-transaction claims, which fail for independent reasons discussed in this brief. Regardless, Plaintiffs do not identify which Plan terms were supposedly violated based on their various other claims, which independently disposes of their ostensible claim under § 1104(a)(1)(D). *See Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 170 (3d Cir. 1999) (requiring identification of the particular plan provisions violated).

provisions "regulate[ ] the conduct of plan fiduciaries, placing certain transactions outside the scope of their lawful authority." *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996). The difference between the two is the type of transaction outlawed. Section 1106(a) prohibits specific transactions between a plan fiduciary and "a party in interest," which "present a special risk" of being "struck with plan insiders, presumably not at arm's length." *Id*. at 893-94. Section 1106(b), in contrast, prohibits transactions in which a fiduciary engages in "self-dealing." *Dupree v. Prudential Ins. Co. of Am.*, 2007 WL 2263892, at *42 (S.D. Fla. Aug. 7, 2007). Plaintiffs have not plausibly stated a claim under either provision.

A.     **Plaintiffs' §1106(a) Claim Fails Because They Do Not Identify The Challenged Transaction.**

Count V charges "all Defendants" with violating 29 U.S.C. § 1106(a)(1)(C) and (D). FAC ¶ 467. To state a viable claim here, Plaintiffs must plausibly allege (i) a Plan "fiduciary," (ii) "cause[d]" the Plan to engage in one of the transactions listed in § 1106(a)(1)(C) or (D), (iii) with a "party in interest." 29 U.S.C. § 1106(a)(1). To make this theory actionable as to Alliant, Plaintiffs must plausibly allege Alliant was involved in the challenged transaction, either as the fiduciary causing it or the party in interest benefitting from it. *Spink*, 517 U.S. at 889, n.3; *Herman v. S.C. Nat. Bank*, 140 F.3d 1413, 1422 (11th Cir. 1998).

This claim fails because Plaintiffs have not plausibly alleged the second element: a transaction listed in § 1106(a)(1)(C) or (D). Indeed, Plaintiffs do not identify *any* supposed "transaction" they are challenging through Count V, let alone offer well-pleaded facts demonstrating that the supposed transaction involved "a furnishing of goods, services, or facilities between the [P]lan and a party in interest," or "a transfer to, or use by or for the benefit of a party in interest, of any assets of the [P]lan," § 1106(a)(1)(C)-(D). *See, e.g.*, *Suozzo v. Bergreen*, 2002 WL 1402316, at *14 (S.D.N.Y. June 27, 2002) (dismissing prohibited-transaction claim because "plaintiff does not identify the transactions he is referring to"). Instead, Plaintiffs offer only a "threadbare recital[ ] of the elements of [the] cause of action, supported by mere conclusory statements, [that] do not suffice" to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678; *see* FAC ¶¶ 472-73.

This pleading failure also forecloses Plaintiffs from establishing any of the other "material elements" of their § 1106(a) claim. *Twombly*, 550 U.S. at 562. Without proper identification of the challenged "transaction," it is impossible to assess whether Plaintiffs have properly pled that a Plan "fiduciary" caused it, whether the other party to the transaction was a "party in interest," or whether Alliant played a role whatsoever in the transaction. Plaintiffs' proclamation that "[e]ach of the Defendants is or was both a fiduciary and a party-in-interest," FAC ¶ 471, does

not cover up these deficiencies.  It is an insufficient legal conclusion, *Iqbal*, 556 U.S. at 678-79, and ignores that "fiduciary status is not an all-or-nothing concept," *Cotton v. Massachusetts Mut. Life Ins. Co,* 402 F.3d 1267, 1277 (11th Cir. 2005). Moreover, it is impossible to determine from Plaintiffs' general allegations whether the transaction occurred within the actionable period.  *See supra* at 12-15; *see also Carolinas Elec. Workers*, 658 F. App'x at 971-73 (affirming dismissal of prohibited-transaction claim filed "nearly ten years after" the transaction, despite alleged "continuing duty" to rectify it).

To be sure, allegations elsewhere in the FAC discuss Plan-related transactions with varying levels of detail, and Count V incorporates by reference the first 389 paragraphs of the FAC.  *See* FAC ¶ 466.  But this does not give Alliant "fair notice of what the . . . claim is and the grounds upon which it rests," as required under Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Plaintiffs cannot satisfy Rule 8 by offering a mere gesture toward hundreds of preceding paragraphs and "forc[ing] the district court and the defendant to rummage through page after page of facts and conclusions to make independent determinations regarding what allegations, if any, fit with [the] claim." *Carvel v. Godley*, 404 F. App'x 359, 362 (11th Cir. 2010).

### B. Plaintiffs' § 1106(b) Claim Fails For Multiple Reasons.

Unlike the § 1106(a) claim in Count V, Plaintiffs actually identify the transaction they claim violated § 1106(b): Alliant's receipt of "revenue sharing" funds as "consideration" for the advisory services Alliant provided. FAC ¶ 481. This claim still fails for several independent reasons.

First, "[i]t is well established that a service provider does not become a fiduciary simply by negotiating its compensation in an arm's length bargaining process—particularly where, as here, the service provider is not alleged to have had the ability to determine or control the actual amount of its compensation." *Pizarro*, 2019 WL 11288656, at *6 (collecting cases); *see also, e.g.*, *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 837-38 (9th Cir. 2018) (same). Nor does the service provider become a fiduciary when it later receives that negotiated compensation. *See, e.g.*, *id.* at 839-41; *Sellers v. Anthem Life Ins. Co.*, 316 F. Supp. 3d 25, 36 (D.D.C. 2018). Thus, as a matter of law, Alliant was not acting in any fiduciary capacity when it received compensation for its services—whether through revenue sharing or any other source. And because §1106(b) only prohibits transactions effected by Plan fiduciaries, Plaintiffs' claim against Alliant in Count V necessarily fails. *Pizarro*, 2019 WL 11288656, at *7 ("collection of previously negotiated and agreed-upon fees" does not violate §1106(b)).

Second, Plaintiffs' claim against Alliant is time-barred in any event. *See supra* at 12-15 (discussing ERISA's six-year statute of repose). Plaintiffs allege that Alliant was engaged as the Plan's investment advisor "at all relevant times," FAC ¶¶ 53-54, since January 1, 2009, *id.* ¶ 12. Thus, Plaintiffs concede the Plan hired Alliant well before the start of the six-year repose period on December 20, 2015, meaning that any asserted claim under § 1106(b) is untimely. *See, e.g., David v. Alphin*, 704 F.3d 327, 340-41 (4th Cir. 2013) (the "only action that can support an alleged prohibited transaction is the initial selection" of an investment option or plan service provider, not the later payment of fees stemming from the initial selection); *Carolinas Elec. Workers*, 658 F. App'x at 971-73 (affirming dismissal of prohibited-transaction claim filed "nearly ten years after" the transaction); *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) ("The decision by the [defendants] to *continue* to hold 15% of Plan assets in employer stock was not a 'transaction'" under § 1106) (emphasis in original).[15]

---

[15] *See also Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1067-69 (M.D. Tenn. 2018) (dismissing prohibited-transaction claim alleging defendants "caus[ed] the Plan to use four record-keepers from year to year" because the "initial commitment" occurred more than six years before the action, regardless of whether the "resulting fees" were paid more recently); *White v. Chevron Corp.*, 2017 WL 2352137, at *22 (N.D. Cal. May 31, 2017) (dismissing prohibited-transaction claim based on "agreement under which defendants hired Vanguard to serve as the Plan's recordkeeper, which [plaintiffs] assert resulted in Vanguard receiving excessive compensation for its services" because the hiring occurred more than six years

**CONCLUSION**

For the above reasons, Alliant respectfully requests the Court dismiss, with prejudice, the claims against Alliant in the First Amended Class Action Complaint.


[signature on following page]

---

before the action, and "there is no such thing as a 'continuing' prohibited transaction") *aff'd*, 752 F. App'x 453 (9th Cir. 2018).

Respectfully submitted, this 15th day of July, 2022.

*/s/ Michael A. Caplan*
Michael A. Caplan
Georgia Bar No. 601039
mcaplan@caplancobb.com
Julia Blackburn Stone
Georgia Bar No. 200070
jstone@caplancobb.com
**CAPLAN COBB LLC**
75 Fourteenth St. NE, Suite 2700
Atlanta, Georgia 30309
Telephone: (404) 596-5610
Facsimile: (404) 596-5604

Christopher J. Boran (*pro hac vice*)
Christopher.boran@morganlewis.com
Kevin F. Gaffney (*pro hac vice*)
Kevin.gaffney@morganlewis.com
Alexandra G. Belzley (*pro hac vice*)
Alexandra.belzley@morganlewis.com
**Morgan, Lewis & Bockius LLP**
110 N. Wacker Drive
Chicago, Illinois 60606-1511
Telephone: (312) 324-1000
Facsimile: (312) 324-1001

*Attorneys for Defendants Alliant*
*Insurance Services, Inc. and Alliant*
*Retirement Services, LLC*

**LOCAL RULE 7.1(D) CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing memorandum has been prepared with Times New Roman, 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(B).

This 15th day of July, 2022.

*/s/ Michael A. Caplan*
Michael A. Caplan
Georgia Bar No. 601039

*Attorneys for Defendants Alliant Insurance*
*Services, Inc. and Alliant Retirement*
*Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing Memorandum of Law in Support of Defendants Alliant Insurance Services, Inc. and Alliant Retirement Services, LLC's Motion to Dismiss the First Amended Class Action Complaint with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 15th day of July, 2022.

*/s/ Michael A. Caplan*
Michael A. Caplan
Georgia Bar No. 601039

*Attorneys for Defendants Alliant Insurance Services, Inc. and Alliant Retirement Services, LLC*