**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| MARCIA G. FLEMING, CASEY FREEMAN, DAVID GUYON, ANTHONY LOSCALZO, PATRICK ROSEBERRY, and JULIO SAMANIEGO individually, on behalf of the Rollins, Inc. 401(k) Savings Plan, and on behalf of all similarly situated participants and beneficiaries of the Plan, <br><br> Plaintiffs, <br><br> v. <br><br> ROLLINS, INC.; THE ADMINISTRATIVE COMMITTEE OF THE ROLLINS, INC. 401(k) SAVINGS PLAN, BOTH INDIVIDUALLY AND AS THE *DE FACTO* INVESTMENT COMMITTEE OF THE ROLLINS, INC. 401(K) SAVINGS PLAN; EMPOWER RETIREMENT, LLC F/K/A PRUDENTIAL INSURANCE AND ANNUITY COMPANY; PRUDENTIAL BANK & TRUST, FBS, AS DIRECTED TRUSTEE OF THE ROLLINS, INC. 401(K) PLAN TRUST; ALLIANT INSURANCE SERVICES, INC.; ALLIANT RETIREMENT SERVICES, LLC; LPL FINANCIAL LLC; PAUL E. NORTHEN, JOHN WILSON, JERRY GAHLHOFF, JAMES BENTON and A. KEITH PAYNE in their capacities as members of the Administrative Committee; and John and Jane Does 1-10, <br><br> Defendants. | Civil Action File No. 1:21-cv-05343-ELR <br><br><br> **MEMORANDUM OF LAW IN SUPPORT OF THE PRUDENTIAL DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT** |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .............................................................................1

BACKGROUND ..............................................................................4

LEGAL STANDARD........................................................................9

ARGUMENT ...................................................................................10

    I.    The Fiduciary Duty Claims Against The Prudential Defendants
          Should Be Dismissed..................................................................10

        A.    PRIAC Is Not A Fiduciary...........................................10

        B.    PB&T Had Only Limited Fiduciary Duties As A Directed
             Trustee, And There Are No Allegations That It Breached
             Those Duties..................................................................19

    II.    The Prohibited Transaction Claims Against The Prudential
         Defendants Should Be Dismissed. ...........................................21

        A.    Plaintiffs Fail To State Prohibited Transaction Claims
             Against The Prudential Defendants. ................................22

        B.    Plaintiffs' Alternative "Party In Interest" Theory Fails.................24

    III.   The Claims For Co-Fiduciary Liability Should Be Dismissed. ..............26

CONCLUSION...............................................................................27

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Allen v. USAA Cas. Ins. Co.*,
  790 F.3d 1274 (11th Cir. 2015) ............................................................5

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*,
  475 F. Supp. 3d 910 (E.D. Wis. 2020) ........................................23, 26

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................9

*Austin v. Union Bond & Tr. Co.*,
  No. 3:14-CV-706, 2014 WL 7359058 (D. Or. Dec. 23, 2014) ..........17

*Baker v. Big Star Div. of the Grand Union Co.*,
  893 F.2d 288 (11th Cir. 1989) ...........................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................9

*In re BP p.l.c. Sec. Litig.*,
  No. 4:10-cv-4214, 2015 WL 6674576 (S.D. Tex. Oct. 30, 2015).......26

*Carolinas Elec. Workers Ret. Plan v. Zenith Am. Sols., Inc.*,
  658 F. App'x 966 (11th Cir. 2016) ....................................................11

*Cent. Valley Ag Coop. v. Leonard*,
  986 F.3d 1082 (8th Cir. 2021) ...........................................................22

*Delta Airlines, Inc. v. Pradd*,
  No. 13-cv-220-SCJ, 2013 WL 12303736 (N.D. Ga. July 25, 2013).................25

*Ershick v. United Missouri Bank of Kansas City, N.A.*,
  948 F.2d 660 (10th Cir. 1991) ...........................................................20

*In re Fid. ERISA Fee Litig.*,
  990 F.3d 50 (1st Cir. 2021).................................................................16

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014) ...................................................................................9, 17

*Fin. Sec. Assurance, Inc. v. Stephens, Inc.*,
   500 F.3d 1276 (11th Cir. 2007) ..........................................................................5

*Fleming v. Rollins, Inc.*,
   No. 19-CV-5732-ELR, 2020 WL 7693147 (N.D. Ga. Nov. 23, 2020)........1, 7, 8

*Fuller v. SunTrust Banks, Inc.*,
   No. 11-CV-784-ODE, 2019 WL 4804273 (N.D. Ga. July 16, 2019) ...............26

*Griffin v. Aetna Health Inc.*,
   No. 17-CV-77-AT, 2017 WL 4423419 (N.D. Ga. June 21, 2017).....................14

*Grindstaff v. Green*,
   133 F.3d 416 (6th Cir. 1998) ..............................................................................20

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
   530 U.S. 238 (2000)............................................................................................25

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) .......................................................................12, 13

*Henderson v. Emory Univ.*,
   252 F. Supp. 3d 1344 (N.D. Ga. 2017)...............................................................23

*In re ING Groep, N.V. ERISA Litig.*,
   749 F. Supp. 2d 1338 (N.D. Ga. 2010)...............................................................27

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*,
   768 F.3d 284 (3d Cir. 2014) ...............................................................................13

*Klyman v. Delta Air Lines, Inc.*,
   No. 05-CV-941-CAP, 2008 WL 11400765 (N.D. Ga. May 23, 2008) ..............11

*Leimkuehler v. Am. United Life Ins. Co.*,
   713 F.3d 905 (7th Cir. 2013) ..............................................................................19

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996)............................................................................................22

*Maniace v. Com. Bank of Kansas City, N.A.*,
   40 F.3d 264 (8th Cir. 1994) ...............................................................20

*McCaffree Fin. Corp. v. Principal Life Ins. Co.*,
   811 F.3d 998 (8th Cir. 2016) ..............................................................16

*Miller v. Astellas US LLC*,
   No. 20 C 3882, 2021 WL 1387948 (N.D. Ill. Apr. 13, 2021) ...........23

*Pegram v. Herdrich*,
   530 U.S. 211 (2000)............................................................................10

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) .................................................................9

*Pizarro v. Home Depot, Inc.*,
   No. 18-CV-1566-WMR, 2019 WL 11288656 (N.D. Ga. Sept. 20, 2019) ...15, 16

*Pledger v. Reliance Tr. Co.*,
   240 F. Supp. 3d 1314 (N.D. Ga. 2017)................................................14

*Ramos v. Banner Health*,
   1 F.4th 769 (10th Cir. 2021) ...............................................................24

*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011) ..........................................................16, 20

*Singleton v. Bd. of Trs. of IBEW Loc. 613 & Contributing Emps.
Health & Welfare Fund*,
   815 F. Supp. 448 (N.D. Ga. 1993)......................................................11

*Smith v. CommonSpirit Health*,
   No. 20-95, 2021 WL 4097052 (E.D. Ky. Sept. 8, 2021).....................14

*Solis v. Webb*,
   931 F. Supp. 2d 936 (N.D. Cal. 2012)................................................21

*Tobias v. NVIDIA Corp.*,
   No. 20-CV-6081, 2021 WL 4148706 (N.D. Cal. Sept. 13, 2021).......15

*Turner v. Schneider Elec. Holdings, Inc.*,
  530 F. Supp. 3d 127 (D. Mass. 2021) ................................................................. 23

*Wright v. Oregon Metallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004) ................................................................. 20, 22

**Statutes**

29 U.S.C. § 1002(21)(A) ................................................................. 2, 11, 18

29 U.S.C. § 1102(a) ................................................................. 4

29 U.S.C. § 1103(a) ................................................................. 3, 19, 20, 24

29 U.S.C. § 1105(a) ................................................................. 8, 26

29 U.S.C. § 1106 ................................................................. 8, 22, 23, 25

29 U.S.C. § 1113(1) ................................................................. 14, 25

## **INTRODUCTION**

Plaintiffs' amended complaint in this ERISA action, arising out of the Rollins 401(k) Savings Plan (the "Plan"), is their fourth bite at the apple before this Court. For three years, Plaintiffs have alleged that the Plan's fiduciaries—Rollins and an internal committee of Rollins employees (and later the Plan's investment advisors)—violated ERISA by making what the Plaintiffs see as bad investment selections and causing the Plan to pay too much in recordkeeping fees.

This Court dismissed Plaintiffs' amended complaint in the first action.[1] Plaintiffs then refiled this action, purporting to have addressed the Court's concerns. But faced with the prospect of yet another dismissal (and having to respond to numerous meritorious motions to dismiss), Plaintiffs filed an amended complaint (the "Complaint") here, too. Rather than fix their defective theories for relief, Plaintiffs expanded the case by dragging in two new defendants: (1) Prudential Retirement Insurance and Annuity Company ("PRIAC"[2]), which

---

[1] The Court dismissed that first action because the plaintiff failed to exhaust her Plan administrative remedies. *Fleming v. Rollins, Inc.*, No. 19-CV-5732-ELR, 2020 WL 7693147, at *1, *5 (N.D. Ga. Nov. 23, 2020).

[2] The Complaint refers to this entity as "Empower Retirement, LLC f/k/a Prudential Insurance and Annuity Company." Before filing their Motion to Dismiss, the Prudential Defendants' counsel conferred with Plaintiffs' counsel, and notified them that the correct name of this entity is the name in the text above (PRIAC), and that PRIAC is a standalone company not re-named "Empower

provided recordkeeping services and certain products to the Plan, and

(2) Prudential Bank & Trust, F.B.S. ("PB&T"), the Plan's directed trustee that

carries out the directions of Rollins (together, the "Prudential Defendants").

The current Complaint fares no better than the first three. Despite its 135

pages, the Complaint's claims against the Prudential Defendants are legally

defective, are contradicted by Plaintiffs' own allegations, and run afoul of black-

letter ERISA law.

The Complaint asserts two types of ERISA claims against the Prudential

Defendants: breach of fiduciary duties (Counts I and II) and engaging in prohibited

transactions (Counts V and VI). These claims fail for three key reasons.

First, the fiduciary duty claims against PRIAC should be dismissed because

it is not a fiduciary under ERISA. An entity is a fiduciary only if it has "authority"

or "control" with regard to management or administration of the plan or the plan's

assets. 29 U.S.C. § 1002(21)(A). As courts have long recognized, recordkeepers

lack such authority or control because they do not make decisions for plans.

Indeed, the Complaint repeatedly acknowledges that Rollins and its Administrative

_____

Retirement, LLC." Plaintiffs plead no facts concerning the purported re-naming of
PRIAC to Empower Retirement, LLC, and therefore, no matter the outcome of the
Motion, Empower Retirement, LLC should be dismissed.

Committee—not PRIAC—made the decisions about Plan investment options and recordkeeping fees. The Complaint tries to cast PRIAC as a fiduciary by alleging it had input into those decisions, but that is not enough to make PRIAC a fiduciary.

Second, the fiduciary duty claims against PB&T should be dismissed because the Complaint's allegations reveal that PB&T was a directed trustee, which means its fiduciary duties were limited to carrying out the directions of the Plan's named fiduciaries—Rollins and the Administrative Committee. 29 U.S.C. § 1103(a)(1). To state a claim for breach of those limited duties, Plaintiffs must allege that PB&T failed to carry out a given direction, failed to act in accordance with the terms of the Plan, or knowingly acted in violation of ERISA. The Complaint makes no such allegations, nor could it do so.

Third, the prohibited transaction claims fail as to both Prudential Defendants because those provisions apply only to fiduciaries who cause the plan to engage in certain transactions. 29 U.S.C. § 1106(a)(1), (b)(1). Because the Complaint fails to properly allege that PRIAC is a fiduciary, these provisions do not apply at all. Likewise, the Complaint fails to allege that either PRIAC or PB&T caused the Plan to engage in any of the challenged transactions.

As explained below, the claims against the Prudential Defendants should be dismissed with prejudice.

## BACKGROUND

**The Plan.** Rollins sponsors the Rollins 401(k) Savings Plan to help its employees save for retirement. Dkt. 53 ("Compl.") ¶¶ 1, 26. The Plan is a defined contribution plan in which each participating employee has money in an individual account and can choose to invest their money in the options offered in the Plan. *See id.* ¶ 26. Plaintiffs are former Rollins employees who participated in the Plan. *Id.* ¶¶ 32–37.

**The Named Fiduciaries.** Rollins appointed an Administrative Committee to manage and oversee the Plan. *See id.* ¶¶ 25, 45. The Administrative Committee is a "named fiduciary" of the Plan, meaning it is expressly identified as a fiduciary in the written documents that establish the Plan. *Id.* ¶ 45; Compl. Ex. 1, Plan Doc. § 1.53; *see also* 29 U.S.C. § 1102(a). As the named fiduciary, the Administrative Committee has "complete control of the administration of the Plan." Compl. ¶¶ 45, 47. For example, it "made and effected investment decisions for the Plan" by selecting the investment options. *Id.* ¶ 49. It is also responsible for monitoring and evaluating those investment options, with the assistance of its investment advisors, and it has "sole discretion" to decide whether and when to replace those options. Compl. Ex. 3, Investment Policy Stmt. § II.B, IV.C; *see also* Compl. ¶¶ 49, 53–55.

In addition, the Administrative Committee selects the Plan's recordkeeper and trustee, negotiates the Plan's recordkeeping arrangement, and decides how to pay for recordkeeping services. *See, e.g.*, Compl. ¶¶ 29, 56, 216–17, 295; Compl. Ex. 1, Plan Doc. § 12.3(a)(14)–(15).

**PRIAC.** PRIAC is the Plan's recordkeeper and was selected by the Administrative Committee. *See* Compl. ¶ 56. Recordkeeping is a day-to-day administrative service that all 401(k) plans need in order to operate. *Id.* ¶ 203. PRIAC provides its services to the Plan pursuant to a written contract it negotiated with the Administrative Committee. *See id.* ¶ 211; *see also* Ex. A, Administrative Services Agreement ("ASA"). The contract specifies that PRIAC provides nondiscretionary services, and thus does not act as an ERISA fiduciary. *See* Ex. A, ASA at 2.[3]

The Administrative Committee also chose two products that are available to 401(k) plans that receive recordkeeping services from PRIAC. First, in 2007, the Administrative Committee chose to include the Prudential Guaranteed Income

---

[3] In addition to the documents attached to the Complaint (*see* Compl. Exs. 1–3), the Court may consider PRIAC's recordkeeping services agreement (Ex. A) and the Prudential GIC contract (Ex. B) at this stage because they are referenced in the Complaint and central to Plaintiffs' claims. *See, e.g.*, *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015); *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284–85 (11th Cir. 2007).

Contract ("GIC") in the Plan's lineup of investment options. Compl. ¶ 174; Ex. B, GIC at 6 (contract signed March 1, 2007).[4] The Prudential GIC is a type of stable value fund designed to preserve participants' capital and provide them with steady, predictable returns. Compl. ¶ 175. Participants who deposit money into the Prudential GIC receive interest at a guaranteed rate, known as the "crediting rate." *Id.* The crediting rate is reset on January 1 and July 1 of each year according to a formula set forth in the contract that depends on the performance of the associated assets. *Id.*; Ex. B, GIC at 18–20. The Prudential GIC also sets forth the fixed fees that participants pay: before 2018, the fee was 0.55% per annum of the average market value of the Plan assets in the Prudential GIC, and in 2018 it was lowered to 0.50%. Ex. B, GIC at 1, 25. Participants can withdraw their money from the Prudential GIC at any time, and the Administrative Committee can terminate the contract for all participants on 90 days' notice. *See id.* at 12, 21.

Second, the Administrative Committee selected GoalMaker, an optional asset allocation tool that automatically allocates a participant's 401(k) money across a portfolio of Plan investment options. Compl. ¶¶ 90, 94, 181. The Complaint acknowledges that a tool like GoalMaker can benefit participants,

---

[4] The Complaint uses the terms "Prudential GIC" and "Prudential Guaranteed Fund" interchangeably. *See, e.g.*, Compl. ¶¶ 174, 176, 263.

especially those with limited time or investment experience, because it provides tailored portfolios based on each participant's expected retirement date and risk tolerance (high, moderate, or low). *Id.* ¶¶ 91, 94. Plan sponsors—not PRIAC—decide which investment options GoalMaker uses, and plan sponsors can select any investment options they want; here, the Administrative Committee chose a set of actively managed mutual funds. *See id.* ¶¶ 93, 104. Participants are not required to use GoalMaker and can instead choose their own allocations among the Plan's investment options. *See id.* ¶ 92.

**PB&T.** PB&T was the Plan's trustee and was selected by the Administrative Committee. *See id.* ¶ 29. PB&T is a "directed trustee," *id.* at 5, and therefore its powers and duties are limited to carrying out actions expressly directed by Rollins, acting through its Administrative Committee. For example, PB&T must receive, hold, manage, and invest Plan assets "in accordance with the directions of the Employer [i.e., Rollins and its Administrative Committee]." Compl. Ex. 2, Trust Agreement § 3(a). PB&T may not take any action "except pursuant to directions received by it from" Rollins or the Administrative Committee. *Id*.

**Procedural History.** In 2019, one of the Plaintiffs filed a class action bringing ERISA claims against Rollins and the Administrative Committee. *See Fleming v. Rollins, Inc.*, No. 19-CV-5732-ELR (N.D. Ga.) (the "2019 Action").

7

The Court dismissed the 2019 Action because Plaintiff failed to exhaust her Plan administrative remedies. *Fleming*, 2020 WL 7693147, at *1, *5.

A year later, Plaintiffs filed this class action, asserting many of the same claims as the 2019 Action, but adding new claims and defendants. *See generally* Dkt. 1. Every defendant moved to dismiss but, instead of responding, Plaintiffs amended their complaint and added PRIAC and PB&T as defendants.

The Complaint has seven counts, but only four apply to the Prudential Defendants. Count I asserts that Defendants breached the fiduciary duty of prudence under 29 U.S.C. § 1104(a)(1)(B) because they "selected and retained investment options in the Plan despite the high cost of the funds" and "failed to monitor or control the grossly excessive compensation paid for recordkeeping services." Compl. ¶ 400. Count II asserts that Defendants breached the fiduciary duty of loyalty under 29 U.S.C. § 1104(a)(1)(A) because they "made investment decisions and/or provided investment advice and/or managed Plan assets while tainted with self-interest." *Id.* ¶ 429. Counts V and VI assert that Defendants engaged in prohibited transactions in violation of 29 U.S.C. § 1106. *Id.* ¶¶ 466–86. In addition, Plaintiffs assert theories of co-fiduciary liability under 29 U.S.C. § 1105(a) in connection with all of these counts. *See id.* ¶¶ 418–19, 436–37, 501.

8

**LEGAL STANDARD**

Motions to dismiss under Rule 12(b)(6) are an "important mechanism for weeding out meritless claims" in ERISA suits. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). They "help to prevent settlement extortion" by preventing plaintiffs with a "largely groundless claim" from "tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the discovery process will reveal relevant evidence." *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) (quotation marks omitted).

To survive a motion to dismiss, Plaintiffs must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). A claim is plausible only if Plaintiffs plead enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although the Court must assume the truth of well-pleaded factual allegations, the Court need not accept any "legal conclusion couched as a factual allegation" or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. (brackets and quotation marks omitted).

# ARGUMENT

## I.     The Fiduciary Duty Claims Against The Prudential Defendants Should Be Dismissed.

Counts I and II assert claims for breach of the fiduciary duties of prudence and loyalty under ERISA. As the Rollins Defendants point out in their motion to dismiss, those claims suffer from fatal defects, such as impermissible "shotgun pleading" (Dkt. 75-1 ("Rollins Br.") at 8–10), failure to state a claim (*id*. at 10–28), and failure to exhaust administrative remedies (*id*. at 28–31). Those arguments apply to all defendants in this case. As to the Prudential Defendants, there are two independent reasons for dismissal: PRIAC is not a fiduciary, and the Complaint does not allege that PB&T breached its limited fiduciary duties. Each is discussed below.

### A.     PRIAC Is Not A Fiduciary.

In every case asserting breach of ERISA fiduciary duties, the "threshold question" is whether each defendant was "performing a fiduciary function when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000). The term "fiduciary" is defined in the statute and has three subsections:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect,

with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). As to PRIAC, Plaintiffs invoke subsection (i), which requires an *exercise* of authority or control. *See* Compl. ¶¶ 29, 56, 394, 423. But the Complaint does not and cannot allege that PRIAC had any "authority" or "control" with regard to the actions Plaintiffs challenge, let alone that it exercised such authority or control. Counts I and II thus should be dismissed.

PRIAC was the Plan's recordkeeper, and it is well settled that a recordkeeper "is not a fiduciary." *Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288, 290 (11th Cir. 1989). As courts have recognized, a recordkeeper's activities are "ministerial, rather than discretionary, in nature," and consist of actions like "calculating benefits, maintaining participant records, and communicating with participants" and thus do "not give rise to fiduciary responsibility under ERISA." *Carolinas Elec. Workers Ret. Plan v. Zenith Am. Sols., Inc.*, 658 F. App'x 966, 969 (11th Cir. 2016); *see also, e.g.*, *Singleton v. Bd. of Trs. of IBEW Loc. 613 & Contributing Emps. Health & Welfare Fund*, 815 F. Supp. 448, 450 (N.D. Ga. 1993) (provider of plan recordkeeping and administrative services was not a fiduciary); *Klyman v. Delta Air Lines, Inc.*, No. 05-CV-941-CAP, 2008 WL 11400765, at *2 (N.D. Ga. May 23, 2008) (similar).

Here, the challenged action is negotiation of recordkeeping fees. Plaintiffs say that "the Named Plan Fiduciaries"—meaning Rollins and the Administrative Committee—could have negotiated lower recordkeeping fees. Compl. ¶ 295. But regardless of whether Plaintiffs can proceed with such a claim against the Named Plan Fiduciaries, Plaintiffs cannot proceed with such a claim against PRIAC. A service provider like PRIAC "does not act as a fiduciary with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms." *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009). The Complaint nowhere suggests PRIAC had such control. On the contrary, it admits that the Administrative Committee controlled the approval. *See* Compl. ¶¶ 211, 223, 295.

In paragraphs 396 and 425 of the Complaint, Plaintiffs claim that PRIAC was a fiduciary for three reasons, none of which is sufficient.

*First*, Plaintiffs assert that PRIAC acted as a fiduciary by "recommending the Prudential GIC to Named Plan Fiduciaries for valuable consideration." Compl. ¶¶ 396, 425. But merely offering or recommending an investment option or other product for a plan does not transform a recordkeeper into a fiduciary. *Hecker*, 556 F.3d at 583. An entity is a fiduciary with regard to investment options only if it has

the "final say" in whether an investment option is added to the plan menu, i.e., only when it can control the decision. *Id.* at 583–84.

The Complaint repeatedly alleges that PRIAC did not have such control. In fact, it acknowledges that only Rollins and its Administrative Committee had the authority to decide which investment options to include in the Plan's lineup. *See, e.g.*, Compl. ¶ 49 (the Administrative Committee "made and effected investment decisions for the Plan"); *id.* ¶ 16 (Rollins and the Administrative Committee "at any time" could have "replac[ed] the . . . funds in the Plan's investment menu"). Because the Complaint does not and cannot allege that PRIAC had the "final say," PRIAC was not a fiduciary with regard to any decision about whether to select the Prudential GIC (or any other investment option) for the Plan. *Hecker*, 556 F.3d at 583–84. The fact that Rollins or the Administrative Committee "may have discussed this decision, or negotiated about it" with PRIAC "does not mean that [PRIAC] had discretion to select the funds." *Id.*; *see also, e.g.*, *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 294 (3d Cir. 2014) (service provider was not a fiduciary because it had "no contractual authority to control the mix and range of investment options").

At any rate, any claim relating to the selection of the Prudential GIC is time-barred. Under ERISA, no action can be challenged as a fiduciary breach more than

six years after the action occurred. *See* 29 U.S.C. § 1113(1). Plaintiffs allege that the Administrative Committee selected the Prudential GIC for the Plan's lineup in 2010. Compl. ¶ 263. In fact, the Administrative Committee selected the Prudential GIC even earlier, in 2007. Ex. B, GIC at 6. Either way, the selection happened far more than six years before the filing of this action in 2021 or the filing of the original 2019 Action. *See, e.g.*, *Pledger v. Reliance Tr. Co.*, 240 F. Supp. 3d 1314, 1328 (N.D. Ga. 2017) (dismissing ERISA claims as time-barred under § 1113); *Griffin v. Aetna Health Inc.*, No. 17-CV-77-AT, 2017 WL 4423419, at *6 (N.D. Ga. June 21, 2017) (same).

**Second**, Plaintiffs claim that PRIAC acted as a fiduciary by "exercising discretion and control over rebates and other Plan assets instead of returning them to the Plan and/or Plan participants." Compl. ¶¶ 396, 425. That allegation appears to refer to PRIAC's receipt of revenue sharing payments from the Plan's investment options. Revenue sharing is a commonly used arrangement in 401(k) plans, and it works the way it sounds: when the fees of an investment option include a revenue sharing component, a portion of the fees collected by the investment manager are paid to the recordkeeper to pay for recordkeeping fees. *Id.* ¶¶ 113, 208. Revenue sharing is a commonly accepted practice in the administration of 401(k) plans. *See, e.g.*, *Smith v. CommonSpirit Health*, No. 20-

14

95, 2021 WL 4097052, at *11 n.3 (E.D. Ky. Sept. 8, 2021), *aff'd*, 37 F.4th 1160 (6th Cir. 2022); *Tobias v. NVIDIA Corp.*, No. 20-CV-6081, 2021 WL 4148706, at *11 (N.D. Cal. Sept. 13, 2021) (collecting additional cases).

The Complaint does not allege that PRIAC received any payments beyond what its recordkeeping agreement provided. *See, e.g.*, Compl. ¶¶ 270–72. When a service provider merely receives its contractually specified compensation, it is not exercising any authority or control and is therefore not a fiduciary. *Pizarro v. Home Depot, Inc.*, No. 18-CV-1566-WMR, 2019 WL 11288656, at *6 (N.D. Ga. Sept. 20, 2019). Acting in a manner consistent with the terms of its contract does not make an entity a fiduciary. *See id.* Thus, PRIAC did not act as a fiduciary with respect to revenue sharing payments.

Furthermore, Plaintiffs cannot amend their allegations on this claim because PRIAC's recordkeeping agreement until 2018 expressly provided that it would be compensated using revenue sharing, subject to a limit of 25 basis points (i.e., an amount equal to 0.25% of total Plan assets), *see* Ex. A, ASA at 36, and starting in 2018, fees were limited to a fixed amount of $43 per participant, *see* Rollins Br. at 21, 23; *see also, e.g.*, Dkt. 48-10 at ROLLINS0000046, -173, 175. In the pre-2018 period, any excess amounts had to be returned to the Plan. *See, e.g.*, Ex. A, ASA at 36. The Complaint does not and cannot allege that PRIAC ever received any

amount beyond what the recordkeeping agreement allowed. This means that PRIAC simply received its contractually specified compensation, and that does not make it a fiduciary. *See, e.g.*, *In re Fid. ERISA Fee Litig.*, 990 F.3d 50, 56–57 (1st Cir. 2021) (service provider "was not a fiduciary with respect to its receipt of revenue-sharing payments"); *Pizarro*, 2019 WL 11288656, at *6 ("[A] service provider does not become a fiduciary simply by negotiating its compensation in an arm's-length bargaining process."); *McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1003 (8th Cir. 2016) ("a service provider's adherence to its agreement with a plan administrator does not implicate any fiduciary duty"); *Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011) (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987)) (service provider was "not an ERISA fiduciary with respect to the terms of the agreement for his compensation" because it lacked "authority" or "control" over the plan's "decision whether or not, and on what terms, to enter into an agreement").

To the extent Plaintiffs claim PRIAC exercised discretion over Plan assets by retaining "spread fees" from the Prudential GIC, *see* Compl. ¶¶ 177–78, that theory fails, too. What Plaintiffs mean by "spread" is the difference between the return on the assets within the Prudential GIC and the crediting rate. According to Plaintiffs, the Prudential GIC generated spread because PRIAC set the crediting

rate in its "sole discretion" and the crediting rate was not tied to the performance of the assets. *Id.* ¶ 177. But the Prudential GIC contract squarely contradicts these allegations—it provides that the crediting rate is set by a formula (not in PRIAC's discretion), and that one of the inputs was the "average yield of the assets as of the calculation date" (i.e., the rate depended on the performance of the assets). Ex. B, GIC at 19–20. The contract also shows that PRIAC could not control its compensation because the Prudential GIC set forth a fixed fee of 0.55% prior to 2018 and 0.50% thereafter. *Id.* at 1, 25. In a case involving a nearly identical claim, the court granted a motion to dismiss because a similar contract directly refuted allegations of spread fees and showed that the crediting rate was set "pursuant to a set formula which involves no exercise of discretion" and the fee amount was "defined by contract." *Austin v. Union Bond & Tr. Co.*, No. 3:14-CV-706, 2014 WL 7359058, at *8–9 (D. Or. Dec. 23, 2014).

***Third***, Plaintiffs assert that PRIAC was a fiduciary because it had "sufficient influence over Named Plan Fiduciaries with respect to their selection of investment options for the Plan." Compl. ¶¶ 396, 425. That theory fails for multiple reasons. For starters, Plaintiffs do not allege any facts concerning how PRIAC had "influence" over Rollins or the Administrative Committee. Their assertion is implausible anyway because the Complaint alleges that Rollins had independent

investment advisors, *see, e.g.*, *id.* ¶¶ 53–55, 330—so PRIAC would have had to somehow "influence" them, too, to succeed in overcoming the Committee's independent decisionmaking. In any event, no court has held that mere influence amounts to an exercise of "authority" or "control" under 29 U.S.C. § 1002(21)(A)(i). Nor would such a case exist: such a holding would be contrary to the terms of the statute.

The Complaint's allegations make clear that whatever "influence" PRIAC may have had regarding investment options was insufficient to make it a fiduciary. Rollins and its Administrative Committee—not PRIAC—made the final decision about which investment options to include in the Plan lineup and in GoalMaker. *See, e.g.*, Compl. ¶ 49 ("the Administrative Committee . . . made and effected investment decisions for the Plan"); *id.* ¶ 93 ("The Administrative Committee intentionally populated GoalMaker with . . . mutual funds"); *id.* ¶ 103 (criticizing the funds that the "Named Plan Fiduciaries . . . selected for the Plan menu"); *id.* ¶ 104 ("Named Plan Fiduciaries selected and retained only actively managed funds in GoalMaker"); *id.* ¶ 115 ("Named Plan Fiduciaries approved the use of high-fee, actively managed funds for GoalMaker"); *id.* ¶ 253 ("The selection and retention of investment funds in GoalMaker were made by Named Plan Fiduciaries"). Because Rollins and the Administrative Committee, not PRIAC, had the "final say

on which investment options will be included," *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 911 (7th Cir. 2013), no amount of "influence" could make PRIAC a fiduciary. The claims in Counts I and II should therefore be dismissed as to PRIAC.

### B.     PB&T Had Only Limited Fiduciary Duties As A Directed Trustee, And There Are No Allegations That It Breached Those Duties.

ERISA recognizes two types of trustees: discretionary trustees and directed trustees. Discretionary trustees have "*exclusive* authority and discretion to manage and control the assets of the plan." 29 U.S.C. § 1103(a) (emphasis added). They can make final decisions about the assets of the plan without consulting any other person or entity, and thus have broad fiduciary duties under ERISA. Directed trustees, on the other hand, do not have "exclusive authority and discretion," but instead can act only at "the direction of a named fiduciary" identified in a trust agreement. 29 U.S.C. § 1103(a)(1).

As the Complaint acknowledges and the Trust Agreement confirms, PB&T was a directed trustee. Compl. at 5; Compl. Ex. 2, Trust Agreement § 3(a). A directed trustee's fiduciary duties are extremely limited. Its sole duty is to follow the directions of the named fiduciaries identified in the trust agreement or other plan documents, so long as those instructions are (i) "in accordance with the terms

of the plan" and (ii) "not contrary to" ERISA. 29 U.S.C. § 1103(a)(1); *see also,*

*e.g.*, *Maniace v. Com. Bank of Kansas City, N.A.*, 40 F.3d 264, 267 (8th Cir. 1994).

The Complaint acknowledges that PB&T followed the directions of the

Named Plan Fiduciaries. Compl. ¶¶ 398, 427. Nevertheless, the Complaint claims

PB&T should be liable because those directions called for "payment of

unreasonable and unnecessary fees and expenses." *Id.* Plaintiffs allege that PB&T

had a "residual fiduciary responsibility" to determine whether those directions

"would result in a violation of ERISA." *Id.*

Plaintiffs' suggestion that PB&T had an obligation to evaluate whether each

instruction it received was consistent with ERISA is simply wrong. Courts have

repeatedly held the opposite—that a directed trustee is *not* required to investigate

or weigh the merits of directions it receives from the plan's named fiduciaries. *See,*

*e.g.*, *Maniace*, 40 F.3d at 268; *Wright v. Oregon Metallurgical Corp.*, 360 F.3d

1090, 1102 (9th Cir. 2004); *Ershick v. United Missouri Bank of Kansas City, N.A.*,

948 F.2d 660, 665 (10th Cir. 1991); *Grindstaff v. Green*, 133 F.3d 416, 425–26

(6th Cir. 1998). Instead, to show that PB&T breached its duty, Plaintiffs must

allege facts showing PB&T had "actual knowledge" that a direction it was given

violated ERISA. *See, e.g.*, *Renfro*, 671 F.3d at 324–25 (rejecting claims against

directed trustee because plaintiffs failed to allege that the trustee knew the plan

sponsor's directions violated ERISA); *Solis v. Webb*, 931 F. Supp. 2d 936, 950 (N.D. Cal. 2012) (similar).

The Complaint nowhere suggests that PB&T had actual knowledge of any violation of ERISA. In particular, the Complaint does not allege that PB&T actually knew any fee or expense it was directed to pay was unreasonable or unnecessary. For example, Plaintiffs claim that PRIAC received excessive recordkeeping fees, *see* Compl. ¶¶ 223–44, but the Complaint does not allege that PB&T had actual knowledge that those fees were excessive when it was directed to pay them.

For these reasons, Counts I and II should be dismissed as to PB&T.

## II.   The Prohibited Transaction Claims Against The Prudential Defendants Should Be Dismissed.

Counts V and VI assert that PRIAC and PB&T (and every other defendant) engaged in prohibited transactions either as fiduciaries or, in the alternative, as non-fiduciary "parties in interest" under 29 U.S.C. § 1106(a)(1)(C)–(D) and § 1106(b)(1). Again, there are many reasons why these claims fail, as explained in the motions filed by other defendants in this case. But there are several additional, independent reasons why these claims fail against the Prudential Defendants.

### A.   Plaintiffs Fail To State Prohibited Transaction Claims Against The Prudential Defendants.

**PRIAC.** The prohibited transaction claims against PRIAC should be dismissed for three reasons. First, the prohibited transaction provisions only govern the conduct of *fiduciaries*. Subsection (a)(1) provides that "[a] *fiduciary* with respect to a plan shall not cause the plan to engage in" certain transactions. 29 U.S.C. § 1106(a)(1) (emphasis added). Subsection (b)(1) provides that "[a] *fiduciary* with respect to a plan shall not deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1) (emphasis added). For the reasons explained above, PRIAC did not act as a fiduciary with regard to any action challenged in the Complaint. It therefore cannot be liable for any prohibited transaction. *See, e.g.*, *Cent. Valley Ag Coop. v. Leonard*, 986 F.3d 1082, 1089 (8th Cir. 2021) (prohibited transaction claims "necessarily fail" where "no fiduciary relationship existed"); *Wright*, 360 F.3d at 1101–02 (affirming dismissal of prohibited transaction claims because defendant was not a fiduciary).

Second, the prohibited transaction claims against PRIAC should also be dismissed because Plaintiffs fail to allege that PRIAC "*caused* the plan to engage in [any] allegedly unlawful transaction." *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996) (emphasis added). To meet the statute's causation requirement, Plaintiffs must allege that PRIAC had "discretionary authority to demand" that an

alleged prohibited transaction take place. *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*, 475 F. Supp. 3d 910, 944 (E.D. Wis. 2020). An "attenuated theory of causation"—in which a defendant allegedly was a link in a causal chain, but lacked authority to direct the plan to enter into any transaction— will not do. *Miller v. Astellas US LLC*, No. 20 C 3882, 2021 WL 1387948, at *10 (N.D. Ill. Apr. 13, 2021). For the same reason the Complaint fails to allege that PRIAC was a fiduciary, it fails to allege that PRIAC had authority or control to cause the Plan to enter into any transaction. Instead, all decisions about selection of investments and recordkeeping arrangements were made by the Administrative Committee, and so could not have been caused by PRIAC. *See, e.g.*, Compl. ¶¶ 16, 49, 93, 253 (investment decisions); *id.* ¶¶ 216–17 (recordkeeping arrangements and whether to use revenue sharing).

Third, Plaintiffs cannot allege a prohibited transaction claim based on PRIAC's receipt of fees, including fees from revenue sharing. A service provider cannot be liable under § 1106 based merely on its receipt of fees for plan services it provided. *Turner v. Schneider Elec. Holdings, Inc.*, 530 F. Supp. 3d 127, 139 (D. Mass. 2021). And fees collected from revenue sharing "do not become assets of the plan" and thus cannot support a prohibited transaction claim anyway. *Henderson v.*

*Emory Univ.*, 252 F. Supp. 3d 1344, 1357 (N.D. Ga. 2017) (dismissing prohibited transaction claim).

**PB&T.** The prohibited transaction claims against PB&T are similarly meritless. As explained above, PB&T was a directed trustee with limited fiduciary duties. Its only power under the Trust Agreement was to carry out instructions as directed by Rollins and the Administrative Committee. *See* 29 U.S.C. § 1103(a)(1); Compl. at 5; Compl. Ex. 2, Trust Agreement § 3(a). PB&T thus had no authority to initiate a transaction on its own (nor is there any allegation that it did so), so it could not have caused any prohibited transaction.

## B.   Plaintiffs' Alternative "Party In Interest" Theory Fails.

In a single paragraph in each count, Plaintiffs declare that the Prudential Defendants can be held liable under ERISA's prohibited transaction provisions as non-fiduciary "parties in interest." Compl. ¶¶ 471, 478. This undeveloped theory can be disposed of in short order for two reasons.

First, neither PRIAC nor PB&T was a party in interest with respect to their service agreements with the Plan. A service provider is not a party in interest when it enters into its initial agreement with a named plan fiduciary. *Ramos v. Banner Health*, 1 F.4th 769, 787 (10th Cir. 2021) (citing *Sellers v. Anthem Life Ins. Co.*, 316 F. Supp. 3d 25, 34 (D.D.C. 2018)). Instead, "some prior relationship must exist

24

between the fiduciary and the service provider to make the provider a party in interest under § 1106." *Id.* The Complaint is devoid of allegations that PRIAC or PB&T had any prior relationship with the Named Plan Fiduciaries before entering their respective service agreements, i.e., the recordkeeping agreement (PRIAC) and the Trust Agreement (PB&T). And in any event, any claims based on those transactions would be time-barred under 29 U.S.C. § 1113(1), since the parties entered into those agreements far more than six years before the filing of this action. *See* Ex. A, ASA at 8 (agreement executed in 2007); Compl. Ex. 2, Trust Agreement at ROLLINS000010 (agreement executed in 2006).

Second, even if Plaintiffs could show that PRIAC or PB&T was a party in interest at any relevant time, this theory would still fail. Courts have set limits on the potential liability of parties in interest under § 1106. *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000). One of those limits is that a party in interest can be liable only if it had "actual or constructive knowledge" that the transaction at issue violated ERISA. *Id.*; *see also, e.g.*, *Delta Airlines, Inc. v. Pradd*, No. 13-cv-220-SCJ, 2013 WL 12303736, at *3 (N.D. Ga. July 25, 2013). The Complaint has no allegations allowing the Court to infer that either of the Prudential Defendants ever had such knowledge. *See, e.g.*, Compl. ¶¶ 466–86.

## III.    The Claims For Co-Fiduciary Liability Should Be Dismissed.

The Complaint also alleges in passing that the Prudential Defendants can be liable as "co-fiduciaries" under 29 U.S.C. § 1105(a). Compl. ¶¶ 418–19, 436–37, 501. This conclusory allegation falls far short of the pleading requirements under *Twombly*'s plausibility standard. These claims can be dismissed on that basis alone. *See, e.g.*, *Appvion*, 475 F. Supp. 3d at 944 (dismissing co-fiduciary liability claim based on conclusory allegations); *In re BP p.l.c. Sec. Litig.*, No. 4:10-cv-4214, 2015 WL 6674576, at *11 (S.D. Tex. Oct. 30, 2015) (same).

The co-fiduciary claims have other deficiencies, too. For starters, PRIAC is not a fiduciary, so it cannot be liable for a co-fiduciary breach. And even if it were a fiduciary, it is settled that an entity can be liable as a co-fiduciary for another entity's fiduciary breach only if *both* entities were fiduciaries with regard to the challenged conduct. Here, there is no allegation that either of the Prudential Defendants had the same fiduciary duties as any other defendant.

Moreover, a defendant can be liable as a co-fiduciary only if it had "actual knowledge" of a fiduciary breach. *Id.*; *see also, e.g.*, *Fuller v. SunTrust Banks, Inc.*, No. 11-CV-784-ODE, 2019 WL 4804273, at *8 (N.D. Ga. July 16, 2019) ("actual knowledge is the appropriate standard" under § 1105(a)). Again, the Complaint has no allegations allowing a reasonable inference of such knowledge as to PRIAC or

PB&T. The conclusory assertion that "Defendants knowingly participated in each breach," *see, e.g.*, Compl. ¶ 437, "cannot state a claim." *In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1352 (N.D. Ga. 2010).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss all claims against the Prudential Defendants with prejudice.

Dated: July 15, 2022                Respectfully submitted,

*/s/ Mark B. Blocker*
Mark B. Blocker (admitted *pro hac vice*)
mblocker@sidley.com
Caroline A. Wong (admitted *pro hac vice*)
caroline.wong@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*/s/ Kamal Ghali*
Kamal Ghali, Georgia Bar No. 805055
ghali@bmelaw.com
Jeffrey W. Chen, Georgia Bar No. 640207
chen@bmelaw.com
BONDURANT MIXSON & ELMORE LLP
1201 West Peachtree Street NW, Suite 3900
Atlanta, Georgia 30309
Telephone: (404) 881-4173
Facsimile: (404) 881-4111

*Attorneys for Defendants Prudential*
*Retirement Insurance and Annuity Company*
*and Prudential Bank & Trust, F.S.B.*

## **LOCAL RULE 7.1(D) CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared with Times New Roman 14-point font, one of the font and point selections approved by Local Rule 5.1.

*/s/ Caroline A. Wong*
Caroline A. Wong

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 15, 2022, I caused the foregoing Memorandum of Law in Support of the Prudential Defendants' Motion to Dismiss the First Amended Class Action Complaint to be filed with the Clerk of Court using the CM/ECF system, which will send email notification of such filing to all counsel of record.

<u>/s/ Caroline A. Wong</u>
Caroline A. Wong