# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| MARCIA G. FLEMING, et al., | |
| Plaintiffs, | Civil Action File No. 1:21-cv-05343-ELR |
| v. | |
| ROLLINS, INC.; THE ADMINISTRATIVE COMMITTEE OF THE ROLLINS, INC. 401(k) SAVINGS PLAN, BOTH INDIVIDUALLY AND AS THE *DE FACTO* INVESTMENT COMMITTEE OF THE ROLLINS, INC. 401(K) SAVINGS PLAN; EMPOWER RETIREMENT, LLC F/K/A PRUDENTIAL INSURANCE AND ANNUITY COMPANY; PRUDENTIAL BANK & TRUST, FBS, AS DIRECTED TRUSTEE OF THE ROLLINS, INC. 401(K) PLAN TRUST; ALLIANT INSURANCE SERVICES, INC.; ALLIANT RETIREMENT SERVICES, LLC; LPL FINANCIAL LLC; PAUL E. NORTHEN, JOHN WILSON, JERRY GAHLHOFF, JAMES BENTON and A. KEITH PAYNE in their capacities as members of the Administrative Committee; and John and Jane Does 1-10, | |
| Defendants. | |

## REPLY IN SUPPORT OF
## DEFENDANTS ALLIANT INSURANCE SERVICES, INC. AND
## ALLIANT RETIREMENT SERVICES, LLC'S MOTION TO
## <u>DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT</u>

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

INTRODUCTION ...................................................................................................1

ARGUMENT ..........................................................................................................2

I.  Opposition Arguments That Do Not Concern Alliant Are Irrelevant............2

II.  Conclusory Allegations Must Be Disregarded Under Rule 12(b)(6).............6

III.  The Rest Of Plaintiffs' Opposition Arguments Fail To Avoid
Dismissal....................................................................................................10

    A.  Plaintiffs Have No Excuse For Failing To Exhaust Their
Claims................................................................................................10

    B.  Plaintiffs' Claims Predating December 30, 2015 Are Untimely. ......12

    C.  Plaintiffs Fail To State A "Duty Of Prudence" Claim. ......................13

    D.  Plaintiffs Fail To State A "Duty Of Loyalty" Claim. ........................16

    E.  Plaintiffs Fail To State A Claim For Failure To Follow The
Plan....................................................................................................16

    F.  Plaintiffs Fail To State A Prohibited Transaction Claim. .................17

    G.  Plaintiffs Fail To State A Claim For Co-Fiduciary Liability............18

IV.  Plaintiffs Are Not Entitled To An Award Of Fees. .....................................19

CONCLUSION .....................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. OshKosh Corp.*,
  47 F.4th 570 ...............................................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................1, 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................2, 6, 7, 8

*Bickley v. Caremark RX, Inc.*,
  461 F.3d 1325 (11th Cir. 2006) ....................................................................11

*Bryant v. Gen. Elec.*
  2018 WL 894033 (N.D. Ga. Feb. 14, 2018) ................................................13

*Carolinas Elec. Workers v. Ret. Plan v. Zenith Am. Sols., Inc.*,
  658 F. App'x 966 (11th Cir. 2016) ...............................................................13

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014).......................................................................................2

*Fleming v. Rollins, Inc.*,
  2020 WL 7693147 (N.D. Ga. Nov. 23, 2020) ...................................10, 11, 12

*Freeman v. Cont'l Ins. Co.*,
  996 F.2d 1116 (11th Cir. 1993) ....................................................................19

*Hardt v. Reliance Standard Life Ins. Co.*,
  560 U.S. 242 (2010)......................................................................................19

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018) ..................................................................14, 15

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) ......................................................................8

*Newbauer v. Carnival Corp.*,
  26 F.4th 931 (11th Cir. 2022) ...................................................................6, 10

# TABLE OF AUTHORITIES

**Page(s)**

*Pizarro v. The Home Depot, Inc.*,
    2019 WL 11288656 (N.D. Ga. Sept. 20, 2019)....................................15

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) ....................................................14, 15

*Tibble v. Edison Int'l*,
    575 U.S. 523 (2015).........................................................................12

*Transatlantic, LLC v. Humana, Inc.*,
    666 F. App'x 788 (11th Cir. 2016)....................................................7

*Young v. GM Inv. Mgmt. Corp.*,
    325 F. App'x 31 (2d Cir. 2009) .........................................................3

**Statutes**

29 U.S.C. § 1002(21)(A)(ii)..................................................................13

29 U.S.C. § 1002(38) ...........................................................................17

29 U.S.C. § 1104(a)(1)(D) ....................................................................16

29 U.S.C. § 1106(a) ..............................................................................17

29 U.S.C. § 1106(b) ..............................................................................18

29 U.S.C. § 1132(g) ..............................................................................19

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ............................................6-7

## INTRODUCTION

Alliant moved to dismiss the First Amended Complaint ("FAC") because it does not offer sufficient fact-based allegations (i) excusing Plaintiffs from their failure to exhaust administrative remedies as to Alliant, and (ii) stating a viable ERISA claim against Alliant for breach of fiduciary duty or prohibited transactions.[1] Plaintiffs confirm dismissal is warranted by largely failing to respond to these arguments in their Opposition to Alliant's Motion to Dismiss.  Dkt. 81 ("Opp.").

Instead, Plaintiffs offer two distractions.  First, they fill their 35-page brief with non-responsive arguments copied-and-pasted from their oppositions to the other defendants' motions to dismiss.  As a result, Plaintiffs "oppose" Alliant's Motion with allegations directed at *other* defendants, rebuttals to points Alliant *never raised*, and a theory of Alliant's supposed wrongdoing based on a contract that pertains only to *other* defendants.

Second, where Plaintiffs make arguments relevant to Alliant, they do so by reasserting the FAC's conclusory allegations and insisting, incorrectly, that the Court must accept them as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring courts to disregard conclusory allegations).  Alliant did not, as Plaintiffs

---

[1] As before, we refer to Alliant Insurance Services, Inc. and Alliant Retirement Services, LLC, collectively as "Alliant."

suggest, improperly "dispute the facts" alleged in the FAC. Opp. at 21. An allegation is not a "fact" simply because Plaintiffs say so. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The whole point at this stage is to test whether the FAC's allegations are well-pled facts sufficient to state a claim. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (Rule 12(b)(6) is an "important mechanism" for "weeding out meritless [ERISA] claims"). Tellingly, Plaintiffs still cannot identify any *facts* that support their inflammatory and unfounded assertions about Alliant's "conflicted" advice or its receipt of "excessive" or "hidden" fees.

Once the Opposition is stripped of these irrelevant digressions, as it must be under Rule 12(b)(6), very little argument is left. And none of it is sufficient to avoid dismissal of all claims against Alliant with prejudice.

## ARGUMENT

### I.   Opposition Arguments That Do Not Concern Alliant Are Irrelevant.

Much of Plaintiffs' Opposition can be disregarded as non-responsive. This includes arguments copied from Plaintiffs' oppositions to the other defendants' motions to dismiss, regardless of the relevance to Alliant.

For example, Plaintiffs make numerous claims about Alliant supported by unadjusted, word-for-word duplications of arguments about other defendants. *Compare* Opp. at 16 (arguing *Alliant* is a fiduciary because defendant "LPL

exercised control over the surplus of fees from revenue sharing") *with* Dkt. 80 (Opp. to LPL MTD) at 19-20 (same passage); *compare* Opp. at 16 (claims against *Alliant* are not time-barred because "LPL materially misrepresented the performance of the funds") *with* Opp. to LPL MTD at 17 (same passage).[2]  To be clear, there is no well-pled reason why a different party's alleged conduct would have any bearing on Alliant; these are just non-sequiturs resulting from a copy-and-paste job.

Other times, Plaintiffs borrow a rebuttal from an opposition against a different defendant, but swap in Alliant's name.[3]  Yet, in doing so, Plaintiffs overlook that Alliant never made the argument they are trying to rebut.  *Compare* Opp. at 26 (attempting to distinguish *Young v. GM Inv. Mgmt. Corp.*, 325 F. App'x 31 (2d Cir. 2009), even though Alliant never mentioned that case) *with* Dkt. 79 (Opp. to Rollins MTD) at 29 (same passage) *and* Dkt. 75-1 (Rollins MTD) at 24 (discussing *Young*).[4]

---

[2] *Compare* Opp. at 25 (arguing *Alliant* acted imprudently, but because of "LPL's revenue sharing arrangement") *with* Opp. to LPL MTD at 24-25 (same passage); *compare* Opp. at 29 (arguing *Alliant* acted disloyally, but because LPL allegedly manipulated its own fees) *with* Opp. to LPL MTD at 27-28 (same passage).

[3] Plaintiffs now refer to Alliant as the "Investment Fiduciaries" and LPL Financial LLC as "LPL."  However, in the FAC, Plaintiffs refer to both Alliant and LPL as the "Defendant Investment Fiduciaries."  FAC at 5.  Plaintiffs don't explain the change.

[4] *Compare* Opp. at 20-21 (arguing "whether a given item constitutes 'plan assets'" cannot be resolved now, even though Alliant never raised such an argument) *with* Opp. to LPL MTD at 22 (same passage) *and* Dkt. 76-1 (LPL MTD) at 31 (raising a "plan assets" argument); *compare* Opp. at 26-27 (rebutting an argument purportedly about Alliant's compliance with "ERISA's disclosure requirement," even though

Similarly, Plaintiffs take from other briefs recitations of allegations directed at other defendants, but rescript them to now include Alliant, thereby contradicting the allegations in their own amended pleading.  *Compare* Opp. at 5 (*Alliant* somehow controlled "the Crediting Rate" of Prudential's investment product, but citing FAC paragraphs about the Crediting Rate that pertain to Prudential, not Alliant) *with* Dkt. 82 (Opp. to Prudential MTD) at 6 (same passage).[5]

Most notably, Plaintiffs lift from their oppositions to the LPL, Prudential, and Rollins motions to dismiss a discussion of the Administrative Services Agreement ("ASA") that Prudential attached to its motion.  *Compare* Opp. at 3 *with* Dkt. 82 (Opp. to Prudential MTD) at 3-4; Opp. to LPL MTD at 3-4; Opp. to Rollins MTD at 4-5 (all citing Dkt. 78-3, which is Exhibit A to the Prudential MTD).  Plaintiffs take issue with this particular ASA because it allowed Plan service providers to be paid "a fixed percentage" of Plan assets, which they say was "excessive" or manipulated to generate "surplus" fees.  Opp. at 3.  Plaintiffs lean heavily on their interpretation of this ASA to oppose dismissal of their claims against Alliant.  *See infra* at 16-18.

---

Alliant never raised such an argument, because the only disclosure allegations are directed at Rollins) *with* Opp. to Rollins MTD at 30 (same passage) *and* Rollins MTD at 31-32 (addressing the disclosure allegations directed at it).

[5] *Compare* Opp. at 6 (*Alliant* made various misrepresentations, but citing 21 FAC paragraphs alleging Rollins or Prudential made those misrepresentations) *with* Opp. to Rollins MTD at 11 (same passage).

However, this ASA **does not pertain to Alliant**.  That is clear from the document itself, which does not name Alliant as one of the Plan service providers covered by the agreement.  *See* Dkt. 78-3.  It also predates Alliant's relationship with the Plan by several years.  *Id.* at 8 (dated June 2007); *see also* Dkts. 76-6 through 76-14 (2012-2020 Forms 5500 for the Plan) at Sch. C, Part I(2) (showing Alliant as a Plan service provider first in 2013).[6]  In fact, a different ASA covers Alliant's compensation for its services to the Plan.  *See* Dkt. 1-3 at ECF p. 73-75 (naming Alliant as a Plan service provider).  Plaintiffs attached this ASA to their original Complaint.  *Id.*  As Alliant has explained, this document provides that Alliant will be paid a flat fee, not a percentage-based fee.  MTD at 6.  The payment of that exact flat fee is reported in the Plan's annual Forms 5500.  *Id.*

Realizing this does not fit their new narrative, Plaintiffs push the Court to disregard the relevant ASA because they did not reattach it to the FAC.  Opp. at 8-9, 28.  They seem to think Alliant's dismissal arguments depend on the Court finding that Alliant, in fact, received a flat fee as the relevant ASA provides.  *Id*.  But Alliant does not have the burden of disproving Plaintiffs' contentions.[7]  Plaintiffs have the

---

[6] Another problem: Plaintiffs offer no well-pled facts showing the percentage-based compensation under this ASA was "excessive" or created "surplus" compensation.

[7] Alliant's purpose in noting that many of the FAC allegations are contradicted by the documents attached to the original Complaint is two-fold.  First, to highlight the

burden of pleading facts in support of their claims, including that Alliant received a percentage-based fee. They do not carry that burden by extracting portions of their other briefs discussing an ASA that does not concern Alliant and sticking Alliant's name in front of it anyway.

## II.   Conclusory Allegations Must Be Disregarded Under Rule 12(b)(6).

Not all of Plaintiffs' Opposition arguments are repackaged responses to other defendants. But even where Plaintiffs try to explain how the FAC states a claim against Alliant, their arguments fall short, as they all depend on the Court accepting conclusory allegations as true. That is not how Rule 12(b)(6) works.

A complaint survives dismissal only when it provides "sufficient ***factual*** matter" that states a plausible claim. *Iqbal*, 566 U.S. at 678 (emphasis added). Thus, "[w]hen evaluating a motion to dismiss, the first step is to eliminate any allegations in the complaint that are merely legal conclusions" or "conclusory statements." *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022); *Twombly*, 550 U.S. at 555 ("labels and conclusions . . . will not do"). A conclusory statement expresses "a factual inference without stating the underlying facts on which the inference is

---

improper shell game Plaintiffs have been playing with their pleadings. Second, to make clear why Plaintiffs rely exclusively on conclusory allegations: the narrative they have created about Alliant's advice and compensation is fiction, as those documents demonstrate. Accordingly, there would be no point in allowing Plaintiffs to replead or "make a more definite statement" under Rule 12(e). Opp. at 17, n.15.

based." CONCLUSORY, Black's Law Dictionary (11th ed. 2019).

Consistent with these principles, Alliant sorted out the conclusory allegations raised against it in the FAC, *see* MTD at 10, 16-20, 23, 27-32, and explained how the few remaining fact allegations failed to state any ERISA claim, *see id.* at 8-34. Plaintiffs do not respond directly to these arguments.  They do not, for example, identify any underlying facts on which the conclusory allegations are based.  Nor do they utilize the hundreds of pages of attachments to the original Complaint that detail Alliant's investment advice, process, and compensation.  And they certainly do not try to explain how their non-conclusory allegations are sufficient to state a claim.

Instead, Plaintiffs simply label all FAC allegations as "fact allegations" and trudge ahead without further explanation.  *See, e.g.,* Opp. at 9-11, 16, 20-21, 26, 28, 30-31, 33-34.  That is not enough.  *Twombly*, 550 U.S. at 555 (courts must reject a "conclusion couched as a factual allegation").  Nor is it enough to provide string-cites to the FAC, which is similarly "bereft of any details pertaining" to the conclusory allegations.  *Transatlantic, LLC v. Humana, Inc.*, 666 F. App'x 788, 790 (11th Cir. 2016) (allegation that defendant unlawfully transmitted funds lacked necessary fact details like "who initiated the transfers," "how much was transferred,"

and who was "entitle[d] to the funds," and thus was conclusory).[8]

An illustrative example: Plaintiffs argue that their claims predating ERISA's six-year statute of repose are timely based on allegations that Alliant "affirmatively misrepresented the performance of the Plan's investments and the hidden fees [it] derived from them."  Opp. at 14-16.  These allegations, Plaintiffs contend, "meet the heightened pleading requirements under Fed. R. Civ. P. 9(b)."  *Id.* at 16.  But to meet those requirements, Plaintiffs must allege "the who, what, when, where, and how of the allegedly false statements."  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).  None of the 56 different FAC allegations Plaintiffs cite in the Opposition provides those details.  *See* Opp. at 6, 9, 13.  To the contrary, they are epitomes of conclusory statements.  *See, e.g.*, FAC ¶ 266 ("At all relevant times during the Class Period, Named Plan Fiduciaries intentionally concealed from participants the benefits that they, Prudential, and Defendant Investment Fiduciaries received from the poorly performing funds which provided unreasonably high revenue sharing fees and illicit kickbacks.") (cited in Opp. at 6).[9]

---

[8] Likewise, it is not enough for Plaintiffs to deem their conclusory allegations "important."  Opp. at 14; *Twombly*, 550 U.S. at 561-62 (a plaintiff's "optimism" that a "conclusory statement" might find factual support in discovery is insufficient).

[9] Worse, this allegation, like nearly all the "misrepresentation" allegations, charges a different defendant, not Alliant, with making the generic, unidentified statements.

The Opposition abounds with similar examples of very broad assertions that have no specific factual support alleged in the FAC:

- *Alliant did not appropriately monitor Plan investments or recommend lower-fee funds. See* Opp. at 4-5, 21, 23.  The FAC does not identify anything specific about Alliant's process for monitoring Plan investments or any specific recommendations Alliant made.

- *Alliant provided "conflicted" investment advice to the Plan*.  Opp. at 4, 13, 27.  The FAC does not identify any specific advice Alliant provided, let alone advice that is suggestive of a "conflict."

- *Alliant exercised control over Plan investment decisions, Plan assets and Prudential's investment products*. Opp. at 1-2, 4-5, 18-20, 30-31.  The FAC does not identify any specific instance of Alliant exercising such "control" or anything that would give Alliant the power to do so.

- *Alliant made "misrepresentations" to Plan participants, the Administrative Committee, and the government.* Opp. at 2-3, 6, 9, 13-14, 16, 22, 26-29.  The FAC does not identify any specific representation Alliant made to another party, let alone a misrepresentation.

- *Alliant received "excessive" or "hidden" compensation*.  Opp. at 2-4, 14, 25, 32. The FAC does not identify any compensation Alliant received, let alone any details that would suggest excessive or hidden compensation.

- *Alliant took "surplus" compensation, increased its own compensation, or took funds that should have gone to participants or the Plan*.  Opp. at 2-3, 7, 27-29, 32-34.  Again, the FAC does not identify any compensation Alliant received, let alone any details that would suggest it received more than its contractually predetermined amount.

Plaintiffs' continued failure to identify any underlying facts supporting these allegations—after Alliant raised the issue directly—confirms that they are

conclusory.[10]  The Court should, therefore, "eliminate" them from consideration under Rule 12(b)(6).  *Newbauer*, 26 F.4th at 934.

## III.  The Rest Of Plaintiffs' Opposition Arguments Fail To Avoid Dismissal.

Setting aside arguments that depend on conclusory allegations or concern only other defendants, little remains of the Opposition, and none of it avoids dismissal.

### A.  Plaintiffs Have No Excuse For Failing To Exhaust Their Claims.

In the Motion to Dismiss, Alliant argued that all claims against Alliant must be dismissed at the outset because Plaintiffs (i) did not assert those claims through the Plan's administrative process, and (ii) failed to show that it would have been futile to comply with that exhaustion requirement.  MTD at 8-12.

Plaintiffs dance around the first issue by pointing out only that they "availed themselves of the Plan's administrative review process."  Opp. at 11.  But that does not cut it, because Plaintiffs never alleged exhaustion of their claims ***against Alliant***. Nor could they since none of the "Administrative Claims" Plaintiffs allege to have exhausted includes the claims they now bring against Alliant.  MTD at 9.

---

[10] The closest Plaintiffs come to addressing their lack of well-pled facts is to compare themselves to the typical ERISA plaintiff, who has little access to information on the fiduciary processes absent discovery.  *See* Opp. at 7-8, 22.  That comparison is faulty. Plaintiffs already have a bevy of this information; they filed much of it themselves. *See* Dkts. 1-2, 1-3.  Plus, the Court has instructed Plaintiffs to develop the fact record through the Plan's administrative process in the first instance, not discovery. *Fleming v. Rollins, Inc.*, 2020 WL 7693147, at *4 (N.D. Ga. Nov. 23, 2020).

Thus, Plaintiffs fall back on the notion that it would have been "futile" to even attempt exhaustion of their Alliant claims.  Opp. at 10-11; *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1330 (11th Cir. 2006) (the futility exception requires a "clear and positive showing" and cannot be satisfied with "speculative" allegations). Plaintiffs are sure there was no point in exhaustion because the Plan's Administrative Committee allegedly had "<u>actual</u> notice" of their claims against Alliant, "<u>necessarily considered</u>" them, and effectively "rejected" them by failing to "take action against" Alliant.  Opp. at 11 (emphasis in original).

This purported "actual notice" is based on Plaintiffs' assertions that the Committee knew of the "dismissed action," and "the factual allegations in the FAC mirror those in the dismissed action."  *Id.*  But the latter is false.  The "dismissed action" refers to Plaintiff Fleming's first action regarding her Plan grievances, *Fleming,* 2020 WL 7693147, and Alliant was not a party to that action.  Moreover, Plaintiffs never mentioned Alliant in the claims they filed with the Administrative Committee, let alone articulated the allegations and claims they now assert against Alliant in the FAC.  *See* MTD at 11.  This explains why the Committee, likewise, never mentioned Alliant in its correspondence with Plaintiffs.  *Id*.

In sum, Plaintiffs did not satisfy the exhaustion requirement for their claims against Alliant, and further do not fit within "the narrow scope" of the futility

exception, which means all of those claims must be dismissed under "well-settled" Eleventh Circuit law. *Fleming*, 2020 WL 7693147 at *2-3.

### B.    Plaintiffs' Claims Predating December 30, 2015 Are Untimely.

Plaintiffs offer two counterpoints in response to Alliant's argument that all claims based on Alliant's alleged conduct occurring before ERISA's six-year period of repose are time-barred, *see* MTD at 12-15.  First, they contend that the statute of repose was tolled because Alliant allegedly made "material" or "affirmative" misrepresentations.  Opp. at 14-16.  But, as discussed, none of the cited allegations comes close to meeting the heightened requirements of Rule 9(b).  *See* MTD at 13-14; *supra* at 8-9.  And the FAC does not allege that *Alliant* made the supposed misrepresentations, in any event.  MTD at 13-14; *supra* at 4, n.5 and 8, n.9.

Second, Plaintiffs argue that the statute of repose does not apply to their claims because they allege a "breach of…continuing [fiduciary] duties that occurred within the repose period."  Opp. at 13-14 (citing *Tibble v. Edison Int'l*, 575 U.S. 523 (2015)).  But Alliant already addressed this argument, too.  *See* MTD at 14-15.  As the Supreme Court has made clear, "so long as *the* alleged breach of the continuing duty [to monitor investments] occurred within six years of suit, *the* claim is timely." *Tibble*, 575 U.S. at 530 (emphasis added).  But the Supreme Court's recognition that the duty to monitor investments is continuing in nature is critically different than

Plaintiffs' proposed rule: so long as **any** alleged breach of that duty occurred within six years of suit, **all** alleged breaches are timely—regardless of what the breaches entailed or whether they occurred 7 years ago or 17 years ago.  Opp. at 13-14.[11]

To the extent Plaintiffs' claims are based on alleged Alliant conduct pre-dating December 30, 2015, they must be dismissed at the threshold as untimely.

### C.   Plaintiffs Fail To State A "Duty Of Prudence" Claim.

As an investment advisor to the Plan, Alliant's fiduciary duties—and thus its sphere of potential liability—are limited to investment advice it provided to the Plan. 29 U.S.C. § 1002(21)(A)(ii); *Carolinas Elec. Workers v. Ret. Plan v. Zenith Am. Sols., Inc.*, 658 F. App'x 966, 969 (11th Cir. 2016) (fiduciary status is "not an all-or-nothing concept" and extends only as far as a person exercises "discretionary authority").[12]  Plaintiffs agree that a claim for a breach of Alliant's duty of prudence must be based on its "process in recommending" investments, not the outcome of those recommendations.  Opp. at 22-23; MTD at 18-19.

Yet, the Opposition confirms that Plaintiffs have no well-pled facts about

---

[11] Contrary to Plaintiffs' suggestion, *Bryant v. General Electric* does not (and cannot) hold that the statute of repose applies only to cases without an alleged violation of a continuing duty.  2018 WL 894033, at *3 (M.D. Ga. Feb. 14, 2018).

[12] As before, Plaintiffs attempt to expand Alliant's fiduciary responsibility by claiming that it wrested control over Plan investments from the Committee, control over Prudential's investment product, or control over Plan revenue sharing fees. Opp. at 18-21.  These allegations are conclusory.  MTD at 16-17, *supra* at 9.

Alliant's process, much less facts from which the Court may plausibly infer that the process was flawed.  Instead, Plaintiffs just recite the same conclusory allegations that Alliant has already addressed.  *See* Opp. at 21 (Alliant "failed to employ a prudent process for rendering advice"); *id.* at 23 (Alliant did not evaluate the "costs" or potential "returns" of actively managed funds); *see also* MTD at 19-20.  That Plaintiffs have not even tried to support these broad statements with some specific examples from the hundreds of pages of documents reflecting Alliant's process, *see* MTD at 4-5, is both telling and fatal.

Beyond that, Plaintiffs' emphasis on their "benchmark" allegations is misplaced, on two levels.  First, they imply that merely mentioning the word "benchmark" and alleging that an investment underperformed it, without more, supports a plausible inference that Alliant did not prudently "investigate[] the challenged investments prior to recommending them for inclusion in the Plan."  Opp. at 23.  Plaintiffs are wrong.  Courts require far more detailed allegations about a benchmark and a challenged fund to reach the conclusion that a fiduciary did not fulfill its duty to investigate.  *See* MTD at 24; *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166-68 (6th Cir. 2022).[13]  Second, Plaintiffs have not even identified

---

[13] Plaintiffs argue that another judge in this District rejected the "meaningful benchmark" pleading standard first articulated in by the Eighth Circuit in *Meiners v. Wells Fargo & Co.*, 898 F.3d 820 (8th Cir. 2018), and since adopted by the Sixth

their supposed "benchmarks," which makes their "underperformance" allegations meaningless and certainly insufficient to infer imprudence.  *See* MTD at 25.

Two more points in Plaintiffs' "prudence" section merit mention.  They claim the Court can infer "imprudent monitoring" on Alliant's part because they've alleged Alliant's compensation was "excessive relative to the services provided."  Opp. at 25.  But the "excessive" compensation allegations are conclusory, *supra* at 6-7, and they do not contend Alliant had a duty under ERISA to monitor *its own* compensation (it did not).  Separately, Plaintiffs argue they have stated an imprudent "disclosure" claim against *Alliant*.  Opp. at 26-27.  But as noted, *supra* at 3, n.4, this argument is carelessly copied from Plaintiffs' opposition to Rollins's motion to dismiss, as the FAC offers a series of conclusory allegations directed at *Rollins* (not Alliant) regarding the sufficiency of the Plan's disclosures.  FAC ¶¶ 359-82.

Accordingly, Plaintiffs' Opposition confirms the FAC fails to state a claim against Alliant for breach of the fiduciary duty of prudence under § 1104(a)(1)(B).

---

Circuit in *Smith* and the Seventh Circuit in *Albert v. OshKosh Corp.*, 47 F.4th 570, 581.  *See* Opp. at 24-25 (citing *Pizarro v. The Home Depot, Inc.*, 2019 WL 11288656, at *3-4 (N.D. Ga. Sept. 20, 2019) (Ray, J.)).  That is incorrect.  The *Pizarro* court used the Eighth Circuit's reasoning in *Meiners* to conclude the specific benchmark allegations therein, combined with other specific allegations about "warning signs" and "chronic underperformance," were sufficient to state a claim. 2019 WL 11288656, at *3-4. Those kinds of specific allegations are not present here.

### D.     Plaintiffs Fail To State A "Duty of Loyalty" Claim.

Alliant argued in the Motion to Dismiss that Plaintiffs' claim for breach of the duty of loyalty was premised on the unsupported (and incorrect) allegation that Alliant was incentivized to recommend high-fee revenue-sharing funds because those funds increased Alliant's pay.  MTD at 27-28.  Plaintiffs respond by calling Alliant "disingenuous[]" for observing that the relevant ASA and the Plan's Forms 5500 indicate that Alliant received the same flat fee, year after year.  Opp. at 28. Without elaborating further on that point, Plaintiffs argue that a fiduciary acts disloyally when it provides advice tainted with self-interest, unilaterally increases its own pay, retains "surplus" fees belonging to participants, and/or misreports the compensation it received.  Opp. at 27-29.  The problem, of course, is that Plaintiffs have not alleged any *facts* supporting a plausible inference that Alliant did any of those things.  *Supra* at 9.  Plaintiffs' "loyalty" claim is baseless.

### E.     Plaintiffs Fail To State A Claim For Failure To Follow The Plan.

Plaintiffs confirm their claim that Alliant breached the duty to act in accordance with the Plan document, 29 U.S.C. § 1104(a)(1)(D), hangs entirely on their allegation that Alliant "exercised discretion and control respecting management of the Plan and its assets." Opp. at 30-31.  Once again, that allegation is unsupported by facts.  *Supra* at 9. Thus, Plaintiffs have not sufficiently established that Alliant

was an investment *manager* under 29 U.S.C. § 1002(38), with a duty under the Plan document to certify that it "qualified" as one.  MTD at 28-29.

### F.    Plaintiffs Fail To State A Prohibited Transaction Claim.

Plaintiffs bring two prohibited-transaction claims against Alliant.  FAC ¶¶ 476-501.  Alliant argued the first claim, under 29 U.S.C. § 1106(a), fails because the FAC does not identify the challenged transaction, which means it cannot plausibly establish the material elements of a § 1106(a) claim.  MTD at 29-32.  In response, Plaintiffs try to clarify with information they did not allege: they challenge Alliant's alleged receipt of "excessive compensation for duplicative and/or unnecessary services."   Opp. at 32.   But every compensation allegation is conclusory; the FAC never states what Alliant's compensation even *was*, let alone demonstrates how it could be "excessive."  *Supra* at 9.  Further, it is unclear why Plaintiffs believe it was "unnecessary" for the Plan to hire an investment advisor.[14] In any event, the FAC alleges a *different* entity, not Alliant, received the "duplicative" compensation for services not performed.  *See* FAC ¶¶ 343, 347.[15]

---

[14] If Plaintiffs are repackaging their claim that Alliant provided imprudent investment advice, it fails for the reasons noted above.  *Supra* at 9, 13-15.

[15] Moreover, these allegations reference the Plan's payments for advisory services in 2013, *see* Dkt. 76-7 (Plan Form 5500 for 2013) at Sch. C, Part I(2), transactions that predate the repose period that began on December 30, 2015.

As to the second prohibited-transaction claim, under § 1106(b), Plaintiffs agree that such a claim cannot be based on Alliant's receipt of its "contractually predetermined" pay.  Opp. at 33-34; MTD at 33.  They try to get around this well-established ERISA principle by claiming Alliant "retained fees that were earmarked for participants" or somehow "increased [its] compensation" above the "bargained-for" amount.  Opp. at 33-34.  But these allegations are conclusory and a remnant of Plaintiffs' unfounded assertion that Alliant was entitled to percentage-based pay under an ASA that does not pertain to Alliant.  *Supra* at 4-6.

### G.   Plaintiffs Fail To State A Claim For Co-Fiduciary Liability.

Alliant noted in its Motion to Dismiss that Plaintiffs tacked on boilerplate "co-fiduciary" liability allegations to every fiduciary breach claim asserted in the FAC.  *See* MTD at 27, n.12.  Plaintiffs now clarify that, as to Alliant, these allegations rest on the notion Alliant was "aware" of the alleged "misconduct" of Sean Waggoner.  Opp. at 31-32.  But since Waggoner is a "representative" of Alliant, FAC ¶ 336, that would be a basis for fiduciary liability, not *co*-fiduciary liability.[16]  More to the point, Plaintiffs have not plausibly alleged any "misconduct" by Waggoner; all such

---

[16] To the extent Plaintiffs are arguing that Alliant is liable as a co-fiduciary for alleged "misconduct" of Waggoner when he was an alleged "representative" of LPL, FAC ¶ 336, then the claim fails also because they plead no facts establishing that Alliant was "aware" of conduct that predated its relationship with the Plan.

allegations are fact-free, detail-free conclusions.  *Supra* at 9.

## IV.   Plaintiffs Are Not Entitled To An Award Of Fees.

At the end of their brief, Plaintiffs ask the Court to award them fees under ERISA's fee-shifting provision, 29 U.S.C. § 1132(g), if "any portion" of the FAC survives dismissal.  Opp. at 34.  They contend that would represent "some degree of success on the merits."  *Id.* (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010)).  But even if Plaintiffs were to avoid dismissal it would not be a win on the merits; it would be a "procedural victory" for which fees are not available. *Hardt*, 560 U.S. at 255.  On the other hand, if Plaintiffs' claims are dismissed, as Alliant contends they should be, then § 1132(g) would permit a fee award, albeit not to Plaintiffs.  Ultimately, the Eleventh Circuit's five-factor analysis, which Plaintiffs do not meaningfully address, would inform the appropriate outcome.  *See Freeman v. Cont'l Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir. 1993).

## CONCLUSION

For the above reasons, and those in Alliant's opening memorandum, Alliant respectfully requests the Court dismiss, with prejudice, the claims against Alliant in the First Amended Class Action Complaint.

Respectfully submitted, this 29th day of September, 2022.

**CAPLAN COBB LLC**

*/s/ Julia Blackburn Stone*
Michael A. Caplan
Georgia Bar No. 601039
mcaplan@caplancobb.com
Julia Blackburn Stone
Georgia Bar No. 200070
jstone@caplancobb.com
75 Fourteenth St. NE, Suite 2700
Atlanta, Georgia 30309
Telephone: (404) 596-5610
Facsimile: (404) 596-5604

**MORGAN, LEWIS & BOCKIUS LLP**
Christopher J. Boran (*pro hac vice*)
Christopher.boran@morganlewis.com
Kevin F. Gaffney (*pro hac vice*)
Kevin.gaffney@morganlewis.com
Alexandra G. Belzley (*pro hac vice*)
Alexandra.belzley@morganlewis.com
110 N. Wacker Drive
Chicago, Illinois 60606-1511
Telephone: (312) 324-1000
Facsimile: (312) 324-1001

*Attorneys for Defendants Alliant Insurance Services, Inc. and Alliant Retirement Services, LLC*

**LOCAL RULE 7.1(D) CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing memorandum has been prepared with Times New Roman, 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(B).

This 29th day of September, 2022.

*/s/ Julia Blackburn Stone*
Julia Blackburn Stone
Georgia Bar No. 200070

*Attorney for Defendants Alliant Insurance Services, Inc. and Alliant Retirement Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing Reply in Support of Defendants Alliant Insurance Services, Inc. and Alliant Retirement Services, LLC's Motion to Dismiss the First Amended Class Action Complaint with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 29th day of September, 2022.

/s/ Julia Blackburn Stone
Julia Blackburn Stone
Georgia Bar No. 200070

*Attorney for Defendants Alliant Insurance Services, Inc. and Alliant Retirement Services, LLC*