**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| MARCIA G. FLEMING, CASEY FREEMAN, DAVID GUYON, ANTHONY LOSCALZO, PATRICK ROSEBERRY, and JULIO SAMANIEGO individually, on behalf of the Rollins, Inc. 401(k) Savings Plan, and on behalf of all similarly situated participants and beneficiaries of the Plan, | |
| Plaintiffs, | Civil Action File No. 1:21-cv-05343-ELR |
| v. | |
| ROLLINS, INC.; THE ADMINISTRATIVE COMMITTEE OF THE ROLLINS, INC. 401(k) SAVINGS PLAN, BOTH INDIVIDUALLY AND AS THE *DE FACTO* INVESTMENT COMMITTEE OF THE ROLLINS, INC. 401(K) SAVINGS PLAN; EMPOWER RETIREMENT, LLC F/K/A PRUDENTIAL INSURANCE AND ANNUITY COMPANY; PRUDENTIAL BANK & TRUST, FBS, AS DIRECTED TRUSTEE OF THE ROLLINS, INC. 401(K) PLAN TRUST; ALLIANT INSURANCE SERVICES, INC.; ALLIANT RETIREMENT SERVICES, LLC; LPL FINANCIAL LLC; PAUL E. NORTHEN, JOHN WILSON, JERRY GAHLHOFF, JAMES BENTON and A. KEITH PAYNE in their capacities as members of the Administrative Committee; and John and Jane Does 1-10, | **REPLY IN SUPPORT OF THE PRUDENTIAL DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT** |
| Defendants. | |

# **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ...............................................................................................1

ARGUMENT ....................................................................................................3

    I.    The Fiduciary Duty Claims Against The Prudential Defendants
        Should Be Dismissed...............................................................................3

        A.    Plaintiffs' Arguments About PRIAC Are Meritless. .......................3

              1.    Setting The Prudential GIC's Crediting Rate Does Not
                    Make PRIAC A Fiduciary. ...........................................4

              2.    The Plan's Revenue Sharing Arrangement Does Not
                    Make PRIAC A Fiduciary. .........................................11

              3.    Allegedly "Influencing" The Administrative
                    Committee's Investment Decisions Does Not Make
                    PRIAC A Fiduciary.....................................................12

        B.    The Complaint Fails To Allege That PB&T Breached Its
            Limited Fiduciary Duties As A Directed Trustee. ..........................15

    II.    The Prohibited Transaction Claims Against The Prudential
        Defendants Should Be Dismissed. .........................................................17

    III.    The Co-Fiduciary Claims Against The Prudential Defendants
        Should Be Dismissed...............................................................................19

CONCLUSION ................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Austin v. Union Bond & Tr. Co.*
   No. 14-CV-706, 2014 WL 7359058 (D. Or. Dec. 23, 2014)................................7

*Burgess v. Religious Tech. Ctr., Inc.*,
   600 F. App'x 657 (11th Cir. 2015) ........................................................................4

*Carfora v. Teachers Ins. Annuity Ass'n of Am.*,
   No. 1:21-cv-8384, Dkt. 49, slip op. (S.D.N.Y. Sept. 27, 2022) ........................13

*Carolinas Elec. Workers Ret. Plan v. Zenith Am. Sols., Inc.*,
   658 F. App'x 966 (11th Cir. 2016) ........................................................................3

*Chi. Bd. Options Exch. v. Conn. Gen. Life Ins. Co.*,
   713 F.2d 254 (7th Cir. 1983) .................................................................................9

*Fleming v. Fid. Mgmt. Tr. Co.*,
   No. 16-cv-10918, 2017 WL 4225624 (D. Mass. Sept. 22, 2017) ........................9

*Gamache v. Hogue*,
   446 F. Supp. 3d 1315 (M.D. Ga. 2020) ..............................................................19

*Haddock v. Nationwide Fin. Servs., Inc.*,
   419 F. Supp. 2d 156 (D. Conn. 2006).........................................................12, 15

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ....................................................................3, 13, 14

*Henderson v. Emory Univ.*,
   252 F. Supp. 3d 1344 (N.D. Ga. 2017)................................................................11

*Insinga v. United of Omaha Life Ins. Co.*,
   No. 17-CV-179, 2017 WL 6884626 (D. Neb. Oct. 26, 2017)............................10

*Klyman v. Delta Air Lines, Inc.*,
   No. 05-CV-941-CAP, 2008 WL 11400765 (N.D. Ga. May 23, 2008) ...............3

*Larson v. Allina Health Sys.*,
  350 F. Supp. 3d 780 (D. Minn. 2018)................................................................20

*Leimkuehler v. Am. United Life Ins. Co.*,
  713 F.3d 905 (7th Cir. 2013) ................................................................8, 13, 14

*McCaffree Fin. Corp. v. Principal Life Ins. Co.*,
  811 F.3d 998 (8th Cir. 2016) ................................................................6

*Patrico v. Voya Fin., Inc.*,
  No. 16 Civ. 7070, 2017 WL 2684065 (S.D.N.Y. June 20, 2017) ......................9

*Pizarro v. Home Depot, Inc.*,
  No. 18-CV-1566, 2019 WL 11288656 (N.D. Ga. Sept. 20, 2019)......................3

*Rozo v. Principal Life Ins. Co.*,
  949 F.3d 1071 (8th Cir. 2020) ................................................................4, 6, 9

*Scott v. Aon Hewitt Fin. Advisors, LLC*,
  No. 17 C 679, 2018 WL 1384300 (N.D. Ill. Mar. 19, 2018)...............................9

*Solis v. Webb*,
  931 F. Supp. 2d 936 (N.D. Cal. 2012) ................................................................16

*Stanton v. Shearson Lehman/Am. Exp., Inc.*,
  631 F. Supp. 100 (N.D. Ga. 1986)................................................................15

*Teets v. Great-West Life & Annuity Ins. Co.*,
  921 F.3d 1200 (10th Cir. 2019) ................................................................*passim*

*Troudt v. Oracle Corp.*,
  No. 16-CV-175, 2017 WL 1100876 (D. Colo. Mar. 22, 2017).........................12

*Tussey v. ABB, Inc.*,
  No. 06-CV-4305, 2008 WL 379666 (W.D. Mo. Feb. 11, 2008)......................15

*Woods v. Southern Co.*,
  396 F. Supp. 2d 1351 (N.D. Ga. 2005)................................................................19

*In re WorldCom, Inc. ERISA Litig.*,
  354 F. Supp. 2d 423 (S.D.N.Y. 2005) ................................................................20

**Statutes**

29 U.S.C. § 1002(21)(A)(i) .......................................................................7

**Other Authorities**

DOL Adv. Opinion No. 2013-03A, 2013 WL 3546834 (July 3, 2013) ..................12

## **INTRODUCTION**

Plaintiffs' Response confirms that the claims against the Prudential Defendants should be dismissed with prejudice. Rather than showing how the First Amended Complaint ("Complaint") plausibly alleged that PRIAC was a fiduciary or that PB&T breached its limited duties as a directed trustee, the Response pivots to new, unpled theories for relief, all of which are meritless.

Take Plaintiffs' claims against PRIAC. The Complaint pled three theories of fiduciary status. Rather than defend their legally defective theories, Plaintiffs' Response amended one theory and ignored the gross deficiencies of the other two. The Complaint claimed that PRIAC became a fiduciary by recommending the Prudential Guaranteed Income Contract ("GIC"), but Plaintiffs now contend that PRIAC became a fiduciary by setting the crediting rate for the Prudential GIC. This new theory also fails. Rate-setting is fiduciary conduct only if plaintiffs can allege both that the rate-setter was not following the terms of a contract, and that the plan and participants could not reject the rate. Here, Plaintiffs cannot satisfy either prong; they do not dispute that the crediting rates were computed by a contractual formula, and that plans and participants had the power to reject the rate by terminating the contract or withdrawing their monies from the product.

Plaintiffs' other two theories are equally defective because Plaintiffs fail to

1

properly allege that PRIAC exercised any "authority" or "control," as the statute requires, over revenue sharing rebates or the Plan's investment options. Plaintiffs suggest that PRIAC (or any service provider) can be a fiduciary by merely having some connection to alleged wrongful conduct. But that is not how fiduciary status is determined under the statute. Plaintiffs' "revenue sharing rebates" theory of fiduciary status fails because revenue sharing amounts are not plan assets. And their "undue influence" theory—*i.e.*, that simply playing a role in the selection of investments can transform an entity into a fiduciary—similarly fails. Numerous cases hold the opposite: playing a role is not enough without final say.

Plaintiffs' other claims fail because Plaintiffs did not and cannot allege the requisite *actual knowledge* of an ERISA violation. Specifically, as to PB&T, Plaintiffs concede that their allegations must show PB&T followed a direction it *knew* was contrary to ERISA. Similarly, Plaintiffs can only proceed with their prohibited transaction and co-fiduciary claims by identifying allegations that PRIAC and PB&T *knew* of ERISA violations. But Plaintiffs do not and cannot point to any such knowledge. For all of these reasons, the claims against the Prudential Defendants should be dismissed with prejudice.

## ARGUMENT

### I.    The Fiduciary Duty Claims Against The Prudential Defendants Should Be Dismissed.

As a threshold matter, Plaintiffs argue that fiduciary status cannot be decided on a motion to dismiss. *See, e.g.*, Dkt. 82 ("Resp.") at 26, 29. But the very cases the parties have cited show the opposite: courts routinely dismiss claims on the basis that a defendant was not a fiduciary. *See, e.g.*, *Carolinas Elec. Workers Ret. Plan v. Zenith Am. Sols., Inc.*, 658 F. App'x 966, 971 (11th Cir. 2016); *Hecker v. Deere & Co.*, 556 F.3d 575, 583–84 (7th Cir. 2009); *Pizarro v. Home Depot, Inc.*, No. 18-CV-1566, 2019 WL 11288656, at *5–7 (N.D. Ga. Sept. 20, 2019); *Klyman v. Delta Air Lines, Inc.*, No. 05-CV-941-CAP, 2008 WL 11400765, at *2 (N.D. Ga. May 23, 2008). Contrary to Plaintiffs' argument, resolution of fiduciary status here does not involve issues of interrelated corporations or disputed facts (as opposed to the legal significance of the facts). Instead, the alleged facts, taken as true, show that PRIAC was not a fiduciary and that PB&T did not breach its limited fiduciary duty as a directed trustee.

### A.    Plaintiffs' Arguments About PRIAC Are Meritless.

Plaintiffs' Response argues that PRIAC qualifies as a fiduciary for three reasons. *See* Resp. at 17–26. All three of their theories fail.

3

### 1. Setting The Prudential GIC's Crediting Rate Does Not Make PRIAC A Fiduciary.

In the Complaint, Plaintiffs alleged that PRIAC became a fiduciary by "recommending the Prudential GIC." Dkt. 53 ("Compl.") ¶¶ 396, 425. The Prudential Defendants showed why this theory is defective. Dkt. 78-1 ("Br.") at 12–13. Tellingly, Plaintiffs do not even try to defend this theory in their Response.

Instead, Plaintiffs try to move the goalposts: They argue that PRIAC was a fiduciary because it "exercised control" by "set[ting] the Crediting Rate" for the Prudential GIC. Resp. at 17–18. That theory was not pled, and so should be disregarded. *See, e.g.*, *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) (per curiam) ("plaintiffs cannot amend their complaint through a response to a motion to dismiss"). But even if this new theory had been properly pled, it fares no better than Plaintiffs' original theory because the crediting rate was set by a contractual formula, and because both the Plan and participants could reject each new rate.

In evaluating whether a service provider is a fiduciary, courts apply a two-step test. *See Teets v. Great-West Life & Annuity Ins. Co.*, 921 F.3d 1200, 1212 (10th Cir. 2019); *Rozo v. Principal Life Ins. Co.*, 949 F.3d 1071, 1074 (8th Cir. 2020). In step 1, courts evaluate whether the service provider's challenged action "conformed to a specific term of its contract" with the plan or plan sponsor. *Teets*,

921 F.3d at 1212. If it did, the service provider has not exercised any authority or control, and therefore is not a fiduciary. *Id.* In step 2—which applies only if the service provider's actions did not conform to the contract—courts evaluate whether "the plan or its participants ha[d] an opportunity to reject" the service provider's decision. *Id.* That is because "[f]iduciary status turns on whether the service provider can force plans or participants to accept its choices." *Id.* at 1213. If the plan or its participants had a "meaningful opportunity to reject [the] service provider's unilateral decision," then "the service provider is not a fiduciary." *Id.* at 1214 (quotation marks omitted). This two-step test confirms that PRIAC was not a fiduciary with respect to setting the Prudential GIC crediting rate.

**<u>Step 1: PRIAC Adheres to Contractual Terms.</u>** Plaintiffs' theory fails at step 1 because, as Plaintiffs acknowledge, the crediting rate was reset every six months using a "formula set forth in the contract." Resp. at 6; *see also id.* at 19 ("the GIC set the crediting rate by formula"); Compl. ¶ 175 ("The crediting rate is set by the contract."); Dkt. 78-4 ("Ex. B, GIC") at 19–20 (showing the formula). So each time Prudential reset the crediting rate, it was "merely follow[ing] a specific contractual term set in an arm's-length negotiation," and thus was "not act[ing] as a fiduciary." *Teets*, 921 F.3d at 1212.

Plaintiffs offer two reasons for why PRIAC's adherence to a contractual formula does not foreclose fiduciary status, but neither has merit. First, Plaintiffs argue that the mere act of setting the rate constitutes an exercise of "authority or control" over plan assets and therefore satisfies the definition of a fiduciary. Resp. at 19. But that argument is flatly contradicted by *Teets* and *Rozo*, which established the test for determining whether rate-setting constitutes an exercise of authority or control over plan assets. *See supra*, pp. 4–5. If simply setting the rate were enough, there would be no need for step 1 of the test; *all* rate-setting would qualify as fiduciary conduct. But as those cases explain, rate-setting qualifies as an exercise of authority or control only if the contract does not specify how the rate must be set. When a rate is set by a contractual formula, a service provider is merely "adher[ing] to its agreement," and that "does not implicate any fiduciary duty." *McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1003 (8th Cir. 2016).

Second, Plaintiffs argue that some of the variables in the formula "permitted the exercise of discretion by PRIAC." Resp. at 19. This theory is *nowhere* to be found in the Complaint, which does not allege that any variables were discretionary or that PRIAC ever exercised any claimed discretion. The Response points to the "market value" variable, but none of the paragraphs it cites allege that this variable (or any other) gave PRIAC discretion, or that PRIAC ever exercised

6

such discretion. *Id.* at 6 (citing Compl. ¶¶ 175, 177–78, 193, 195, 255, 257–59, 274, 305–06). And Plaintiffs cannot state a claim by simply theorizing that one of the variables might have allowed for discretion. Their Complaint must identify the variable and allege how PRIAC exercised such discretion.

Even if Plaintiffs had pled this "market value" theory in the Complaint, the plain terms of the contract foreclose it. Specifically, as set forth in the contract, the calculation of "market value" requires reliance on pricing services provided by an investment manager, not on any discretionary decision by PRIAC. Ex. B, GIC at 10 (§ 2.4). That is why, when considering a substantially identical definition of "market value" in another service provider's guaranteed investment contract, another court rejected the same argument that Plaintiffs raise here. *Austin v. Union Bond & Tr. Co.* No. 14-CV-706, 2014 WL 7359058, at *8–9 (D. Or. Dec. 23, 2014).[1] And again, even if Plaintiffs could allege that the "market value" variable gave PRIAC discretion, they have not alleged that PRIAC actually *exercised* such discretion, which is required to satisfy ERISA's definition of "fiduciary." 29

[1] The Response attempts to distinguish the Prudential GIC from the product in *Austin* (*see* Resp. at 20), but the Complaint makes clear that the products are identical in all material respects. Both products pay returns to participants at a crediting rate that is announced in advance and is periodically reset pursuant to a contractual formula. *Compare Austin*, 2014 WL 7359058, at *4, *8, *with* Compl. ¶¶ 175, 177.

U.S.C. § 1002(21)(A)(i); *see also Teets*, 921 F.3d at 1206–07 (service providers "must *actually exercise* their authority or control over the plan's assets" to become a fiduciary) (emphasis added); *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 914 (7th Cir. 2013) (service provider's "decision *not* to exercise" its right to make a discretionary decision "does not make it a fiduciary").

**Step 2: The Plan and Participants Can Reject the Rate.** Even if Plaintiffs could satisfy step 1, their theory would fail at step 2. A service provider's decision does not trigger fiduciary status as long as the plan sponsor or the plan's participants have an opportunity to reject that decision. *Teets*, 921 F.3d at 1212. Here, both the plan sponsor *and* the participants had the power to reject the crediting rate each time it was set.

As the Prudential Defendants explained—and as Plaintiffs do not and cannot dispute—the Rollins Administrative Committee can terminate the Prudential GIC for all participants on 90 days' notice. Br. at 6 (citing Ex. B, GIC at 12, 21). In other words, if the Plan sponsor is dissatisfied with the crediting rate that PRIAC calculates, it can reject the rate by simply terminating the contract. *See id.* PRIAC has no power to "prevent or penalize" Rollins's decision to "terminat[e] the contract." *Teets*, 921 F.3d at 1217. PRIAC therefore does not have authority or control to make it a fiduciary. *See id.* By contrast, cases finding fiduciary status,

including the cases that Plaintiffs rely on, involve service providers who had the ability to impose penalties and fees or otherwise impede plan sponsors' ability to terminate the contracts at issue. *See Teets*, 921 F.3d at 1217 (collecting cases); *see also, e.g.*, *Rozo*, 949 F.3d at 1074–75 (cited in Resp. at 18) (plan sponsor could terminate a contract for a stable value product only by providing 12 months' notice, during which time it would be fully subject to at least one rate change for a six-month period, or by paying a 5% surrender charge); *Chi. Bd. Options Exch. v. Conn. Gen. Life Ins. Co.*, 713 F.2d 254, 256, 259–60 (7th Cir. 1983) (cited in Resp. at 18) (service provider was a fiduciary because it unilaterally amended a contract in a manner that locked the plan into a specific investment for the next 10 years).

Participants also can reject the crediting rate by withdrawing their monies from the Prudential GIC at any time. Br. at 6 (citing Ex. B, GIC at 12, 21). The participants' ability to withdraw is another reason why PRIAC lacks the authority or control required to trigger fiduciary status. *See Patrico v. Voya Fin., Inc.*, No. 16 Civ. 7070, 2017 WL 2684065, at *3 (S.D.N.Y. June 20, 2017) (service provider was not a fiduciary because its compensation "depend[ed] solely on the Plan participants' investment decisions"); *Scott v. Aon Hewitt Fin. Advisors, LLC*, No. 17 C 679, 2018 WL 1384300, at *8 (N.D. Ill. Mar. 19, 2018) (same); *Fleming v. Fid. Mgmt. Tr. Co.*, No. 16-cv-10918, 2017 WL 4225624, at *5–6 (D. Mass.

Sept. 22, 2017) (service provider was not a fiduciary because it was "bound to follow Plan participants' investment instructions and exercised no discretion or authority with respect to which securities participants elected").

Plaintiffs do not dispute that participants can withdraw at any time, but claim that this ability is "impeded" by the contract's "equity wash" provision. Resp. at 17–18. Yet again, Plaintiffs failed to plead this theory, and it is a non-starter anyway because courts have uniformly held that equity wash provisions do not constitute an impediment sufficient to satisfy step 2. *See Teets*, 921 F.3d at 1219–20 (restriction of participant transfers to competing options did not make the service provider a fiduciary); *Insinga v. United of Omaha Life Ins. Co.*, No. 17-CV-179, 2017 WL 6884626, at *1–3 (D. Neb. Oct. 26, 2017) (service provider was not a fiduciary even though participant withdrawals were subject to a 90-day equity wash). As these courts have noted, equity wash provisions do not prevent withdrawal, but instead merely limit the destination of the withdrawn funds. The same is true of the equity wash provision here: it only requires that monies withdrawn from the Prudential GIC be first transferred to a "non-Competing Fund" for 90 days. *See* Resp. at 7; *see also* Ex. B, GIC at 8, 21 (cited in Resp. at 7).

10

### 2.     The Plan's Revenue Sharing Arrangement Does Not Make PRIAC A Fiduciary.

Plaintiffs' second theory is that PRIAC is a fiduciary because it purportedly breached the terms of its Administrative Services Agreement ("ASA") by "delay[ing]" rebates of surplus revenue sharing amounts to participants. Resp. at 8–9, 20–21. Yet again, Plaintiffs rely on an assertion not alleged in the Complaint. None of their cited paragraphs say that PRIAC breached the ASA in this manner (or otherwise). *See* Compl. ¶¶ 48, 257, 259 (cited in Resp. at 8).

Even if such allegations had been pled, they would still fail because, as Plaintiffs acknowledge, "revenue sharing fees by themselves are not plan assets." Resp. at 21. As a result, the collection or rebating of revenue sharing fees is not an exercise of authority or control over the plan or plan assets, and thus cannot give rise to fiduciary status. *See Henderson v. Emory Univ.*, 252 F. Supp. 3d 1344, 1356–57 (N.D. Ga. 2017) ("fees collected from a mutual fund do not become assets of the plan").

Plaintiffs nonetheless argue that collection and rebating of revenue sharing amounts can trigger fiduciary status because "the Plan's contractual right to benefit from the revenue sharing payments is a plan asset." Resp. at 21. But even if that were so, PRIAC has no authority or control over the Plan's contractual rights; the Plan makes its own decisions about which contracts to enter into, and the Plan's

11

contractual rights belong only to the Plan. The *Plan's* contractual rights thus cannot make *PRIAC* a fiduciary. None of Plaintiffs' cited authorities suggest otherwise. *See id.* One of their cited cases addressed claims against a plan sponsor, not a service provider, and it treated amounts slated for revenue sharing payments as plan assets only while they were still in the possession of the plan. *See Troudt v. Oracle Corp.*, No. 16-CV-175, 2017 WL 1100876, at *3 (D. Colo. Mar. 22, 2017). The other cited case addressed a service provider who, unlike PRIAC, was a fiduciary because it had the unilateral right to add and remove investment options from the plan's lineup and thus could alter revenue sharing amounts. *See Haddock v. Nationwide Fin. Servs., Inc.*, 419 F. Supp. 2d 156, 166 (D. Conn. 2006). And the Department of Labor Advisory Opinion *undermines* Plaintiffs' argument, because it confirms that revenue sharing payments collected and rebated by a recordkeeper do not become plan assets until "the plan actually receives them." DOL Adv. Opinion No. 2013-03A, 2013 WL 3546834, at *2 (July 3, 2013).

### 3.   Allegedly "Influencing" The Administrative Committee's Investment Decisions Does Not Make PRIAC A Fiduciary.

Plaintiffs' attempt to rescue their other theory of fiduciary status—that PRIAC somehow "exerted undue influence" over the Rollins Administrative Committee's decisions about investment options—simply fails. *See* Resp. at 22. Plaintiffs concede that the Administrative Committee—not PRIAC—"was the final

arbiter of investment decisions under the Plan," *id.*, had "complete control" of Plan administration, Compl. ¶ 47, and "made and effected investment decisions for the Plan," *id.* ¶ 49. As PRIAC pointed out, those facts are fatal to Plaintiffs' theory. Br. at 17–19. All Plaintiffs have alleged is that PRIAC offered various investment options, and that is not enough to confer fiduciary status. As multiple courts have held, merely playing a role in the selection of investment options does not make a company a fiduciary if someone else has the final say about whether the investment options are made available to the plan's participants. *See, e.g.*, *Hecker*, 556 F.3d at 583–84 ("Merely 'playing a role' or furnishing professional advice is not enough to transform a company into a fiduciary."); *Leimkuehler*, 713 F.3d at 911–12 (service provider was not a fiduciary because it never exercised its ability to substitute funds on the plan's menu). Indeed, a court recently rejected almost the exact argument Plaintiffs make here. *See Carfora v. Teachers Ins. Annuity Ass'n of Am.*, No. 1:21-cv-8384, Dkt. 49, slip op. at 47–48 (S.D.N.Y. Sept. 27, 2022) (the fact that a recordkeeper offered bundled investment options did not make it a fiduciary because the plan sponsors were free to reject them and thus the plan sponsors exercised any relevant control).

Plaintiffs make two arguments in response, one factual and one legal. Plaintiffs argue that PRIAC paid the "Investment Fiduciaries" to "steer" the Plan

toward investments. Resp. at 21. But the Complaint contains no allegations supporting this claim, and Plaintiffs do not cite any. Quite the opposite, the allegations state that PRIAC could offer investments to the Plan, but that only the Administrative Committee had the final say on which investments to include in the Plan lineup. Compl. ¶¶ 47, 49

Plaintiffs argue that cases like *Hecker* and *Leimkuehler*—which articulate the "final say" rule—are distinguishable because in those cases plaintiffs did not allege facts showing that the service provider actually exercised influence over the plan's named fiduciaries. Resp. at 23. But the same is true here: Plaintiffs have not alleged facts suggesting that PRIAC exerted any sort of influence over Rollins or the Administrative Committee. Indeed, this case is in many respects exactly like *Hecker*. There, plaintiffs argued that their plan's administrative committee rubber-stamped a recordkeeper's recommendations, but the court held there were no allegations that supported such a claim. *Hecker*, 556 F.3d at 583–84 ("That is not . . . what the Complaint alleges."). Instead, as in this case, all the *Hecker* complaint alleged was that the recordkeeper "played a role" in the selection of investment options by making them available, but lacked the final say. *Id.* at 584.

Plaintiffs also cite some cases of their own, but all of them involved allegations that a service provider actually controlled investment decisions and did

not just play a role in their selection. *See* Resp. at 21–22. For example, *Stanton v. Shearson Lehman/Am. Exp., Inc.*, 631 F. Supp. 100, 103–04 (N.D. Ga. 1986), involved the very different circumstances of a stock broker picking investments. While the plan sponsor had a theoretical final say, in reality the broker's decisions were "'rubber stamp[ed]' . . . automatically" without any consideration. *Id.* Similarly, in *Tussey v. ABB, Inc.*, No. 06-CV-4305, 2008 WL 379666, at \*1, \*8 (W.D. Mo. Feb. 11, 2008), plaintiffs alleged that the recordkeeper, Fidelity Management, was able to steer the decisions of the plan's investment advisor, Fidelity Trust, because the two companies were affiliates. That is a far cry from what is alleged here, where the Plan's investment advisors are all independent of PRIAC. And *Haddock v. Nationwide Financial Services, Inc.* is even further afield; in that case, the service provider had authority to make investment decisions by adding and removing investment options. 419 F. Supp. 2d at 166.

### B.     The Complaint Fails To Allege That PB&T Breached Its Limited Fiduciary Duties As A Directed Trustee.

Plaintiffs' arguments about PB&T's fiduciary status simply do not address the arguments in the Motion to Dismiss. Plaintiffs start by attacking a strawman: they criticize PB&T as "disingenuously argu[ing]" that it is not a fiduciary at all. Resp. at 26–27. PB&T acknowledged it was a fiduciary, but argued that its fiduciary duties were limited to carrying out the named fiduciaries' instructions, as

long as those instructions were (i) in accordance with the Plan's terms and (ii) not contrary to ERISA. Br. at 19–20 (citing 29 U.S.C. § 1103(a)(1)).

Plaintiffs do not claim that PB&T ever failed to follow instructions or act in accordance with the Plan's terms. *See* Resp. at 27. Rather, Plaintiffs argue that they have stated a claim because PB&T carried out instructions that were contrary to ERISA. *Id.* But as PB&T explained, even if Plaintiffs can identify such an instruction, they can state a claim against PB&T only if they can also point to allegations showing that PB&T had "*actual knowledge*" that the instruction was contrary to ERISA. Br. at 20–21 (collecting cases). Neither the Complaint nor the Response addresses that point or even attempts to explain how PB&T had such actual knowledge.

Plaintiffs argue that their claim is just like the one in *Solis v. Webb*, 931 F. Supp. 2d 936 (N.D. Cal. 2012) (cited in Resp. at 28–29), but that case involved precisely the sort of knowledge allegations that are missing here. In *Solis*, the complaint alleged that, before executing some stock transactions, the directed trustee knew about an agreement that reduced the value of stock offered through the plan, and thus knew that the stock's price was inflated in violation of ERISA. *Id.* at 951. Here, the Complaint has no allegations from which the Court could infer PB&T had actual knowledge that any direction it carried out violated ERISA.

16

Perhaps to try to get around this requirement, Plaintiffs argue that PB&T was not just a directed trustee but also a functional fiduciary because it "directly managed the GIC." Resp. at 27 (citing Ex. B, GIC). Plaintiffs do not explain what they mean by that, but they appear to be referencing the fact that PB&T, in its capacity as the Plan's directed trustee, is listed as the contractholder in the Prudential GIC. *See* Ex. B, GIC at 6–7. Not only does that fact have no bearing on PB&T's fiduciary status, but it reinforces the conclusion that PB&T was only a directed trustee. The fact that PB&T executed the Prudential GIC in its capacity as the Plan's directed trustee shows only that PB&T was carrying out an instruction by Rollins to enter into the contract on the Plan's behalf. That does not mean that PB&T "managed" the Prudential GIC in any sense that involved exercising authority or control. All PB&T was authorized to do, and all it did, was carry out instructions at the behest of Rollins and the Administrative Committee, as required by the terms of the Trust Agreement. *See* Compl. Ex. 2, Trust Agreement § 3(a).

## II.    The Prohibited Transaction Claims Against The Prudential Defendants Should Be Dismissed.

The Prudential Defendants' opening brief set forth the reasons why the prohibited transactions claim fail. Br. at 21–25. The Response does not address most of those arguments, but instead makes just two points, neither of which supports Plaintiffs' claims. First, the Response claims that both PRIAC and PB&T

17

received excessive fees, and argues that is enough to state a prohibited transactions claim. Resp. at 32–33. But the restrictions in Section 406 of ERISA apply only to actions of fiduciaries, and only if the fiduciary *caused* the plan to engage in the action. *See* Br. at 22–23. Here, PRIAC is not a fiduciary, there are no allegations that either PRIAC or PB&T caused any transaction, and PB&T could not cause any transaction to occur because it could only follow directions. And the Complaint does not even allege that PB&T received excessive fees; in fact, it says nothing about PB&T's fees.

Second, Plaintiffs argue that even if not liable as fiduciaries, the Prudential Defendants can be liable as "parties in interest" under Section 406(a). Resp. at 34. But the Prudential Defendants addressed the defects with that theory, too, Br. at 24–25, and the Response does not address any of those arguments. As they explained, PRIAC and PB&T cannot be liable on a "party in interest" theory because Plaintiffs have failed to allege that PRIAC or PB&T *knew* that any transaction violated ERISA. *Id.* at 25 (citing *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000)). Plaintiffs do not dispute that knowledge is a requirement for these claims, nor do their cited authorities suggest otherwise.[2] Yet they do not point to any allegations suggesting such knowledge.

---

[2] Two of Plaintiffs' cited authorities are also irrelevant because they address float

*See* Resp. at 31–34. Their prohibited transaction claims against PRIAC and PB&T therefore should be dismissed.

## III.   The Co-Fiduciary Claims Against The Prudential Defendants Should Be Dismissed.

Plaintiffs' co-fiduciary claims against PRIAC and PB&T should be dismissed for the same reason as their prohibited transaction claims. To proceed with co-fiduciary claims, the Complaint must allege that PRIAC or PB&T had *knowledge* of a breach. Br. at 26–27 (collecting cases). The Response once again ignores the knowledge requirement, and offers no reason to infer that PRIAC or PB&T actually knew of any breach. *See* Resp. at 30–31.

None of the four cases Plaintiffs cite support their co-fiduciary claims. *See id.* Two are inapposite because they involved specific factual allegations of knowledge that are absent here. *See Woods v. Southern Co.*, 396 F. Supp. 2d 1351, 1379 (N.D. Ga. 2005) (defendants had "knowledge that the enduring investment . . . was extremely ill-advised"); *Gamache v. Hogue*, 446 F. Supp. 3d 1315, 1328 (M.D. Ga. 2020) (defendants knew a series of refinancing agreements diminished

---

income, *i.e.*, income from interest earned on funds held in an account while a plan transaction is pending. *See* Resp. at 32 (citing DOL Adv. Op. 93-24A (Sept. 23, 1993), and DOL Field Assistance Bull. 2002-3 (Nov. 5, 2002)). The Complaint does not make any claim or allegation about float income.

the value of certain plan assets). Another is irrelevant because it involved co-fiduciary claims against a defendant who, unlike PRIAC or PB&T, was the plan sponsor and had "delegated the management and administration of the Plans' assets" to a committee of its employees, whose knowledge could be imputed to the plan sponsor itself. *See Larson v. Allina Health Sys.*, 350 F. Supp. 3d 780, 805 (D. Minn. 2018). And the other case actually supports the Prudential Defendants, not Plaintiffs. In that case, the court *rejected* co-fiduciary claims because, just like here, there was no indication that the defendant knew the investment at issue was imprudent under ERISA. *See In re WorldCom, Inc. ERISA Litig.*, 354 F. Supp. 2d 423, 450–51 (S.D.N.Y. 2005). The Court should likewise reject the co-fiduciary claims here.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss all claims against the Prudential Defendants with prejudice.


Dated: September 29, 2022                    Respectfully submitted,

                                             */s/ Mark B. Blocker*
                                             Mark B. Blocker (admitted *pro hac vice*)
                                             mblocker@sidley.com
                                             Caroline A. Wong (admitted *pro hac vice*)
                                             caroline.wong@sidley.com
                                             SIDLEY AUSTIN LLP

One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*/s/ Kamal Ghali*
Kamal Ghali, Georgia Bar No. 805055
ghali@bmelaw.com
Jeffrey W. Chen, Georgia Bar No. 640207
chen@bmelaw.com
BONDURANT MIXSON & ELMORE LLP
1201 West Peachtree Street NW, Suite 3900
Atlanta, Georgia 30309
Telephone: (404) 881-4173
Facsimile: (404) 881-4111

*Attorneys for Defendants Prudential*
*Retirement Insurance and Annuity Company*
*and Prudential Bank & Trust, F.S.B.*

## **LOCAL RULE 7.1(D) CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared with Times New Roman 14-point font, one of the font and point selections approved by Local Rule 5.1.


*/s/ Caroline A. Wong*
Caroline A. Wong

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2022, I caused the foregoing Reply in

Support of the Prudential Defendants' Motion to Dismiss the First Amended Class

Action Complaint to be filed with the Clerk of Court using the CM/ECF system,

which will send email notification of such filing to all counsel of record.


*/s/ Caroline A. Wong*
Caroline A. Wong