# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

MARCIA G. FLEMING, CASEY
FREEMAN, DAVID GUYON, ANTHONY
LOSCALZO, PATRICK ROSEBERRY, and
JULIO SAMANIEGO individually, on behalf
of the Rollins, Inc. 401(k) Savings Plan and
on behalf of all similarly situated participants
and beneficiaries of the Plan,

     Plaintiffs,

v.

ROLLINS, INC.; THE ADMINISTRATIVE
COMMITTEE OF THE ROLLINS, INC.
401(k) SAVINGS PLAN, BOTH
INDIVIDUALLY AND AS THE *DE FACTO*
INVESTMENT COMMITTEE OF THE
ROLLINS, INC. 401(K) SAVINGS PLAN;
EMPOWER RETIREMENT, LLC F/K/A
PRUDENTIAL INSURANCE AND
ANNUITY COMPANY; PRUDENTIAL
BANK & TRUST, FBS, AS DIRECTED
TRUSTEE OF THE ROLLINS, INC. 401(K)
PLAN TRUST; ALLIANT INSURANCE
SERVICES, INC.; ALLIANT
RETIREMENT SERVICES, LLC; LPL
FINANCIAL LLC; PAUL E. NORTHEN,
JOHN WILSON, JERRY GAHLHOFF,
JAMES BENTON and A. KEITH PAYNE in
their capacities as members of the
Administrative Committee; and John and
Jane Does 1-10,

     Defendants.

Civil Action File
No.  1:21-cv-05343-ELR

**REPLY BRIEF IN
SUPPORT OF THE
ROLLINS DEFENDANTS'
MOTION TO DISMISS
THE FIRST AMENDED
COMPLAINT**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ iii

ARGUMENT ................................................................................3

I.    THE FAC VIOLATES THE ELEVENTH CIRCUIT'S RULES
      REGARDING SHORT AND PLAIN PLEADING ........................................3

II.   THE ADMINISTRATIVE RECORD SHOULD BE CONSIDERED IN
      ASSESSING PLAINTIFFS' CLAIMS ...........................................4

III.  PLAINTIFFS' ADMINISTRATIVE CLAIMS WERE PROPERLY
      DENIED BASED ON THE CAREFUL DECISION-MAKING RECORD
      OF THE PLAN'S FIDUCIARIES ...............................................7

      A.    Claims Based on Investment Performance (Count I)...........................7

      B.    Claims Based on Investment Fees (Count I)......................................10

      C.    Claims Based on Monitoring of Plan Service Providers and
            Fiduciaries (Counts III and IV) .........................................11

      D.    Duty of Loyalty Claims (Count II)......................................12

      E.    Claims Based on Alleged Prohibited Transactions and "Breach of
            Fiduciary Duty by Omission" (Counts V-VII) ..................................13

IV.   THE REMAINING CLAIMS WERE NOT ADMINISTRATIVELY
      EXHAUSTED AND FAIL AS A MATTER OF LAW...............................14

      A.    The New Claims Should Be Dismissed For Failure To Exhaust
            Administrative Remedies. ..................................................14

      B.    The New Claims Are Insufficient As A Matter Of Law....................16

            1.   Claims regarding monitoring of Plan advisors for "competence".16

            2.   Claims regarding allocation of Plan expenses ..............................17

            3.   Claims regarding the Prudential Guaranteed Fund......................17

            4.   Claims regarding the Plan's disclosures .......................................18

V.    TIME-BARRED CLAIMS SHOULD BE DISMISSED ............................18

CONCLUSION ................................................................................20

i

LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE...........................22

CERTIFICATE OF SERVICE ...............................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Albert v. Oshkosh Corp.*,
    47 F.4th 570 (7th Cir. 2022) ................................................................. 11, 13, 18

*Amin v. Mercedes-Benz USA, LLC*,
    349 F. Supp. 3d 1338 (N.D. Ga. 2018) ................................................................. 6

*Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*,
    77 F.3d 364 (11th Cir. 1996) ................................................................. 3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................. 11

*Bell v. Pension Committee of ATH Holding Co.*,
    No. 1:15-cv-02062-TWP-MPB, 2017 WL 1091248 (S.D. Ind. Mar. 23, 2017) ... 9

*Blankenship v. Metro. Life Ins. Co.*,
    644 F.3d 1350 (11th Cir. 2011) ................................................................. 4, 5, 6

*Crowder v. Delta Air Lines, Inc.*,
    963 F.3d 1197 (11th Cir. 2020) ................................................................. 6

*Fallick v. Nationwide Mutual Insurance Co.*,
    162 F.3d 410 (6th Cir. 1998) ................................................................. 16

*Fleming v. Rollins, Inc.*,
    No. 1:19-CV-05732-ELR, 2020 WL 7693147 (N.D. Ga. Nov. 23, 2020).. passim

*Fuller v. SunTrust Banks, Inc.*,
    No. 1:11-CV-784-ODE, 2019 WL 5448206 (N.D. Ga. Oct. 3, 2019) ................. 2

*Gamache v. Hogue*,
    446 F. Supp. 3d 1315 (M.D. Ga. 2020) ................................................................. 19

*Garland v. Snap-On Inc. Ret. Plan*,
    No. 1:20-CV-02895-JPB, 2021 WL 1192991 (N.D. Ga. Mar. 8, 2021) .............. 6

*Griffin v. Aetna Health Inc.*,
   No. 1:17-CV-77-AT, 2017 WL 4423419 (N.D. Ga. June 21, 2017)...................19

*Harris v. Lincoln National Life Insurance Co.*,
   42 F.4th 1292 (11th Cir. 2022) ...............................................................5

*Hoak v. Ledford*,
   No. 1:15-CV-03983-AT, 2016 WL 8948417 (N.D. Ga. Sept. 27, 2016)..............6

*Huang v. TriNet HR III, Inc.*,
   No. 8:20-cv-2293-VMC-TGW, 2022 WL 93571 (M.D. Fla. Jan. 10, 2022)........5

*ING Groep, N.V. ERISA Litig.*,
   749 F. Supp. 2d 1338 (N.D. Ga. 2010)...................................................6

*Jones v. EVRAZ Inc. N. Am.*,
   No. 1:18-cv-04519-SDG, 2021 WL 4441161 (N.D. Ga. Sept. 28, 2021)............5

*Madison v. Greater Ga. Life Ins. Co.*,
   225 F. Supp. 3d 1381 (N.D. Ga. 2016).................................................5

*Nelsen v. Principal Glob. Inv'rs Tr. Co.*,
   362 F. Supp. 3d 627 (S.D. Iowa 2019) ................................................19

*PBGC v. Morgan Stanley Investment Management Inc.*,
   712 F.3d 705 (2d Cir. 2013)...........................................................6, 8

*Perrino v. S. Bell Tel. & Tel. Co.*,
   209 F.3d 1309 (11th Cir. 2000) .........................................................16

*Ramos v. Banner Health*,
   1 F.4th 769 (10th Cir. 2021) .............................................................9

*Ramos v. Banner Health*,
   461 F. Supp. 3d 1067 (D. Colo. 2020)..................................................9

*Rizzo-Alderson v. Eihab H. Tawfik, M.D., P.A.*,
   No. 5:17-cv-312-OC-37PRL, 2017 WL 4410096 (M.D. Fla. Oct. 4, 2017).........4

*Sacerdote v. New York Univ.*,
   328 F. Supp. 3d 273 (S.D.N.Y. 2018) ..................................................9

iv

*Sacerdote v. New York Univ.*,
  9 F.4th 95 (2d Cir. 2021) .........................................................................9

*Sellers v. Anthem Life Ins. Co.*,
  316 F. Supp. 3d 25 (D.D.C. 2018).......................................................13

*Smith v. CommonSpirit Health*,
  37 F.4th 1160 (6th Cir. 2022) ................................................... passim

*Stephens v. Citation Corp.*,
  705 F. Supp. 2d 1291 (N.D. Ala. 2010)................................................5

*Tatum v. RJR Pension Inv. Comm.*,
  761 F.3d 346 (4th Cir. 2014) ................................................................9

*Tibble v. Edison International*,
  575 U.S. 523 (2015)..............................................................................19

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
  325 F. App'x 31 (2d Cir. 2009) ..........................................................12

**Statutes**
29 U.S.C. § 1106(b) ...................................................................................13
29 U.S.C. § 1113(2) ...................................................................................19
29 C.F.R. § 2550-404a-5.............................................................................18
29 C.F.R. § 2550.404a-5(b) .......................................................................18

**Rules**
Federal Rule of Civil Procedure 9(b)........................................................19

This Court ordered that claims relating to Rollins' 401(k) Plan must be pursued through the Plan's administrative process before coming to Court. *See Fleming v. Rollins, Inc.*, No. 1:19-CV-05732-ELR, 2020 WL 7693147, at *2 (N.D. Ga. Nov. 23, 2020) (Ross, J.) (the "*2019 Action*"). The Court relied on controlling Eleventh Circuit authority noting the many reasons to require pre-suit exhaustion of administrative remedies, including the reduction of frivolous lawsuits and the creation of an administrative record that will assist the courts if the dispute is eventually litigated. *See id* at *2, 4. Plaintiffs' Opposition, ECF 79 ("Opp."), now asks this Court to ignore the very record created by the administrative process. It makes the contradictory assertions that the administrative record cannot be considered and that the record can be expanded. Opp. at 2, 11. And it reargues that exhaustion would be futile. *Id.* at 17-19. These attempts to relitigate matters settled by this Court's prior order should be summarily rejected.

The Court's task on this motion to dismiss is to consider the administrative record—which was already supplied to Plaintiffs during the administrative process—and to assess whether the Rollins Defendants used a prudent process when making decisions for the Plan. *See Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022) (observing that whether breach of fiduciary duty of prudence is sufficiently pleaded is "largely a process-based inquiry"); *Fuller v.*

*SunTrust Banks, Inc.*, No. 1:11-CV-784-ODE, 2019 WL 5448206, at *24 (N.D. Ga. Oct. 3, 2019) (same).  That record shows that the Plan's fiduciaries carefully and repeatedly considered the very issues regarding fees and investment selections that are raised in the First Amended Complaint, ECF 53 ("FAC").  And as a matter of law, the record shows that the Plan fiduciaries easily satisfied their legal obligations by investigating the merits of Plan choices, employing experts to assist, holding regular meetings to ensure oversight and receiving regular updates on the Plan's investments and expenses.  *See* ECF 75-1 ("Br.") at 13-14; ECF 75-10.

Plaintiffs' Opposition does not join argument on this record, asking wrongly that it be ignored.  Nor does the Opposition grapple with the ample and recent caselaw holding that the conclusory allegations of the FAC are insufficient to state a claim as a matter of law.  *See, e.g.*, *Smith*, 37 F.4th at 1170 (upholding dismissal with prejudice of claims regarding imprudence of actively managed funds).  The Opposition also asserts mistakenly that ERISA's statute of repose does not apply because successor fiduciaries failed to bring claims against their predecessors, an approach that would essentially write the statute of repose out of ERISA.

In short, Plaintiffs' Opposition confirms that Plaintiffs have no substantive basis to pursue their confusing and overlapping claims and that these claims—pleaded for the fourth time—should be dismissed with prejudice.

# **ARGUMENT**

## I.    THE FAC VIOLATES THE ELEVENTH CIRCUIT'S RULES REGARDING SHORT AND PLAIN PLEADING

The FAC incorporates its entire factual background section into each count, contains numerous allegations unconnected to any particular claims, intermixes various claims in individual counts and engages in "group pleading" by failing to link individual defendants to individual claims.  *See* Br. at 9.  Plaintiffs respond that the FAC must be sufficient because the Rollins Defendants were able to file a motion to dismiss (Opp. at 16), but make no attempt to respond to the deficiencies identified in our opening brief and leave this Court (and Defendants) to struggle with linking the claims for relief with the purported conduct of each Defendant. The rule against shotgun complaints protects the courts as much as it does defendants.  *See Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996) ("[U]nless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").  The Opposition also asserts that the FAC is acceptable because each count incorporates merely the entire facts section rather than every other count (Opp. at 15).  But "[s]hotgun pleadings also may 'begin with a long list of general allegations' that are 'incorporated by reference into each

count of the complaint.'"  *Rizzo-Alderson v. Eihab H. Tawfik, M.D., P.A.*, No.

5:17-cv-312-OC-37PRL, 2017 WL 4410096, *1 (M.D. Fla. Oct. 4, 2017).

## II.   THE ADMINISTRATIVE RECORD SHOULD BE CONSIDERED IN ASSESSING PLAINTIFFS' CLAIMS

The Opposition raises a threshold question regarding what materials may be

considered on this Motion.  Portions of the administrative record were attached to

the FAC, and the entire administrative record was submitted to the Court with this

Motion.  The record before this Court thus contains both the Committee's

explanation of its decision on Plaintiffs' administrative claim as well as all the

materials considered by the Committee in concluding that the decisions regarding

fees and investment selections challenged by Plaintiffs were considered prudently.

Plaintiffs now make the opposing assertions that (1) the record is "not limited to

the administrative record" and (2) that the consideration of the administrative

record is "misplaced at the pleadings stage."  Opp. at 2, 12-13.  Plaintiffs have

managed to present arguments that are both contradictory and equally wrong.

First, under controlling authority, the review of a plan administrator's claim

decision is limited to the administrative record.  *See Blankenship v. Metro. Life Ins.*

*Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011).  Indeed, arguments and materials not

presented to the plan administrator during the claims process are ignored in

subsequent litigation.  *See Madison v. Greater Ga. Life Ins. Co.*, 225 F. Supp. 3d

1381, 1391 (N.D. Ga. 2016) (records submitted after administrator's final denial were "meaningless non-events"). Neither the FAC nor the Opposition provide any basis for considering anything other than the administrative record.

The Opposition cites *Harris v. Lincoln National Life Insurance Co.*, 42 F.4th 1292 (11th Cir. 2022), as noting that "de novo review of benefits claims … is *not* limited to the record compiled by the claim fiduciary." Opp. at 2. *Harris* involved a plan that gave the administrator no discretion to interpret the plan and distinguished *Blankenship* on that basis. *See Harris*, 42 F.4th at 1296. The Rollins Plan gives the Committee discretion in determining claims. ECF 75-13.[1]

Second, Plaintiffs take the contrary, and equally erroneous, position that the Court must not consider the administrative record at all. Opp. at 11-15. In a

---

[1] The Opposition asserts that *Blankenship* is inapplicable to breach of fiduciary duty and prohibited transaction claims (Opp. at 2), but the cases it cites do not support this. *Stephens v. Citation Corp.*, 705 F. Supp. 2d 1291 (N.D. Ala. 2010), a pre-*Blankenship* case, suggests that a disabling conflict of interest bears on whether an administrator's decision should be given deference, but it ultimately held that the record could not support the decision under any standard. *See id.* at 1299. *Huang v. TriNet HR III, Inc.*, No. 8:20-cv-2293-VMC-TGW, 2022 WL 93571, at *4 (M.D. Fla. Jan. 10, 2022), declined to opine on the standard of review at the pleadings stage. *Jones v. EVRAZ Inc. N. Am.*, No. 1:18-cv-04519-SDG, 2021 WL 4441161, at *11-12 (N.D. Ga. Sept. 28, 2021), also did not reach the question because it dismissed the fiduciary duty claims on other grounds. Plaintiffs are essentially rehashing the previously rejected argument that fiduciary breach claims do not need to be exhausted. *Fleming*, 2020 WL 7693147, at *5.

lawsuit filed after an administrative appeal, that record is the basis for assessing the administrator's decision. *Blankenship*, 644 F.3d at 1354; *Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1203 (11th Cir. 2020); *Garland v. Snap-On Inc. Ret. Plan*, No. 1:20-CV-02895-JPB, 2021 WL 1192991, at *4 (N.D. Ga. Mar. 8, 2021).

There are additional grounds for considering the administrative record. The Court may consider exhibits attached to the complaints, including portions of the administrative record. *See* ECF Nos. 1-2, 53-1, 53-2, 53-3; *Amin v. Mercedes-Benz USA, LLC*, 349 F. Supp. 3d 1338, 1346 (N.D. Ga. 2018). So too, the Court may consider documents referenced in the FAC or central to Plaintiffs' claims. *In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1343 (N.D. Ga. 2010). The FAC references the administrative claims correspondence (FAC ¶¶ 80-83), and both it and the record are central to Plaintiffs' claims. *See Hoak v. Ledford*, No. 1:15-CV-03983-AT, 2016 WL 8948417, at *1 n.2 (N.D. Ga. Sept. 27, 2016) (finding that administrative record was central to plaintiffs' claims). Courts also may consider matters of public record and frequently do so in ERISA cases. *See ING Groep*, 749 F. Supp. 2d at 1344; *see also* Br. at 11.

Plaintiffs rely on *PBGC v. Morgan Stanley Investment Management Inc.*, 712 F.3d 705, 718 (2d Cir. 2013), for the proposition that plan participants "generally lack the inside information necessary to make out their claims in detail

unless and until discovery commences." Opp. at 14. This proposition, however, has no application here since Plaintiffs were supplied with the full administrative record, including the Committee's reasoning and the materials relied upon in deciding Plaintiffs' claim. These are precisely the materials that show the Committee's process for selecting and monitoring investments, and it is that process that is reviewed when considering fiduciary breach claims. *See* Br. at 13.

## III.  PLAINTIFFS' ADMINISTRATIVE CLAIMS WERE PROPERLY DENIED BASED ON THE CAREFUL DECISION-MAKING RECORD OF THE PLAN'S FIDUCIARIES

This section discusses the five claims that Plaintiffs presented during the administrative claim process and shows why the claims were properly denied and why Plaintiffs fail to state viable claims as a matter of law. The following section addresses the new claims of the FAC that were not exhausted by the filing of an administrative claim and shows why they should be dismissed as well.

### A.  Claims Based on Investment Performance (Count I)

The record shows that the Committee monitored investment performance on a routine basis in accordance with established guidelines and with the help of an investment professional. Br. at 12. The Committee's process was consistent with good fiduciary practice and provides ample basis for dismissal of these claims. Br. at 12-15. And even without this administrative record, the FAC fails to state a

claim under cases holding that such rote allegations are insufficient to state a claim for breach of fiduciary duty regarding investment performance.  Br. at 15-16.

Plaintiffs offer virtually no response to the process followed by the Committee regarding investment selections and monitoring.  They wrongly claim, as discussed above, that the Committee's record of decision-making cannot be considered.  Their alternative argument is that the FAC contains "meaningful benchmarks" for investment performance and that this allegation alone overcomes those cases where similar claims were dismissed because the plaintiff failed to offer any meaningful comparator.  Opp. at 22, 24-26.  This attack, however, misses the mark.  Plaintiffs cannot state a claim by substituting their own performance measures for those actually used by the Committee for two reasons.

First, the record shows a thorough process by which the Committee adopted benchmarks for the performance of each investment, reviewed the performance of each investment option at each Committee meeting, and regularly replaced investments that underperformed their benchmarks.  Br. at 12; ECF 75-10.  The relevant legal standard is whether the plan fiduciaries have a reasonable process for selecting and monitoring investments.  *PBGC,* 712 F.3d at 718.  Under this process-based standard, the performance of the investments in hindsight is legally irrelevant, and neither Plaintiffs nor the court may substitute their judgment for that

of the plan's fiduciaries.  *Smith*, 37 F.4th at 1162.  The string cite of cases offered

by Plaintiffs (Opp. at 24-25) is readily distinguished because none involves a

record that shows the plan fiduciaries' actual benchmarking process.  To the extent

these cases refer to benchmarking as an appropriate method to judge investment

performance, they actually support the Committee's process here.[2]

Second, Plaintiffs point to no defect in the process used by the Committee—

and certainly do not allege any in the FAC.  The Committee's use of benchmarks

based on widely-accepted market measures for each style of investment has been

repeatedly endorsed by the courts and represents state-of-the-art fiduciary

monitoring.  *See Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 358 (4th Cir.

2014); *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273, 308 (S.D.N.Y. 2018),

*aff'd*, 9 F.4th 95 (2d Cir. 2021); *Ramos v. Banner Health*, 461 F. Supp. 3d 1067,

1130 (D. Colo. 2020), *aff'd*, 1 F.4th 769 (10th Cir. 2021).

Plaintiffs also contend that their allegations regarding the use of actively-

managed mutual funds state a separate claim.  This theory was soundly rejected by

---

[2]   *Bell v. Pension Committee of ATH Holding Co.*, No. 1:15-cv-02062-TWP-
MPB, 2017 WL 1091248 (S.D. Ind. Mar. 23, 2017), is inapposite because it turns
on evidence showing that the fiduciaries gave insufficient consideration to one
investment option.  Here, the record shows that the Committee gave regular and
careful consideration to investments and fees.  And despite the opportunity to
present evidence, Plaintiffs have offered nothing but conclusory assertions.

the Sixth Circuit's recent opinion in *Smith v. CommonSpirit Health*, 37 F.4th 1160
(6th Cir. 2022).  Contrary to Plaintiffs' contention (Opp. at 24), the Sixth Circuit
affirmed dismissal with prejudice not because the plaintiff's active management
theory was insufficiently pled but rather because it found the entire theory
implausible.  *See* 37 F.4th at 1165 (explaining why offering actively managed
funds is consistent with prudent conduct).[3]  It also observed, as many other courts
have, that claims based on short-term investment performance are not plausible in
the context of retirement planning, given the much larger time horizons involved.
*See id.* at 1166 (holding that imprudence could not be plausibly inferred from
comparisons of performance over a five-year period); *see also* Br. 18-19.

## B.    Claims Based on Investment Fees (Count I)

In their administrative claim, Plaintiffs challenged the investment fees for
some of the Plan's various investment options.  ECF 75-4.  The record shows that
the Committee monitored fees with the help of its financial advisor, negotiated fees

---

[3]    *Smith* recognized that a claim could exist for offering *specific* actively managed
funds that were imprudent.  *See* 37 F.4th at 1165-66.  But the Opposition concedes
that this is not the FAC's intent.  *See* Opp. at 24 ("Plaintiffs do not challenge the
prudence of the investments in the Plan, but rather, Rollins' flawed process in
selecting and retaining them.").  The Committee used a consistent process for
selecting and monitoring investment options and followed that process during the
entire period at issue as evidenced by the Committee's meeting minutes.

with the recordkeeper and lowered fees over time.  ECF 75-10.  Plaintiffs offer no

response to this record of decision-making other than to repeat their conclusory

allegations that fees could have been lower (Opp. at 26).  But to state a plausible

claim, Plaintiffs must allege facts evidencing an imprudent process and

unreasonable fees in light of the services provided—a point on which the FAC and

the Opposition are decidedly silent.  *See Smith*, 37 F.4th at 1165-66 (outlining the

allegations needed to state a claim challenging actively managed funds); *Albert v.

Oshkosh Corp.*, 47 F.4th 570, 582 (7th Cir. 2022) (same).  By failing to do so,

Plaintiffs have not nudged their claims "across the line from conceivable to

plausible."  *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

### C.   Claims Based on Monitoring of Plan Service Providers and Fiduciaries (Counts III and IV)[4]

The FAC alleges that Prudential's compensation was inflated by revenue

sharing, but neither it nor the Opposition say anything about the level and types of

---

[4]   Contrary to the assertion in the Opposition at 31, the Motion does challenge both alleged bases for Count IV (failure to follow the Plan's terms).  Insofar as Count IV is based on an alleged failure "to make sure Plan expenses were reasonable" (FAC ¶ 458) it fails to state a claim for the same reasons as Count I, as set forth in Br. at 22-24 and here.  The Motion also explained why FAC ¶ 457 fails to provide a basis for a claim:  its premise that the Advisor Defendants were ERISA § 3(38) "investment managers" is simply wrong, since the Advisor Defendants had no power to dispose of assets.  See Br. at 7 n.1, ECF 75-10.

services provided by the recordkeeper in return for the fees it received.  Absent

such allegations, the FAC fails to state a plausible claim that Prudential was

overcompensated.  *See Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31

(2d Cir. 2009) (holding plaintiff must allege fees were unreasonable relative to the

service rendered).[5]  The Opposition also fails to establish any alternative reason

why the Plan's use of revenue sharing is relevant if Plaintiffs cannot show that

Prudential's overall compensation was too high.  Instead, it acknowledges that

revenue sharing is a common way to pay plan expenses and insists that Plaintiffs'

claim is targeted at Rollins' allegedly unmonitored use of revenue sharing.  Opp. at

28-29.  The Opposition, however, ignores the record showing that the Committee

actively monitored revenue sharing.  Br. at 21.  And without allegations of how the

Plan was damaged by having to pay recordkeeping fees through revenue sharing

rather than some other method, the FAC fails to state a viable claim.

### D.    Duty of Loyalty Claims (Count II)

The Rollins Defendants' opening brief pointed to the absence of any

plausible allegations that any Rollins Defendant acted to benefit themselves at the

---

[5]    The Opposition wrongly asserts that *Young* is not an ERISA case.  It plainly dismisses ERISA claims regarding fees in GM's defined contribution plans and borrows the "relative 'to services rendered'" test from cases interpreting the Investment Company Act of 1940.  325 F. App'x at 33.

expense of the Plan's participants.  Br. at 25.  The Opposition offers only rote

repetition of ERISA's duty of loyalty and a string cite of cases; it is devoid of any

citation to allegations of the FAC or anything in the now-extensive record.  Opp. at

31.  In short, the Opposition fails to address the substance of the problems

identified in the Rollins Defendant's opening brief: that the FAC was conclusory

and repackaged the prudence allegations with different labels.  Br. at 24-26.

###### E.    Claims Based on Alleged Prohibited Transactions and "Breach of Fiduciary Duty by Omission" (Counts V-VII)

According to the Opposition, the Rollins Defendants engaged in prohibited

transactions by allowing excessive fee payments to service providers.  Opp. at 33.

As a result, it is now clear that this claim is completely derivative of the fiduciary

breach claims based on fees and should be dismissed for the reasons stated above.

ERISA does not prohibit ordinary commercial relationships between plans and

service providers.  Br. at 26 (citing *Sellers v. Anthem Life Ins. Co.*, 316 F. Supp. 3d

25, 34 (D.D.C. 2018)).  And the Seventh Circuit recently reaffirmed this reading of

the statute.  *See Albert*, 2022 WL 3714638, at *10.

As for ERISA's prohibition against self-dealing by fiduciaries (§ 1106(b)),

the FAC never alleges that the Rollins Defendants received any Plan assets

personally.  Br. at 28.  The Opposition does not refute this and instead cites three

cases in which fiduciaries allegedly did receive a monetary benefit.  Opp. 34.[6]

## IV.   THE REMAINING CLAIMS WERE NOT ADMINISTRATIVELY EXHAUSTED AND FAIL AS A MATTER OF LAW.

### A.   The New Claims Should Be Dismissed For Failure To Exhaust Administrative Remedies.

The Rollins Defendants' Motion identified four categories of allegations that

were not within the scope of the complaints in the *2019 Action*, were not raised in

the administrative proceeding (in which Plaintiffs' entire claim consisted of a

bullet point list without explanation), and therefore should be dismissed for failure

to exhaust administrative remedies.  Br. at 28-29.  The Opposition does not

seriously contend that these claims were presented to or considered by the

Committee.  Rather, it asserts that "the factual allegations in the FAC mirror those

in the dismissed action" and the Committee "*necessarily considered* documents

relative to *all* the facts alleged in the FAC."  Opp. at 17 (emphasis in original).  It

may be true that the Committee would rely on the same or similar Committee

meeting minutes and related materials if Plaintiffs were to present their new claims

---

[6]   As shown in the Motion, Plaintiffs' co-fiduciary liability claims depend on the existence of an underlying violation.  Br. at 34.  The FAC's failure to state a plausible claim under any theory dooms this claim as well.

for administrative review.  But it would not be looking at the same points in those documents, and the scope of the record says nothing about how the Committee would analyze the claims or what it would decide.

The exhaustion defense cannot come as a surprise to Plaintiffs for at least two reasons.  First, Plaintiffs' administrative claim was extremely vague (essentially a list of bullet points).  To understand the nature of the claims, the Committee referred to the previously-dismissed complaint, which appeared to track the five bullet points of Plaintiffs' administrative claim. *2019 Action* ECF 1, 25.  Plaintiffs cannot submit a vague claim and, knowing that the Committee was using the prior complaint to understand the nature of the claim, now assert that they were bringing different or broader claims.[7]  Second, the Committee's Appeal Denial Letter carefully explained that "[a]ny claims other than those set forth in the Claim [Letter] and *denied by this Decision* must be submitted to the Committee in a new administrative claims process."  ECF 75-41 at 4 (emphasis added).  The

---

[7]   Plaintiffs' attempt to avoid exhaustion is especially disingenuous regarding the Prudential Guaranteed Fund.  The original Claim Letter (ECF 75-4) listed fourteen specific challenged investments, but did not mention the Guaranteed Fund or the related Guaranteed Income Contract.  The two complaints in the *2019 Action* provided similar lists.  *2019 Action* ECF 1 ¶ 108 and ECF 25 ¶ 142.  The Rollins Defendants even noted the absence of allegations regarding the Guaranteed Fund when moving to dismiss the amended complaint.  *2019 Action* ECF 38 at 16 n. 8.

Committee's instructions were both reasonable (since it could not be expected to imagine all possible claims that might be asserted) and clearly communicated.

Plaintiffs next repeat arguments for applying the futility exception, but this Court has already rejected those arguments. *Fleming*, 2020 WL 7693147, at *4-5; *see also Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1318 (11th Cir. 2000) (requiring exceptional circumstances not present here). Likewise, *Fallick v. Nationwide Mutual Insurance Co.*, 162 F.3d 410 (6th Cir. 1998) (cited in Opp. at 19), was already distinguished by this Court in its Dismissal Order and continues to offer no help to Plaintiffs. Unlike the plan administrator in *Fallick*, the Committee timely decided Plaintiffs' claim and appeal, informed them that those claims were exhausted, and have spent substantial effort here parsing the exhausted claims (which are properly before the Court) from the new claims (which are not). Indeed, the extensive administrative record shows that the Committee gives thoughtful consideration to claims presented to it and confirms that pursuit of administrative claims is not futile.

## B.     The New Claims Are Insufficient As A Matter Of Law.

### 1.  Claims regarding monitoring of Plan advisors for "competence"

The Motion showed that these allegations (FAC ¶¶ 334-352 and Count IV) fail to state a claim because there is no link between the alleged violations and the

Plan, Waggoner's investment recommendations, or alleged losses.  Br. at 30.  The

Opposition offers no response, and the claim should be dismissed.

### 2.  Claims regarding allocation of Plan expenses

Likewise, the Opposition does not address the FAC's allegations about the

method of allocation (FAC ¶¶ 256-264) or the points raised in the Motion about

them.  The Motion showed that applicable regulations give fiduciaries broad

discretion to allocate expenses and that the chosen method (in this case, revenue

sharing until 2018 and a flat fee after that) need only be reasonable.  Br. at 30-31.

### 3.  Claims regarding the Prudential Guaranteed Fund

The gravamen of Plaintiffs' claim appears to be that the Rollins Defendants

should have selected a different stable value product.  *See* FAC at ¶ 174.  Plaintiffs

do not challenge stable value funds on the whole, recognizing them to be

conservative investments common in retirement plans.  *Id.* ¶ 175.  The record

conclusively rebuts Plaintiffs' claim by showing that the Rollins Defendants paid

close and repeated attention to the Prudential Guaranteed Fund.[8]  Moreover, the

---

[8]   The record shows that the Committee discussed the Prudential Guaranteed Fund
on at least nine occasions and considered, among other things, the crediting rate,
participation level, underlying investments, educational materials and pricing.  *See,
e.g.,* ECF 75-10 at ROLLINS_0000106, 0000128, 0000133-137.  In addition, after
conducting an RFP involving eleven vendors, the Committee determined that the
Prudential crediting rate was superior.  Id. at ROLLINS_0000168-69.

allegations of the FAC fail to identify another comparable investment that a

prudent fiduciary would have selected instead of the Guaranteed Fund or any

meaningful performance benchmark and, thus, fail to state a claim.  Br. at 31.

### 4.  Claims regarding the Plan's disclosures

Finally, the Opposition does not contest that the Plan's disclosures complied

with applicable Department of Labor regulations.  *See* Br. 30-31 (citing 29 C.F.R.

§ 2550.404a-5(b)).  Instead, it suggests that this compliance is irrelevant, citing a

2004 opinion that preceded the current regulation and could not possibly address

whether compliance with the regulation satisfies fiduciary duties.  Opp. at 30.

More recent decisions cited in the Motion hold that it does. [9]  *See* Br. at 32 and

cases cited therein.  The Opposition does not address these holdings or identify any

specific statements that were inaccurate or misleading.

## V.    TIME-BARRED CLAIMS SHOULD BE DISMISSED

The FAC is replete with claims based on matters occurring before ERISA's

statute of repose.  *See* Br. at 33 (citing multiple examples); *see also* ECF 76-1 at 8-

9 (addressing untimely claims regarding LPL's compensation); ECF 77-1 at 34

---

[9]    The Seventh Circuit recently joined the growing list of courts holding that 29
C.F.R. § 2550.404a-5 does not require the kind of granular fee-related disclosures
that the FAC demands. *See Albert*, 47 F.4th at *586 (affirming dismissal of claims
based on failure to break out revenue sharing from other fees).

(hiring of Alliant prior to repose period); ECF 78-1 at 13-14 (selection of the GIC).

Plaintiffs' attempt to invoke the concealment exception to 29 U.S.C. § 1113(2)

finds no support in the FAC, which fails to plead any fraud with particularity as

required by Rule 9(b). *See Griffin v. Aetna Health Inc.*, No. 1:17-CV-77-AT, 2017

WL 4423419, at *4 (N.D. Ga. June 21, 2017) (allegations failed to show that the

defendant engaged in a course of conduct designed to conceal evidence of

wrongdoing), *aff'd on other grounds*, 740 F. App'x 169 (11th Cir. 2018); *Gamache*

*v. Hogue*, 446 F. Supp. 3d 1315, 1329 (M.D. Ga. 2020) (complaint must set forth

"precisely" the time, place, person responsible for making, and content of the

fraudulent misrepresentations, and what the defendants obtained from the fraud).

Nor does the Supreme Court's recognition of a "continuing fiduciary duty"

in *Tibble v. Edison International*, 575 U.S. 523 (2015) provide any basis for

extending the period of repose. *See id.* at 530 ("*so long as the alleged breach of*

*the continuing duty occurred within six years of suit*, the claim is timely")

(emphasis added); *see also Nelsen v. Principal Glob. Inv'rs Tr. Co.*, 362 F. Supp.

3d 627, 642 (S.D. Iowa 2019) (limiting claims to failure to monitor within six

years prior to filing of suit).  Plaintiffs then take their erroneous interpretation of

*Tibble* a step further, arguing that they can reach back to imprudent decisions made

before the repose period by suing the current fiduciaries (who were not involved in

those decisions) for not taking remedial action against their predecessors.  Opp. at 21.  The cases Plaintiffs cite do not involve the six-year statute of repose and therefore do not support their theory.  The theory is also nonsensical: if it were permitted, any untimely claim could be made timely by rewording it as a failure to remedy past breaches, and the six-year rule would have no meaning.

## CONCLUSION

The present complaint is Plaintiffs' fourth attempt to plead claims yet it remains a tangled mess, ignores the extensive record considered by the Committee and offers only conclusory allegations that are insufficient to state a claim—even without the extensive decision-making record presented here.  This case has surely run its course and should be dismissed with prejudice.

Respectfully submitted this 29th day of September, 2022.


**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ W. Bard Brockman*
W. Bard Brockman, Georgia Bar No. 084230
bard.brockman@bclplaw.com
Michael P. Carey, Georgia Bar No. 109364
michael.carey@bclplaw.com
Ann Ferebee, Georgia Bar No. 431941
Ann.ferebee@bryancave.com
One Atlantic Center, 14th Floor
1201 West Peachtree Street, N.W.

Atlanta, Georgia  30309
Telephone: (404) 572-6600
Facsimile: (404) 572-6999

Jeffrey S. Russell (*pro hac vice*)
jsrussell@bclplaw.com
211 North Broadway, Suite 3600
St. Louis, Missouri  63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020

*Attorneys for the Rollins Defendants*

## <u>LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE</u>

I hereby certify that the foregoing pleading has been prepared with Times New Roman 14 point font, one of the font and point selections approved by the Court in L.R. 5.1B, N.D. Ga.

This 29th day of September, 2022.

*/s/ W. Bard Brockman*
W. Bard Brockman

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing **REPLY BRIEF IN SUPPORT OF THE ROLLINS DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 29th day of September, 2022.

*/s/ W. Bard Brockman*
W. Bard Brockman
Georgia Bar No. 084230

*Attorney for the Rollins Defendants*
