## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| MARCIA G. FLEMING, CASEY FREEMAN, DAVID GUYON, ANTHONY LOSCALZO, PATRICK ROSEBERRY, and JULIO SAMANIEGO individually, on behalf of the Rollins, Inc. 401(k) Savings Plan and on behalf of all similarly situated participants and beneficiaries of the Plan,<br><br>   *Plaintiffs*,<br><br>v.<br><br>ROLLINS, INC.; THE ADMINISTRATIVE COMMITTEE OF THE ROLLINS, INC. 401(k) SAVINGS PLAN; BOTH INDIVIDUALLY AND AS THE *DE FACTO* INVESTMENT COMMITTEE OF THE ROLLINS, IC. 401(K) SAVINGS PLAN; EMPOWER RETIREMENT, LLC F/K/A PRUDENTIAL INSURANCE AND ANNUITY COMPANY; PRUDENTIAL BANK & TRUST, FBS, AS DIRECTED TRUSTEE OF THE ROLLINS, INC. 401(K) PLAN TRUST; ALLIANT INSURANCE SERVICES, INC.; ALLIANT RETIREMENT SERVICES, LLC; LPL FINANCIAL LLC; PAUL E. NORTHEN, JOHN WILSON, JERRY GAHLHOFF, JAMES BENTON and A. KEITH PAYNE in their capacities as members of the Administrative Committee; and John and Jane Does 1-10,<br><br>   *Defendants*. | Civil Action No. 1:21-cv-05343-ELR |

## REPLY IN SUPPORT OF DEFENDANT LPL FINANCIAL LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................1

ARGUMENT ..................................................................................................2

    I.      PLAINTIFFS' CLAIMS AGAINST LPL ARE UNTIMELY
           UNDER ERISA'S SIX-YEAR STATUTE OF REPOSE ................2

         A.      LPL Had No Relationship with the Plan After 2012,
               Whether Through Waggoner or Otherwise .........................2

         B.      Plaintiffs Cannot Save Their Claims By Inventing a
               New Theory that LPL "Affirmatively Concealed"
               Breaches ................................................................5

    II.     THE FAC DOES NOT PLAUSIBLY ALLEGE THAT LPL
           WAS A PLAN FIDUCIARY ................................................7

    III.    THE FAC DOES NOT PLAUSIBLY ALLEGE A BREACH
           OF FIDUCIARY DUTY BY LPL ........................................ 12

    IV.    PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED THAT
           LPL IS LIABLE AS A CO-FIDUCIARY .................................. 16

    V.     THE FAC DOES NOT STATE A PROHIBITED
           TRANSACTION CLAIM AGAINST LPL .................................. 17

    VI.    LEAVE TO AMEND SHOULD BE DENIED ............................ 19

    VII.   PLAINTIFFS' FEE REQUEST IS BASELESS.......................... 20

CONCLUSION............................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackers v. Brazile,*
   2017 WL 7725244 (N.D. Ga. Nov. 14, 2017) ................................................ 20

*Angel Oak Mortg. Sols. LLC v. Mastronardi,*
   2022 WL 875910 (N.D. Ga. Mar. 23, 2022) ............................................ 5, 10

*Aull v. Cavalcade Pension Plan,*
   988 F. Supp. 1360 (D. Colo. 1997) .................................................................. 5

*Boysen v. Ill. Tool Works Inc. Separation Pay Plan,*
   2017 WL 2374844 (N.D. Ga. May 31, 2017) ................................................ 20

*Brown v. J.P. Turner & Co.,*
   2011 WL 1882522 (N.D. Ga. May 17, 2011) .................................................. 6

*Cho v. Prudential Ins. Co. of Am.,*
   2021 WL 4438186 (D.N.J. Sept. 27, 2021) .................................................. 13

*Danza v. Fidelity Management Trust Co.,*
   533 F. App'x 120 (3d Cir. 2013) ................................................................... 19

*Ellis v. Rycenga Homes, Inc.,*
   484 F. Supp. 2d 694 (W.D. Mich. 2007) ...................................................... 11

*Franza v. Royal Caribbean Cruises, Ltd.,*
   772 F.3d 1225 (11th Cir. 2014) ................................................................... 10

*Gamache v. Hogue,*
   446 F. Supp. 3d 1315 (M.D. Ga. 2020) ......................................................... 7

*Goodman v. Crittenden Hosp. Ass'n, Inc.,*
   143 F. Supp. 3d 795 (E.D. Ark. 2015) .......................................................... 9

*Hardt v. Reliance Standard Life Ins. Co.,*
   560 U.S. 242 (2010) ..................................................................................... 20

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re Coca-Cola Enters. Inc. ERISA Litig.*,
2007 WL 1810211 (N.D. Ga. June 20, 2007)................................................. 8

*In re Fidelity Erisa Fee Litig.*,
2020 WL 759542 (D. Mass. Feb. 14, 2020), *aff'd,* 990 F.3d 50 (1st
Cir. 2021) ............................................................................................ 12, 15

*In re Morgan Stanley ERISA Litig.*,
696 F. Supp. 2d 345 (S.D.N.Y. 2009)............................................................. 9

*In re Mut. Fund Inv. Litig.*,
403 F. Supp. 2d 434 (D. Md. 2005) ................................................................ 9

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) .................................................................. 12, 13

*Mohammed v. GHX Glob. Healthcare Exch. Inc.*,
2022 WL 1615925 (11th Cir. May 23, 2022) .................................................. 5

*Patrico v. Voya Fin., Inc.*,
2017 WL 2684065 (S.D.N.Y. June 20, 2017)................................................ 12

*Porter v. Experian Info. Servs., Inc.*,
2021 WL 5068262 (N.D. Ga. Oct. 30, 2021), *adopted*, 2022 WL
887288 (N.D. Ga. Jan. 27, 2022)............................................................. 3, 15

*Rosenberg v. Gould*,
554 F.3d 962 (11th Cir. 2009) ..................................................................... 20

*Scott v. Aon Hewitt Financial Advisors, LLC*,
2018 WL 1384300 (N.D. Ill. Mar. 19, 2018)................................................ 19

*Sellers v. Anthem Life Ins. Co.*,
316 F. Supp. 3d 25 (D.D.C. 2018) ............................................................... 17

*Smith v. CommonSpirit Health*,
37 F.4th 1160 (6th Cir. 2022) ...................................................................... 12

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Stanton v. Shearson Lehman/American Express, Inc.*,
  631 F. Supp. 100 (N.D. Ga. 1986) ............................................................*passim*

*Vegter v. Canada Life Assur. Co.*,
  2005 WL 8155418 (N.D. Ga. Apr. 21, 2005) ................................................ 10

*Wright v. Santander Consumer USA, Inc.*,
  2020 WL 7391734 (N.D. Ga. Jan. 24, 2020) ................................................ 20

*Ziemba v. Cascade Int'l, Inc.*,
  256 F.3d 1194 (11th Cir. 2001) .................................................................... 7

**Statutes**

29 U.S.C. § 1002(21)(A)(i) ................................................................................ 10

29 U.S.C. § 1002(21)(A)(ii) ................................................................................ 8

29 U.S.C. § 1002(38) ........................................................................................ 11

29 U.S.C. § 1113 ................................................................................................ 6

**Regulations**

29 C.F.R. § 2510.3-21(c)(1) .............................................................................. 8

## INTRODUCTION

LPL's relationship with the Plan ceased in 2012, nearly a decade before Plaintiffs filed this suit and *years* before the repose period for Plaintiffs' claims.  This alone warrants dismissal of LPL from this case.  Confronted with the time bar, Plaintiffs' opposition asserts for the first time the fantastical theory that LPL has fraudulently concealed an ongoing relationship with the Plan, and secretly continued providing services to the Plan through the Plan's investment advisor, Sean Waggoner, even as other advisory companies (and not LPL) received the fees for Waggoner's work. This is baseless and absurd.

Plaintiffs' other arguments in defense of their claims are also meritless. Plaintiffs repeatedly assert that they have made allegations that appear nowhere in the FAC, cite allegations that have nothing to do with the propositions Plaintiffs claim they support, and press a theory about LPL's Plan-related compensation that is contradicted by the Administrative Services Agreement ("ASA") integral to their claims.  Plaintiffs cannot avoid dismissal by simply asserting that they have alleged the facts necessary to state a claim when they actually have not, and the FAC does not contain factual allegations that plausibly support any claim against LPL.

Plaintiffs' claims against LPL must be dismissed with prejudice.

**ARGUMENT**

I.    **PLAINTIFFS' CLAIMS AGAINST LPL ARE UNTIMELY UNDER ERISA'S SIX-YEAR STATUTE OF REPOSE**

A.    **LPL Had No Relationship with the Plan After 2012, Whether Through Waggoner or Otherwise**

Plaintiffs' argument that their claims against LPL challenge conduct within the repose period depends on the premise that Waggoner was "an authorized agent of LPL through 2017." ECF No. 80 ("Opp.") 14. However, the FAC does not plead facts establishing *any* agency relationship between LPL and Waggoner, *see infra* at 10, let alone that Waggoner acted as LPL's agent in connection with the Plan through 2017. Even someone who is a principal's agent for *some* purposes does not automatically become the principal's agent for *all* purposes. Waggoner's affiliation with LPL is relevant only insofar as it had anything to do with Waggoner's Plan-related conduct.

Documents properly before the Court conclusively establish that LPL had no involvement with the Plan after 2012. The Plan's Form 5500s, filed with the Department of Labor by Rollins and referenced in the FAC, *see* ECF No. 53 ("FAC") ¶ 265, show that the Plan paid fees to LPL only in 2010, 2011, and 2012—far outside the six-year repose period. *See* ECF No. 76-1 ("LPL Mot.") 3-4, 8-9. Plaintiffs try to avoid the straightforward conclusion dictated by the Form 5500s by asserting that "LPL misrepresented its affiliation with

2

Waggoner (and the fees it received as a result) in those same forms." Opp. 14. The FAC, however, does not allege that LPL misrepresented anything to anyone, *see infra* at 6, nor does it otherwise provide a basis to question what the Plan's own Form 5500s report about which entities it paid fees to.

Indeed, Plaintiffs' protestations about the Form 5500s go nowhere, because the relevant information is separately established by the ASA, which Plaintiffs do not dispute is central to their claims and properly considered in resolving LPL's motion (*see, e.g.*, Opp. 3 (citing ASA)). The ASA shows that LPL received fees for Waggoner's services starting in 2010, but the payee was changed in 2012—just as the Form 5500s report. *See* ECF Nos. 76-15, 76-16; LPL Mot. 3-4.[1] Plaintiffs provide no plausible basis to infer that Waggoner acted pursuant to his association with LPL when other entities with which he separately maintained an Investment Advisory Representative ("IAR") registration received the fees for his services. *See* LPL Mot. 3-4, 9-11.[2]

---

[1] As these documents show, there is no basis for Plaintiffs' assertion that "[a]t all relevant times prior to June 2017, LPL collected fees" in connection with the Plan, Opp. 3—a statement that appears to depend on Plaintiffs' unfounded definition of "LPL" to include "Sean Waggoner," *see id.* The Court is not required to credit conclusory assertions unsupported by well-pled facts and contradicted by documents integral to Plaintiffs' claims. *See, e.g., Porter v. Experian Info. Servs., Inc.*, 2021 WL 5068262, at *2 n.7, *6 n.9, *11 (N.D. Ga. Oct. 30, 2021), *adopted*, 2022 WL 887288 (N.D. Ga. Jan. 27, 2022).

[2] The mere fact that Waggoner maintained IAR registrations with

What is more, as Plaintiffs ultimately acknowledge and the SEC and FINRA records on which they rely show, Waggoner did not maintain an IAR license with LPL at any time after October 2015—more than six years before Plaintiffs filed their initial complaint.  *See* Opp. 14-15.  Plaintiffs argue that it does not matter that Waggoner was not registered as an IAR with LPL in the repose period, because LPL nonetheless purportedly "held Waggoner out as an authorized agent of LPL through 2017."  Opp. 14.  Plaintiffs did not plead this theory or any supporting facts in the FAC.  Nor does Plaintiffs' opposition elaborate on the factual basis for their new contention.  As shown in the SEC and FINRA records Plaintiffs cite (*see* Opp. 1 n.1), Waggoner had a *broker* license with LPL until June 2017.  But Plaintiffs do not explain how Waggoner's broker license has any bearing on their claims, and it logically does not:  Plaintiffs do not allege that Waggoner ever acted as a *broker* for the Plan; they allege only that Waggoner was the Plan's *investment advisor*.  *See, e.g.*, FAC ¶¶ 219, 329-30, 336, 342; Opp. 1, 14-15.[3]  As a matter of law, LPL

_____

multiple firms after 2012 does not permit the inference that *all* those firms provided services to the Plan, particularly when only *some* of those firms received fees from the Plan.  Nothing in *Stanton v. Shearson Lehman / American Express, Inc.*, 631 F. Supp. 100 (N.D. Ga. 1986), cited by Plaintiffs, suggests otherwise—the "agent" in that case was the firm's employee, and no other affiliations were involved, *see id.* at 104-05.

[3] Although individuals may hold both broker and IAR licenses, the

cannot be liable for actions outside the scope of its relationship with

Waggoner.  *See Mohammed v. GHX Glob. Healthcare Exch. Inc.*, 2022 WL

1615925, at *3 (11th Cir. May 23, 2022) (per curiam); *Angel Oak Mortg. Sols.*

*LLC v. Mastronardi*, 2022 WL 875910, at *5 (N.D. Ga. Mar. 23, 2022).

Plaintiffs, in short, do not allege facts plausibly suggesting any link

between Waggoner's services to the Plan and LPL within the six-year repose

period, or any other basis to conclude that LPL had anything to do with the

Plan after 2012.  It therefore does not matter that Plaintiffs characterize

their claims as breaches by "omission," or that ERISA imposes on fiduciaries

"continuing duties."  Opp. 13-14, 16 n.13.  Any fiduciary duties necessarily

cease when an entity no longer has a relationship with a Plan.  *See, e.g.*, *Aull*

*v. Cavalcade Pension Plan*, 988 F. Supp. 1360, 1364 (D. Colo. 1997).

### B.    Plaintiffs Cannot Save Their Claims By Inventing a New Theory that LPL "Affirmatively Concealed" Breaches

Under ERISA's statute of repose, the date when Plaintiffs "discovered"

an alleged violation (Opp. 14-15) is irrelevant absent "fraud or concealment"

---

services provided in those two roles are distinct.  *See* FINRA, BrokerCheck, Sean Paul Waggoner, https://brokercheck.finra.org/individual/summary/ 2748574 (defining "broker" as someone "in the business of buying and selling securities" and "investment adviser" as someone "paid for providing advice about securities to clients"); *see also Stanton*, 631 F. Supp. at 103-04 (separately addressing alleged actions executing securities transactions as a broker and providing investment advice).

by the defendant.  29 U.S.C. § 1113.  In an effort to invoke this narrow

exception to ERISA's otherwise absolute six-year time bar, Plaintiffs'

opposition repeatedly references supposed "allegations that LPL materially

misrepresented the performance of the funds, the compensation it received

from the investments it peddles, and its credentials."  Opp. 17; *see* Opp. 2, 6,

14-15, 17.  The allegations described, however, are nowhere to be found in the

FAC, which alleges only that *Named Plan Fiduciaries*—defined as Rollins

and the Committee—misrepresented and concealed various Plan-related

information.  *See* LPL Mot. 11; FAC ¶¶ 12, 41(d), 76, 143, 342, 367-77, 382.

The paragraphs of the FAC Plaintiffs cite to show that they have supposedly

alleged misrepresentations by LPL (Opp. 6) either do not address alleged

misrepresentations at all or concern "Named Plan Fiduciaries."[4]  Plaintiffs

cannot rewrite the FAC through their opposition brief, *see, e.g.*, *Brown v. J.P.*

*Turner & Co.*, 2011 WL 1882522, at *5 (N.D. Ga. May 17, 2011), nor is there

any good-faith basis for Plaintiffs to allege that LPL made

misrepresentations to participants, the government, or anyone else.

Plaintiffs do not dispute that allegations of fraud or concealment by

---

[4] Plaintiffs' assertion that Waggoner was authorized "to make disclosures
… in participant communications and the Plan's annual reports" (Opp. 3) is
also unsupported by the allegations they cite.  *See* FAC ¶¶ 330, 336, 340-52.

Rollins and the Committee—the allegations actually found in the FAC—cannot make their claims against LPL timely.  *See* LPL Mot. 11 (citing cases). Moreover, Plaintiffs' two-sentence argument does not remotely demonstrate that their allegations of fraud and concealment (which, again, relate only to Rollins and the Committee) satisfy the Rule 9(b) standard.  *See, e.g.*, *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (describing Rule 9(b) requirements); *see also Gamache v. Hogue*, 446 F. Supp. 3d 1315, 1329-30 (M.D. Ga. 2020) (discussing allegations that did suffice).

Plaintiffs' claims against LPL are all untimely and must be dismissed.[5]

## II.   THE FAC DOES NOT PLAUSIBLY ALLEGE THAT LPL WAS A PLAN FIDUCIARY

The statute of repose requires dismissal of all of Plaintiffs' claims against LPL.  But Plaintiffs' claims also fail as a matter of law for additional reasons—including because Plaintiffs have not pled facts establishing that LPL was a Plan fiduciary at *any* time.  While LPL agrees that providing investment advice can give rise to fiduciary status if the necessary conditions

---

[5] Plaintiffs' claims also fail at the threshold because the FAC does not satisfy Rule 8 and Plaintiffs did not exhaust administrative remedies, *see* LPL Mot. 12-14, 35, and Plaintiffs' arguments in response are unavailing, *see* ECF No. 85 at 3-4; ECF No. 83 at 10-12.  The statute of repose, however, requires dismissal of Plaintiffs' claims against LPL even aside from those issues, and there is no reason to allow Plaintiffs to re-plead their claims given that they would fail on any possible theory Plaintiffs could assert.

are met, *see* Opp. 18 (citing 29 U.S.C. § 1002(21)(A)(ii)), the FAC does not plausibly allege that LPL ever provided fiduciary investment advice to the Plan—i.e., that LPL had "a mutual agreement, arrangement or understanding" with the Plan to provide investment advice that would "serve as a primary basis for investment decisions," 29 C.F.R. § 2510.3-21(c)(1).

Plaintiffs concede that LPL itself was not hired to provide investment advice or other services to the Plan and had no such contract or agreement with Rollins or the Committee. *See* Opp. 21. And the FAC alleges that LPL was a mere "pass-through" for payment of Waggoner's fees. *See* FAC ¶ 338. Thus, as Plaintiffs appear to recognize, LPL's own alleged conduct could not have made it a fiduciary advisor to the Plan. Plaintiffs' argument that LPL was a fiduciary instead depends on the unpled theory that Waggoner's fiduciary status can be imputed to LPL because Waggoner was LPL's "agent." Opp. 21 (citing *Stanton*, 631 F. Supp. at 104 & 105 n.4).

*Stanton* does not rescue Plaintiffs' case. First, Plaintiffs do not address more recent decisions from this District (and others) that have dismissed *respondeat superior*-based allegations of fiduciary status as inconsistent with ERISA's "carefully crafted and detailed enforcement scheme." *In re Coca-Cola Enters. Inc. ERISA Litig.*, 2007 WL 1810211, at *13 (N.D. Ga. June 20, 2007) (quotation omitted); *see also, e.g.*, *Goodman v. Crittenden Hosp. Ass'n,*

8

*Inc.*, 143 F. Supp. 3d 795, 799 (E.D. Ark. 2015).  To the extent *respondeat*

*superior* is relevant at all under ERISA, it cannot "create fiduciary status on

behalf of the employer," but can support liability only "where the employer

was otherwise a plan fiduciary" and "used an agent to perform its own

specific fiduciary duties."  *In re Mut. Fund Inv. Litig.*, 403 F. Supp. 2d 434,

447 n.15 (D. Md. 2005); *see also, e.g.*, *In re Morgan Stanley ERISA Litig.*, 696

F. Supp. 2d 345, 355 (S.D.N.Y. 2009) ("In the ERISA context, a company does

not become a fiduciary merely because its employee is a fiduciary.").

Second, *Stanton* is also inapt on its own terms.  *Stanton* involved

alleged liability for actions by an *employee* of a brokerage firm that *itself* had

been retained to provide services to a plan.  *See Stanton*, 631 F. Supp. at 104-

05.  The court reasoned that *respondeat superior* liability was available

because name-brand brokerage firms are "generally initially chosen based

upon [the firm's] reputation and prestige" and "should be held accountable if

the employees they select utilize the firm's prestige" to commit fiduciary

breaches.  *Id.* at 105.  Here, however, all agree that it was Waggoner—not

LPL—who the Plan hired to provide investment advice.  *See* Opp. 21; FAC

¶ 343.  Indeed, Waggoner was the Plan's advisor before he had any affiliation

with LPL and remained in that role after his affiliation with LPL concluded.

*See* ECF No. 78-3 at 32; ECF Nos. 76-15, 76-16; ECF No. 75-39 at 74.[6]

Even if fiduciary status could be established solely through the acts of an agent, the FAC does not plead facts plausibly establishing an agency relationship between LPL and Waggoner.  Plaintiffs do not, for example, allege critical facts indicating that LPL had control over Waggoner's actions with respect to the Plan, or even that Waggoner was an LPL "employee."  *See, e.g.*, *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1236 (11th Cir. 2014) (discussing elements of agency relationship).  Plaintiffs simply assume that an agency relationship exists.  *See* Opp. 16-17, 21.  The *Stanton* case they cite is factually inapposite, and Plaintiffs cannot proceed on an agency theory for which they have not provided supporting factual allegations.  *See Angel Oak Mortg. Sols.*, 2022 WL 875910, at *5-6 (dismissing claims based on "agency theories" that were "light on facts and heavy on speculation"); *Vegter v. Canada Life Assur. Co.*, 2005 WL 8155418, at *1 (N.D. Ga. Apr. 21, 2005) (granting motion to dismiss where plaintiff argued in opposition, but did not allege in complaint, that claims were based on *respondeat superior*).

---

[6] The "direct" theory of liability addressed in *Stanton* (*see* Opp. 16) was rooted in the "control" that exists where "a brokerage firm [is] retained to handle ERISA funds."  *Stanton*, 631 F. Supp. at 105 (citing 29 U.S.C. § 1002(21)(A)(i)).  The court specifically held that any liability based on the alleged provision of investment advice "would be imputed, not direct."  *Id.*

Plaintiffs' further assertion that "LPL was a functional fiduciary to the extent it exercised control over the indirect compensation provided to it under the GIC" or "the surplus of fees from revenue sharing which the ASA earmarked for rebate to the Plan" (Opp. 19) gets them nowhere.  Plaintiffs have not plausibly alleged that LPL even received "indirect compensation" from the GIC or any other Plan investment option, let alone that LPL "exercised control" over such compensation or any other revenue "earmarked for rebate to the Plan" (Opp. 19).  *See* LPL Mot. 4, 21-22; *infra* at 15.

Nor have Plaintiffs plausibly alleged that LPL (or even Waggoner) was an ERISA § 3(38) investment manager.  As explained in LPL's motion, investment managers by definition have the authority to make and execute investment decisions for a plan.  *See* LPL Mot. 17; 29 U.S.C. § 1002(38).  Plaintiffs cite no contrary authority.  *Ellis v. Rycenga Homes, Inc.*, 484 F. Supp. 2d 694 (W.D. Mich. 2007), holds only that an entity can be a *fiduciary* without exercising the discretion or control characteristic of an investment manager, by providing fiduciary investment advice.  *Id.* at 703-06.  Be that as it may, not all fiduciaries qualify as § 3(38) investment managers, and Plaintiffs offer only conclusory assertions that LPL (or even Waggoner) had "control" (Opp. 2, 18-20) over Plan investments—something *Ellis* recognizes investment advisors like Waggoner often do not have.

11

Finally, there is no merit to Plaintiffs' assertion (Opp. 22) that LPL's fiduciary status arguments raise factual questions that cannot be resolved on a motion to dismiss. The issue is that Plaintiffs have not alleged non-conclusory facts that, taken as true, plausibly establish LPL was a fiduciary in the first place. Courts routinely grant motions to dismiss in these circumstances. *See, e.g.*, *In re Fidelity Erisa Fee Litig.*, 2020 WL 759542, at *8 (D. Mass. Feb. 14, 2020), *aff'd,* 990 F.3d 50 (1st Cir. 2021); *Patrico v. Voya Fin., Inc.*, 2017 WL 2684065, at *2-4 (S.D.N.Y. June 20, 2017).

## III.   THE FAC DOES NOT PLAUSIBLY ALLEGE A BREACH OF FIDUCIARY DUTY BY LPL

Even if Waggoner's actions could be broadly imputed to LPL, Plaintiffs still fail to demonstrate that they have any viable breach of fiduciary claim.

***Duty of Prudence.*** Plaintiffs' claim of imprudence against LPL focuses principally on Waggoner's alleged failure "to employ a prudent process" for advising on Plan investments. *See* Opp. 22-25. To support such a claim, Plaintiffs at minimum must provide circumstantial allegations supporting a plausible inference of a process failure. *See, e.g.*, *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1165-69 (6th Cir. 2022); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018). Plaintiffs' opposition, however, merely repeats their legally insufficient and inadequately alleged

theories about actively managed funds, investment performance, and revenue sharing without illustrating why those allegations fairly suggest "a prudent fiduciary in like circumstances would have acted differently." *Meiners*, 898 F.3d at 822 (quotation omitted); *see also* ECF No. 85 at 7-12.[7] And Plaintiffs do not address their failure to allege facts establishing Waggoner's role in the challenged decisions or otherwise plausibly suggesting his advice was substantively or procedurally flawed. *See Cho v. Prudential Ins. Co. of Am.*, 2021 WL 4438186, at *6 (D.N.J. Sept. 27, 2021) (dismissing claims against plan advisor absent allegations about its "specific role in the conduct").

Plaintiffs also vaguely assert that they allege imprudence based on LPL's supposed failure to "monitor[] Waggoner." Opp. 22-23. Plaintiffs do not elaborate on this theory, and it is not alleged in the FAC. The FAC asserts a claim for failure to monitor fiduciaries only against Rollins and the Committee, recognizing that they (unlike LPL) "had the authority to select service providers for the Plan," and therefore also had "a duty to monitor their appointees and providers." FAC ¶¶ 440, 442.[8]

---

[7] Moreover, to the extent that Plaintiffs' imprudence claim is based on supposedly "excessive" compensation paid by the Plan to LPL for Waggoner's services (Opp. 25), it necessarily fails because LPL lacked fiduciary authority with respect to its own compensation. *See* LPL Mot. 27-28; *infra* at 14-16.

[8] Plaintiffs' opposition also briefly references a theory that LPL acted

***Duty of Loyalty.*** Plaintiffs' defense of their disloyalty claim fares no better. Plaintiffs argue that they have stated a claim based on allegations that LPL "steer[ed] Named Fiduciaries and participants toward only those investments that paid it high revenue sharing fees; retain[ed] a surplus of fees earmarked for the Plan; and misrepresent[ed] material facts to participants and the government." Opp. 26. As discussed above, despite what Plaintiffs now say, the FAC does not allege that LPL misrepresented anything to participants or the government, nor could Plaintiffs make such an allegation in good faith. *See supra* at 6. And Plaintiffs' remaining disloyalty theories are incompatible with the terms of the ASA.

In particular, the ASA shows that (1) the fees LPL received from the Plan were calculated as a flat percentage of all investible assets regardless of which investment options were offered in the Plan menu, and (2) Rollins directed Prudential to pay those fees to LPL from a Plan account funded through payments reflecting revenue sharing *Prudential* received in excess of a set amount Prudential was entitled to keep. *See* LPL Mot. 4; ECF No. 78-3

---

imprudently in "making requisite disclosures" about fund performance and cost. Opp. 23. But the FAC alleges only that "*Named Plan Fiduciaries* failed to disclose to participants the information they needed to make informed investment decisions." FAC at 100 (emphasis added). Plaintiffs point to no allegations plausibly establishing that LPL or Waggoner was responsible for making such disclosures. *See supra* at 6 n.4.

at 33-37; ECF No. 76-15.  Under this arrangement, LPL had no incentive to "steer[] Named Fiduciaries and participants toward only those investments that paid it high revenue sharing fees," Opp. 26, because LPL did not receive revenue sharing from Plan investment options; it received only fees calculated as a flat percentage of Plan assets.  Nor did LPL have the ability to "retain[] a surplus of fees earmarked for the Plan," *id.*, because LPL's fees came *from* the Plan (via the account held by Prudential) at Rollins' direction.

Plaintiffs do not even try to dispute LPL's reading of the ASA, which describes the relevant compensation arrangements in straight-forward terms. Plaintiffs simply insist that they have stated a claim because they assert LPL "unilaterally increase[d]" its compensation and "retained a surplus of revenue sharing fees earmarked for the Plan." Opp. 27.  The Court is not required to credit such conclusory assertions, particularly where documents integral to Plaintiffs' claims contradict them.  *See Porter*, 2021 WL 5068262, at *6 & n.9, *11; *see also In re Fidelity Erisa Fee Litig.*, 2020 WL 759542, at *6 & n.7.  Of course, a contract *could* be structured such that a fiduciary had control over its own compensation, *see* Opp. 27-28, but the ASA was not.[9]  And the FAC

---

[9] Any discretion Prudential purportedly retained to adjust the definition of "average plan assets" under the ASA (*see* Opp. 3) has nothing to do with whether LPL (or Waggoner) had the ability to increase its own compensation.

supplies no well-pled basis to infer that LPL's compensation worked differently than the ASA shows.

**_Duty to Follow Plan Documents._**  Plaintiffs' opposition confirms that their ERISA § 404(a)(1)(D) claim rests on the Plan's "investment manager" certification requirements.  *See* Opp. 28-29.  As discussed above, the FAC does not plausibly allege that LPL (or Waggoner) was an ERISA § 3(38) investment manager to whom that Plan provision would apply.  *See supra* at 11.  Plaintiffs' response that it somehow does not matter to this claim whether LPL was an investment manager (Opp. 29) is nonsensical.

## IV.   PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED THAT LPL IS LIABLE AS A CO-FIDUCIARY

In the FAC, Plaintiffs asserted that "Defendants" each are liable for "knowingly participat[ing]" in "breach[es] of the other Defendants."  *E.g.*, FAC ¶¶ 418-19.  In their opposition, Plaintiffs argue instead that LPL is liable as a co-fiduciary of *Waggoner*, who is not a defendant.  *See* Opp. 29. Plaintiffs cannot introduce a new theory of liability through their brief, *see supra* at 6, and the new theory is in any event no better supported than the old one.  Plaintiffs, moreover, do not dispute that LPL cannot be liable as a "co-fiduciary" for anything *anyone* did when LPL was not a Plan fiduciary. As a result, Plaintiffs cannot use alleged co-fiduciary liability to avoid the

statute of repose or their failure to plausibly allege LPL's fiduciary status.

## V.   THE FAC DOES NOT STATE A PROHIBITED TRANSACTION CLAIM AGAINST LPL

***Section 406(a).***  Plaintiffs argue that they have stated a claim under ERISA § 406(a)(1)(C) and (D) based on allegations that LPL "caused the Plan to pay it excessive compensation for duplicative and/or unnecessary services." Opp. 30-31.  As LPL explained, "if a plan fiduciary negotiates the terms of its compensation with the plan at arm's length, and then adheres to those terms, its receipt of that compensation is unrelated to its fiduciary role" and does not create potential prohibited transaction liability.  LPL Mot. 28 (quoting *Sellers v. Anthem Life Ins. Co.*, 316 F. Supp. 3d 25, 36 (D.D.C. 2018)).

Plaintiffs do not dispute these fundamental principles.[10]  Plaintiffs instead argue that they are irrelevant, because Plaintiffs "are not challenging LPL's bargained-for compensation, but rather, its unilateral actions that LPL

---

[10] None of the cases Plaintiffs cite (Opp. 31) suggests that mere receipt of even allegedly "excessive" bargained-for compensation supports a prohibited transaction claim.  *See Sellers*, 316 F. Supp. 3d at 40.  Each of those cases involves allegations that the defendants caused the transaction and had a disloyal motive in doing so, as required under ERISA § 406(a)(1)(C) and (D). Here, it is Rollins that "caused" LPL to receive fees, LPL Mot. 25-28, and the FAC does not make out a § 406(a) claim against any defendant based on LPL's compensation, ECF No. 75-1 at 26-27.  That (along with other pleading deficiencies Plaintiffs do not address, *see* LPL Mot. 32) sinks any claim based on LPL's "knowing participation" in transactions "caused" by someone else.

thereafter took to manipulate and increase its compensation at the expense of participants." Opp. 32-33. That is, Plaintiffs say their claim is based on LPL's receipt of "payments beyond its bargained-for compensation." Opp. 33.

As discussed, the FAC does not plausibly allege that LPL received any Plan-related compensation other than that reflected in the ASA, or somehow "manipulate[d]" or "increase[d]" the fees it received under the ASA's fixed formula. *See supra* at 14-16. Plaintiffs cannot get around the facts established by the documents central to their claims by simply asserting, without any supporting factual allegations, that LPL also received other fees.

Moreover, if Plaintiffs' (unsupported) theory is that LPL received revenue sharing directly from Plan investment options, Plaintiffs concede in their opposition that revenue sharing is not paid from plan assets. *See* Opp. 19-20. Revenue sharing therefore cannot constitute a "transfer of ... assets of the plan" under § 406(a)(1)(D). *See* LPL Mot. 31. Plaintiffs argue that "the Plan's contractual right to benefit from … revenue sharing payments" may be "a plan asset" even if the payments themselves are not, Opp. 20 (emphasis omitted), but Plaintiffs point to nothing establishing that the Plan had a contractual right to any supposed revenue sharing paid to LPL. The ASA reflects the Plan's entitlement to payments from *Prudential* when *Prudential* received revenue sharing beyond a certain amount. *See* ECF No. 78-3 at 37.

***Section 406(b).***  Plaintiffs' ERISA § 406(b) argument rests on the same core premise as their § 406(a) claim:  that they have sufficiently alleged that "LPL steered Named Fiduciaries to invest in funds that primarily benefitted LP[L], and retained surplus of fees that it should have rebated to the Plan." Opp. 33.  Again, those conclusory assertions cannot be squared with the ASA, and Plaintiffs have not plausibly alleged that LPL received any Plan-related fees outside the ASA's terms.  *See supra* at 14-16.  There is simply no well-pled basis for Plaintiffs' assertions that LPL (or Waggoner) had or exercised fiduciary authority to increase its own compensation.  Cases such as *Scott v. Aon Hewitt Financial Advisors, LLC*, 2018 WL 1384300 (N.D. Ill. Mar. 19, 2018), and *Danza v. Fidelity Management Trust Co.*, 533 F. App'x 120 (3d Cir. 2013), are therefore on point, and Plaintiffs do not dispute that "receiving pre-negotiated fees is not a prohibited transaction" where, as here, the amount of those fees is not tied to the recipient's fiduciary acts, Opp. 34.

## VI.   LEAVE TO AMEND SHOULD BE DENIED

Plaintiffs conclude their opposition with a one-line request for leave to further amend their complaint if the Court "finds any portion of the FAC deficient."  Opp. 34.  Because Plaintiffs have not explained "what additional facts [they] can honestly plead … that could cure the [FAC's] deficiencies," their request is "legally insufficient" and should be denied.  *Wright v.*

*Santander Consumer USA, Inc.*, 2020 WL 7391734, at *4 (N.D. Ga. Jan. 24, 2020) (emphasis removed) (quotation omitted); *see Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009). In any event, amendment would also be futile because Plaintiffs cannot invent new facts to save their untimely and legally deficient claims. *See, e.g.*, *Ackers v. Brazile*, 2017 WL 7725244, at *1 (N.D. Ga. Nov. 14, 2017).

## VII. PLAINTIFFS' FEE REQUEST IS BASELESS

Finally, there is no basis for Plaintiffs' request that the Court award them attorneys' fees (Opp. 34). Fees are available under ERISA § 502(g) "if the court can fairly call the *outcome of the litigation* some success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (emphasis added). Plaintiffs cite no authority suggesting that merely surviving a motion to dismiss amounts to "some success on the merits," and courts commonly rule against Plaintiffs on claims permitted to proceed beyond the pleading stage. Plaintiffs also ignore the factors courts consider in deciding whether to award fees even where a party has demonstrated some success on the merits. *See, e.g.*, *Boysen v. Ill. Tool Works Inc. Separation Pay Plan*, 2017 WL 2374844, at *2 (N.D. Ga. May 31, 2017).

## CONCLUSION

All of Plaintiffs' claims against LPL should be dismissed with prejudice.

Dated:  September 29, 2022

Respectfully submitted,

*/s/ Meaghan VerGow*
Meaghan VerGow*
Deanna M. Rice*
Scott Harman-Heath*
**O'MELVENY & MYERS LLP**
1625 Eye Street NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383 5414
mvergow@omm.com
derice@omm.com
sharman@omm.com

Pamela Miller*
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
pmiller@omm.com

*/s/ Amy Cheng*
Amy Cheng, GA Bar No. 261897
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
201 17th Street NW
Atlanta, GA 30363
Telephone: (404) 322-6000
Facsimile: (404) 322-6050
amy.cheng@nelsonmullins.com

*Counsel for Defendant LPL
Financial LLC*

* Admitted *pro hac vice*

## **Local Rule 7.1(D) Certification of Compliance**

I hereby certify that the foregoing document has been prepared with Century Schoolbook font, 13 point, one of the font and point selections approved by the Court in N.D. Ga. Local Rule 5.d1B.

*/s/Amy Cheng*
Amy Cheng

## <u>Certificate of Service</u>

I hereby certify that, on September 29, 2022, I caused the foregoing

**Reply in Support of Defendant LPL Financial LLC's Motion to**

**Dismiss Plaintiffs' First Amended Complaint** to be electronically filed

with the Clerk of Court using the CM/ECF system, which will automatically

notify all counsel of record.

*/s/Amy Cheng*
Amy Cheng
