## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MARCIA G. FLEMING; CASEY FREEMAN; DAVID GUYON; ANTHONY LOSCALZO; PATRICK ROSEBERRY; and JULIO SAMNIEGO individually, on behalf of the Rollins, Inc. 401(k) Savings Plan and on behalf of all similarly situated participants and beneficiaries of the Plan,<br><br>**Plaintiffs,**<br><br>v.<br><br>ROLLINS, INC.; THE ADMINISTRATIVE COMMITTEE OF THE ROLLINS, INC. 401(k) SAVINGS PLAN, BOTH INDIVIDUALLY AND AS THE *DE FACTO* INVESTMENT COMMITTEE OF THE ROLLINS, INC. 401(k) SAVINGS PLAN; EMPOWER RETIREMENT, LLC F/K/A PRUDENTIAL INSURANCE AND ANNUITY COMPANY; PRUDENTIAL BANK & TRUST, FBS, AS DIRECTED TRUSTEE OF THE ROLLINS, INC. 401(k) PLAN TRUST; ALLIANT INSURANCE SERVICES, INC.; ALLIANT RETIREMENT SERVICES, LLC; PAUL E. NORTHEN, JOHN WILSON, JERRY GAHLHOFF, JAMES BENTON, and A. KEITH PAYNE in their capacities as members of the Administrative Committee; and John and Jane Does 1–10,<br><br>**Defendants.** | **Case No. 1:21-cv-05343-ELR** |

## PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF LAW FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

1

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................ 7

II.    FACTUAL AND PROCEDURAL BACKGROUND......................................... 7

   A.   Background and Motion Practice.................................................................... 7

   B.   Discovery ...................................................................................................... 10

   C.   The Parties' Settlement Efforts ................................................................... 10

III.   SUMMARY OF THE PROPOSED SETTLEMENT TERMS ....................... 11

   A.   The Proposed Settlement Class.................................................................... 11

   B.   Benefits to the Class..................................................................................... 11

   C.   Notice and Administration ........................................................................... 12

   D.   Release of Claims ......................................................................................... 13

   E.   Notice and Proposed Schedule of Events ................................................... 14

IV.   ARGUMENT ..................................................................................................... 15

   A.   The Court Should Certify the Settlement Class........................................... 15

      1.   The Class Satisfies the Requirements of Rule 23(a) ................................ 15

      2.   The claims meet the requirements of certification under Rule 23(b)(1) ................... 19

   B.   The Court Should Grant Preliminary Approval of the Settlement Because

      It Is Fair, Reasonable and Adequate .......................................................... 21

      1.   The Standards for Preliminary Approval................................................. 21

      2.   The Class Representatives and Class Counsel Adequately Represented the Class... 24

      3.   There Was No Fraud or Collusion and the Settlement Was Negotiated at

        Arm's Length.......................................................................................... 24

      4.   The Relief Obtained Considering the Complexity, Expense and Likely

        Duration of the Litigation...................................................................... 25

      5.   The Stage of Proceedings and Development of the Factual Record........................ 27

6.      The Benefits Provided by the Settlement are Fair, Adequate and

Reasonable When Compared to the Range of Possible Recovery............................ 28

7.      The Effectiveness of the Proposed Method of Distributing Relief............................ 29

8.      The Terms of the Proposed Award of Attorneys' Fees................................................ 29

9.      The Proposal Treats Class Members Equitably Relative to Each Other

C.      The Court Should Approve the Notice Plan and Schedule a Fairness Hearing................ 30

V.      CONCLUSION.......................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alday v. Raytheon Co.*,
  619 F. Supp. 2d 726 (D. Ariz. 2008) ....................................................................20

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997)...........................................................................................18

*Ault v. Walt Disney World Co.*,
  692 F.3d 1212 (11th Cir. 2012) ..........................................................................22

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984): (1)............................................................... *passim*

*In re Blue Cross Blue Shield Antitrust Litig.*,
  No. 2:13-20000-RDP, 2020 WL 8256366 (N.D. Ala. Nov. 30, 2020)........................... *passim*

*Camp v. City of Pelham*,
  2014 WL 1764919 (N.D. Ala. May 1, 2014).........................................................28

*Carriuolo v. Gen. Motors Co.*,
  823 F.3d 977 (11th Cir. 2016) ...........................................................................16

*In re Checking Account Overdraft*,
  275 F.R.D. 666 (S.D. Fla. 2011)..........................................................................17

*In re Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) .................................................................28

*Cifuentes v. Regions Bank*,
  No. 11-23455, 2014 WL 1153772 (S.D. Fla. Mar. 20, 2014)................................30

*DiFelice v. U.S. Airways, Inc.*,
  235 F.R.D. 70 (E.D. Va. 2006) ...........................................................................21

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  2020 WL 256132 (N.D. Ga. Mar. 17, 2020).........................................................27

*Exum v. Nat'l Tire & Battery*,
  2020 WL 1670997 (S.D. Fla. Apr. 6, 2020) .........................................................22

*Feret v. Corestates Fin. Corp.*,
  C.A. No. 97–6759, 1998 WL 512933 (E.D. Pa. Aug. 18, 1998)............................19

*Gamache v. Hogue*,
  338 F.R.D. 275 (N.D. Ga. 2021)......................................................16, 19, 20, 21

*Kanawi v. Bechtel Corp.*,
  254 F.R.D. 102 (N.D. Cal. 2008)....................................................................19

*Kindle v. Dejana*,
  315 F.R.D. 7 (E.D.N.Y. 2016).........................................................................16

*Leverso v. SouthTrust Bank of AL., Nat. Assoc.*,
  18 F.3d 1527 (11th Cir. 1994).........................................................................24

*Lipuma v. American Express Co.*,
  406 F. Supp. 2d 1298 (S.D. Fla. 2005)............................................................28

*Lively v. Dynegy, Inc.*,
  No. 05-00063, 2007 WL 685861 (S.D. Ill. Mar. 2, 2007)................................18

*Loc. 1522 of Council 4 v. Bridgeport Health Care Ctr., Inc.*,
  No. 15-1019, 2018 WL 1419792 (D. Conn. Mar. 21, 2018).............................20

*McWhorter v. Ocwen Loan Servicing, LLC*,
  No. 2:15-01831, 2019 WL 9171207 (N.D. Ala. Aug. 1, 2019)...........23, 25, 27, 29

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999)........................................................................................20

*Parsons v. Brighthouse Networks, LLC*,
  No. 09-267, 2015 WL 13629647 (N.D. Ala. Feb. 5, 2015)..............................24

*Shaw v. Set Enters., Inc.*,
  No. 15-62152, 2017 WL 2954675 (S.D. Fla. June 30, 2017)...........................22

*Stanford v. Foamex L.P.*,
  263 F.R.D. 156 (E.D. Pa. 2009)......................................................................19

*Swaney v. Regions Bank*,
  2020 WL 3064945 ...........................................................................21, 22, 26

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009).......................................................................16

*Walmart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).........................................................................................16

*Williams v. Mohawk Indus., Inc.*,
  568 F.3d 1350 (11th Cir. 2009).......................................................................16

**Statutes**

29 U.S.C. §§ 1109, 1132(a)(2)..............................................................................21

29 U.S.C. §§ 1109(a), 1132(a)(2) ........................................................................18

CAFA ....................................................................................................................15

Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* .................7

ERISA ........................................................................................................... *passim*

ERISA Sections 409(a), 502(a)(2) ........................................................................18

ERISA § 502(a)(2) ....................................................................................18, 19, 21

Internal Revenue Code Section 468B .....................................................................12

Plaintiffs Marcia G. Fleming, Casey Freeman, David Guyon, Anthony Loscalzo, Patrick Roseberry, and Julio Samaniego, individually and as Class Representatives ("Plaintiffs"), hereby move for an order certifying a class for settlement purposes only, preliminarily approving a class action settlement agreement among Plaintiffs and Defendant Rollins, Inc. ("Rollins" or the "Company"), approving notice of the Settlement to the Class, and setting a date for a Fairness Hearing.[1]  Plaintiffs and Rollins are collectively referred to herein and in the Settlement Agreement as the "Parties."

## I.      INTRODUCTION

Subject to the Court's approval, the Parties have settled this Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, ("ERISA") class action (the "Action") in its entirety for a payment of $3,925,000, inclusive of attorneys' fees, expenses, and costs of settlement administration (an average recovery of approximately $100 per Class member before any fees and expenses). Should the Court grant final approval, every eligible Class Member will receive their portion of the Net Settlement Amount according to a Plan of Allocation.

The proposed Settlement Class meets all the criteria for conditional certification and the Settlement Agreement ("Settlement Agreement") satisfies all of the criteria for preliminary approval, providing an excellent result for the Class. For these reasons, discussed in more detail below, Plaintiffs request that the Court grant this unopposed motion.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.      Background and Motion Practice

This class action is brought on behalf of participants and beneficiaries of the ERISA defined contribution retirement plan sponsored by Rollins (the "Plan"). The Plan's assets are

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement.

held in a trust. FAC ¶ 28–29, ECF No. 53. At all times during the Class Period, the Alliant Defendants provided investment advice regarding Plan assets. *Id.* ¶¶ 336. Defendant Empower Retirement, LLC f/k/a Prudential Retirement Insurance and Annuity Company ("PRIAC") served as the Plan's recordkeeper, and Prudential Bank & Trust, FSB ("PB&T") served as the Plan's directed trustee (together, "Prudential Defendants"). *Id.* ¶ 29–30, 53–56.

The Complaint alleges that the Defendants breached their fiduciary duties and engaged in prohibited transactions under ERISA, causing a loss to the Plan and Plan participants. FAC ¶¶ 11–12, 15, ECF No. 53. In Count I of the First Amended Complaint, Plaintiffs asserted that Defendants breached their fiduciary duty of prudence by selecting and retaining investment options in GoalMaker, an optional asset allocation program that allocates a participant's 401(k) money across a portfolio of investment options based on the participant's expected retirement date and risk tolerance, despite the high cost of the funds in relation to other comparable investments, by failing to monitor or control the excessive compensation paid for recordkeeping services, and by failing to investigate the competence of and periodically monitor the Prudential and Alliant Defendants, which they had selected to provide services to the Plan and Plan participants. *Id.* ¶¶ 90–94, 390–419. In Count II, Plaintiffs asserted that Defendants breached their fiduciary duty of loyalty by making investment decisions, providing investment advice, and managing Plan assets while tainted with self-interest. *Id.* ¶¶ 420–437. In Count III, Plaintiffs alleged that the Rollins Defendants breached their fiduciary duties by failing to monitor other named Plan fiduciaries. *Id.* ¶¶ 438–450. In Count IV, Plaintiffs asserted that Defendants failed to follow the terms of the Plan in violation of ERISA. *Id.* ¶¶ 451–465. In Counts V and VI, Plaintiffs alleged that Defendants participated in prohibited transactions under ERISA. *Id.* ¶¶ 466–486. In Count VII, Plaintiffs asserted that the Rollins Defendants breached their fiduciary

duties by failing to take any action against Defendants for engaging in prohibited transactions for their own benefit. *Id.* ¶¶ 487–501.

Defendants deny these allegations, deny any wrongdoing or liability, and have defended themselves in this Action. Defendants do not admit wrongdoing of any kind regarding the Plan.

On December 10, 2020, Plaintiffs submitted pre-suit claims alleging violations of ERISA and the Plan to the Administrative Committee for review. FAC ¶ 80, ECF No. 53. The Administrative Committee denied the claims on March 1, 2021, and Plaintiffs appealed on March 9, 2021. *Id.* ¶¶ 81–82. The same members of the Administrative Committee denied the appeal on May 6, 2021, and notified Plaintiffs of their right to bring suit under the terms of the Plan. *Id.* ¶ 83.

Plaintiffs filed the Complaint in the Northern District of Georgia on December 30, 2021. ECF No. 1. On March 28, 2022, the following parties filed separate motions to dismiss: (1) the Rollins Defendants; (2) the Alliant Defendants; (3) and LPL Financial LLC ("LPL"). ECF Nos. 48, 49, 51.

On April 18, 2022, Plaintiffs filed the First Amended Complaint, which, *inter alia*, added the Prudential Defendants. ECF No. 53. On July 15, 2022, the following parties filed separate motions to dismiss: (1) the Rollins Defendants; (2) the Alliant Defendants; (3) LPL Financial LLC; and (4) the Prudential Defendants. ECF Nos. 75, 76, 77, 78. Plaintiffs responded to each motion to dismiss on August 30, 2022. ECF Nos. 79, 80, 81, 82. Defendants filed their replies on September 29, 2022. ECF Nos. 83, 84, 85, 86. On October 25, 2022, the Rollins Defendants filed a notice of supplemental authority, ECF No. 87, and the Plaintiffs filed a response, ECF No. 88.

The Court issued an Order regarding Defendants' motions to dismiss on January 30, 2023. ECF No. 89. First, the Court denied the Rollins Defendants' motion to dismiss. *Id.* at 9–27.

9

Second, the Court granted the Alliant Defendants' motion to dismiss for Plaintiffs' claims prior to the ERISA repose period on December 30, 2015, and denied the motion to dismiss in all other respects. *Id.* at 34–45. Third, the Court granted LPL Financial LLC's motion to dismiss and directed the Clerk to terminate it as a party in the case. *Id.* at 27–34. Fourth, the Court granted the Prudential Defendants' motion to dismiss to the extent that Plaintiffs' claims in Counts I and II concern influence the Prudential Defendants allegedly had over the Rollins Defendants' investment decisions and denied the motion to dismiss in all other respects. *Id.* at 46–58.

Defendants answered the Complaint on March 13, 2023. ECF Nos. 105, 106, 107. Shortly thereafter, the Parties agreed to mediation and the Court stayed all pending deadlines on April 14, 2023, ECF No. 111, and extended the stay on May 16, 2023, ECF No. 113. On July 19, 2023, the Court administratively closed the case while certain parties explored settlement negotiations. ECF No. 116.

**B.     Discovery**

Substantial document discovery was completed through the administrative appeal and mediation processes. Among other documents, Plaintiffs received Plan and Trust documents; performance and benchmark information; and meeting minutes of the fiduciary committee. Boyko Decl. at ¶ 5. Plaintiffs' Counsel is experienced in litigating 401(k) Plan cases and therefore understands the key information needed to evaluate Plaintiffs' claims, which was included in the documents produced during administrative exhaustion and settlement negotiations. Boyko Decl. at ¶¶ 4–6. Plaintiffs' Counsel also retained and consulted experts who prepared assessments and calculations of loss, which were exchanged with Defendants prior to mediation. Boyko Decl. at ¶ 6.

**C.     The Parties' Settlement Efforts**

On August 3, 2023, the Plaintiffs, Rollins Defendants, and Alliant Defendants, through their counsel, participated in arm's length and good faith mediation with Robert A. Meyer of JAMS, a mediator with substantial experience with ERISA cases. Boyko Decl. ¶ 5. The participating parties drafted and submitted comprehensive mediation statements to Mr. Meyer that focused all sides on the key issues. Boyko Decl. ¶ 6. The participating parties vigorously engaged in the full-day mediation. Boyko Decl. ¶ 5. After continuing settlement negotiations through the mediator after the mediation, Plaintiffs and Rollins agreed to the terms contained in the Settlement Agreement currently before the Court for preliminary approval. Boyko Decl. ¶ 7.

## III.  SUMMARY OF THE PROPOSED SETTLEMENT TERMS

The material terms of the Settlement Agreement are summarized below.

### A.  The Proposed Settlement Class

The proposed Settlement Class consists of all Participants in and Beneficiaries of the Rollins Plan (including, prior to November 1, 2022, the Western Plan and Waltham Plan) at any time from December 30, 2015 through September 30, 2023. Settlement Agmt. § 2.9. Excluded from the Settlement Class are those individuals, including the individual defendants, who served as voting members of the Plans' administrative and/or investment committee during the Class Period. *Id*. Although the Settlement Administrator has not yet reviewed plan data to determine an exact number, based on the historical record of plan participants Plaintiffs believe there are approximately 40,000 members of the Class as defined. Boyko Decl. ¶ 8.

### B.  Benefits to the Class

Once all conditions for approval have been met, Rollins will cause a total of $3,925,000 ("Gross Settlement Amount") to be deposited into a Settlement Fund Account established by Plaintiffs' Counsel or the Settlement Administrator at a federally chartered financial institution

(the "Financial Institution"), which shall be considered a common fund created as a result of the Action. Settlement Agmt. ¶¶ 4.1–4.2. The Settlement Fund Account is structured to qualify as a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code. Settlement Agmt. § 2.40.

The Gross Settlement Amount covers any and all claims for expenses and attorneys' fees by Plaintiffs individually or on behalf of the Class, as well as any expenses associated with the Class Notices and Settlement Administration. *Id*. §§ 4.2–4.4. Plaintiffs' Counsel will seek attorneys' fees of no more than $1,308,333 (one-third of the Gross Settlement Amount) plus expenses. *Id*. at Art. VIII.

Under the proposed Plan of Allocation, Class Members will receive their *pro rata* share of the Net Settlement Amount. Before subtracting expenses and attorneys' fees, Plaintiffs estimate that each of the approximately 40,000 Class members will receive approximately $100 on average. Boyko Decl. ¶ 8. Any uncashed or unclaimed moneys from the Settlement Fund shall revert to the Plan to be used to defray Plan expenses not currently paid by Rollins on a going-forward basis. Settlement Agmt. § 4.8. Any fees charged by current or former record keepers or other service providers in connection with the identification of class members and contact information shall be paid by Rollins. Settlement Agmt. § 2.3.

The Named Plaintiffs and the Class are responsible for paying all taxes and tax-related expenses incurred in connection with the taxation of the income of the Qualified Settlement Fund, and all such taxes and expenses shall be paid out of the Qualified Settlement Fund.

### C.    Notice and Administration

The proposed Settlement Administrator, KCC, shall be responsible for (1) mailing the Class Notice to Class Members and (2) posting the Class Notice on a website for the Settlement

Class, which shall constitute legal notice, as well as maintaining a toll-free phone number included in the Class Notice. Settlement Agmt. §§ 2.12, 3.5. Plaintiffs' Counsel may direct the Financial Institution in writing to disburse from the Settlement Fund (1) any taxes owed by the Settlement Fund Account and (2) reasonable expenses of administering the Settlement Fund Account. *Id.*

The Settlement Administrator will determine the amounts allocable to each Class Member. Settlement Agmt. §§ 4.5–4.7. The net of disbursements called for in Article 4 of the Settlement Agreement ("Net Settlement Amount") will be distributed according to the Plan of Allocation. *Id.* The Settlement Administrator will also process distribution and payment elections by Class members and implement the Plan of Allocation.

Shortly after the entry of the Preliminary Approval Order, Rollins will cause $225,000 to be deposited into the Settlement Fund Account. Settlement Agmt. § 4.2. Thirty days after the Final Order is entered (the "Effective Date of Settlement"), Rollins will cause to be deposited an additional $3,700,000 into the Settlement Fund Account, at which point, the total amount will collectively comprise the "Gross Settlement Amount." *Id.* § 4.2. Plaintiffs' Counsel will direct the Financial Institution to disburse money from the Settlement Fund Account. *Id.* §§ 4.4–4.7. Additionally, the Settlement Administrator shall determine how much should be allocated to each Class Member pursuant to the Plan of Allocation and the Settlement Administrator shall distribute such amounts to the Class Members. *Id.*

D.    **Release of Claims**

In exchange for payment of the Gross Settlement Amount by Rollins and satisfaction of the conditions required by the Settlement Agreement, Plaintiffs and the Class will release any claims against the Defendant Released Parties that were or could have been asserted in the

Lawsuit or that in any way arise out of the Rollins Inc. 401(k) Savings Plan (and all predecessor plans, including the Western Plan and the Waltham Plan) and will correspondingly dismiss the Lawsuit with prejudice. Settlement Agmt., § 2.41. The Released Claims are set forth in full in the Settlement Agreement. *Id.*, at Article 5. The covenant not to sue is set forth in the Settlement Agreement. *Id.* § 5.2. The Settlement is subject to a written determination by the Independent Fiduciary that the terms in the Settlement Agreement are fair and reasonable to the Plan and its participants. *Id.* § 3.1.

Plaintiffs and the defendants who are not parties to the Settlement Agreement have agreed to the execution of joint stipulations of dismissal with prejudice resolving all claims concerning those defendants.

### E.     Notice and Proposed Schedule of Events

The parties anticipate that the vast majority of the Class is reachable by mailed notice, using information from  the Plan's Recordkeeper about the identity of Plan Participants during the Class Period. The proposed Class Notice, provides all the information necessary to inform Class Members about the nature of the Action, the terms of the Settlement, and the procedures for entering an appearance to be heard or to object to the Settlement. The Class Notice will be mailed by first class mail. *Id.* § 3.5. For returned mail, the Settlement Administrator will engage in standardized processes to identify and locate Class Members. *Id.* In addition, key court documents, including the operative Complaint, the Settlement Agreement, preliminary approval papers, Plaintiffs' Motion for Award of Attorneys' Fees, and Plaintiffs' Motion for Final Approval will be posted on the settlement website.

The Parties agree to the following schedule of events subject to the Court's approval:

| Event | Timing |
|---|---|

| CAFA Notice | Within 10 days after the Settlement Agreement is filed with this Motion for Preliminary Approval. |
|---|---|
| Mail Settlement Notice | Within forty-five (45) days after the Preliminary Approval Order |
| Motion for final approval of settlement | No later than 45 days before the Fairness Hearing |
| Motion for of attorneys' fees and expenses, and Service Awards for Named Plaintiffs | No later than 45 days before the Fairness Hearing |
| Independent Fiduciary provides written notification of its determination | No later than 30 days before the Fairness Hearing |
| Objections to the Settlement, notice of intention to appear at Fairness Hearing | Must be received by the Court on or before 21 days before the Fairness Hearing and received by Plaintiffs' Counsel and Defendants' Counsel no later than 15 days before the Fairness Hearing |
| Response to Objections and Settlement Administrator's Notice Declaration | No later than 7 days before the Fairness Hearing |
| Fairness Hearing | At least 110 days after Preliminary Approval Order |

## IV.    ARGUMENT

### A.    The Court Should Certify the Settlement Class

As part of the Settlement, the Parties request that the Court certify the proposed

Settlement Class, defined in Section III.A above, for purposes of settlement only. Certification of

a class is required where the plaintiff demonstrates the four prerequisites of Rule 23(a) and at

least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. As in numerous other ERISA

class actions, those requirements are easily met here.

### 1.    The Class Satisfies the Requirements of Rule 23(a)

Rule 23(a) requires Plaintiffs to demonstrate (1) the class is so numerous that joinder of

all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

claims or defenses of the representative party is typical of the claims or defenses of the class; and

(4) the representative party will fairly and adequately protect the interests of the class.

15

a)      *The Class is sufficiently numerous*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "The Eleventh Circuit has held that the numerosity requirement is 'a generally low hurdle' and 'less than twenty-one is inadequate [and] more than forty [is] adequate . . .'" *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-20000-RDP, 2020 WL 8256366, at *8 (N.D. Ala. Nov. 30, 2020) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009)). The Rollins 401(k) Savings Plan had 15,240 participants with account balances as of December 31, 2021. Boyko Decl. ¶ 9. The numerosity requirement is met.

b)      *There are common questions of law and fact*

Rule 23(a) requires a showing of the existence of "questions of law or fact common to the class." For commonality to be found, the action "must involve issues that are susceptible to class-wide proof." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (citation omitted). A plaintiff must "demonstrate that the class members have suffered the same injury." *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). However, Rule 23(a)(2) "demands only that there be questions of law or fact common to the class. This part of the rule does not require that all the questions of law and fact raised by the dispute be common." *Vega*, 564 F.3d at 1268; *see also Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) ("even a single common question will" satisfy the commonality requirement); *In re Blue Cross*, 2020 WL 8256366, at *9. Claims that a stock was improperly valued or sold at an incorrect price, such as those at issue here, satisfy the commonality requirement. *See Gamache v. Hogue*, 338 F.R.D. 275, 286–87 (N.D. Ga. 2021) (noting common questions included whether the ESOP suffered any losses, how to calculate those losses and that resolution of claims would resolve issues for all claimants in "one stroke"); *Kindle v. Dejana*,

16

315 F.R.D. 7, 11 (E.D.N.Y. 2016) (common issues exist where plaintiff alleged ESOP stock sold for less than fair market value).

Here, commonality is satisfied because Defendants' alleged violations of ERISA are the same for all Class Members. Defendants either did or did not engage in prohibited transactions and breach their fiduciary duties under ERISA. Thus, Defendants' actions and inaction with respect to the Plan either resulted in, or did not result in, ERISA violations toward the entire Class. Common issues in this case include: whether Defendants breached fiduciary duties to the Plan and Plan participants; whether Prudential's compensation was excessive; whether Defendants engaged in prohibited transactions; the appropriate relief for Defendants' alleged violations of ERISA; and other questions contained in the Amended Complaint.

<em>c)      The typicality requirement of Rule 23(a) is met</em>

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "[T]he typicality requirement is permissive; representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *In re Checking Account Overdraft*, 275 F.R.D. 666, 674 (S.D. Fla. 2011) (citation omitted). "Whereas commonality looks at whether class members' claims are common to each other (a horizontal comparison between members of the class), typicality is satisfied where the named plaintiffs' claims 'arise from the same event or pattern or practice and are based on the same legal theory' as the claims of the class (a vertical comparison between class members and class representatives)." *In re Blue Cross*, 2:13-20000, 2020 WL 8256366, at *9 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984), *cert. denied*, 470 U.S. 1004 (1985)).

By definition, a prohibited transaction claim brought under ERISA Sections 409(a), 502(a)(2) is brought on behalf of the plan and any recovery must be paid "to such plan." 29 U.S.C. §§ 1109(a), 1132(a)(2). Thus, courts generally find that ERISA cases arising under § 502(a)(2) meet the typicality requirement because the "action is brought on behalf of the Plan," and Plaintiffs' claims, "of necessity, are typical of the claims" of class members. *Lively v. Dynegy, Inc.*, No. 05-00063, 2007 WL 685861, at *10 (S.D. Ill. Mar. 2, 2007).

Here, the Named Plaintiffs were participants in the Plan during the relevant time period. *See* Boyko Dec. ¶ 10. The Named Plaintiffs' claims are typical of the claims of other members of the Class because their claims arise from the same alleged event, practice, and course of conduct by the Defendants.  In addition, the damages sought here are losses and other relief on behalf of the Plan as a whole. Thus, typicality is met.

> d) *The proposed Class Representatives and their counsel will fairly and adequately protect the interests of the Class.*

Rule 23(a)(4) requires representative parties to "fairly and adequately protect the interests of the class." This requirement "serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "The adequacy-of-representation requirement is satisfied when (i) the class representatives have no interests conflicting with the class; and (ii) the representatives and their attorneys will properly prosecute the case." *In re Blue Cross,* 2020 WL 8256366, at *10 (citing *Sosna v. Iowa*, 419 U.S. 393, 403 (1975)).

Proposed Class Representatives Marcia G. Fleming, Casey Freeman, David Guyon, Anthony Loscalzo, Patrick Roseberry, and Julio Samaniego have been actively engaged in the litigation and provided documents to counsel used to draft the Complaint. Boyko Decl. ¶ 3.

Second, they have no conflicts with the Class. They assert claims on the Plan's behalf and request no separate individual relief. The adequacy requirement of Rule 23(a)(4) is met.

Plaintiffs' Counsel in this case is well-qualified as described in detail in the Declarations of Mark Boyko. Not only do these attorneys have extensive experience litigating class actions, including numerous 401(k) Plan class actions, they have worked diligently to litigate the claims here. Boyko Decl. ¶¶ 3–5. There should be no question that counsel have brought sufficient skill and resources to litigate this case. Plaintiffs' Counsel satisfy Rule 23(a)(4) and 23(g).

### 2.     The claims meet the requirements of certification under Rule 23(b)(1)

In addition to meeting the requirements of Rule 23(a), the action must meet at least one of the three provisions of Rule 23(b). The claims asserted here meet the requirements of Rule 23(b)(1). "Most ERISA class actions are certified under Rule 23(b)(1)." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008); *see also Gamache*, 338 F.R.D. at 291 ("Recently, Courts in [the 11th] Circuit have certified classes in ERISA breach of fiduciary duty actions [ ] under either section of Rule 23(b)(1)"). "[T]he unique and representative nature of an ERISA § 502(a)(2) suit" makes such claims particularly appropriate. *Stanford v. Foamex L.P.*, 263 F.R.D. 156 (E.D. Pa. 2009). ERISA actions meet the requirements of Rule 23(b)(1) because "defendants often provide 'unitary treatment to all members of [a] putative class' and "the rights of absent 'class member[s] [are often] . . . implicated by litigation brought by other class members.'" *Feret v. Corestates Fin. Corp.*, C.A. No. 97–6759, 1998 WL 512933, at *13 (E.D. Pa. Aug. 18, 1998).

### a)     Class certification under Rule 23(b)(1)(A) is appropriate

Rule 23(b)(1)(A) provides that a class may be certified if prosecuting separate actions would create a risk of inconsistent adjudications that would establish incompatible standards of

conduct for the party opposing the class. "ERISA requires plan administrators to treat all similarly situated participants in a consistent manner." *Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008) (certifying a class of "employees, spouses of employees, and dependents of employees" who were eligible for certain benefits). For this reason, courts have certified cases involving violations of ERISA under Rule 23(b)(1)(A). *See Gamache*, 338 F.R.D. 291 (finding certification under Rule 23(b)(1)(A) proper for class of ERISA plan participants) *Neil*, 275 F.R.D. at 267-68; *Loc. 1522 of Council 4 v. Bridgeport Health Care Ctr., Inc.*, No. 15-1019, 2018 WL 1419792, at *10 (D. Conn. Mar. 21, 2018) ("ERISA generally establishes fiduciary obligations on a plan-wide basis, which is the very reason that courts often certify ERISA classes under 23(b)(1)").

The risk of inconsistent adjudications is apparent in this case. Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the Plan and its participants. This action challenged whether Defendants acted consistently with their obligations under ERISA as to the Plan as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Plan. Accordingly, certification under Rule 23(b)(1)(A) is appropriate.

b)      *Class certification under Rule 23(b)(1)(B) is appropriate*

Certification under Rule 23(b)(1)(B) is appropriate where "*any* individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (emphasis added). One example of an action ideally suited for certification under Rule 23(b)(1) is "the adjudication of the rights of all participants in a fund in which the participants have common rights." *Id.* at 834 n.14. Rule

23(b)(1)(B) is designed for "an action which charges a breach of trust by a[ ] . . . trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Amendment. That precisely describes the claims here.

Claims involving a fiduciary's breach of ERISA's prohibited transaction rules must be brought in a representative capacity on behalf of the plan under § 502(a)(2) for relief under § 409. 29 U.S.C. §§ 1109, 1132(a)(2). "In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous court have held." *Gamache*, 338 F.R.D. 275, 292 (M.D. Ga. 2021) (citation omitted); *see also Neil*, 275 F.R.D. at 267–68; *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 80 (E.D. Va. 2006).

The key issues in the case focus on Defendants' conduct — principally, whether and how they fulfilled their alleged fiduciary obligations to the Plan. Thus, a judgment that Defendants violated ERISA would apply to the Plan as a whole and impact all class members equally. *See Gamache* (certifying class under Rule 23(b)(1)(B) "because the fiduciary claims are brought on behalf of the ESOP, individual adjudication would necessarily . . . be dispositive of the interest of [ ] plan participants absent from that individual action . . ."). Further, any money recovered would be paid to the Plan, meaning that resolution of these issues will affect *all* participants in the Plan.

### B.   The Court Should Grant Preliminary Approval of the Settlement Because It Is Fair, Reasonable and Adequate

#### 1.   The Standards for Preliminary Approval

"Public policy strongly favors the pretrial settlement of class action lawsuits." *Swaney v.*

*Regions Bank*, 2020 WL 3064945, at *3 N.D. Ala. June 9, 2020) (citation omitted). Rule 23(e) provides that a class action cannot be settled without court approval. Ultimately, to approve the proposed settlement, the Court must determine that it is fair, reasonable and adequate. *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012). Review of a proposed class action settlement for approval generally proceeds in two stages: (1) preliminary approval and notice to class members of the proposed settlement; and (2) final approval following a fairness hearing in which the Court determines whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Shaw v. Set Enters., Inc.*, No. 15-62152, 2017 WL 2954675, at *1 (S.D. Fla. June 30, 2017).

Before a court approves a proposed settlement, notice must be provided to the class. Fed. R. Civ. P. 23(e)(1). The parties must provide the court with information sufficient to enable the court to determine whether to give such notice of the proposal to the class. *Id.* The court examines the information provided by the parties against a number of factors to determine whether notice should be given. *Id.* At the preliminary approval stage, "[t]he [c]ourt may not resolve contested issues of fact or law[ ] but instead is concerned with the overall fairness, reasonableness, and adequacy of the proposed settlement as compared to the alternative of litigation." *Swaney*, 2020 WL 3064945, at *3. The question is "whether [the proposed settlement] is within the range of fair, reasonable and adequate." *Exum v. Nat'l Tire & Battery*, 2020 WL 1670997, at *7 (S.D. Fla. Apr. 6, 2020) (citing Manual for Complex Litig. § 30.41). "Where [ ] the proposed settlement is the result of serious, arms-length negotiations between the parties, has no obvious deficiencies, falls within the range of possible approval, achieves favorable outcomes for plaintiffs and the class, and does not grant preferential treatment to plaintiffs or other segments of the class, courts generally grant approval." *Id.*

22

Rule 23, as amended in 2018, provides direction to federal courts considering whether to grant preliminary approval of a class action settlement. Fed. R. Civ. P. 23(e), Committee Notes (when weighing preliminary approval, court should decide whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."). Rule 23(e)(2) provides that the Court should look to the following factors:

(A) the class representatives and counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

   (i) the costs, risks, and delay of trial and appeal;

   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-01831, 2019 WL 9171207, at *9 (N.D. Ala. Aug. 1, 2019).

In tandem with Rule 23(e), courts within the Eleventh Circuit evaluate class action settlements under six factors outlined in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984): (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which the settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to

the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *Parsons v. Brighthouse Networks, LLC*, No. 09-267, 2015 WL 13629647, *2 (N.D. Ala. Feb. 5, 2015). Plaintiffs will address each of these factors to the extent they are applicable,[2] although many of them overlap with those of Rule 23(e)(2), and therefore Plaintiffs will address them together. *See In re Blue Cross*, 2020 WL 8256366, at *15 (citation omitted).

### 2.      The Class Representatives and Class Counsel Adequately Represented the Class

For the same reasons that the proposed Class Representatives and Plaintiffs' Counsel satisfy the adequacy of representation requirements under Rule 23(a)(4), they have also adequately represented the proposed Class under Rule 23(e)(2)(A). The Proposed Class Representatives have been actively engaged in the litigation, have no conflicts with the Class, and seek no individual relief. *See* Section IV(A)(1)(d), above. And as detailed above, Plaintiffs' Counsel is well-qualified, have extensive experience litigating class actions including numerous 401(k) class actions, and they have worked diligently to litigate the claims here including defeating motions to dismiss the action. *See* Section IV(A)(1)(d), above.

### 3.      There Was No Fraud or Collusion and the Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires the court to determine whether a proposed settlement "was negotiated at arm's length." Relatedly, the *Bennett* factors require the court to rule out the possibility of fraud or collusion behind the settlement. *Leverso v. SouthTrust Bank of AL., Nat. Assoc.*, 18 F.3d 1527, 1530 (11th Cir. 1994).

Here, Plaintiffs were given access to information about the Plan, the Plan's management, and Defendants' knowledge and process through the claims exhaustion and mediation processes.

---

[2] There is no agreement required to be produced under Rule 23(e)(2)(C)(iv), and since Notice has not yet been sent, there has been no opposition to the settlement *(Bennett* factor #5).

Plaintiffs' Counsel retained multiple experts to assess these documents and calculate damages to the Plan. Boyko Decl. ¶ 6.  The Parties thus entered the mediation process having an understanding of where the strengths and weaknesses of their arguments lay and both sides engaged in hard bargaining during the full-day mediation. Mr. Meyer, a professional, experienced class action mediator, probed at those weaknesses in assisting the Parties in arriving at the settlement terms. *See* Section II(D) above. Boyko Decl. ¶¶ 5–7.

There is no suggestion of fraud or collusion in this case, where the settlement "is the result of non-collusive, arm's length negotiations among experienced counsel informed of and familiar with the legal and factual issues of the action." *McWhorter*, 2019 WL 9171207, at *9. The lack of collusion is further supported by the participation of Mr. Meyer. *See id.* (noting involvement of neutral mediator may bear on whether negotiations were conducted in a manner that would protect and further the class interest). The proposed Settlement is the result of good faith, arm's-length negotiations by well-informed and experienced counsel. Rule 23(e)(2)(B), and the related *Bennett* factor are met.

### 4. The Relief Obtained Considering the Complexity, Expense and Likely Duration of the Litigation.

Rule 23(e)(2)(C)(i), and the first and fourth *Bennett* factors, require the court to consider the adequacy of the relief obtained, in light of the risk, complexity, cost, and likely duration of the litigation.

The Parties had different views about Defendants' actions, their potential liability, and the likely outcome of the litigation. Plaintiffs' core allegations regarding the Plan rested on facts that were strongly contested by Defendants, including the management of the GoalMaker product offered in the Plan, the reasonableness of Prudential's recordkeeping compensation, the

monitoring process of the Plan's stable value fund, and the selection and monitoring of certain other Plan investments.

Defendants denied the allegations, asserted affirmative defenses, and otherwise defended their actions with respect to the Plan. For example, the Rollins Defendants pointed to evidence, such as the Committee minutes and back-up materials that lay out the process and decision-making on both fees and investment selection and retention as well as the Plan's fee disclosures. The Rollins Defendants also emphasize that the Plan's administrative review should be given deference under Eleventh Circuit law. The Rollins Defendants also dispute whether Plaintiffs fully exhausted administrative review. In addition, the Alliant Defendants argue that as an investment advisor, it had only limited fiduciary responsibility.

 If the Action were to proceed, Plaintiffs would have to overcome these and other defenses and arguments. These fact-intensive inquiries would have led to a battle of experts and conflicting evidence and testimony, which would have created uncertainty as to the ultimate outcome of the litigation. *See Swaney*, 2020 WL 3064945, at *4 ("Because 'the outcome on class certification and the ultimate outcome on the merits was uncertain for both parties,' a settlement was reached and here that is appropriate.") (quoting *Parsons,* 2015 WL 13629647, at *2).

Trial would have required several attorneys from Plaintiffs' Counsel to conduct further discovery and prepare and argue motions for class certification, and summary judgment. Plaintiffs' Counsel would have to expend substantial time and effort to engage in additional discovery, review discovery responses and documents produced in response to requests for production, take depositions, and prepare witnesses, as well as engage in hours of briefing. And, regardless of the outcome, there likely would have been appeals that followed, further delaying

resolution and causing more expense. Further, the estimated 40,000 Class Members with account

balances will each receive on average approximately $100 before fees and expenses.

Thus, the proposed Settlement is an excellent result considering "there is simply no

guarantee" that the Class would recover more relief than that secured in the Settlement. *See In re*

*Blue Cross*, 2020 WL 8256366, at *16; *McWhorter*, 2019 WL 9171207, at *11 ("The prospect of

a long, arduous [trial] requiring great expenditures of time and money on behalf of both parties

and the [C]ourt, all in the hopes of achieving a result on par with the relief offered by the

settlement, is not in the interests of any party or Settlement Class Member.").

### 5.   The Stage of Proceedings and Development of the Factual Record

The sixth *Bennett* factor requires a court to consider whether "the case settled at a stage

of the proceedings where class counsel had sufficient knowledge of the law and facts to fairly

weigh the benefits of the settlement against the potential risk of continued litigation." *In re*

*Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *10 (N.D. Ga. Mar. 17,

2020).

As described in Section II(A), (B) above, substantial document discovery was completed

through the claims exhaustion and mediation processes and litigated motions to dismiss. Counsel

for Plaintiffs have litigated scores of ERISA class actions presenting similar ERISA issues.

Boyko Decl ¶ 4. Counsel for Plaintiffs have settled dozens of these cases, while taking others to

trial. *Id*. As such, Plaintiffs' Counsel is intimately familiar with Plan fiduciaries' responsibilities

under ERISA. Similarly, Defendants' counsel is familiar with the documents and information

Plaintiffs' Counsel has repeatedly requested and which allowed the Parties to fully and fairly

assess the allegations and strengths and weaknesses of their respective positions at an early stage,

to the benefit of the Class. "The law is clear that early settlements are to be encouraged, and

27

accordingly, only some reasonable amount of discovery should be required to make these determinations." *In re Blue Cross*, 2020 WL 8256366, at *16 (citation omitted).

Having obtained the necessary information to assess the strengths and weaknesses of their respective positions and with best interests of the Plan in mind, the Parties reached a fair and equitable settlement agreement.

### 6. The Benefits Provided by the Settlement are Fair, Adequate and Reasonable When Compared to the Range of Possible Recovery

The second and third *Bennett* factors are "easily combined and normally considered in concert." *Camp v. City of Pelham*, 2014 WL 1764919, at *3 (N.D. Ala. May 1, 2014). "The [c]ourt's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation[ ] but to evaluate the proposed settlement in its totality." *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005).

Here, the Settlement provides significant relief to the Class Members. Plaintiffs' claimed damages were $1.6 million for alleged excessive recordkeeping fees, $4.3 million for the underperformance of the Plans' Stable Value Fund, and while Plaintiffs asserted $27 million in damages from two other plan investment funds including within the "GoalMaker" product, those losses were generally mitigated by outperformance of other investments within GoalMaker. Boyko Decl. ¶ 6. As a result, the Settlement represents a substantial percentage of the losses Plaintiffs could have hoped to achieve at trial, and certainly within the range of reasonable recoveries. *See In re Blue Cross*, 2020 WL 8256366, at *17; *Bennett*, 737 F.2d at 986–87 & n.9 (approving a settlement representing 5.6% of claims with maximum potential recovery); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) ("[S]tanding alone, nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims.").

### 7.   The Effectiveness of the Proposed Method of Distributing Relief

Rule 23(e)(2)(C)(ii), examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims. Here, the Settlement Agreement contemplates that Rollins will provide, or cause to be provided, the names and last known addresses, and other identifying information of the Class Members, as well as the Class Members' quarterly plan balances. Settlement Agmt. §§ 3.5, 4.7. The Settlement Administrator will use that information and follow the Plan of Allocation. *Id*. § 4.7. All Current Plan Participants will receive their distributions directly into their 401(k) accounts, while Former Plan Participants will receive a check directly from the Settlement Administrator or, if elected by the Class Members, as a deposit into an individual retirement account or other eligible retirement plan. *Id*.

### 8.   The terms of the proposed award of attorneys' fees

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees, including timing of payment. As described above in Section III.D, Plaintiffs' Counsel will file an application seeking an award of attorneys' fees in an amount not exceeding $1,308,333 (1/3 of the Settlement Amount), plus reimbursement of litigation expenses . Settlement Agmt. Art. 8.

### 9.   The proposal treats class members equitably relative to each other

Under Rule 23(e)(2)(D), the court must consider whether the proposal treats class members equitably relative to each other. Under the Plan of Allocation, distributions to the Class Members will be based on the average account holdings of each Class Member during the Class Period. Plaintiffs allege that recordkeeping and administrative fees were excessive and were charged as a percentage of assets, and, therefore, this is a fair method of distributing to the Class. Courts in this Circuit have found such *pro rata* distributions appropriate. *McWhorter*,

2019 WL 9171207, at *12; *Cifuentes v. Regions Bank*, No. 11-23455, 2014 WL 1153772, at *3 (S.D. Fla. Mar. 20, 2014).

### C.      The Court Should Approve the Notice Plan and Schedule a Fairness Hearing

As described in Section III.C above, the Parties have agreed, subject to Court approval, to a Notice Plan, which calls for individual mailed notice to the Settlement Class. This notice and the manner in which it will be disseminated satisfies Rule 23(e)(1) and constitutional due process concerns.

Plaintiffs request that the Court approve KCC Settlement Services, Inc. ("KCC") as Settlement Administrator and Escrow Agent. As detailed in Exhibit 2 to the Boyko Declaration, KCC has extensive experience in the administration of settlements of this type.

Finally, Plaintiffs request that the Court schedule a Fairness Hearing on Plaintiffs' motion for final approval of the Settlement and motion of an award of reasonable attorneys' fees, as set forth in the proposed Preliminary Approval Order. This will establish a reasonable and efficient process for disseminating notice, providing the opportunity for Settlement Class Members to object, and considering final approval of the Settlement.

## V.      CONCLUSION

The proposed Settlement meets the standard for preliminary approval. Accordingly, Plaintiffs respectfully request that the Court issue an Order: (a) certifying the Class for settlement purposes and granting preliminary approval of the Settlement Agreement, attached hereto as Exhibit A; (b) approving the proposed Class Notice, Exhibit 1 to the Settlement Agreement; (c) approving KCC as the Settlement Administrator; (d) approving the Plan of Allocation; (e) and setting a date for a Fairness Hearing on or after March 9, 2024, or at least 110 days after entry of the Order granting Preliminary Approval.

Dated:  November 17, 2023          Respectfully submitted,

**BAILEY & GLASSER LLP**

By: */s/ Mark G. Boyko*
Mark G. Boyko
mboyko@baileyglasser.com
Bailey & Glasser LLP
34 N. Gore Ave., Suite 102
Webster Groves, Mo 63119
Telephone: (314) 863-5446
Facsimile: (314)-863-5483

*Attorney for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date the foregoing document was electronically filed with the Clerk using the CM/ECF system, which will send a notice of electronic filing to all registered users of the CM/ECF system.


Dated: November 17, 2023                                By: */s/ Mark G. Boyko*
                                                                       Mark G. Boyko